# Exhibit 14

1

2    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF NEW YORK: TRIAL TERM PART 3
3    - - - - - - - - - - - - - - - - - - - - - X

4    SVEN GRASSHOFF,

5                         Plaintiff,
                                              INDEX NO.
6             - against -                     650832/12

7    AARON ETRA,

8                         Defendant.

9    - - - - - - - - - - - - - - - - - - - - - X
                         60 Centre Street
10                       New York, New York
                         September 15, 2014
11                       PROCEEDINGS

12
      BEFORE:
13
                  HONORABLE EILEEN BRANSTEN,
14                                       Justice

15
      APPEARANCES:
16
          LAX & NEVILLE LLP
17        Attorneys for the Plaintiff
          1450 Broadway, 35th Floor
18        New York, New York   10018
          BY:   RAQUEL TERRIGNO, ESQ.
19

20        WILLIAM M. PINZLER, ESQ.
          Attorney for the Defendant
21        488 Madison Avenue, Suite 1100
          New York, New York  10022-5720
22

23

24                    Bonnie Piccirillo
                      Official Court Reporter
25

26


                Bonnie Piccirillo - Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  Okay, for the plaintiff, Grasshoff, I |
| 3 | have from Lax & Neville LLP firm, Raquel Terrigno. |
| 4 | MS. TERRIGNO:  Raquel Terrigno. |
| 5 | THE COURT:  For the defendant, Aaron Etra, I have |
| 6 | William Pinzler. |
| 7 | MR. PINZLER:  Yes, ma'am. |
| 8 | THE COURT:  All right, without a doubt, we all can |
| 9 | agree t hat Mr. Grasshoff did send to a bank account that's |
| 10 | named Indeva - spell that for the record. |
| 11 | MR. PINZLER:  I-N-D-E-V-A. |
| 12 | THE COURT:  The sum of $150,000.  According to |
| 13 | Mr. Grasshoff, he did so after signing a document, a |
| 14 | document that's in the papers here in which it was agreed |
| 15 | that the money would be held in escrow.  And, in fact, this |
| 16 | is a quote: |
| 17 | "Upon receipt of Grasshoff's payment, upon receipt |
| 18 | of payment of $150,000 which transaction was 07519936, ate |
| 19 | shall hold Grasshoff's deposit in escrow; shall release |
| 20 | said funds only upon closing of transaction number 07519936 |
| 21 | or on or before September 30, 2011." |
| 22 | Also another section of it: |
| 23 | "In the event that the transaction failed to close |
| 24 | on or before September 30, 2011, the deposit agreement |
| 25 | provided that Etra, quote, shall not release or pay said |
| 26 | funds to anyone other than Grasshoff and shall immediately |

| | |
|---|---|
| 1 | Proceedings |
| 2 | wire said funds back to Grasshoff." |
| 3 | Now, Mr. Pinzler, you coming up with this concept |
| 4 | that this agreement, which is signed by somebody, saying |
| 5 | that there was a forgery. |
| 6 | MR. PINZLER:  Yes. |
| 7 | THE COURT:  Right. |
| 8 | MR. PINZLER:  Yes. |
| 9 | THE COURT:  What proof have you given this Court |
| 10 | that it was a forgery? |
| 11 | MR. PINZLER:  Mr. Etra submitted an affidavit -- |
| 12 | THE COURT:  That's nothing.  I could say it's a |
| 13 | forgery, too.  It's my signature, I say it's a forgery. |
| 14 | What proof have you given this Court upon from a |
| 15 | self-serving statement of the man who, after all, is being |
| 16 | asked to -- is being charged with conversion, what other |
| 17 | proof have you given this Court? |
| 18 | MR. PINZLER:  Your Honor, I submit to you that |
| 19 | there is no other proof I could give. |
| 20 | THE COURT:  Yes, you can.  You can get yourself a |
| 21 | forgery expert.  You can get yourself a handwriting expert. |
| 22 | You could do a lot of things to try to prove to me that |
| 23 | indeed it's not Etra's signature.  And the fact that he |
| 24 | says to me in a statement that, Gee, it's not my signature, |
| 25 | therefore, though I say in my deposition and I say other |
| 26 | places it was a mistake the money being sent to me, a |

Bonnie Piccirillo - Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |
| 2 | mistake.  Instead of sending it back to the person who made |
| 3 | the mistake, you send it on to somebody else who profits. |
| 4 | Now, you tell me what is wrong with saying that's |
| 5 | a conversion? |
| 6 | MR. PINZLER:  First, given that these are |
| 7 | cross-motions for summary judgment, if what you've just |
| 8 | said is correct, the testimony of the people who would give |
| 9 | affidavits or testimony or the like would occur at a trial. |
| 10 | So -- |
| 11 | THE COURT:  Not if we have conclusive proof. |
| 12 | Summary judgment is in lieu of a trial, and it has to be |
| 13 | based on something that indeed is something that could be |
| 14 | relied on as proof worthy. |
| 15 | In other words, I do not consider Mr. Etra's |
| 16 | statement -- I don't care if it is an affidavit -- to be |
| 17 | proof worthy because it is self-serving. |
| 18 | So, as a result of that self-serving statement, |
| 19 | you have not provided me an iota of additional proof of any |
| 20 | proof whatsoever.  We have Mr. Etra saying in his papers, |
| 21 | Oh, yes, I know it was a mistake sending me this money, but |
| 22 | instead of returning it to the money who made the mistake |
| 23 | which was Mr. Grasshoff, he sends it on to the person who |
| 24 | the money was supposed to be held depending on whether or |
| 25 | not the transaction went through. |
| 26 | That doesn't seem good. |

Bonnie Piccirillo - Official Court Reporter

5

1    Proceedings

2         MR. PINZLER: May I respond?

3         THE COURT: Yes.

4         MR. PINZLER: First, Etra's position is he didn't

5    sign it so he didn't know about whatever the conditions

6    are --

7         THE COURT: It was a mistake, that he says.

8         MR. PINZLER: Let me. The second, the second

9    position, the position on which Ms. Terrigno and I do agree

10   which is that irrespective of how Grasshoff came to do it,

11   Grasshoff sends Etra $150,000. There is equally no

12   question that upon receiving a phone call from someone not

13   Grasshoff, Etra sends the money on.

14        Those facts are not in dispute, irrespective of

15   what's in the agreement, which Etra didn't sign.

16        THE COURT: Well, you know, which Etra says he

17   didn't sign because there's nothing to prove to me that he

18   didn't sign it. There's absolutely not an iota of proof.

19        I mean, look, something comes up and I say, Gee, I

20   didn't sign that; doesn't mean that in fact I did not sign

21   it. It's just to my convenience that I say it wasn't

22   signed, my convenience; but there's no proof that he didn't

23   sign it. You have provided nothing, nothing in support,

24   nothing, nothing.

25        MR. PINZLER: If that is the issue on which you

26   wish to focus, I suggest that the case can be decided

Bonnie Piccirillo - Official Court Reporter

6

1          Proceedings

2    without resolving that issue.

3              THE COURT:  Oh, no, it can't because if indeed I

4    take -- because if I find in fact that Grasshoff has

5    provided evidentiary proof that he -- also says he signed

6    the document -- okay, you say he didn't but he says he did

7    -- and that document was to hold $150,000 in escrow in this

8    lawyer's escrow account, mind you he's a lawyer, Mr. Etra

9    so that puts a further burden on him.  He's a lawyer, and

10   that was to be held until an arrangement was made for the

11   investment.

12             Instead of which the money comes into the account,

13   and then merely comes and it goes to the person who is the

14   profit-er of the money, of this transaction.

15             MR. PINZLER:  Your Honor, if Mr. Etra had signed

16   the document, we would not be here because --

17             THE COURT:  Why not?

18             MR. PINZLER:  Because there would be no defense

19   that Mr. Etra had to his actions.  In fact, Mr. Etra's

20   position --

21             THE COURT:  Again, I'm asking you what proof do

22   you have of that?

23             MR. PINZLER:  We have not produced any proof.  We

24   do not have an expert, although one would be produced if

25   there was a trial.  In fact, we don't have an original

26   signature on the form itself.  However, if there were a

Bonnie Piccirillo - Official Court Reporter

7

| | |
|---|---|
| 1 | Proceedings |
| 2 | trial, there would be an expert and your Honor would be |
| 3 | able to decide whether or not Mr. Etra had signed the |
| 4 | document or not signed the document. |
| 5 | However -- |
| 6 | THE COURT:  You know, but the other thing is let's |
| 7 | just say for a second that you get beyond the fact that |
| 8 | money was sent and that it was sent on to the person that |
| 9 | benefitted with the money being sent frankly illegally to |
| 10 | that person; how can you get around this statement by your |
| 11 | client?  Mr. Etra says, Oh, I knew that Mr. Grasshoff or |
| 12 | however I got this money, it was a mistake. |
| 13 | Now, if you make a mistake, sir, do you then send |
| 14 | it to the person who is going to profit from it, or do you |
| 15 | say, Gee, it was a mistake that money came into my bank |
| 16 | account, I have to return it to the person who sent it to |
| 17 | me?  Not to the person who is a friend of Mr. Etra and who |
| 18 | profited illegally from that transaction. |
| 19 | If you have a mistake, what do you do about it? |
| 20 | MR. PINZLER:  It is our position that the question |
| 21 | before the Court is only whether having received the money |
| 22 | without any identification, without any indication from |
| 23 | whence it came, that Mr. Etra passing it on, the only |
| 24 | question is did Mr. Etra have a duty to inquire? |
| 25 | We suggest that the Shapiro case -- |
| 26 | THE COURT:  In a conversion case there's no duty. |

Bonnie Piccirillo - Official Court Reporter

| | |
|---|---|
| 1 | Proceedings |
| 2 | All right, there's no need for a duty. |
| 3 | That, by the way, was the same argument you made |
| 4 | in your motion to dismiss.  It was a motion then that you |
| 5 | made that same argument to the Appellate Division.  I |
| 6 | handled it in my decision.  It went up to the Appellate |
| 7 | Division, and guess what?  They affirmed me and the |
| 8 | argument that you made pursuant to that one case that he |
| 9 | had no duty -- in this case there was conversion, there's |
| 10 | no duty necessary.  Absolutely the issue of duty does not |
| 11 | occur. |
| 12 | It's a simple -- a conversion occurs when a party |
| 13 | intentionally and without authority assumes or exercises |
| 14 | control over personal property belonging to somebody else, |
| 15 | interfering with that person's right of possession and that |
| 16 | goes to Lynch versus the City of New York, 108 AD3d 904 at |
| 17 | page 101, First Department 2013. |
| 18 | Quote:  "Two key elements of conversion are:" |
| 19 | "One, the plaintiff's possessory right or interest |
| 20 | in the property." |
| 21 | Definitely was his 150,000 that he sent, okay so |
| 22 | we got that. |
| 23 | And, "two, the defendant's dominion over the |
| 24 | property or interference with it in derogation of |
| 25 | plaintiff's rights." |
| 26 | So even under Mr. Etra who trade point of vie and |

| | |
|---|---|
| 1 | Proceedings |
| 2 | that again goes to Lynch at 101, you tray point of view |
| 3 | that, Gee, whoever sent me this money did so under a |
| 4 | mistake so therefore, of course, I have the right, I have |
| 5 | no duty, I can give it to Mr. Hudson. |
| 6 | Without a doubt, one thing that Mr. Etra had was |
| 7 | an escrow account into which moneys appeared, mistake, not |
| 8 | mistake, pursuant to a contract or not pursuant to a |
| 9 | contract. |
| 10 | Once the money has appeared in Mr. Etra's bank |
| 11 | account, under Mr. Etra's theory of life, it was a mistake |
| 12 | that it arrived, a mistake.  If somebody makes an error or |
| 13 | if somebody makes a mistake, then what you have to do as an |
| 14 | attorney admitted to practice law in the State of New York |
| 15 | under our comprehensive rules of ethics and everything |
| 16 | else, I've got to do everything I can to rectify the |
| 17 | mistake, to send the money back to its original source. |
| 18 | And even if my name has been forged and et cetera, et |
| 19 | cetera, which there's no proof of that whatsoever. |
| 20 | Nevertheless, a mistake gives a duty particularly to an |
| 21 | attorney, and particularly a member of my bar, and |
| 22 | particularly a person who has an escrow fund into which the |
| 23 | mistake appeared to do whatever is necessary to find out |
| 24 | who this money belongs to and to contact that person, |
| 25 | return the money and do whatever.  But, not to take the |
| 26 | money that appeared by mistake, by mistake and then send it |

Bonnie Piccirillo - Official Court Reporter

1           Proceedings
2    on to my friend, Mr. Hudson, to Mr. Grasshoff's 100 percent
3    detriment because Mr. Hudson never returned it.
4           MR. PINZLER:  Just one comment.  While it is true
5    that Mr. Etra is and remains an attorney, the money was not
6    sent to his attorney escrow account, but rather was sent to
7    an account at the Indeva Corporation.
8           THE COURT:  Which he controlled.
9           MR. PINZLER:  No question.  I just wanted to make
10   the distinction between the escrow account and the account
11   that Mr. Etra controlled.  We don't dispute that the
12   Mr. Etra controlled the account or he's an attorney, but it
13   wasn't his escrow account.  The standards may be the same,
14   but I wanted to clarify that fine point.
15          THE COURT:  I have a question for Mr. Terrigno,
16   and that is you sued for summary judgment on conversion
17   only?
18          MS. TERRIGNO:  Correct, your Honor.
19          THE COURT:  Let's assume I grant you that.  What
20   happens to the other four causes of action that you never
21   did anything about?
22          MS. TERRIGNO:  We didn't move for summary judgment
23   on them because there was an issue of fact as to whether
24   Mr. Etra signed the contract or not, and conversion doesn't
25   require a signed contract and so that's why we moved for
26   summary judgment on that one in particular.

```
 1                        Proceedings
 2              THE COURT:  All right.
 3              Anything else?
 4              MS. TERRIGNO:  Nothing further from plaintiff,
 5       your Honor.
 6              MR. PINZLER:  Nothing.
 7              THE COURT:  Did I send you to -- I think I did.  I
 8       sent you to ADR, didn't I?
 9              MR. PINZLER:  Yes.  Unfortunately, unsuccessful.
10              MS. TERRIGNO:  You did, your Honor.
11              THE COURT:  Well, all right, so what I want is a
12       copy of the minutes.  I'll give you a gray sheet when I get
13       a copy of the minutes.
14              I am going to grant the conversion.
15              Make sure I get a copy of the minutes because I
16       won't write you a single word.
17              MR. PINZLER:  We've done this before, your Honor.
18              THE COURT:  All right, thank you very much.  I
19       hope everybody has a good day.
20                           ---
21                      CERTIFIED TO BE A TRUE
22                      AND CORRECT TRANSCRIPT
23
24                      BONNIE PICCIRILLO
25                      OFFICIAL COURT REPORTER
26
```

Bonnie Piccirillo - Official Court Reporter