# Exhibit 22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
Benthos Master Fund, Ltd.,

                 Petitioner,

       v.                          18 Civ. 9401 (DAB)
                                  MEMORANDUM & ORDER
Etra et al.,

                 Respondents.
--------------------------------------------X
DEBORAH A. BATTS, United States District Judge.


    Petitioner Benthos Master Fund, Ltd. ("Benthos") filed this
motion to hold Respondent Aaron Etra ("Etra") in civil contempt
and award sanctions for failure to comply with orders of the
Court dated October 15, 2018 (ECF No. 4; "October 15 Order") and
October 19, 2018 (ECF No. 8; "October 19 Order"). (ECF No. 15.)
The October 15 and October 19 Orders required Etra to submit
certain information to Benthos and restrained Etra from removing
any additional funds from his IOLA account. For the following
reasons, the Motion to Find Respondent Aaron Etra in Civil
Contempt and Award Sanctions is DENIED.


    I.   Background

    Petitioner Benthos is a California-based private investment
firm specializing in cryptocurrency-based financial instruments.
(ECF No. 1; Petition at 4.) Respondent Aaron Etra is an attorney
licensed to practice law in New York. (Id. at 5.) Benthos entered

into two interrelated agreements for the purchase of Bitcoin from a third party, with Etra acting as escrow agent for the transaction. (Id. at 9.)

The first contract (the "Bitcoin Agreement"), was between Benthos, as Buyer, and a non-party entity known as Valkyrie Group LLC ("Valkyrie"), as Seller, for the purchase of 10,000 Bitcoin. (Id. at 10.) The first tranche of the transaction was to be for $5,000,000.00 worth of Bitcoin. (Id. at 10.) The Seller's principals were a father-and-son team named Hugh and Brandon Austin, who held themselves out to be brokers capable of locating third parties willing to sell quantities of Bitcoin. (Id.)

The Bitcoin Agreement, cross-referenced to an accompanying Escrow Agreement, provided that within 24 business hours after execution, Benthos was to send $5 million to Etra's IOLA account. (Id. at 11.) Etra's fee for serving as Escrow Agent was one percent of any funds deposited in escrow – specifically, $50,000.00. (Id. at 12.) Under the Escrow Agreement, if Benthos had not received its Bitcoin within 15 business days of the release of funds from the Escrow Account, Hugh Austin or Valhalla Venture Group LLC (an affiliate of the Seller) would return the $5,000,000.00 to Benthos. (Id. at 14.)[1]

---

[1] The corresponding provision in the Escrow Agreement reads as follows:

On August 6, 2018, Benthos wired $5,000,000.00 to Etra's IOLA account. (Id. at 16.) On August 7, 2018, Etra wired $3,000,000.00 to an unknown account, purportedly for the purpose of obtaining Bitcoin.[2] (Id. at 17.) Shortly thereafter, Respondent Tracy Evans informed Benthos that the Bitcoin could not be obtained without releasing an additional $2,850,000.000, in additional to the first $3,000,000.00 that had already been released.[3] (Id. at 18.) Benthos declined to send the additional $850,000.00. (Id.)

On August 24, 2018, Etra wired an additional $1,600,000.00 from the IOLA account to another unknown account. (Id. at 23.) On

---

It is understood that Valhalla, represented by Hugh Austin and his estate, will guarantee to make available to [Benthos] the sum of five million dollars USD, if and to the extent that [Benthos] has not received the [Bitcoin] for which it has provided the funds for this transaction within 15 business days . . . of such funds being removed from escrow[,] Valhalla or Hugh Austin will make this payment available to [Benthos] immediately after such period and without recourse.

(Id. at 14.)

[2] This action triggered the 15-day clock under the Escrow Agreement, making August 27, 2018 the date by which either Benthos would receive the Bitcoin, or the $5,000,000.00 would be returned.

[3] Tracy Evans informed Petitioner that the third party Bitcoin holder from whom Valkyrie planned to purchase Bitcoin was one Russian oligarch named "Dmitri Kaslov." (Id. at 18, 29.) Evans failed to provide any additional information about this individual. (Id.) Evans claimed the Bitcoin was being held in a "storage facility" located in Dubai and operated by one "Minh Hoang Le." (Id. at 1, 29.) Again, Evans failed to provide any additional identifying information. (Id.) Tracy Evans claimed Dmitri was unable to release less than 1,000 Bitcoin from the storage facility in any single transaction. (Id. at 18.) Because the price of 1,000 Bitcoin then exceeded $5,000,000, it was apparently impossible to withdraw exactly $5,000,000.00 worth of Bitcoin. (Id. at 18-19.)

August 28, 2018, Benthos demanded the return of its
$5,000,000.00.[4]

On August 31, 2018, Benthos demanded that Etra provide him
with all details concerning the release of the escrow funds, all
communications between himself and all parties involved in the
Bitcoin Agreement, and information about the storage facility and
Dmitri. (Id. at 32.) According to Benthos, Etra failed to provide
any useful information or documentation. (Id.) On October 12,
2018, Benthos terminated the Escrow Agreement and again demanded
the return of Benthos' funds. (Id. at 50.)

On October 15, 2018, Benthos filed a Petition for
Preliminary Injunctive Relief in Aid of Arbitration. (ECF No. 1.)
The Petition sought a preliminary injunction (1) enjoining
Respondents from transferring any additional funds out of Etra's
IOLA account and (2) directing Etra to disclose within 48 hours
specific information, including how much, where, to whom, and
when money was transferred out of Etra's IOLA account. (Id.) In
addition, Petitioner sought information about the bitcoin storage
facility, the identity of Tracy Evans and Dmitry, and copies of
all communications between Etra and Valkyrie, Valhalla, Brandon

---

[4] At this point, Etra had released $4,600,000.00 to unknown accounts, and
$400,000.00 remained in escrow in Etra's IOLA account.

4

Austin, Hugh Austin, Tracy Evans, Dmitri, and Ming Hoang Le. (<u>Id.</u>)[5]

On October 15, 2018, Judge P. Kevin Castel granted Benthos' Petition for an Order to Show Cause and Temporary Restraining Order. (ECF No. 4; "October 15 Order".) On October 19, 2018, this Court issued an Order which, inter alia, directed Etra and Evans to provide Benthos with the documents and information demanded in the October 15 Order. (ECF No. 8; "October 19 Order".)

---

[5] Specifically, The preliminary injunction:

Directs Respondent Aaron Etra to disclose within 48 hours the following information regarding transfers or disbursements made to date from the $5 million deposited by Petitioner into Etra's IOLA account:

a. the recipients of each transfer,
b. the amount transferred on each occasion,
c. the written instructions upon which each transfer was made,
d. any w1itten confirmation received of each transfer,
e. the bank account information and wire transfer infom1ation (if any) associated with each transfer,
f. the identities, if known to Etra, of any subsequent recipients of Benthos's escrowed funds pursuant to any transfers made of such funds by Etra's transferees, and
g. the current or last known whereabouts of the said previously-escrowed funds;

. . .

Further directs respondent Aaron Etra to, within 48 hours:

a. provide copies of all communications between and among any of himself, Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, "Dmitri," and Ming Hoang Le, or any of their affiliates, representatives and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into Etra's IOLA account;
b. disclose the full name of Dmitri, as well as any other names by which he has identified himself, and his home and business addresses and all of his phone numbers and e-mail addresses known to Etra; and
c. disclose the name, address, telephone number, website and identities of principals of any storage company at which any of the funds deposited into escrow by Benthos, or any Bitcoin intended for Benthos, has been held.

(<u>Id.</u>)

On November 15, 2018, this Court held a Hearing at which the Court once again ordered Etra to provide the documents and information demanded in the October 15 Order ("November 15 Order"). (ECF No. 24; Tr. at 20.) On November 20, 2018, Benthos submitted this Motion to Find Respondent Aaron Etra in Civil Contempt and Award Sanctions. (ECF No. 15.)

On November 26, 2018, attorney for Aaron Etra, Mr. David S. Hammer, submitted a Declaration to the Court attesting under penalty of perjury that his client had fully complied with the Court's Orders. (ECF No. 20.) On November 27, 2018, Benthos submitted a letter to the Court alleging that Etra had not fully complied with the October 19 Order. (ECF No. 21.) On November 28, 2018, Mr. Hammer submitted a letter to the Court reaffirming that Etra was in full compliance with the October 19 Order. (ECF No. 22.)

In response to an Order from this Court (ECF No. 23), Petitioner filed a letter on December 4, 2018 detailing the specific information Petitioner believed to be missing from Etra's submission such that he was not in compliance with the Court's October 19 Order. (ECF No. 26.) According to Benthos, four categories of documents were missing:

> (1) Correspondence related to the inception of the parties' relationship and the formation of the Bitcoin Agreement and Escrow Agreement;

6

(2)   Documents related to Etra's efforts to consummate the
      transaction, particularly after the October 15 Order;

(3)   Communications between Etra, Evans, Minh Hoang Le,
      Dmitri Kaslov, and Brandon and Hugh Austin concerning
      this case; and

(4)   Correspondence concerning the search for a new buyer,
      that is, a buyer willing to tender an additional
      $850,000 to meet the $5,850,000 allegedly required to
      release the Bitcoin ("Supplemental Buyer Emails").

(ECF No. 26.)


In response, Mr. Hammer submitted two letters – one on
December 7, 2019 and another on December 9, 2019. (ECF Nos. 27-
28.) In these letters, Mr. Hammer stated that on December 4,
2018, he hand-delivered all of the previously withheld documents
to the offices of Benthos' counsel. (ECF No. 27.) In addition,
Mr. Hammer affirmed he delivered an affidavit from Etra in which
Etra stated under oath:

> With the production of this new set of documents, previously
> withheld, counsel for Benthos has all communications in my
> possession involving myself and/or Valkyrie Group LLC,
> Valhalla Venture Group LLC, Brandon Austin, Hugh Austin,
> Traci Evans, Dmitri, and Ming Hoang Le, or any of their
> affiliates, representatives and/or agents, concerning any
> subject including but not limited to the Bitcoin Agreement,
> the Escrow Agreement, and/or the funds deposited by Benthos
> into my IOLA account.

(Id.) In his December 9, 2018 Letter, Mr. Hammer once again
attested:

> Etra has complied with all orders of this Court, having
> returned all money in his IOLA account remaining from the

7

sum originally deposited by Benthos, and produced all
communications in his possession involving the participants
in the Bitcoin Transaction.

(ECF No. 28 at 3.)

On December 11, 2018, Bethos submitted a letter alleging
that documents pre-dating the execution of the Bitcoin Agreement
and Escrow Agreement were still missing. (ECF No. 29.) Petitioner
reiterated its request that the Court (1) grant its contempt
motion and award sanctions, including reimbursement of
Petitioner's legal fees; and (2) order Etra to appear for a
deposition and make his computer(s) and phone(s) available for
forensic examination and produce his documents electronically
with metadata (Id.)

II.  DISCUSSION

A. Civil Contempt

To hold a party in civil contempt, it must be shown by clear
and convincing evidence that the alleged contemnor violated a
"clear and unambiguous order of the court" and that "the
contemnor was not reasonably diligent in attempting to
comply." City of New York v. Local 28, Sheet Metal Workers' Int'l
Assn., 170 F.3d 279, 282–83 (2d Cir.1999); see also Latino
Officers Ass'n City of New York, Inc. v. City of New York, 558

F.3d 159, 164 (2d Cir. 2009) (same). Courts should not resort to issuance of contempt orders "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (quoting California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885)). Further, the failure of a party to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt. Dunn v. New York State Dep't of Labor, 47 F.3d 485, 490 (2d Cir. 1995).

The Parties do not dispute that the Court's Orders were clear and unambiguous; at issue here is whether Etra reasonably complied with them. The October 19 Order directed Etra to provide Benthos with the documents and information demanded in the October 15 Order.

Etra has made reasonable efforts to comply with both Orders. (Hammer Decl.; Letter of November 28, 2019; Letter of December 7, 2018; Letter of December 9, 2018.) Etra has provided Benthos with 545 pages of communications and an affidavit stating, under oath, that he has turned over every communication in his possession between and among any of the participants in the Bitcoin Transaction concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into his IOLA account. (Letter of December 7, 2019.) He has returned to Benthos the $400,000.00 that remained in his IOLA account. (Id.)

Although Etra's efforts may not have produced perfect compliance, Benthos has failed to demonstrate that Etra deliberately disregarded – intentionally or otherwise – the Court's Orders of October 15, 2018 or October 19, 2018. Accordingly, Petitioner's Motion for Contempt is DENIED. Petitioner's request for accompanying attorney's fees pursuant to Local Civil Rule 83.6 is also DENIED.

B. Sanctions

Benthos also moves for the imposition of sanctions against Etra on the grounds that Etra misrepresented certain facts during the November 15, 2018 Hearing. According to Benthos, Etra's misrepresentations included: (1) falsely stating that he was represented by Mr. Michael Hess, when in reality Etra was not represented by any attorney at the time; (2) falsely stating that Mr. Hess was too ill to attend the Hearing; and (3) falsely asserting that Etra was in contact with Benthos at the time, and that Benthos in fact "wanted" the Bitcoin transaction to be consummated. (Pet. Mem. at 7-8.)

Rule 11(c) of the Federal Rules of Civil Procedures allows the court to sanction a party if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court. Fed. R. Civ. P. 11; Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 51 (2d

10

Cir. 2008). Under this rule, a district court may sanction a party _sua sponte_ or in response to a motion for sanctions. Fed. R. Civ. P. 11(c). "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).

Here, Benthos failed to make a separate motion for sanctions under Rule 11 and therefore has failed to comply with the procedural requirements of the Rule. _Williamson_, 542 F.3d at 51. Accordingly, Petitioner's request for sanctions is DENIED.


III. CONCLUSION

Petitioner's Motion to Find Respondent Aaron Etra in Civil Contempt and Award Sanctions is DENIED. The Clerk of Court is respectfully directed to terminate this matter.


SO ORDERED.


DATED:    June 20, 2019
          New York, NY


_Deborah A. Batts_
Deborah A. Batts
United States District Judge