

*Direct Dial: 212.880.9882*
*E-Mail: spopofsky@kkwc.com*

January 19, 2021

**Via ECF**
Honorable Alison J. Nathan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:     **Benthos v. Etra, 20 Civ. 03384**

Dear Judge Nathan:

On behalf of judgment creditor Benthos, we write to respectfully request the following relief:

With Regard to the
Subpoena Duces Tecum
Dated August 27, 2020

1.     Holding judgment creditor Aaron Etra – a member of the Bar and a practicing lawyer (acting pro se in this matter) – in contempt of court for having willfully refused to comply with (a) the Subpoena Duces Tecum, and (b) this Court's Orders, as they relate to compliance with that Subpoena Duces Tecum, dated November 27, 2020 (Dkt. 33), November 25, 2020 (Dkt. 36), December 4, 2020 (Dkt. 39), and January 5, 2021 (Dkt. 54).

2.     Ordering that Mr. Etra may purge his contempt only by complying fully, by a date certain to be determined by the Court, with the terms of Dkt. 39 and Dkt. 54 as they relate to the Subpoena Duces Tecum.

With Regard to the
Information Subpoena
Dated August 27, 2020

3.     Ordering Mr. Etra to respond in full, by a date certain to be determined by the Court, with the information requests set forth in Exhibit 6 hereto, in light of his willfully incomplete and deficient responses to the Information Subpoena notwithstanding the Court's Orders at Dkt. 39 and Dkt. 54.



Honorable Alison J. Nathan
January 19, 2021
Page 2

### Summary

Mr. Etra has repeatedly demonstrated his belief that compliance with subpoenas and Court Orders is at his option. He admits to having had over a half-dozen bank and credit card accounts over the past couple of years (let alone those accounts that he is concealing), and he has been given extensive leeway by the Court in terms of adjourned deadlines. Nonetheless, he has refused to comply with the Subpoena Duces Tecum at all. It is abundantly clear that only a finding of contempt will get him to produce his financial records to which Benthos is plainly entitled.

And as to the Information Subpoena, Mr. Etra appears to believe that he can unilaterally pick and choose which requests he needs to respond to, and to what extent, and on what schedule. The Court Orders, of course, did not give him that discretion.

### Brief Background

The Court is respectfully referred to Benthos's prior motion to hold Mr. Etra in contempt of court (Dkt. 23 et seq.), and particularly to the supporting affirmation of Steven Popofsky (Dkt. 24), with its accompanying exhibits. The Court ruled on November 19, 2020 (Dkt. 33), that while it was "clear that Mr. Etra has not provided adequate responses to [petitioner's] judgment enforcement subpoenas," it was "not prepared to hold Mr. Etra in civil contempt at this time." The Court therefore denied the contempt motion "without prejudice to renewal at a later date," and stated that "The Court hopes that Mr. Etra will not put it in the position of needing to impose coercive sanctions to secure his compliance with court orders."

Benthos holds a judgment against Mr. Etra in excess of $5 million (Dkt. 15), as a result of his adjudicated breaches of fiduciary duty and contractual obligations pursuant to an arbitration award rendered on April 9, 2020 (Dkt. 1-1). On August 26, 2020, the Court allowed Benthos to undertake judgment enforcement activities immediately (Dkt. 21), and Benthos accordingly served a Subpoena Duces Tecum and an Information Subpoena on August 27, 2020 (Exs. 1 and 2 respectively accompanying this letter application).

### Total Defiance Of the
### Subpoena Duces Tecum and
### Ensuing Court Orders

Mr. Etra has at no time served any objections to the Subpoena Duces Tecum, compliance with which the Court has described as something that "should not be particularly onerous" (Dkt. 54). Without detailing all of the back-and-forth between the parties, on November 19, 2020, the



Honorable Alison J. Nathan
January 19, 2021
Page 3

Court ordered the parties to "confer" and to provide a "joint status letter" by November 27 stating, "for each category of documents . . ., a mutually agreeable date by which Mr. Etra agrees to provide any responsive documents" (Dkt. 33). That deadline was extended to December 4, 2020 (Dkt. 36).

Mr. Etra refused to do as the Court ordered (see Dkt. 37). On December 4, 2020, the Court ordered as follows (Dkt. 39):

> By December 18, 2020, Mr. Etra shall identify all numbered requests in Benthos Master Fund's subpoena duces tecum to which no responsive documents exist. Mr. Etra shall produce all documents responsive to the subpoena duces tecum to Benthos Master Fund by December 23, 2020. Mr. Etra's obligation to produce responsive documents includes and extends to obtaining documents from financial institutions, even if he does not presently possess copies of such documents, if the responsive documents are available electronically from the financial institutions.

Following further exchanges of correspondence with the Court (Dkt. Nos. 43-44, 47-52), on January 5, 2021 the Court ruled as follows (Dkt. 54):

> The Court previously ordered Mr. Etra to respond to each request in the information subpoena and identify responsive documents by December 18, 2020, and to produce responsive documents by December 23, 2020. Dkt. No. 39. Those dates are extended to January 8, 2021, and January 13, 2021. The Court has reviewed the subpoenas, and compliance with them should not be particularly onerous, especially if Mr. Etra's finances are as straightforward as he has represented. The Court expects Mr. Etra to comply with these extended deadlines.

Mr. Etra did not identify, on January 8th or any time thereafter, the numbered requests in the Subpoena Duces Tecum to which he may claim not to have responsive documents. Nor did he produce any responsive documents on January 13, or any time thereafter.

He had previously given us a (very) few documents. The sum total of what Mr. Etra has produced to Benthos in connection with judgment enforcement is as follows:

- A one-page Property Tax Notice relating to a property he claims to own in North Carolina.
- A one-page, virtually illegible, screen shot of an isolated page from what appears to be a bank statement for October 2020.



Honorable Alison J. Nathan
January 19, 2021
Page 4

- A one-page, partially illegible, isolated page from what appears to be a bank statement for September 2020.
- A one-page, partially illegible, screen shot of an isolated page from a credit card statement for October 2020.
- A one-page screen shot of an isolated page from what appears to be a credit card statement from October 2020.
- Copies of two invoices from lawyers whom Mr. Etra retained but evidently did not pay.

Those minimal documents collectively accompany this declaration as Exhibit 3.

That is all. Mr. Etra admits to having had an unspecified number of accounts at no fewer than seven banks since the summer of 2018 alone (Ex. 4 discussed below), and we know that he is concealing at least one additional bank (and probably more), as discussed below. He admits to having at least one credit card that was active as recently as autumn 2020. During the time in which he was participating in and facilitating the scamming of Benthos out of $4.6 million through misuse of his attorney escrow account, he was flying around the world and speaking to Benthos's principals from various foreign locations, including Central Europe and possibly Dubai. He has previously been found liable for misusing his attorney escrow account to defraud another victim (Dkt. 24 at p. 6 n.3). He brought into the underlying transaction here a convicted felon (Dkt. 29-1 at p. 3 n.2). He admitted, in deposition testimony in a related underlying case[1], to have participated in other Bitcoin transactions and indeed, the detailed (fraudulent) contract and multi-page Escrow Agreement he used to cheat Benthos out of its money cannot have been the first time he engaged in this sort of fraudulent scam.

It is, therefore, inconceivable that Mr. Etra does not have – or could not easily obtain, from his various and sundry financial institutions – bank statements, credit card statements, and other documents responsive to Benthos's subpoena duces tecum. This Court repeatedly has ordered him to do so, and he has defied every such order.

Mr. Etra should not be permitted to evade his legal obligations by insisting that Benthos be relegated only to non-party subpoenas. While Benthos has obtained some (limited) documentation through those means, that documentation is woefully incomplete, and extremely costly and time-consuming to obtain. Furthermore, only Mr. Etra can provide current and up-to-

---

[1] Mr. Etra repeatedly claims to have testified previously and to have produced hundreds of pages of documents. That was on the merits of the underlying fraudulent scheme, in a lawsuit against Mr. Etra's co-conspirators. He has never testified in connection with judgment enforcement – in fact, he defied a deposition subpoena in this matter, and that will be addressed once he has complied with the Court's orders to provide documents and information – and he never produced any documents in connection with judgment enforcement, other than the literal handful of isolated uninformative pages identified above.



KLEINBERG KAPLAN

date statements. In any event, only Mr. Etra knows the full extent and identities of his financial institutions and relationships. Like any other subpoena recipient (even more so, given that he is a judgment debtor with a demonstrated history of duplicity), Mr. Etra must comply with duly-served and narrowly-tailored subpoenas – and he already has been ordered by this Court, on multiple occasions, to do so.[2]

To the extent that Mr. Etra does not actually still have in his possession documents responsive to the subpoena, the Court previously ordered that his obligation "includes and extends to obtaining documents from financial institutions, even if he does not presently possess copies of such documents, if the responsive documents are available electronically from the financial institutions" (Dkt. 39). It is our understanding that most banks provide electronic access even to former account-holders whose accounts may be closed, and that virtually all banks will honor requests for copies of statements from former account-holders. The subpoena here sought documents dating back no farther than August of 2018. The burden of providing documents responsive to the subpoena should fall on Mr. Etra, even if (which we do not know to be the case) he would need to obtain them via the minimal efforts of accessing his accounts electronically or making requests of his financial institutions.

We have previously made the Court aware of Mr. Etra's disgraceful conduct in this matter, including not only misusing his attorney escrow account and lying repeatedly to Benthos's principals, who entrusted him with $5 million, but also defying repeated orders of other judges of this Court; lying to the face of the late Judge Batts in open court; and refusing to return $400,000 from his escrow account until threatened by Judge Batts with incarceration ("bring your toothbrush"). See Dkt. 24 at ¶¶ 15-22 and Ex. 21.

Because of that history, we advised the Court in October, and on several occasions since then, of our view that nothing short of renewed threats of incarceration will generate Mr. Etra's compliance with his legal obligations. Events are bearing that out. It is now almost five months since the Subpoena Duces Tecum was served, and Mr. Etra has shown no indication that he ever intends to comply with it. His sole strategy is to stall, and to stall, and to stall, until finally this Court's patience is exhausted. Because Benthos is hemorrhaging its remaining funds seeking to enforce its judgment, we respectfully implore the Court to conclude that that point now has been reached.

---

[2] Mr. Etra also generated, solely for the purpose of transmitting to Benthos's counsel, a short purported financial statement. That statement has no credibility whatsoever for a variety of reasons. In any event, there is no legal authority for the proposition that a judgment debtor may tell his creditor, "I have very few assets; trust me," and thereby avoid having to produce the actual documents bearing on his or her finances. Mr. Etra received a (reasonable) subpoena; he has been ordered (multiple times) to comply with it; and he should be required to do so.

Honorable Alison J. Nathan
January 19, 2021
Page 6

### Patently Incomplete Responses
### To the Information Subpoena

As noted above, Mr. Etra was ordered by this Court to "respond to each request in the [I]nformation [S]ubpoena . . . by December 18, 2020," a deadline that was subsequently "extended to January 8, 2021" (Dkt. 39, Dkt. 54). While he did not out-and-out defy those orders, as he did with regard to the Subpoena Duces Tecum, he made no effort to provide meaningful informative responses, particularly regarding the key information requests concerning his multiple bank and credit card accounts.

For example, he identified his bank accounts only by the names of seven of his banks ("M&T Bank, Citibank, HSBC, Uni-credit affiliate, JP Morgan, City National Bank, TD Bank"), without providing addresses or locations, and he did not provide any account numbers (including how many accounts he may have had at each bank) or other identifying information whatsoever. (Ex. 4) He evaded answering several other questions, and he concealed entirely his foreign bank account(s) – where he is likely hiding the money he has earned throughout his long career. We know that he has at least one European account, because he admitted that in his deposition as a non-party witness in our suit against his co-conspirators:

Q.   Do you have a European bank account?
A.   Yes.

Q.   At what bank is that account?
A.   That bank is a bank in Europe.

Q.   What bank is it?
A.   That bank has nothing to do with this
     transaction.

\*        \*        \*

Q.   Where is that account located?
A.   It's located in Europe and has not
     been used for this transaction or any related
     transaction.

\*        \*        \*

Q.   Just to be clear, sir -- are you
     refusing to tell me the name of the European



Honorable Alison J. Nathan
January 19, 2021
Page 7

        bank at which you hold an account?

A.   I am not refusing.
      I am saying it has nothing to do with
      this transaction and is not relevant.

Q.   That may be well be true, sir, but I
      am asking you the name of the bank.
      Are you going to answer the question?

A.   It is a confidential arrangement
      between me and my bank.

Q.   The identity of the bank is a
      confidential arrangement between you and the
      bank?

A.   It is a confidential arrangement
      because it has nothing to do with the
      transaction, nothing to do with Benthos, nothing
      to do with anything that we are discussing here.

(Ex. 5)  Now, in judgment enforcement, Mr. Etra's European bank accounts have everything "to do with Benthos," yet he appears to have forgotten about that testimony and decided to hide the existence of his overseas money from Benthos, and from the Court.

Because Mr. Etra stated in his response (albeit incorrectly) that "I believe . . . [you] have the information you need. . . . Please tell me which accounts you do not have any information about and I will do my best to request it and provide it" (Ex. 4, No. 2), Benthos did not seek relief from the Court but rather served follow-up questions on Mr. Etra (see Ex. 6).  Those questions sought, for example (among other things), information about his European/foreign bank account(s); what he meant by "Uni-credit affiliate"; addresses and account numbers for bank accounts about which Benthos does not have that information; whether he has opened any bank accounts, or used any credit cards, since service of the subpoenas and restraining notice in August 2020; the identities of other signatories, if any, on his accounts; the means by which he received and (if applicable) disposed of bank and credit card statements; and his monthly living expenses since August 2020 (because, among other reasons, we have no visibility into how he is funding his current expenses).

We asked Mr. Etra to respond to those inquiries by January 18th.  On that date, he told us only that he would "make efforts to address as best I can" the requests in our letter, and he told us, for at least the second time recently, that he interprets Your Honor's Orders as only requiring him to do what he himself deems "not onerous."  That is not at all what the Court ordered.  As



Honorable Alison J. Nathan
January 19, 2021
Page 8

set forth above, Your Honor stated your view that, having reviewed the Subpoena Duces Tecum and the Information Subpoena, "compliance with them should not be particularly onerous, especially if Mr. Etra's finances are as straightforward as he has represented. The Court expects Mr. Etra to comply with these extended deadlines."

It is not up to Mr. Etra to decide what he does or does not consider "onerous" and which information requests warrant a response. He is continuing to stall, and we respectfully request that the Court order him to respond completely and expeditiously to the lettered requests set forth in Exhibit 6.

### The Red Herring of the Settlement Process

In virtually every recent communication with us, Mr. Etra takes the position that we should only "focus on the [settlement] process with Judge Parker," and should not "divert" his "time and energy" by seeking compliance with subpoenas and Court Orders. He can be expected to say the same in response to this application. But judgment enforcement and settlement are on two separate tracks – for five months now, Mr. Etra has refused to provide duly subpoenaed and ordered documents and information, and our settlement process with Magistrate Judge Parker in no way relieves him of those obligations.

Furthermore, Mr. Etra's past idea of "settlement" has been that Benthos forbear from enforcing its $5 million judgment for a year, while at the end of that period he may or may not come up with some money. Benthos is participating in good faith in Judge Parker's settlement process, but cannot reasonably be expected to suspend judgment enforcement in exchange for nothing. Nor can Benthos be expected to credit Mr. Etra's cries of poverty (presumably intended to support a huge discount on the judgment) when he has so assiduously refused to support and document the purported state of his finances (not to mention his concealment of his European bank account(s)).

In any event, it should be made clear to Mr. Etra that the existence of the settlement process is no excuse for his non-compliance with subpoenas and Court orders.

### Conclusion

It is bad enough that Mr. Etra misused his status as fiduciary and attorney to scam Benthos out of $4.6 million, and to put it out of business and force its young principals to explain to their investors that their funds were diverted to China never to be seen again. But it has now been nine months since the arbitration award, and five months since the judgment – every time Mr. Etra defies a subpoena or a court Order, he forces Benthos to incur the cost of yet another



Honorable Alison J. Nathan
January 19, 2021
Page 9

application seeking to compel his compliance.  The process is endless and expensive and grossly unfair to the victimized judgment creditor.

Mr. Etra has responded to this Court's measured patience only by taking further advantage of the process.  The only way Benthos got $400,000 of its $5 million returned was when Judge Batts told Mr. Etra, "bring your toothbrush."  Sadly, that is the only language Mr. Etra understands.

Respectfully yours,

*/s/ Steven R. Popofsky*

Steven R. Popofsky

cc:    Aaron Etra (via email)