

*Direct Dial: 212.880.9882*
*E-Mail: spopofsky@kkwc.com*

February 9, 2021

**Via ECF**
Honorable Alison J. Nathan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

**Re: Benthos v. Etra, 20 Civ. 03384**

Dear Judge Nathan:

Aaron Etra (a member of the Bar) now has willfully refused to comply with at least three court orders (Dkt. 39, 54, and now 59), in addition to two prior subpoenas. On January 29, 2021, he refused entirely to provide any further responses whatsoever to Benthos's information subpoena, despite Your Honor having directly ordered him (yet again) to do so. This flimflam artist, who claims to have no money and no assets, has maintained at least twenty-six bank, credit card and investment accounts at various times since August 1, 2018 alone (the "Relevant Time Period" set forth in our subpoenas).

While he did produce some documents in response to Dkt. 59 - and it is clear that he had them all along, as almost without exception they were not printed out from accessing his banks' websites – Mr. Etra's limited January 29th production was entirely deficient. He did not produce a complete set of monthly statements for even a single account. Indeed, Mr. Etra wholly failed to produce any statements at all for more than half of his 26 known accounts; and significantly, he did not provide any documentation (aside from one solitary screen shot and one monthly bank statement) revealing the state of his financial affairs since the Judgment was entered on August 13, 2020.

The specific deficiencies, and Benthos's specific requests, will be addressed in detail below, but a brief summary appears appropriate.

On January 8, Mr. Etra had provided an incomplete response to the Information Subpoena and indicated that he had at least one account at seven banks including "[a] Uni-credit affiliate" and "City National Bank." Despite this admission, Mr. Etra failed to produce any documents at all for his accounts at City National Bank and the Uni-credit affiliate, and he also did not identify the name of the bank that is the "Uni-credit affiliate." He also produced only a






few scattered monthly statements for two accounts at a newly-disclosed bank, Metropolitan Commercial Bank, which was not among those banks he had identified on January 8.

Mr. Etra produced nothing more than one bank letter for each of three other accounts, but no monthly statements at all for any of those three accounts. And he produced a solitary screen shot of what appears to be an account summary for one single month for one of his credit cards, in addition to one random monthly statement for that card.

During a 2019 non-party deposition, Mr. Etra stated that he had at that time a "European bank account" at "a bank in Europe"; and he traveled extensively to and from Eastern and Western Europe pre-pandemic. Not surprisingly, Mr. Etra's production on January 29 did not include any documentation relating to a European bank account.

And even for accounts for which he produced some documentation, he cherry-picked which documents should be produced, intentionally providing very little that is recent: He provided statements from any portion of 2020 only for three accounts, and even then, he provided statements only through the first quarter of 2020 for two of those accounts.

**Overview of Benthos's Plight**

As the Court is aware, Benthos was founded by two recent college graduates. As a result of having been scammed out of $4.6 million by Mr. Etra and his co-conspirators, they had to close down their fund, having lost almost all of their investors' money. Now Mr. Etra, through his brazen disregard of the law, is draining them of their remaining funds – six months after the judgment was entered and the subpoenas were served, he is continuing to successfully conceal the most pertinent details about his finances.

Every time he defies a subpoena or court order, Benthos's lawyers have to apply to the Court for relief; then the Court orders him to comply; then he refuses to comply (or complies only minimally); and then Benthos has to make another application, detailing the deficiencies and responding to Mr. Etra's false or irrelevant contentions, incurring more legal fees on every such occasion; and the process goes on and on and on with no end in sight, and evidently no effective way to secure Mr. Etra's compliance with his legal obligations. He is seeking to stall, as he has thus far done very effectively, until Benthos exhausts its resources or determination to enforce its judgment. We implore the Court to shift that dynamic.

**Specific Relief Requested**

For the reasons set forth herein, and in all of our prior submissions since our motion to hold Mr. Etra in contempt of court (Dkt. 23 et seq.), we respectfully request that Mr. Etra be






ordered to respond to each and every request set forth below in boldface, by a date certain, and that he be told that his failure to comply, fully and completely, will result in his being held in contempt of court and will subject him to all of the remedies incident to such a finding, including but not limited to incarceration at the Court's discretion.

Nothing short of such an order will achieve compliance, or justice.

**Domestic Bank Accounts**

Mr. Etra has produced no bank account statements for any months since August 2020, when the judgment was obtained (except for two isolated single pages he had sent us previously), and we have no such statements through independent subpoenas. It is unclear how he has been living and supporting himself during this period, and that is utterly unacceptable at this point, six months after judgment-enforcement subpoenas and multiple court orders, all of which Mr. Etra repeatedly has defied. Accordingly, we respectfully request that Mr. Etra be ordered to respond to the following, in furtherance of the information subpoena, the subpoena duces tecum and the three court orders directing compliance with those subpoenas:

> **A. Have you opened, maintained or used any bank accounts since the judgment was issued on August 13, 2020? If so, identify the bank(s) and provide an answer to each separate inquiry previously set forth in Information Subpoena Request No. 2 ("As to each such account, what is the exact name on the account, the date the account was opened, the account number, the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire.").**
>
> **B. With regard to the period since August 13, 2020, produce the following documents previously requested in Subpoena Duces Tecum Request No. 3 ("All documents, including but not limited to all monthly statements . . ., concerning any bank accounts, brokerage accounts, investment accounts, checking accounts, savings accounts, and all other accounts, whether in the United States or another country, in which You have (or had) an interest, whether in Your name individually, jointly, in trust, as custodian, as nominee, as a beneficiary or in conjunction with any other person or persons").**






Benthos is aware, from statements produced by HSBC (not by Mr. Etra) in response to a subpoena, that certain transfers – in amounts exceeding six figures – were made into and out of Mr. Etra's HSBC accounts to and from three unknown sources, described on the statements as "41book credit," "45book debit," and an HSBC checking account ending in 9990. Mr. Etra never has disclosed anything about any of those accounts, and we have no additional information or documentation. Accordingly:

> **C. For accounts or sources of funds referred to as "Aaron Etra 41book credit," "Aaron Etra 45book debit," and a checking account at HSBC ending in 9990, identify the bank(s) at which each of those are or were located and provide the following information previously requested in Information Subpoena Request No. 2 ("what is the exact name on the account, the date the account was opened, the account number, the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

> **D. Produce all statements during the Relevant Time Period for or related to "Aaron Etra 41book credit," "Aaron Etra 45book debit," and a checking account at HSBC ending in 9990.**

On January 29th, Mr. Etra produced a notice from HSBC that an account "ending in 6509" was being closed. We have no other information or documents about that account. Accordingly:

> **E. For your HSBC account ending in 6509, provide an answer to each separate inquiry previously set forth in Information Subpoena Request No. 2 ("what is the exact name on the account, the date the account was opened, the account number, the names of the signatories on the account, and . . . what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

> **F. Produce all statements during the Relevant Time Period for your HSBC account ending in 6509.**





Mr. Etra's previous response to Information Subpoena Request Nos. 1 and 2 stated that he had accounts at (among other institutions) "City National Bank" and an otherwise unidentified "Uni-credit affiliate," with no additional information. The Court held those responses insufficient and ordered him to respond to the information subpoena, an order that he ignored. His limited document production on January 29, 2021, produced no identifiable documents whatsoever concerning accounts at those banks. Accordingly (repeating information requests posed specifically to Mr. Etra on January 14, 2021, as to which he refused to respond):

> **G. Provide the full name of the "Uni-credit affiliate" to which you refer in your response to Request No. 1 of the Information Subpoena.**
>
> **H. With regard to the following [two] banks you identified without further information in your response to [Information Subpoena] Request No. 1 – the "Uni-credit affiliate" [and] "City National Bank," . . . identify the addresses of the bank branches with which you dealt and the account number for each account in which you have or had an interest during the Relevant Time Period.**
>
> **I. For each account identified in response to request H above, provide an answer to each separate inquiry previously set forth in [Information Subpoena] Request No. 2 ("what is the exact name on the account, the date the account was opened, the account number, the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

Mr. Etra produced on January 29 a few very limited documents from a bank known as Metropolitan Commercial Bank. That was the first we heard of that bank, six months into judgment enforcement, as Mr. Etra had not previously identified it at all (even when previously listing seven banks in his information-subpoena response). He produced only two scattered statements, months apart, for one account, and three scattered statements for another account.[1] Accordingly:

---

[1] He also provided a single page "Account Relationship Profile" on which he hand-wrote at the top the name of the bank.





**J. For Metropolitan Commercial Bank Acct. Nos. ____3617 and ____3609, provide the following information previously requested in Information Subpoena Request No. 2 ("the date the account was opened, . . . and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

**K. Produce all monthly statements during the Relevant Time Period for Metropolitan Commercial Bank Acct. Nos. ____3617 and ____3609.**

Mr. Etra has identified one of his banks as M&T Bank. Benthos subpoenaed that bank and obtained some statements for three accounts – but none after August 2020, and we are unaware whether or when two of those accounts may have been closed. Accordingly:

**L. For M&T Bank Acct. Nos. ____3433, ____2433 and ____3441, produce any and all statements after August 2020, and for any closed account, provide the following information previously requested in Information Subpoena Request No. 2 ("what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

We are aware of a TD Bank checking account No. 431-____529. The statements Mr. Etra produced from this account have months missing; many of the statements are cut off and do not fully identify the account (we believe they are for the referenced account but cannot be sure); and they end more than a year ago and Mr. Etra has not identified whether the account is closed and if so the date on which it was closed. Accordingly:

**M. For TD Bank checking account No. 431-____529, produce a complete set of statements, with full pages in each instance, from the account during the Relevant Time Period, and if the account has been closed, provide the following information previously requested in Information Subpoena Request No. 2 ("what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last**





**drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

Mr. Etra failed previously to provide information as to other signatories on his accounts, as requested in Information Subpoena No. 2. Accordingly (repeating essentially an information request posed specifically to Mr. Etra on January 14, 2021, as to which he refused to respond):

**N. For every account identified in this February 9, 2021 letter to the Court, and every additional account you may identify in response to requests set forth in said letter, were you at all times the only individual with rights to access each account and were you at all times the sole signatory on each account? If your answer to either of the foregoing questions is "No," identify all such other individuals by providing their names and all of their current or last known home and business addresses, all of their current or last known business affiliations, all of their current or last known home and mobile telephone numbers, and all of their current or last known e-mail addresses.**

**Foreign Bank Account(s)**

Mr. Etra previously testified, under oath, as a non-party in a deposition on April 12, 2019, that he then had "a European bank account" at "a bank in Europe" that he declined to further identify. His previous response to Information Subpoena Request No. 1 – which the Court found insufficient, and ordered him to supplement, an order that he totally disregarded – did not appear to identify that account. Accordingly (repeating an information request posed specifically to Mr. Etra on January 14, 2021, as to which he refused to respond):

**O. With respect to the "European bank account" to which you referred during your April 12, 2019 deposition, and any and all other accounts in Europe, and/or elsewhere outside of the United States, in which you have or had an interest since August 1, 2018, identify the name and address of the bank, the name, telephone number and e-mail address of your account representative(s) and/or other contact(s) at the bank, and provide an answer to each separate inquiry previously set forth in the Information Subpoena Request No. 2 ("As to each such account, what is the exact name on the account, the date the account was opened, the account number, the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check**

KLEINBERG KAPLAN



**or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire.").**

**Credit Cards**

Mr. Etra admits to having at least two credit cards during the Relevant Time Period, but (other than one random statement from May of 2019) he produced no monthly statements.[2] Very troublingly, although we were able to obtain some historical statements through third-party subpoenas, we have no documentation of any credit card charges he may have incurred since the date of the judgment (August 13, 2020); and while we know he made at least two payments on one credit card in July and September of 2020, he has concealed the bank account from which he made those payments and the source of funds for those payments.

Accordingly:

**P. With regard to each payment made to the HSBC credit card account ending in ____0169 in July and/or September, 2020, identify the source of the funds used to make that payment, including but not limited to identifying the bank or other account from which that payment was made.**

**Q. With regard to the source of the funds referred to in paragraph P above, provide an answer to each separate inquiry previously set forth in Information Subpoena Request No. 2 ("what is the exact name on the account [that was the source of those funds], the date th[at] account was opened, the account number, the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

**R. Produce all statements during the Relevant Time Period for the account that was the source of the funds referred to in paragraphs P and Q above.**

**S. Other than your credit card at HSBC bearing account number ______0169, have you had in your name, or have you used, any other credit**

[2] A couple of random screenshots of isolated summary pages are not monthly statements and are in the main useless, and certainly non-compliant.





**cards since August 13, 2020? If so, identify the bank that issued the credit card and the account number of each credit card.**

**T. For each credit card identified in response to paragraph S above, provide an answer to each separate inquiry previously set forth in the first sentence of Information Subpoena Request No. 4 ("As to each such credit card, what is the exact name on the card, the date the card was opened, the credit card number, the names of the signatories on the card, and the amounts of the line of credit; if closed, what was the amount of the line of credit when the card closed and the date it was closed?").**

**U. If the HSBC credit card bearing account number ______0169 is closed, what is the date on which it was closed and what was the amount of the line of credit when the card closed?**

**Investment Account**

On January 29, Mr. Etra produced monthly statements for a JP Morgan brokerage account between February 2019 and March 2020, but two of those months were missing (April and May 2019), and he has never identified the opening and closing dates of that account (if closed) so there is no way to know what else may be missing. Accordingly:

**V. For JP Morgan account No. 734-__546, provide the following information previously requested in Information Subpoena Request No. 2 ("the date the account was opened, . . . the names of the signatories on the account, and the amounts presently on deposit; if closed, what was the amount on deposit when the account closed and the date it was closed? Please supply the date, name, and address of the payee or recipient of the last drawn check or wire, the amount of the last drawn check or wire, and the nature and amount of consideration received by You in exchange for the last drawn check or wire").**

**W. For JP Morgan account No. 734-__546, produce the statements for April and May 2019 and any statements prior to February 2019 and subsequent to March 2020.**






**Additional Deficiencies**
**Regarding the Information Subpoena**

Information Subpoena Request No. 35 asked Mr. Etra to "Set forth the names and addresses of any immediate family members, including any spouse, siblings, adult children or adult grandchildren." He ducked providing a responsive answer, stating only that "I live alone and am responsible for my own expenses." We are entitled to know about immediate family members – particularly his spouse, with whom he seems to have shared a bank account (and may still do so) – who will likely have discoverable information about his finances. Accordingly:

> **X. Set forth the names and addresses of any immediate family members, including any spouse, siblings, adult children or adult grandchildren.**

When asked in the Information Subpoena about "monthly living expenses since August 1, 2018," Mr. Etra responded "RENT-$4,100 (including utilities & repairs & payments to staff);GROCERIES- $750; HEALTHCARE- $100; INSURANCE-$300; CREDIT CARD-$700." It is undisputed, however, that that does not represent his current expenses post-judgment (i.e., since August 13, 2020) – for one thing, he has told us he is not currently paying his rent, and of course he has not identified any ongoing credit card payments. Accordingly (repeating information requests posed specifically to Mr. Etra on January 14, 2021, as to which he refused to respond):

> **Y. With respect to the "monthly living expenses" that you identified in response to Request No. 27, are those categories and figures current for the period between August [13], 2020 and the present? If not, please provide updated categories and figures for that time period.**

> **Z. With regard to the monthly living expenses you will have identified in response to paragraph Y above, were those payments made in cash, by bank transfer, by credit card, or by other means? If by cash, from where was the cash obtained, and what was the source of that cash? If by bank transfer, from what account(s) were the funds transferred, and what was the source of those funds? If by credit card, from what credit card(s)? If by other means, identify specifically those other means.**

Information Subpoena Request No. 31 had asked Mr. Etra to "Identify all lawsuits ever filed against You, including the court, the index or case number, and the parties involved." He responded "None, other than this case and related matter," but we know that is false because we are aware of at least one other action against him – that case, Grasshof v. Etra, resulted in the New York Appellate Division affirming summary judgment against him for mishandling escrow





funds (similar to what he did here). We do not need him to identify that case, but since there may be others, he should be required to answer that question truthfully this time:

> **AA. Identify all lawsuits ever filed against You [excluding the Benthos matter and Grasshof v. Etra], including the court, the index or case number, and the parties involved.**

**Improper Objections and Written Responses to the <u>Subpoena Duces Tecum</u>**

Although Mr. Etra did not deign to serve any additional responses to the Information Subpoena on January 29th – notwithstanding this Court's repeated order that he "respond to each request in the information subpoena" (Dkts. 39, 54 and 59) – he did serve a written response (Exhibit 1 hereto) to the subpoena duces tecum to which he also had been repeatedly ordered to respond. As noted above, he did not remotely produce all documents required by that subpoena. Beyond that, however, several of his written responses and objections are patently inadequate and warrant judicial intervention.

Most egregiously, Request No. 49 sought "All documents concerning Your banking records . . .," and Mr. Etra's response was "ATTACHED OTHER THAN OBJECTION FOR PRIVILEGE OF ACCOUNTS." Whatever that may mean, all objections were waived when Mr. Etra failed to respond to the subpoena on time and for many months thereafter; he has been ordered on multiple occasions to do so (and as set forth above, the "attached" documents were only a fraction of what was called for in any event); and he never argued any "privilege" exception in his many communications to the Court seeking to avoid his obligations. Furthermore there is no "privilege" associated with Mr. Etra's banking records in the context of judgment enforcement. Accordingly, Mr. Etra should be ordered to produce:

> **BB. All documents responsive to Subpoena Duces Tecum Request No. 49 that you have withheld on the grounds of "privilege of accounts" or any other grounds.**

Similarly, Request No. 32 sought "All documents concerning any escrow agent agreements entered into by You" (the Court will recall that the underlying $5 million judgment in this matter relates to Mr. Etra's malfeasance in his role as Escrow Agent for Benthos's money). Mr. Etra responded, "BENTHOS ESCROW AGENT AGREEMENT ONLY ONE NOW NOT PRIVILEGED AND NOT SUBJECT TO OBJECTION." Again, whatever that may mean, he previously waived all objections, the Court has ordered him multiple times to produce documents responsive to each and every subpoenaed category, and he never even argued to the






Court that any subpoenaed documents were protected by any "privilege" or other "objection." Furthermore, if indeed Mr. Etra has other "Escrow Agent Agreement[s]" similar to the one he had with Benthos, they may well provide a source of funds (Mr. Etra charged a hefty fee for serving as Escrow Agent in the Benthos transaction, although fortunately it had not been paid when his breaches of fiduciary duty came to light), and must be produced. Accordingly, Mr. Etra should be ordered to produce:

> **CC. All documents responsive to Subpoena Duces Tecum Request No. 32 that you have withheld on the grounds of "privilege" or any other "objection."**

Request No. 47 sought Mr. Etra's tax returns for the Relevant Time Period and he responded "NOT FILED YET." It is difficult to believe that Mr. Etra has not filed anything at all with the Internal Revenue Service or the New York State taxing authorities since August 1, 2018, but if that is so he should be required to so state more explicitly. Accordingly, Mr. Etra should be ordered to produce:

> **DD. Any and all communications – including but not limited to tax returns, extension requests, and correspondence – exchanged between you (or anyone acting on your behalf) on the one hand, and the Internal Revenue Service or New York State Department of Taxation and Finance on the other hand, since August 1, 2018, and this response should be supplemented with any such communications that come into existence subsequent to the date of any response hereto.**

Focusing now only on the period since the judgment was obtained on August 13, 2020, as noted above Mr. Etra has chosen to conceal completely any and all information and documents concerning his post-judgment finances. Request Nos. 34 and 53 sought "All documents concerning how Your monthly expenses have been paid each month since August 1, 2018" and "All other documents relating to Your liabilities and expenses," and his response of "ATTACHED" is obviously inaccurate and insufficient regarding at least this post-judgment period (putting aside all the deficiencies regarding the pre-judgment period).

In the same vein, Request No. 35 sought more specifically "All documents concerning Your monthly living expenses since August 1, 2018, whether paid by You or by someone else on Your behalf, including but not limited to rents, a mortgage, food costs, bills and invoices of any kind, utilities, transportation expenses, insurances, memberships and/or subscriptions, entertainment, etc." Mr. Etra responded merely, "COVERED IN FINANCIAL STATEMENT SUBMITTED EARLIER," referring to the cursory "financial statement" which he had previously created for our benefit (Ex. 2) and which has no credibility whatsoever. The request





sought underlying actual verifiable documents to, from or involving third parties – not merely a self-serving document created by Mr. Etra to avoid producing the underlying documents – although we are now limiting this request to only such documents since the judgment was obtained. Accordingly, Mr. Etra should be ordered to produce:

> **EE. All documents concerning Your monthly living expenses and how they have been paid since August 13, 2020, whether paid by You or by someone else on Your behalf, including but not limited to rents, a mortgage, food costs, bills and invoices of any kind, utilities, transportation expenses, insurances, memberships and/or subscriptions, entertainment, etc.**

We appreciate the Court's consideration of this application. We implore the Court to seek to do whatever is necessary to ensure that this is the last such extensive and expensive application Benthos should have to make to obtain compliance – which the Court previously stated "should not be particularly onerous" (Dkt. 54) – with straightforward judgment-enforcement subpoenas which were served six months ago, and to which the Court has ordered Mr. Etra to respond fully on multiple occasions. He continues to defy those Court orders, to flout his legal obligations, and to take advantage of the judicial system to stall and stonewall those he already has victimized to the tune of over $5 million. Enough is enough.

Thank you.

Respectfully submitted,

Steven R. Popofsky

Enclosures

cc (w/encl): Aaron Etra