UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENTHOS MASTER FUND, LTD.,

        - against -

                           Petitioner,

AARON ETRA,

                           Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 20-cv-03384 (AJN)

**RESPONDENT'S DECLARATION AFFIDAVIT IN OPPOSITON**

I, Aaron Etra, declare the following:

1. I am the respondent and respectfully submit this declaration in opposition to Petitioner's motion to hold respondent in contempt of court for alleged repeated willful refusal to comply with (i) judgment enforcement subpoenas for documents and information and with (ii) three court orders issued by the Honorable Alison Nathan.

### **Introduction**

2. As a longtime member of the New York Bar (since 1966), I have always taken my legal obligations seriously, and responding to subpoenas and court orders have certainly been no exception. I have complied with such from, or in proceedings before, all courts and orders from the late Judge Batts, Judge Nathan and Your Honor, recognizing that I am a *pro se* defendant, living alone with no assistance and no litigation experience, so that some rescheduling for the production of documents during this process, was needed, also due to continuing health issues at respondent's advanced age of 80 years[1], with his needing emergency care on various occasions.

---

[1] As this Court and plaintiff's counsel has been made repeatedly aware, respondent suffers from high blood pressure (to which his father suffered and succumbed), from cancerous melanomas and other dangerous skin

- 1 -

as well as continuing therapy. There are no court orders that I have not responded to, most recently providing the *in camera* materials to Your Honor on the date requested, and sending the same to plaintiff at the direction of Your Honor on the date ordered after her review. I have also provided at regular intervals updated statement(s) comprising recent statements of amounts due for rent and other services, and of bank accounts and credit cards, including those closed and/or frozen by the action of plaintiff's counsel and those which were never active, for which I receive no statements. This is in addition to sitting for 7 hours of depositions at the demand of plaintiff and providing more than 500 pages or more of emails and documents for plaintiff's three litigation lawyer team.

3.  I have complied with this Court's orders as they came due, turned over the records of my bank accounts, closure letters or final statements for the closed ones and provided updated statements of open accounts including for the then open now closed only credit card, as well as my latest landlord rent bill showing the arrears owed. [See attached respectively, Exhibit B, copy of the documents sent to plaintiff's counsel as per subpoena; and Exhibit C, the updated documents sent to plaintiff's counsel at various intervals in response to their incessant demands.]. Other accounts were closed for inactivity because they were not used after the initial deposit or lay dormant for too long a time. It should be noted that many were closed due to the subpoenas / demands that plaintiff served on my financial institutions, as it is now the practice of financial institutions to freeze or end the relationship with their depositors or credit card holders after being contacted in the manner so freely and aggressively engaged in by plaintiff's counsel, causing me irreparable harm.[2]

---

conditions requiring post-surgery monitoring, as well as from a fragile immune system (on the cusp of AML, from which his mother passed away) with hospital visits called-for on a continuing basis, as recently as on October 29th (see Exhibit A).

[2] The European account referred to by plaintiff's counsel was a clients' account of a European fiduciary and has been closed for some time I believe, and although I have repeatedly tried, I have not been able to secure any

4. It should be noted that plaintiff's litigating team may have subpoenaed/contacted my banks prior to subpoenaing me for those accounts. In fact, they may have sent out a subpoena/contact to *every* potential bank, and used the results of those findings in their subpoenas to respondent for accounts that they believed had any possible connection to respondent and far exceeded a standard of reasonableness in enforcement. Some of the accounts listed by plaintiff's counsel in their subpoenas are accounts on which respondent had, or had access to, at one time information, which I furnished to the Court and plaintiff's counsel. Many of those listed had or have been closed, either as a result of inactivity or as a result of plaintiff subpoenaing/contacting that particular institution during this action and, notwithstanding, I still supplied whatever closure letters were made available to me. In other instances, I was able to obtain and duly furnish a final statement showing a $0 balance if I did not have a closure letter from that particular bank. There were also several accounts listed by plaintiff's counsel in their subpoenas and motions that were unrecognizable to me and could not be located in any of my records, so nothing could be furnished. I also duly supplied the book credit and book debits from HSBC Bank, as those were the only bank statements that contained such entries.

5. The point here is that plaintiff's counsel apparently was actively subpoenaing/contacting banks, obtaining full information from them in advance of subpoenaing respondent, thus, they already had all they needed with respect to the accounts held by respondent, including balances, and available funds.. As experienced litigators, they would/should have known of the harm being caused to respondent who has such limited resources by their relentless action, continuing in the face of the respectful requests by respondent to be able to live modestly and decently and be free from harassment in order to be able to assemble settlement funds which plaintiff's counsel knew respondent himself did not

---

documentation regarding the closing of this account, but I further believe that the account had not been used by the fiduciary for years.

- 3 -

have.   Yet, plaintiff's counsel has continued up to the present to serve subpoenas and motions like this one on respondent as a continuing pressure tactics which have been and are clearly of no benefit to his clients and only cost his clients unnecessary legal charges. Plaintiff's counsel has similarly attacked uninvolved and distant family members with the same last name only, also then causing them undeserved embarrassment, the expense of hiring counsel to defend themselves and totally unnecessary intra-family anxiety.

6.      Respondent lives and functions alone.   This unnecessary subpoenaing of respondent and others, the bringing of a seemingly endless series of contempt motions with only the same unfounded allegations and accusations and no merit or basis for them All three of which have been rejected. This wasteful process has only served to increase legal fees to Benthos and consume the valuable time of three courts, including Your Honor. There was and is no "gotcha" information, no "smoking gun," no hidden cache of funds sufficient to pay the ill-gotten award, now or ever.  There is nothing new that plaintiff does not or did not already know or that respondent has done with plaintiff's funds, which were sent as per plaintiff's contract, with the unused and agreed remainder later duly returned to plaintiff.    Respondent never received a penny in the transaction, was not to be paid by plaintiff and has only incurred tens of thousands of dollars of expenses, which he has been ill-equipped to afford and forced to undertake endless hours of pro se defensive legal work.

7.      This contempt motion, its predecessors and the rest of the continuous harassment of respondent and his family has done nothing productive for plaintiff counsel's clients, nor can this aggressive legal action be productive of anything other than injury to respondent. Plaintiff's counsel can never be satisfied. Because they cannot prove something that has never existed. Respondent has never received or taken any of plaintiff's funds. Plaintiff's counsel's actions over more than three years now have irreparably and undeservedly tainted respondent's reputation,

causing economic damage and impairing respondent's health while also taking whatever time and energy respondent has away from his working on avenues to procure settlement funds for finally ending the sad story of a failed transaction.  Respondent has continually informed the Court of plaintiff's ongoing harassment in various letters and has asked Your Honor's guidance to the parties to have it stop,  letting the focus placed and all energy devoted to effectuating the agreed settlement facilitated by Your Honor, which has been delayed by the continuing impact of the pandemic. I hereby renew this request to Your Honor.

8. To make matters even worse, not only has plaintiff's counsel succeeded in destroying respondent's reputation and health, but they have even managed to adversely impact the efforts of the one business person who was sympathetic to plaintiff's situation and has offered to help out of kindness toward an honorable person and recognition of injustice.  Please see the letter written to Your Honor and attached as <u>Exhibit D</u>.  That person, Melvin Dussel, after being subpoenaed and facing plaintiff counsel's  threat of contempt delivered over the phone to his home in Louisiana, and the prospect of having to take time and incur the expense of hiring an attorney to defend himself, has to consider whether he is able to bear these unnecessary and counter-productive burdens. I respectfully request Your Honor to Order plaintiff's counsel to cease and desist this harassment of Mr. Dussel and Etra family members.

9. Plaintiff counsel's pressure has extended to my very functioning, impeding me in my daily existence and forcing me to live under stress, which I have been explicitly ordered to avoid by my doctors, as submitted earlier to Your Honor.  [See earlier letter from my doctor attached here as <u>Exhibit E</u>].  Among the subpoenas/contacts sent by plaintiff's counsel to banks in search of respondent's accounts, was to M&T Bank, which respondent used to pay his bills. The subpoena/contact caused accounts to be closed and one to be frozen. When that one was unfrozen by the bank, funds in that account had been taken by plaintiff's counsel, leaving the

account with $132. [See the current M&T Bank statement as <u>Exhibit F</u>], causing me to fall behind on my rent [See current Landlord amount due of $64,903.07 as <u>Exhibit G</u>] and other bills. When respondent found out his bank accounts were closed and/or frozen, he made a plea to plaintiff to at least unfreeze this M&T account so could pay rent, food, and generally be able to function in the effort of assembling settlement monies for this failed transaction for which he was only the dutiful escrow agent who at all times has only wanted to find a way to assist the parties in finding a solution.   Contrary to their clients who had, at the time of the transaction failing, recognized respondent's selfless efforts, plaintiff's counsel has time and time again, right up to the present, refused to show any semblance of the needed cooperation to effectuate settlement or understanding what an 80 year old has had to deal with as a consequence of their harassment, especially during the pandemic.

10.     As each of this Court, Judge Batts and Judge Nathan have been made aware in earlier papers and restated here in light of plaintiff counsel's continuing mistaken allegations, accusations and harassing, respondent profited in no financial or any other way from this failed transaction.  Yet, it was respondent who was held responsible for the repayment of plaintiff's funds as a result of an award of an arbitration hearing, in which he did not participate, as the sole Arbitrator did not respect  his challenge to the proceeding,  or his contention that the Arbitration should have been between the Buyers and Sellers in the relevant contracts, not between Escrow Agent and the Buyer, as it was the Escrow Agent's  only function in this instance to follow the contracts and to disburse funds as per the contracts' specifications, all of which was done with full disclosure to the Buyer when the funds were being forwarded for  to begin the transaction. All of the buyer's funds were duly forwarded for this transaction by the Escrow Agent with the knowledge and consent of the Buyer, other than $400,000 which remained in the Escrow Account, which by agreement would have been used as professional and intermediaries' fees upon completion of the transaction when Buyer received his product.  The Arbitrator also failed

to apply the clear provisions of the contracts which provided for indemnification of the Escrows Agent by the plaintiff,, and specifically exempted the Escrow Agent from claims against him in fact situations like this one.

11. Important for Your Honor to note, as it was the very issue that caused the transaction in question to fail and this lawsuit to be instituted, was that the $5,000,000 of plaintiff/buyer's funds had been no longer sufficient to meet the minimum amount of 1,000 BTCs to be delivered, as the market price had changed during the month of August 2018. Therefore, the only solution at that time was to ask the buyer for additional funds to meet the 1,000 minimum, or for the parties to find an additional buyer to make up the difference and enlist the assistance of anyone who would join in the quest, which the respondent did selflessly. Since buyer chose the latter because they stated that they could not commit any more of their own funds because the five million was their maximum per transaction, all efforts from late August 2018 forward were focused on this plan to find a second buyer. Unfortunately, once the lawsuit was brought by plaintiff's counsel, contrary to the prior cooperative action by plaintiff's management up to that point in time, and the adverse publicity that goes with such lawsuits, combined with the negative blurbs on the internet quoting accusations and allegations of plaintiff's counsel, potential buyers were deterred from putting up the additional $850,000 needed to get the coins released, even when this amount would have lessened the gap of $1,250,000, when used in conjunction with the $400,000 remaining in the Escrow Agent account, which plaintiff's counsel demanded and which was turned over to them. This demand ended any possibility of a commercial solution at that time.

12. You Honor will surely recognize that plaintiff's counsel is offering nothing new in support of his latest and totally undeserved, unnecessary and inappropriate contempt motion. Plaintiff insults the Court by rehashing and deceptively presenting yet again and at this late date a

quote from the late Judge Batts telling respondent to bring his toothbrush if he does not comply with her instructions on that day of November 8th 2018, and that plaintiff could move for contempt if plaintiff did not comply with production of documents by Monday, November 12th. While the quote from Judge Batts does not reflect the current situation when respondent has been consistently compliant, plaintiff chooses to continually mistakenly quote it at almost every occasion and opportunity, both in every court and in public. Consequently, respondent would like this Court to understand what happened in the court proceeding at that time, so this Court can fully understand the context.   Important to note here that plaintiff's counsel chose to bring a contempt motion, in which respondent prevailed, in spite of the fact that respondent fully complied with Judge Batts' instructions/order that very day and returned the amount remaining in the Escrow Account and supplied over 500 pages of documents/emails by the date designated by Judge Batts.

13. Those words continually misconstrued by plaintiff's counsel were said by Judge Batts on November 8, 2018 during a first court appearance demanded by plaintiff's counsel. Up until then, the parties, including of course Benthos, together with respondent, had been focused on collaborative efforts to find a second buyer to complete the Benthos transaction, which Benthos could not, and find the $850,000 differential needed to complete the transaction, when combined with the $400,000 left in the Escrow Agent's Account, so plaintiff could get his product and suffer no loss.  At no time had any blame or accusation of misfeasance of any kind been directed by Benthos at respondent.

14. At that hearing, and for the first time, plaintiff's counsel demanded that Judge Batts order the remaining $400,000 held by respondent in his Escrow Agent account to be returned to plaintiff and began to make the unfounded allegations and accusations against respondent which continue to this day. Respondent complied that same evening.  The

consequence of doing so, as plaintiff fully understood, was that all future attempts at finding second buyers was more difficult, as now the buyer would have to have present $1,250,000 to proceed, and the bad publicity of the lawsuit and accusatory and derogatory statements of plaintiff's counsel had pervaded the marketplace.

15. A second buyer never came forward or could be found in light of all this adverse publicity and disparagement and Benthos never received their product. The respondent and all other service providers received no compensation or reimbursement of their expenses for their efforts. When an award and judgment was entered against respondent, respondent had no funds to return to plaintiff, and respondent's only resource to settle the judgment was to try in every way possible to use his contacts and his honorable reputation from over the years to have a transaction by a sympathetic party to generate funds to settle this judgment. To this day the bad publicity and non-stop harassing action by plaintiff's counsel continues to thwart respondent's efforts to find willing participants to assist and cooperate in this settlement effort to benefit all concerned in spite of the bad publicity. Under these very challenging circumstances, respondent continues to seek all possible avenues and asks the Court to support this constructive effort rather than give any further credence to plaintiff counsel's contempt motions or purely injurious harassment action against respondent and others.

16. In summary, recognizing respondent's complying with plaintiff's subpoenas and discovery and with the orders of three courts during more than three years, and appreciating that all three courts have rejected holding respondent in contempt, this Court should understand that plaintiff's counsel has brought nothing meriting such action now and that plaintiff's counsel has access to all information needed to conclude the fact that respondent has not received any of the funds of his clients, nor has immediate funds to settle the judgment from personal or in some mysterious source.

17. Furthermore, in order to finally end the actions of plaintiff's counsel which are purely harassment and result only in totally avoidable injury to respondent and others, this Court should Order plaintiff's counsel to cease and desist from such action. There is no justification for putting additional pressure on a compliant 80 year old respondent, who has suffered enough physically and economically while he is selflessly still willing to work in the best interest of all concerned in this transaction . He needs to be, at minimum, not harassed further and, at best, encouraged and supported in his efforts. Nor is there any way to find funds that are just not there in spite of plaintiff counsel's aggressive techniques. No more of Benthos' funds should be spent on plaintiff counsel's legal fees and expenses bringing no benefit and only further expense to them. Respondent should be left unharassed and able to take advantage of the gradually improving pandemic conditions worldwide, so he would be better able to make meaningful progress in the soonest possible time toward finalizing the settlement agreed under You Honor's auspices, if he can be spared dissipating any more human resources on dealing with endless contempt motions and subpoenas.

Dated:  October 30, 2021
          New York, NY

Respectfully submitted,

_____
Aaron Etra, respondent, *pro se*
240 East 47th Street
New York, NY 10017
(917) 856-3500