**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                           :

**BENTHOS MASTER FUND, LTD.,**                                      :
                   - against -                                   :
                                        :    Case No. 20-cv-03384 (AJN)
                      Petitioner,                            :
                                          :    **RESPONDENT'S**
                                          :    **DECLARATION**
**AARON ETRA,**                                                    :    **IN RESPONSE TO**
                                          :    **PETITIONER'S**
                                          :    **MEMORANDUM**
                      Respondent.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

     I, Aaron Etra, declare the following:

     1.    I am the respondent and respectfully submit this declaration in response to Petitioner's reply memorandum of law to hold respondent in civil contempt of court for the alleged defiance of multiple Orders of the Hon. Alison Nathan, of this Court, and of Petitioner's judgment-enforcement subpoenas.

     2.    Petitioner's reply memorandum calls for a response, as there are accusations and conclusions that have to be addressed and cannot be left as they are stated by petitioner without any explanation or mitigation, and, especially with such a serious motion as one of alleged contempt.

     3.    Additionally, with reference to the account in Europe, which was that of a fiduciary, I finally received from that fiduciary a copy of the closing form that the bank used to close out that account between the fiduciary and the bank.  I had repeatedly asked him to provide whatever he could document showing that the account was dormant or closed, and since it was a delicate situation because that account was his and was used for the fiduciary's  clients , I assured the fiduciary that there was no intention to invade his privacy or the privilege of his clients, but I did need what he could provide to show inactivity or closure, which was finally provided to me

on November17th, after my court deadline for opposition papers by October 31st, and which I am now providing to the Court and petitioner attached to this document.

4.      In his opposition papers, respondent explained that the $400,000 remaining in his escrow was be used for "professional **and** intermediary fees" [emphasis added], should the transaction have been completed.  Yet petitioner, in his reply, quotes that "Mr. Etra effectively admits that those funds were to be his "professional . . . fee", ----petitioner using a "…" [dot dot dot] in his statement to omit the word "intermediary", implying that the entire $400,000 was for a "professional" fee.  That certainly was not the case.  While this may be irrelevant to this proceeding since this case has nothing to do with what the fees would have been used for if the failed transaction had been successful, in the chance that petitioner's misleading statement might prejudice this Court, I would like to clarify, that, while I would have received, and been entitled, to a reasonable fee for my escrow agent services should the transaction had been completed, it would have been from the seller and not from Benthos. The $400,000 were fees for the intermediaries including professionals that the parties had agreed were due to those who facilitated the transaction.   As stated time and time again, respondent was never to receive any fee from. Benthos and has never received a penny for fees or expenses in this matter and has incurred tens of thousands of dollars in expenses in defending himself from  the relentless attacks of Mr. Popofsky and his 3-person litigation team.

5. Most importantly, and mentioned in respondent's opposition papers, was that because the $400,000 was returned to plaintiff on November 9th, 2018, right after the first court date, finding a second buyer to add to petitioner's funds, would then require an outlay of an additional $400,000 to meet the 1,000 coin minimum for the total then of $1,250,000. That combined with the bad publicity generated by petitioner at that time, and the then legal situation, created a very dubious situation for new buyers to get involved.

6.      As to the statements made by Judge Batts who allowed a contempt motion to be brought by petitioner should respondent not comply by the then newly set date of Monday, November 13th, 2018, 4 days after the first court date, respondent DID comply in a timely fashion. However, since petitioner was not satisfied with the 500 or so pages of emails and documents provided, and with seven hours of depositions, petitioner chose to bring a contempt motion anyway. The Court, after having time to review the arguments and the documents submitted by respondent, found that there was no willful contempt, and dismissed the motion. Similar conclusions were found by Judge Nathan.

7.      In this matter, contrary to the continuing mistaken accusations and allegations, the respondent has answered the endless subpoenas, has appeared for a deposition, and has updated the records over and over, including but not limited to, his landlord bill, credit card bill from HSBC, and bank statements.  Yet, petitioner may be disappointed in being unable to prove what cannot be proven, because respondent received no Benthos funds after respondent dispatched the Benthos funds pursuant to the contract, Escrow agreement, and knowledge of the parties in August 2018.

8.      Under current circumstances, respondent remains hopeful and committed to, that the only way the situation can be improved for the benefit of Benthos, is if respondent were left to work on meeting the agreed settlement with those willing to cooperate with him on doing so, if he and they are not continually harassed by petitioner's counsel which has resulted in more bad publicity and more stress, diminishing respondent's health.   Again, on November 15th, soon after receiving petitioner's response papers, respondent knew he had to respond and spend the hours needed to work on correcting the misstatements in those papers, had to go to the hospital again, and was warned again from doctors to avoid the stress this matter has generated at his advanced age of 80 years to prevent ever more severe health consequences. [see attached Hospital tag 11/15/21]

9.    To make matters worse for a respondent needing to avoid stress and meet the agreed settlement, petitioner has harassed his landlord, to whom respondent owes some $70,000 by the beginning of next month, by both a subpoena and threatening letter (see attached the latest threatening communication).    Thankfully, landlord has chosen to not evict respondent, recognizing respondent's health situation and that he was pursuing settlement as best as he could. Landlord and any other party petitioner's counsel seeks to attack, should not be further harassed for acing sympathetically or forced to incur legal expenses as petitioner's counsel demands.

<u>Conclusion</u>

10.    As discussed more fully in respondent's opposition papers and restated above, respondent continues to seek all possible avenues to create or procure settlement funds in spite of the ongoing challenges of failing health, shortness of funds, bad publicity from petitioner, the continuing pandemic, and asks the Court to deny petitioner's contempt motion and to reject and order to cease and desist from the purely injurious harassment action against respondent and others. Respondent should be left unharassed, without having to endlessly answer or supply materials to petitioner's counsel who can never be satisfied with whatever is supplied, and continues to use every opportunity to continue to harass respondent and others, rather than allowing a less stressful environment where respondent can use the time to make meaningful progress toward finalizing the settlement agreed under You Honor's auspices.

Dated:  November 19, 2021
         New York, NY

                                        Respectfully submitted,

                                        _____
                                        Aaron Etra, respondent, *pro se*
                                        240 East 47th Street
                                        New York, NY 10017
                                        (917) 856-3500

# SBERBANK

Sberbank: 027 '20 NOV 18 13:20

**SEPA ÁTUTALÁSI MEGBÍZÁS**
*SEPA PAYMENT ORDER*

*Kitöltési segédlet az ügyfél példányának hátoldalán található.*

| Speciális utasítások (ha eltér a normálistól): *Specific instructions (if differ as normal):* | ☐ Egyedi árfolyammal (EUR 20.000 felett) *With special exchange rate (not less than EUR 20.000)* | Indítás napja *Starting date* | 2 0 2 0 1 1 1 8 |
|---|---|---|---|

## MEGBÍZÓ ADATAI / ORDERING CUSTOMER'S DATA

| | |
|---|---|
| Név* *Name* | MAGALLESCHHELMUT |
| Megbízó azonosítója *Ordering customer ID* | |
| Ügyintéző *Contact person* | Telefon *Phone* |
| Terhelendő számla száma* *A/C No. to be debited* | HU65 — 1100275 2851118 — 13050006 |
| Utalandó deviza *Payment currency* | **EUR** |
| A megbízás összege az átutalás devizanemében** *Amount in the currency of the payment** | |
| A megbízás összege a terhelendő számla devizanemében** *Amount in the currency of the account** | TELJES EGYENLEG FINANZIRUNG MIATT |
| Összeg betűvel* *Amount in words* | TELJES EGYENLEG FINANZIEROZAS MIATT |
| Tényleges fizető *Ultimate debtor* | |
| Tényleges fizető azonosítója *Ultimate debtor ID* | |

## KEDVEZMÉNYEZETT ADATAI / BENEFICIARY'S DATA

| | |
|---|---|
| Név* *Name* | MAGHELMUT ALLESCH |
| Partner azonosítója *Beneficiary ID* | |
| Cím* *Address* | SPHELSBERGERSTR 2, 9020 KLAGENFURT |
| Számlaszám/IBAN* *Account No./IBAN* | AT61 14000 084 1072 2884 |
| Tényleges kedvezményezett *Ultimate beneficiary* | |
| Tényleges kedvezményezett azonosítója *Ultimate beneficiary ID* | |

## KEDVEZMÉNYEZETT BANKJA / BENEFICIARY'S BANK

| | |
|---|---|
| SWIFT/BIC kód *SWIFT/BIC Code* | BAWAATWW |
| Közlemény *Details of payment* | |

| | |
|---|---|
| ☐ Igazolást kérünk a teljesítésről. Fax szám/e-mail: *Issuing a Certificate is requested. Fax No./E-mail:* | |
| ☒ Külföldi bankköltség a kedvezményezetten **SHA** *Foreign bank charge on beneficiary* **SHA** | |
| ☐ Partnerek közötti egyedi azonosító *EndToEnd ID* | Dátum* / Date* 18-11-2020 |

Banknál bejelentett aláírás* / *Authorized signature(s)*

Büntetőjogi felelősségünk tudatában kijelentjük, hogy a vonatkozó devizajogszabályokat ismerjük és a devizát a devizagazdálkodási szabályoknak megfelelően igényeljük és használjuk fel. / *Under penalties of perjury I hereby declare that I am acquainted with the relevant foreign exchange legislation. I shall use the foreign currency amount in accordance with the rules concerning foreign exchange control.*

| Átvétel visszaigazolása *Payment order received* | Aláírás(ok) rendben *Signature(s) verified* | Fedezet rendben *Cover secured* | A devizaátutalás teljesítésének egyéb feltételeit és részletes szabályait a Bank hatályos üzletszabályzatai tartalmazzák és azok jelen megbízásnak elválaszthatatlan részét képezik. *Other rules and conditions concerning the execution of the present transaction are detailed in Business Rules of the Bank and they are integral part of this Order.* |
|---|---|---|---|

**\* Mező kitöltése kötelező! / Field mandatory!**
**\*\* Két összeg mező közül csak az egyiket kell kitölteni! / Only one field must be completed.**

## Kitöltési segédlet a SEPA átutalási megbízáshoz:

Tisztelt Ügyfelünk!

Kérjük, hogy a megbízás kitöltésénél ügyeljen a nyomtatványon szereplő mezők pontos, teljes körű kitöltésére! Ne írjon több karaktert egy mezőbe, illetve a jelzett maximális karakterek számát ne lépje túl!

**Speciális utasítások: (ha eltér a normál teljesítéstől)**
Egyedi árfolyammal: További információk a Bank mindenkor hatályos hirdetményében.

**Név:**
Számlatulajdonos neve, maximum 35 karakter hosszan.
**Megbízó azonosítója:**
Opcionális mező, az átutaló ügyfél egyedi azonosítója
**Ügyintéző:**
A számlatulajdonos, illetve meghatalmazottjának neve.
**Telefon:**
A számlatulajdonos, illetve meghatalmazottjának telefonszáma.
**Terhelendő számla száma:**
28 karakteres terhelendő számla IBAN számát.
**Utalandó deviza:**
A kiutalandó összeg devizaneme SEPA utalás esetén mindig EUR.
**A megbízás összege az átutalás devizanemében:**
Ezt a mezőt abban az esetben kell kitölteni, ha az utalás összege a kiutalandó összeg devizanemében ismert. Felhívjuk szíves figyelmét, hogy a két összeg mező közül csak az egyiket kell kitölteni!
**A megbízás összege a terhelendő számla devizanemében:**
Ezt a mezőt abban az esetben kell kitölteni, ha az utalás összege a terhelendő / indító számla devizanemében ismert. Felhívjuk szíves figyelmét, hogy a két összeg mező közül csak az egyiket kell kitölteni!
**Összeg betűvel:**
Utalandó összeg szövegesen.
**Tényleges fizető:**
Ezt a mezőt akkor kell kitölteni , ha a számlatulajdonos neve eltér a tényleges fizető fél személyétől
**Tényleges fizető azonosítója:**
A tényleges fizető fél egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )

**Kedvezményezett neve:**
A maximum karakterek figyelembe vételével az átutalás végső címzettjének neve.
**Partner azonosítója:** a kedvezményezett egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )
**Kedvezményezett címe:**
A maximum karakterek figyelembe vételével az átutalás végső címzettjének címe.
**Kedvezményezett számlaszáma:**
A kedvezményezett IBAN formátumú számlaszáma.
**Tényleges kedvezményezett:**
Ezt a mezőt abban az esetben kell kitölteni, ha a kedvezményezett neve eltér a tényleges kedvezményezett nevétől.
**Tényleges kedvezményezett azonosítója:**
a tényleges kedvezményezett egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )

**SWIFT/BIC kód:**
A végső kedvezményezett bank 8 vagy 11 karakteres SWIFT-kódja, ahol a végső kedvezményezett a számláját vezeti.

**Közlemény:**
Kérjük, ebben a mezőben rögzítse a kedvezményezett részére szánt üzenetet, maximum 2*33 karakter hosszan. A közlemény rovat kitöltése nem kötelező!

**Igazolást kérünk a teljesítésről. Fax szám/e-mail:**
Kérjük, azt a fax számot/e-mail címet tüntesse fel, ahova szeretné, hogy küldjük az átutalásról kiállított igazolást. Amennyiben nem tüntet fel fax számot/e-mail címet, abban az esetben az igazolást a számlavezető fiókjába küldjük el.

**Külföldi bankköltség a kedvezményezetten (SHA):**
SHA költséggel megjelölt utalás esetén a fizető fél vállalja a saját bankjánál felmerülő költségeket, a kedvezményezett pénzforgalmi szolgáltatójánál felmerülő költséget a kedvezményezett viseli.

**Partnerek közötti egyedi azonosító:**
opcionális mező, partnerek közötti egyedi azonosító kód.

Amennyiben a kitöltési útmutatóban foglaltak mellett további információra van szüksége megbízása benyújtásához, forduljon bizalommal ügyfélreferenséhez vagy ügyintézőinkhez a +36-1-5-57-58-59-es telefonszámon!





**Steven R. Popofsky**
*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

October 18, 2021

Seaver Wang
400 38th Street, Suite 415
Union City, New Jersey 07087

240 East 47th Street
New York, NY  10017

        Re:    *Benthos Master Fund, Ltd. v. Aaron Etra*
                <u>Case No. 20-cv-03384</u>

Dear Mr. Wang:

      A year ago you were served with the attached subpoena concerning your tenant Aaron Etra, who is the subject of a $5 million judgment confirmed by the United States federal court in New York.  All efforts to resolve the matter amicably with Mr. Etra have failed.  Accordingly, it is necessary for you to respond to the subpoena and to provide information and documents regarding the current and historical status of Mr. Etra's rent payments (please see items 1 through 4 on the last page of the attached subpoena).

      It would be surprising, to say the least, if you have been permitting Mr. Etra to live in your building rent-free for over a year.  To the extent that you may have been received some compensation for occupancy of his apartment – whether it be cash or payments by someone else, or otherwise – you are legally required to provide that information to us.  Similarly, if Mr. Etra is in fact living rent-free, you are nonetheless legally obligated to provide the historical documentation concerning his prior rent payments.

      <u>Failure to comply with the subpoena can subject you to serious penalties for contempt of court</u>.  Our client has been pursuing contempt proceedings against Mr. Etra (who has been warned by two federal judges about the consequences of disobeying subpoenas), and other of his confederates, and would prefer not to have to do so against you, as you were presumably not involved in the conduct that gave rise to the multi-million dollar judgment against him.



Seaver Wang
October 18, 2021
Page 2


        Please have your lawyer contact the undersigned promptly in order to avoid such complications.  Thank you for your anticipated cooperation.


                                    Sincerely,

                                    Steven R. Popofsky


Enclosure

cc:     Aaron Etra
        Pamela A. Frederick

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **x**

**BENTHOS MASTER FUND, LTD.,**

                       Petitioner

            - against -

**AARON ETRA,**

                      Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **x**

Case No. 20-cv-03384

**SUBPOENA**
*DUCES TECUM*

TO:    Seaver Wang
           400 38th Street
           Suite 415
           Union City, New Jersey 07087

      **WHEREAS,** in an action in the United States District Court, Southern District of New York,

between petitioner-judgment creditor Benthos Master Fund, Ltd. ("Judgment Creditor") and

respondent-judgment debtor Aaron Etra ("Etra" or "Judgment Debtor"), an order was entered by the

Clerk in the United States District Court, Southern District of New York, on August 13, 2020,  in

favor of Judgment Creditor and against Judgment Debtor in the amount of $5,254,561.12, plus the

interest that has accrued on that amount since May 1, 2020 at a 4% simple interest per annum  and

will continue to accrue (the "Judgment");

      **PLEASE TAKE NOTICE** that, pursuant to Rule 69(a)(2) Federal Rules of Civil Procedure

(the "Federal Rules") and Section 5224(a)(2) of the New York Civil Practice Law and Rules (the

"CPLR"), You are hereby commanded to produce the documents described in Schedule A annexed

hereto, at the offices of Kleinberg, Kaplan, Wolff & Cohen, P.C., 500 Fifth Avenue, New York, New

York 10110, and to also produce such documents electronically to Pamela A. Frederick at

PFrederick@kkwc.com, on October 5, 2020.

**PLEASE TAKE FURTHER NOTICE** that false swearing or failure to comply with this Subpoena is punishable as a contempt of court, and You may be held liable for a fine for all losses and damages sustained by the party aggrieved.

Dated:      September 25, 2020

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.

By:_____

        Steven R. Popofsky
        Pamela A. Frederick

500 Fifth Avenue
New York, New York 10110
Telephone: (212) 986-6000
Facsimile: (212) 986-8866
Email: SPopofsky@kkwc.com
        PFrederick@kkwc.com

Attorneys for Petitioner/Judgment Creditor
**BENTHOS MASTER FUND, LTD.**

## SCHEDULE A

### Definitions

A.      The term "document(s)" is defined to be synonymous in meaning and equal in

scope to the usage of this term in Federal Rule of Civil Procedure 34(a),[1] and specifically includes

(but is not limited to) electronic documents, electronic or computerized data compilations, and

internal notes and memoranda (whether or not specifically referenced in any demand).  A draft or

non-identical copy is a separate document within the meaning of this term.

B.      The term "concerning" means relating to, referring to, reflecting, describing,

evidencing, or constituting.

C.      All references to any individual or any entity (including but not limited to

parties to this suit) shall be deemed to include all officers, employees, representatives, agents, or

successors of the relevant person or entity, as applicable.

D.      The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery demand all responses that might

otherwise be construed to be outside its scope.

E.      The term "Benthos Master Fund, Ltd." shall mean Petitioner and Judgment

Creditor Benthos Master Fund, Ltd.

F.      The term "communication" means the transmittal of information (in the form

of facts, ideas, inquiries or otherwise).

G.      The term "Etra" shall mean Respondent and Judgment Debtor Aaron Etra.

---

[1] ". . . writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into reasonably usable form."

H.    "You" and "Your" means the person or entity responding to these requests and all other persons acting or purporting to act on Your behalf, including all present and former affiliates, officers, directors, executives, partners, employees, principals, managers, staff personnel, accountants, agents, representatives, in-house attorneys, assigns, successors or predecessors in interest, independent contractors, advisors, and consultants.

**Instructions**

I.    To the extent that any of the following demands may be subject to a claim of privilege, respond to so much of such demand as does not require, in your view, disclosure of privileged information.  As to every document withheld on the ground of privilege: (1) identify the nature of the document, including whether it includes or contains an attachment; (2) identify and describe the subject matter of the document; (3) specify the date(s) upon which the document was prepared and/or transmitted; (4) identify the person(s) who prepared the document and to whom the document was circulated, (5) identify all persons now in possession of the document; and (6) describe the claim of privilege and state the factual basis for the claim.

J.    If any required document has been destroyed or discarded, identify the document by providing the information called for in subparagraphs (1) through (5) of the preceding paragraph, and provide the date of destruction or discard and the reason therefor.

K.    If any computer which contained responsive documents has been destroyed or discarded, identify the prior location of such computer, the person or department to whom or to which it was assigned, the date of destruction or discarding, the reason for destruction or discarding, and the identity of the person who authorized destruction or discarding.

L.    To the extent that you consider any portion of the following demands objectionable, state specifically the portion of each demand that is claimed to be objectionable, specify the grounds for each such objection, and otherwise respond to the remainder of the demand.

2

M.     This request shall be deemed continuing in nature, and you shall promptly produce in the form of supplementary document productions any document demanded herein that subsequently is discovered or obtained by, or becomes available to, you or your attorneys subsequent to your response to this request.

N.     Documents should be produced as they are kept in the usual course of business or must be organized and labeled to correspond to the categories in this request.

## Documents Subpoenaed

1.     All documents concerning how much Etra currently pays in rent for space at 240 East 47th Street, Apt. 12A, New York, New York 10017.  Such documents should identify, at minimum, the amount due in rent, the frequency at which rent is due, the date on which rent is due, whether payment is made by card, automatic withdraw, check, wire, etc., the name, phone number and address of the individual making rent payments, the name of the bank from which payment is made, and the account number from which payment is made.

2.     All documents concerning how long Etra has rented space at 240 East 47th Street, Apt. 12A, New York, New York 10017.

3.     All documents concerning the history of Etra's rent payments for space at 240 East 47th Street, Apt. 12A, New York, New York 10017.  Such documents should identify, at minimum, the amount of each rent payment, the frequency at which rent was due, the dates on which payments were made, whether payments were made by card, automatic withdraw, check, wire, etc., the name, phone number and address of the individual who made rent payments, the name of the bank from which the payments were made, and the account number from which the payments were made.

4.     All documents concerning communications between You and Etra.