

Steven R. Popofsky
E-Mail: spopofsky@kkwc.com
Direct Dial: 212.880.9882

March 25, 2022

**Via ECF**

Katharine H. Parker
United States Magistrate Judge
U.S. District Court
500 Pearl Street, Room 750
New York, NY 10007

Re:   **Benthos v Etra, 20 Civ. 3384**

Dear Judge Parker:

The notion of Aaron Etra as some sort of naif should be dispelled at the outset. It is absurd. Note, for example, the sophisticated Escrow Agreement he prepared (and violated) that underlies the $4.5 million judgment against him (Ex. A[1]). Note that he sent petitioner's money, without authorization, to an account in Hong Kong from which it was transferred into China and never seen again. Note that he is a serial misuser of funds entrusted to him as Escrow Agent, with the First Department of the Appellate Division having affirmed summary judgment against him for conversion of escrowed funds which he "intentionally retransferred" without authorization and which "were never recovered" (*Grasshoff v. Etra*, 135 A.D.3d 574 (1st Dept. 2016)). Note that he maintained, in the eighteen months following August 2018 alone, at least 26 bank, credit card and investment accounts at various financial institutions, and was unable to explain that multitude of accounts when questioned under oath by this Court, which expressly found his testimony "not credible" (Dkt. 95 at para. 34).

He is also a master at stalling, and he has manipulated Judge Nathan and this Court in service of his agenda. Notwithstanding 5 court orders (including three of increasing exasperation by Judge Nathan and two by this Court) – the obtaining of each of which cost Benthos additional time and money – he has succeeded for nearly two years now in concealing most of his finances, including (crucially) any details about how he has been supporting himself (although he admitted under oath having violated the restraining order served upon him after judgment was obtained);

---

[1] Note in particular the diabolically clever "Transaction Code No. CDKTEBPA080218SUB," designed to impress his trusting and legally inexperienced victims with his legal, financial and transactional expertise. He then sought to bolster that impression by bringing petitioner's principals to the East River penthouse view from his luxury residential building, where he still lives although he claims not to have paid rent for two years.



Katharine H. Parker
March 25, 2022
Page 2

any details about his admitted European bank account(s); and any details about his European wife.[2]

    We implore the Court to read two items in the record that demolish Mr. Etra's current protestations:

- First, pages 9-20 of Dkt. 29-1 (and particularly pp. 14-18) provide a flavor of Mr. Etra's modus operandi, and how this Columbia Law School graduate and 50-year member of the Bar manipulated those to whom he had undertaken fiduciary duties as their Escrow Agent, and stalled them so that the money he had facilitated stealing from them was safely out of reach.
- Second, Dkt. 24-21 remains shocking, more than three years later, for the breathtaking scope of Mr. Etra's lies to the face of the late Judge Deborah Batts (culminating in her ordering him to return $400,000 Mr. Etra was retaining in his escrow account and had adamantly refused to return, threatening him with immediate incarceration otherwise: "pack your toothbrush" – the only court order he ever has obeyed).

    After all this time, it should not be necessary to refute Mr. Etra's pretense that he was merely "an innocent services provider" who acted "for the benefit of . . . Benthos." Suffice it to say that Judge Nathan confirmed the arbitration award against him. Although Mr. Etra – having stalled the arbitration for months with spurious objections, each of which was considered and rejected in turn by the Permanent Court of Arbitration at The Hague, the International Court of Arbitration and the distinguished arbitrator – refused to participate in the arbitration (insisting that he would not do so unless petitioner sued all of his co-conspirators, some of whom were not subject to the arbitration clause, in the same forum), the arbitrator declined to award a default, required lengthy briefing and documentation, and conducted a full-day in-person hearing notwithstanding Covid-19. Mr. Etra's statement that "I went through long depositions" is another lie; he appeared for one deposition, in the state-court case of one of his confederates, and refused to answer many questions and perjured himself in response to others. He has never submitted to deposition on judgment enforcement.

    One thing of which this Court has personal knowledge is the settlement situation, through which Mr. Etra's goal has been nothing other than to buy time (successfully, again). He committed to make an initial payment of $83,333 in thirty days; he then claimed that he thought he had committed only to pay $8333 (not remotely credible, since he himself had stated that the $83,333 would be one month's installment on a million dollars); and he then did not pay even that $8333, laying bare his mendacity. He then agreed to a million-dollar settlement on which he

---

[2] Since the summer of 2020, Mr. Etra has steadfastly refused to provide any information whatsoever about his wife in Europe (not even to confirm her existence, which petitioner learned about independently), with whom he appears to have shared a bank account (and may still do so) and who is presumably the mystery source of his mystery funds.



Katharine H. Parker
March 25, 2022
Page 3

defaulted. His continued contentions that petitioner is not allowing him to fund a settlement are a transparent diversionary tactic (his specialty): No one is stopping him from obtaining funds, and indeed we specifically offered to allow him to fly to Europe if he would explain the purpose of the trip and how it would lead to funds being made available. He went silent.

But he has saved the best for last. What is most offensive about this entire four-year saga is that Aaron Etra now asks this Court to give him a free lawyer. New York City has tens of thousands of citizens in desperate need of counsel, and not a penny of public resources that could be used to help them should be expended on behalf of this fraudster.

In specific response to the request for additional time to respond to the Court's Report and Recommendation (Dkt. 95), petitioner will consent to one 30-day extension upon the following terms and conditions:

1. Mr. Etra should be required to provide (in addition to the documents ordered in Dkt. 95) responses under oath to previously-served Information Request No. 27 ("Identify Your monthly living expenses since August 1, 2018, . . ."[3]), for all periods since August 2018 through the present.

2. He should be required to provide current contact information (all known telephone numbers, mailing addresses and e-mail addresses) of Koraljka Troselj, to whom he was and presumably still is married.[4]

3. He should be required to provide all documents he has withheld as "privileged" that are responsive to previously-served subpoena duces tecum request Nos. 32 and 49 ("escrow agent agreements entered into by You" and "All documents concerning Your banking records . . ."[5]). As set forth on pages 11-12 of Dkt. 60, Mr. Etra has unjustifiably refused to produce other escrow agreements that might give information about his assets (asserting without explanation that they are "PRIVILEGED AND. . . SUBJECT TO OBJECTION") as well as unspecified banking records that are (of course) legitimate subjects of judgment enforcement discovery (stating only without explanation "OBJECTION FOR PRIVILEGE OF ACCOUNTS," whatever that may mean). He has gotten away with that for

---

[3] See the 11th page of Dkt. 24-2 for the entire information request.

[4] He has consistently refused to answer information requests about family members – stating only "I live alone and am responsible for my own expenses" – and has ducked, thus far successfully, all inquiries regarding his wife. He will continue to do so unless given a direct order, with teeth, from this Court.

[5] The full text of the requests and responses are set forth in Dkt. 60-1 at pages 8 and 11 respectively.



Katharine H. Parker
March 25, 2022
Page 4

        almost two years now, despite 5 court orders from Judge Nathan and this Court, and he should not be permitted to do so any longer.

4.    He should be required to execute IRS Form 2848 (annexed as Exhibit B) so that petitioner can obtain his tax returns or confirm his claim – which is hardly credible – that this international wheeler and dealer has "not filed yet" any tax returns for the past several years (Dkt. 60-1 at page 11, No. 47).

Petitioner thanks the Court for its continued patient attention to this matter.

                                      Respectfully submitted,

                                      Steven R. Popofsky

Enclosures

cc:    Aaron Etra (via e-mail and ECF w/enclosures)