UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENTHOS MASTER FUND, LTD.,
        - against -

                         Petitioner,

AARON ETRA,

                         Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.20-CV-03384(VEC)

**RESPONSE TO ORDER
TO SHOW CAUSE**

    Aaron Etra, bring duly sworn, respectfully submits the following objections to show cause why a warrant for his arrest should not be issued to imprison him as a coercive sanction until he complies fully with the Court's orders:

    1. On July 7th, 2022, the Court decided that there were 13 items in the orders that Respondent had still not responded to, and found that those 1) orders were clear and unambiguous, 2) the proof of noncompliance is clear and convincing; and that 3) Respondent has not been reasonably diligent and energetic in attempting to comply with that those items.

    2. It is Respondent's contention that these statements about him being non-compliant and having not been reasonably diligent and energetic in attempting to comply with said orders is not accurate. He has complied during four years with numerous subpoenas from the Plaintiff and orders Plaintiff demanded from the three judges that earlier have dealt with this matter, delivering hundreds of pages of materials including many of those same items Plaintiff's counsel have asked Your Honor to order yet again. Most recently, what Judge Parker ordered and Respondent submitted in November 2021 (comprised of 167 pages of responses), where a number of those items already submitted are being asked for again in Your Honor's list of the 13

items outlined as not received in the July 7th order. Your Honor should further appreciate that Judge Batts, in rejecting Plaintiff counsel's contempt motion, recognized the compliance represented by hundreds of pages submitted by the Respondent to her and Plaintiff, and that he had provided all information asked for by Plaintiff's counsel in seven hours of depositions. Furthermore, Judge Nathan appreciated that only settlement made sense rather than endless subpoenas and contempt motions involving accounts that had been closed, frozen or having funds taken from them (see letters from M & T Bank attached below) by the action of Plaintiff's counsel. Judge Parker brought Plaintiff's counsel to the table for an agreed settlement, rather than continue fruitless enforcement action, and Respondent asks only for time free of harassment of himself and others to be able to implement such settlement which now is more likely achievable.

3.      Respondent also continues to display diligence, positive attitude and energetic best efforts to overcome his limitations as an 81-year old living alone with chronic medical conditions and impediments which have been made known to this Court and your predecessors, supported by continuing medical confirmation (the most recent medical one attached below). Respondent has never been a litigator, has no affiliation with any law firm and is without any legal research or any other assistance, or funds to employ such services, to reply to the legal arguments of at least two senior lawyers at a major law firm and their staff. These subpoenas have been issued during periods of prior and current peaks of COVID-19, and Respondent is under doctors' orders not to go to public places, as was submitted to Your Honor. Compounding the difficulties, some of his banks closed their branches, and/or were acquired by another bank (e.g. HSBC), limiting the sources from whom to get back records, particularly for the accounts which were closed as a result of the action of Plaintiff's counsel.

4. In spite of these constraints, limitations, and his chronic conditions, Respondent constantly seeks ways to get missing records, including but not limited to, for the closed Uni-credit and Sberbank bank accounts totally owned and operated by the European fiduciary (see #6

and #7 in the attached Subpoena Response dated July 11, 2022).    As Respondent also conveyed in his response to Judge Parker, a major effort to obtain documentation on these two accounts from the account holder has brought forth the closeout payment statement [see attached below with clear typing to make it more legible], which the fiduciary sent me reflecting the closed account. Once again, these are not my accounts. They belong to the European fiduciary, Mag. Helmut Allesch of Klagenfurt, Austria.   He is the person who signed the closing receipt for the funds, and that receipt was already submitted to Judge Parker last year when I received it from Mag. Helmut Allesch.   I had no rights to operate or give instructions on the accounts, nor could I obtain bank statements from the banks.   There is also no connection between these accounts and this matter, as no funds from Benthos ever went there, for me or for any party or anyone else connected to this matter.   I have asked Mag. Allesh for years for anything he could send me on these accounts within his authority, and the only document I was able to procure was the statement to which Your Honor referred to in #8 in her Order to Show Cause and is attached below. It is a strict policy of banks to not give information when it is not your account, and in this case it is the fiduciary account of Mag. Allesch for clients' funds, none of which included any funds in any way related to this matter.

     5.     Also, as to information on the HSBC accounts, (all of which closed in the first half of 2020), my branch at E.48th @ 3rd Avenue had closed along with many branches of the bank in the U.S.  I thought that some branches would reopen, mine did not, and when I then contacted the branch on Third Avenue and 40th Street that had been opened earlier, I found out that they were now a Citizen's Bank and could not assist. I subsequently found, after several false leads, a special department of HSBC that said they would process over time requests for closed accounts' material dating back more than 2 years.  I have made this request of them and have been waiting for their response.  I already submitted a great deal of HSBC records to Judge Parker in November of 2021, including closing statements, and am only waiting to get any parts I

- 3 -

do not have. Again, all of this material relates to accounts closed in 2020 that Plaintiff's counsel has seen for years and has had the ability to review already. There is no new material in or from these accounts now long closed and already reviewed by three Judges and Plaintiff's counsel and much valuable time of this Court is being taken regarding them.

6.   As to what is called the HSBC Book credit and HSBC Credit account(s), I do not know what they mean and have no recollection of or reason for establishing these as separate accounts or working with them. I did find references to Book credits and Book debits, on a HSBC bank statement for -6401, which was already submitted to Judge Parker in November 2021 and they might be book entries or internal procedures that the bank itself creates for its own purposes. As well, that account in which they are referenced is now closed, and is one of the closing statements I have had from HSBC [attached below].

7.   As to #8 in Your Honor's order requesting the April 2019 and May 2019 statements from JP Morgan Chase, these items were also previously submitted in November 2021 to Judge Parker and Plaintiff's counsel. I believe the reason that the Plaintiff's counsel is still asking the Court to demand this material is because he did not realize it was part of the March 2019 statement which was a quarterly statement that included the months of April 2019 and May 2019 all in one statement. When I had spoken to the bank about this again, they confirmed that with accounts that have minimal or no action on the account, only quarterly and not monthly accounts are produced. In the attached revised responses to the subpoenas at #8 is a copy of the March 2019 statement showing the 3 months in the one quarterly statement covering March, April, and May that was previously submitted in November 2021 to Judge Parker.

8.   I am attaching as a separate document a response to the 13 items in chronological order from the July 7th, 2022 order because the exhibit material requested is too voluminous to be included here. This material was originally submitted to this Court on July 10th, 2022 and today I

revised that document slightly and am including the updated material in this revied document. For the few items that require further material, because what has been asked for has not yet been delivered to me, I will submit another updated version of what you still would require as soon as it is made available.

9.  As to the tax returns for the years 2018 to 2021, I had already submitted those returns to Benthos on July 7th as requested, and they also have been included again in the response to Your Honor's 13 item response to subpoenas #10.

10.  As to item #12 regarding Koraljka Troselj, who I have respectfully requested Your Honor to recognize my attestation that she has had no connection to this Matter, that she and I have lived separately since 2008 (while this business loss arose in 2018) and that she lives in Eastern Europe. I would ask the Court to respect her privacy and freedom from unmerited attack and keep her information confidential, while providing it to Your Honor in a separate communication to you.

11.  I believe that when the Court reviews this matter and sees all the efforts and work I have done to comply with the various orders and to get the remaining items taken care of, in spite of my limitations of age, my medical issues, no legal assistance, and at a time when COVID-19 is affecting the operations of banks and my ability to access material, the Court will understand just how much I have a done to comply, noting how much I have already submitted to prior Judges and to Plaintiff's counsel, even recently when COVID-19 infection rate peaked again putting me in much danger. I will continue to cooperate with the Court in what it deems reasonable and proper, providing information as it becomes available. I believe that when the Court has reviewed the entire situation and the history of the case, the Court should find no willfulness and that I have been reasonably diligent and energetic in getting materials, including what I could not access on my own.

12. I commend to Your Honor that, rather than Plaintiff's continuing to harass me and others with subpoenas and contempt motions that cannot benefit anybody other than the fees of the attacking lawyers, I need to devote all the energy and resources still available to me to working with my business friends to generate funds that could actually benefit Benthos in funding the agreed Settlement Agreement. That is a priority that I give highest attention to each day. With COVID-19, certain transactions that my business friends expected to generate funds were adversely affected, particularly the most likely one, with Mel Dussel of King Mel Mining, LLC, who had given me a letter which was submitted to Judge Parker (see below).

13. I have been advised that his effort is at a point that the desired result is now close to being achieved, as it involves travel and development on their part, which had to be postponed due to COVID-19, and now some restrictions have been lifted. I have asked respectfully and now repeat the request to Mr. Popofsky not to again threaten or harass Mr. Dussel, for his volunteering to help me. After he was harassed with phone calls and was served with a subpoena on his company, King Mel Mining, LLC, he was ready to withdraw his support of the settlement effort, as he was not in a position to spend money unnecessarily on legal fees and battle with Mr. Popofsky when all he wanted was to help fund the settlement when his development deal went through.

14. I also respectfully request that the Court will waive any penalties as there has been continuous work throughout this recent time and earlier, with much of the requested items already submitted to the three prior Judges and Plaintiff's counsel, so it was not then or now concealed or any unwillingness to comply exhibited. My financial situation and health have been severely impaired as a consequence of the damage from the Benthos award judgment and the relentless and inhumane enforcement action. I am attaching my current rent bill from landlord showing the arrears and I am facing eviction, with many other bills still outstanding. I am hard-pressed to meet my living expenses as is, or to continue to function decently.

WHEREFORE, Respondent respectfully requests that, after reviewing my objections, my submissions currently, recently and over four years, as well as the circumstances under which I have had to function, there is no basis for contempt or punishment as Respondent has been reasonably diligent, energetic and conscientious in this matter and certainly has not been willful in his action to do anything other than to comply and work to facilitate the settlement of this matter. Respondent further respectfully and humbly requests that all penalties be waived.

Dated:  July 11, 2022

      New York, NY

                               Respectfully submitted,

                              _____
                              Aaron Etra, respondent, *pro se*
                              240 East 47th Street
                              New York, NY 10017
                              (917) 856-3500
                              aaron@etra.com

M& T CLOSING ACCOUNT LETTERS:

**M&T Bank**

P.O. Box 844 Buffalo, NY 14240
716 635 0210 · 855 718 6978
Legal Documents Processing

September 11, 2020

Aaron Etra, Esq
445 Park Ave 9 FL
New York, NY 10022-8632

Dear Aaron Etra, Esq:

M&T Bank has been served with a restraining notice from Benthos Master Fund, LTD. The document states you owe the sum of **$5,254,561.12**.

M&T Bank must comply with the legal provisions of this document and by law is required to freeze the following account(s) for the available balance in your account(s), not to exceed double the amount owed until further order from the courts:

M&T account ending in 3433

In addition, your account has been charged a Legal Document Processing fee in the amount of $0.00 for rendering this service as per the fee disclosure provided at the time of account opening.

Please note any funds in excess of the amount held are available for your use by check or withdrawal only. Your Visa Debit/ATM card and Web capabilities cannot be accessed while the hold is on the account.

If you have further questions regarding the information supplied or to resolve this matter, please contact the plaintiff **Kleinberg, Kaplan, Wolff & Cohen, P.C.** at **212-986-6000**.

Sincerely,
M&T Bank
Legal Documents Processing

LDP-04

**M&T Bank**
P O Box 673, Buffalo, NY 14240-0673

August 25, 2020

| Important information regarding the closure of your M&T Bank account relationship. |



5-750-80576-0000018-001-1-000-000-000-000
AARON ETRA
240 E 47TH ST APT 12A
NEW YORK NY 10017-2134

Re: Important information regarding your M&T Bank account relationship ending in: -2433.

**We regret to inform you that M&T Bank will no longer be able to conduct business with you concerning the referenced account(s) and service(s).** This decision will have a significant impact on one or more of your M&T accounts. Please review the grid below to determine the exact impact on your individual accounts.

Please note that M&T Bank is not required to elaborate further on its reason for exiting such relationship(s) with you. Additional calls and/or letters to M&T Bank from you inquiring about reasoning for closure will not result in further information.

| Type of account | |
|---|---|
| Checking, Savings or Money Market | If you have one or more **Checking, Savings or Money Market** accounts with us, we will close those account(s) on September 24, 2020, as permitted under the terms of the agreement governing those account(s). As a result:<br><br>o Please make sure you have sufficient money in each account to cover any outstanding **checks** and fees with respect to that account.<br>   **DO NOT** write any additional checks – any checks drawn on these accounts and presented to us for payment as of September 24, 2020 will be returned unpaid.<br><br>o Any **debit or ATM cards** you use to access these accounts will be canceled as of September 17, 2020.<br><br>o Please make alternate arrangements for any **direct deposits or automatic debits** to or from these accounts. These transactions will not be accepted as of September 24, 2020.<br><br>o Any money remaining in your accounts after all outstanding payments have been made, and any outstanding fees have been deducted, will be sent to you. |

WEILL CORNELL MEDICAL LETTER FROM JULY 2, 2022



Weill Cornell Medical College

NewYork-Presbyterian Hospital
Weill Cornell Medical Center

7/7/2022

To Whom It May Concern:

Mr. Aaron Etra is an 81 year old male under the care of Weill Cornell Payson Center on Aging at NewYork-Presbyterian Hospital. He has multiple chronic conditions including hypertension, prostate issues, hernia, melanoma, and cataracts causing vision problems. Due to his age and aforementioned issues, we advise that he does not participate in any public gatherings as he would likely be exposed to viral illnesses, which may affect his health and well-being.

If you have any questions/concerns, please contact our office at 212-746-7000.

Sincerely,

Felicitas Suba, DNP
Geriatric Medicine

PAYMENT RECEIPT FOR CLOSURE OF EUROPEAN BANK ACCOUNTS RECEIVED FROM THE FIDUCIARY:

LETTER FROM HSBC CLOSING ACCOUNTS:



June 22, 2020

AARON ETRA, ESQ. ATTORNEY
240 E 47TH ST APT 12A
NEW YORK NY 10017-2134

Subject: Account(s) ending in 6509, 6401 & 6410

Dear Aaron Etra,

We recently notified you that we would be closing the above mentioned account(s) according to our Rules for Consumer Deposit Accounts. Enclosed is an official check #500580446 in the amount of $2,732.56 an official check #500580447 in the amount of $5,402.19 and an official check #500580448 in the amount of $193.43.

If you have any questions about the account(s), please contact us at 866.846.2147.

Sincerely,

HSBC Bank USA, National Association

HSBC
PO Box 4589
Buffalo, NY 14240

- 13 -

LETTER FROM MEL DUSSEL OF KING MEL MINING, LLC SENT TO JUDGE PARKER:



**KING MEL MINING, LLC**

Registered Address: 848 N. Rainbow Blvd., Las Vegas, NV 89107
(504) 454-8397

May 18, 2021

To: Judge Katharine H. Parker
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Settlement of Civ. 20-3384 Benthos v. Etra

Dear Judge Parker,

Approximately 60 days ago we spoke with Aaron Etra, whom we have known through mutual business friends over the years, and learned of his situation with a failed transaction where the Seller did not deliver the product and now Mr. Etra was being held responsible for reimbursement to the Buyer.

Because we knew of Mr. Etra's integrity, we spoke with him and asked how we could help. We told him that we are the owners of certain Mining Claims in the United States that were going to be used for Project Funding in Europe and that all we were waiting for was the ban for Americans going to Europe to be lifted so that our funding representative can meet with his various bankers there to go forward and arrange for funds to be freely available to us and for providing assistance to Mr. Etra.

At that time, Mr. Etra explained that under the guidance of Your Honor a settlement between himself and the Plaintiff in the action against him was being discussed requiring funding which he himself did not have. He later reported to us that a settlement was agreed to on April 1st requiring a total payment of $1 Million in regular monthly payments of $83,333.33 beginning in April.

Though we hoped to be able to provide the timely assistance needed to meet the initial April payment and then to continue to make the equal monthly payments thereafter, it just was not possible in that exact time frame as the project funding involved overseas travel to Europe where the COVID outbreak banned travelers.

Now with the European travel bans being lifted and with his COVID vaccinations completed, our funding representative will be able to finally undertake travel. He will require two working weeks

<u>King Mel Mining letter p.2</u>:

in Europe and up to 45 banking days to have available the funds we want to commit to Mr. Etra's settlement plan.

To be clear, the funding required for the settlement would have been fully available and paid in a timely fashion but for COVID, which has also delayed our company plans which have been pending since the beginning of the COVID crisis.

Therefore, we respectfully request that Your Honor order that the settlement remain in force and that Aaron Etra be given 60 days to make the first payment, as that is the time frame we are anticipating. In recognition of this delay, Mr. Etra's first payment would be for four months of $83,333.33 each, and then would continue after that for the $83,333.33 per month until the full amount has been paid.

Mr. Etra is a good man trying to do his best for all concerned and deserves this consideration.

With thanks,

Melvin H. Dussel

LANDLORD INVOICE AS OF JULY 9, 2022:

**From:** Seaver Wang <seaverwang@yahoo.com>
**Date:** Saturday, July 9, 2022 at 9:26 PM
**To:** Aaron Etra <aaron@etra.com>

|  | Rent | Electricity | As of 7/09/2022 |
|---|---|---|---|
| **2020** | | | |
| January | $4,000.00 | $51.89 | Paid 1/28 (combined with Dec '19) |
| February | $4,000.00 | $71.10 | Paid 3/6 (Repair deducted) |
| March | $4,000.00 | $79.09 | Paid 4/6 |
| April | $4,000.00 | $46.40 | Paid 4/28 |
| May | $4,000.00 | $47.59 | Paid 6/10 |
| June | $4,000.00 | $39.76 | Paid 7/17 |
| July | $4,000.00 | $52.79 | Paid 9/17 |
| August | $4,000.00 | $43.47 | *Paid 1/21/2022, 5k* |
| September | $3,000.00 | $40.92 | *Unpaid* |
| October | $4,000.00 | $31.29 | *Unpaid* |
| November | $4,000.00 | $36.12 | *Unpaid* |
| December | $4,000.00 | $45.22 | *Unpaid* |
|  | Rent | Electricity |  |
| **2021** | | | Due first week of month |
| January | $4,000.00 | $83.92 | *Unpaid* |
| February | $4,000.00 | $144.70 | *Unpaid* |
| March | $4,000.00 | $178.36 | *Unpaid* |
| April | $4,000.00 | $69.80 | *Unpaid* |
| May | $4,000.00 | $32.19 | *Unpaid* |
| June | $4,000.00 | $34.73 | *Unpaid* |
| July | $4,000.00 | $31.85 | *Unpaid* |
| August | $4,000.00 | $32.03 | *Unpaid* |
| September | $4,000.00 | $30.22 | *Unpaid* |
| October | $4,000.00 | $28.25 | *Unpaid* |
| November | $4,000.00 | $30.70 | *Unpaid* |
| December | $4,000.00 | $82.59 | *Unpaid* |
|  | Rent | Electricity |  |
| **2022** | | | Due first week of month |
| January | $4,000.00 | $80.86 | *Unpaid* |
| February | $4,000.00 | $239.95 | *Unpaid* |
| March | $4,000.00 | $120.61 | *Unpaid* |
| April | $4,000.00 | $70.92 | *Unpaid* |
| May | $4,000.00 | $61.10 | *Unpaid* |
| June | $4,000.00 | $37.93 | *Unpaid* |
| July | $4,000.00 |  | *Unpaid* |
| August |  |  |  |
| September |  |  |  |
| October |  |  |  |
| November |  |  |  |
| December |  |  | Due first week of month |
|  | Rent | Electricity |  |
| Total Due | $91,000.00 | $1,587.73 | **$92,587.73** |

Seaver T. Wang

- 15 -