*Benthos v. Etra*
Petitioner's Spreadsheet Pursuant to Dkt. 137
All exhibit references are to the exhibits that accompanied Dkt. 136, Steven Popofsky's letter to Judge Caproni dated July 25, 2022.

| Request No. | Items Respondent Was Ordered to Produce Pursuant to the July 14, 2022 Order | Items Petitioner Received | Items Petitioner Did Not Receive But Believes Exist or Are In Respondent's Possession |
|---|---|---|---|
| 1 | All escrow agent agreements as to which Respondent is or was a party, whether the escrow agreement is still in effect or not, in effect from August 1, 2018 to the present. | A form of escrow agent agreement used for consultants; a form of escrow agent agreement used for owners; Escrow Agreement between Mr. Etra and Dr. Clarence L. McNair, dated as of July 28, 2021; Escrow Agreement between Mr. Etra and Lamar J. Bordelon, dated as of October 20, 2021 (Ex. 1). | It is incontestable that additional responsive escrow agent agreements exist, and are within respondent's custody or control, for two reasons (as set forth in Dkt. 136). First, respondent wrote that only "[t]wo clients have allowed me to release their information" (Ex. 1). Second, bank statements produced by respondent on July 19 (Exs. 3 and 4) reflect dozens of transactions in respondent's IOLA accounts, evidently on behalf of clients, involving hundreds of thousands of dollars being transferred in and out. The agreements corresponding to those clients and transactions have not been produced. |
| 2 | Monthly statements for all bank accounts that were previously withheld as "privileged," including all Interest on Lawyer Accounts ("IOLA" accounts), whether in Respondent's name individually, jointly, in trust, as custodian, as nominee, or as a beneficiary, individually or with other persons or entities, from August 1, 2018 until the present. | Monthly statements for M&T account ending in x3441, from Feb. 1, 2019 to June 30, 2022 (Ex. 3); monthly statements for M&T account ending in x7045, from April 1, 2022 to June 30, 2022 (Ex. 5); monthly statements for Piermont account ending in x2292, from July 1, 2021 to June 30, 2022 but excluding September 2021 (Ex. 4). | The September 2021 statement for the Piermont IOLA account ending in 2292 was not produced. Instead, where that month's statement should have been produced chronologically (see Ex. 4 at p. 7), respondent re-produced the September 2021 statement from his Piermont checking account ending in 0362 that had previously been produced on July 11 (Dkt. 129 at p. 51). [Note: That substitution of the September 2021 checking statement where the September 2021 IOLA statement should have been placed was not noticed previously by petitioner's counsel, who therefore wrote mistakenly in Dkt. 136 at p. 5 that "In September 2021 [Mr. Etra] appears to have received a Social Security payment into his IOLA account." Counsel regrets the error.] Also not produced were monthly statements for the IOLA account described in Mr. Etra's September 2018 email to Petitioners (Ex. 2). See Dkt. 136 at pp. 2-3. Petitioner has no way of knowing of any other accounts Mr. Etra may have previously withheld under the claim of "privilege." |
| 3 | All monthly statements for Respondent's account at Piermont Bank, which is referenced in the Piermont Bank account documents produced on July 11, 2022 as "DDA 2060." | Monthly statements from July 1, 2021 to June 30, 2022 (Ex. 6). | Respondent did not represent that the stated account was opened only as of July 1, 2021 (the earliest date for which he has provided statements), and that monthly statement had a "beginning balance" of $7154.23 (Ex. 6 at p. 3), and accordingly petitioner is without knowledge as to whether additional responsive statements exist. See Dkt. 136 at p. 6. |
| 4 | A sworn statement, executed under penalty of perjury, certifying that the documents ordered to be produced by July 15, 2022 were produced as required. | Affirmation of Mr. Etra, dated as of July 15, 2022 (Ex. 14). | Received, but false (see Dkt. 136 at p. 10). |
| 5 | Any other banking record including, but not limited to, credit applications and records and statements for any checking, savings, money market, certificate of deposit, investments, bonds, retirement accounts, safety deposit boxes or any other financial assets maintained with any banking or financial firm or institution, whether in Respondent's name individually, jointly, in trust, as custodian, as nominee, as a beneficiary or in conjunction with any other person or persons. For the avoidance of any doubt, the records that are required to be produced pursuant to this paragraph include monthly statements for all of Respondent's bank accounts and brokerage accounts that have not previously been produced that were open at any point between August 1, 2018 and the present. | Monthly statements for HSBC credit card ending in 0169, from Nov. 25, 2020 to Feb. 24, 2021; Statement of Transaction History for HSBC credit card ending in 0169, for Nov. 25, 2020 (Ex. 12). | While petitioner reasonably doubts that the very limited production reflected in the column immediately to the left in fact constitutes all documents responsive to this aspect of the Court's order, apart from item 5A – addressed immediately below – petitioner cannot identify such responsive documents that may exist but have not been produced. |
| 5A | Among the records that must be produced in response to this bullet [the preceding item numbered 5 for purposes of this spreadsheet] are monthly bank statements for the account into which Respondent's social security checks were deposited prior to the time such payments began to be deposited into his account at Piermont Bank. | A narrative "regarding my prior social security funds for the relevant period before they went to Piermont" (see the last paragraph of Ex. 10). | No statements reflecting payments of Social Security funds were produced. See Dkt. 136 at pp. 9-10 addressing respondent's narrative referenced in the column immediately to the left. |
| 6 | All monthly statements for the HSBC bank account ending in x9990 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | A narrative "about the HSBC monthly statements" (Ex. 12). | No responsive documents were produced, although responsive documents clearly exist because respondent identified this account previously. See also Dkt. 136 at p. 10. |

| | | | |
|---|---|---|---|
| 7 | All monthly statements for the HSBC bank account ending in x6096 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | A narrative "about the HSBC monthly statements" (Ex. 12). | No responsive documents were produced, although responsive documents clearly exist because respondent identified this account previously. See also Dkt. 136 at p. 10. |
| 8 | All monthly statements for the HSBC bank account ending in x6100 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | Monthly statements from Feb. 15, 2019 to Aug. 15, 2019; Nov. 16, 2019 to Feb. 4, 2020; and May 16, 2020 to June 4, 2020 (Ex. 12). | Monthly statements were not received for the gap periods in the statements identified in the column immediately to the left. See also Dkt. 136 at p. 10. |
| 9 | All monthly statements for the HSBC bank account ending in x7955 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | A narrative "about the HSBC monthly statements" (Ex. 12). | No responsive documents were received, although responsive documents clearly exist because respondent identified this account previously. See also Dkt. 136 at p. 10. |
| 10 | All monthly statements for the HSBC bank account ending in x6401 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | Monthly statements from March 1, 2019 to Oct. 31, 2019 and from Nov. 30, 2019 to April 30, 2020 (Ex. 12), except that the April 30, 2020 statement is incomplete. | No statement was provided for November 2019; and it does not appear that the account was closed as of the date of the last statement provided (ending April 30, 2020; Ex. 12 at page 16), because the last page of that statement shows a balance of $10,632.26 and states, "continued on next page" and no continuing page was produced. |
| 11 | All monthly statements for the HSBC bank account ending in x6410 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | Monthly statements from March 1, 2019 to Dec. 31, 2019 (Ex. 12). | No statement was received reflecting the closing of this account (if it was closed), as the last statement produced (ending December 31, 2019; Ex. 12 at page 62) does not reflect the account closing at that time, instead showing an ending balance of $207.88. See also Dkt. 136 at p. 10. |
| 12 | All monthly statements for the HSBC bank account ending in x6509 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | A narrative "about the HSBC monthly statements" (Ex. 12). | No responsive documents were received, although responsive documents clearly exist because respondent identified this account previously. See also Dkt. 136 at p. 10. |
| 13 | All monthly statements for the Uni-Credit account from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing. | No documents produced. | No responsive documents were received. Mr. Etra himself previously identified this account, which is why he was ordered to produce statements accordingly. See Dkt. 136 at pp. 8-9. |
| 14 | All monthly statements for the SberBank bank account (for which a two-page untranslated document was previously provided) from August 1, 2018 to present, or, if that account has been closed, statements from August 1, 2018, through the closing. | Two-page untranslated document that had previously been produced and ruled inadequate, accompanied by a letter from a purported fiduciary based in Austria (Ex. 9). | No monthly statements have been received for this Sberbank account previously identified by respondent. See Dkt. 136 at pp. 8-9. |
| 15 | The closing statements for Citibank accounts ending in x0330, x0669, x1370, x4852, and x8687. | Apparent closing statements for accounts ending in x0330, x1370, x4852, and x8687 (Ex. 11). | Closing statement for account ending in x0669. |
| 16 | A notarized declaration, submitted under penalty of perjury, attesting to the fact that Mr. Etra has no other open bank or brokerage account that he has not disclosed to Petitioner. | Notarized Declaration of Mr. Etra, dated as of July 19, 2022 (Ex. 15). | Received, but of dubious veracity because (among other things) respondent is continuing to engage in numerous client transactions, involving hundreds of thousands of dollars, for which he has withheld the applicable escrow agreements and as to which he is surely receiving fees, the receipt of which he has not disclosed. See Dkt. 136 at pp. 3-5. |
| 17 | A sworn statement, executed under penalty of perjury, certifying that the documents ordered to be produced by July 19, 2022 were produced as required. | Affirmation of Mr. Etra, dated as of July 19, 2022 (Ex. 13). | Received, but false (see this spreadsheet above and Dkt. 136 at p. 10). |