# EXHIBIT C

Escrow Agent Sample Agreement

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, _____, holder of _____ passport or other identifying document no. _____, whose address is_____, acting as the duly authorized owner/director of _____, or in a personal or in such other capacity as the undersigned will advise you ("_____"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of _____ with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of_____, the gross proceeds of transfers due to _____ from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a registered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any

interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand U.S. Dollars (US$5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Twenty-Five Dollars ($150.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this _____ day of _____, 20__

 IN BEHALF of:

_____

Owner/Director/Individual (as appropriate)




Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3