Exhibit 5

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| BENTHOS MASTER FUND, LTD., | : | Case No. 20V-03384(VEC) |
| | : | |
| Petitioner, | : | |
| -against- | : | AFFIDAVIT OF AARON ETRA |
| | : | |
| Aaron Etra, | : | |
| | : | |
| Respondent. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, AARON ETRA, under the penalty of perjury, declare the following:

1. I am the Respondent in the above-captioned action and respectfully submit this affidavit in support of (a) Respondent's motion to quash all of Petitioner's Information Subpoena [annexed], because it is fatally flawed, or, at minimum, if all the subpoena is not quashed in its entirety, to quash that part of Petitioner's information subpoena that requests privileged information and related information, as the release of such information would (i) invade the protection of the attorney-client privilege; and (ii) subject the party served to undue burden; and (b), if all the subpoena is not quashed, to modify those paragraphs in the subpoena that are overly broad, purely a hunting expedition, a repetitious of material already provided to the Petitioner and / or four judges during the past four years and/or that state August 1, 2017 as it precedes the starting date of the failed business transaction that is the basis of this case, which was on or about August 1, 2018. For the reasons set forth below, this Subpoena must be properly served at a date to be determined by the Court after its final determination on the issue of privilege currently before it.

2. The Federal Rules of Civil Procedure P.45(d)(3)(A)(iii)-(iv) state in relevant part:

> (3) *Quashing or Modifying a Subpoena.*
>
> (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> …(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

3. This fatally flawed subpoena reflects the fact that part of Petitioner's subpoena deals with privileged information requested by petitioner, in Request, #4 as well as Request #5, which relies on Petitioner's accompany information subpoena #1, which state as follows:

> <u>Documents subpoenaed #4:</u>
> All documents concerning any escrow agent agreements entered into by You in or after July 2022.
>
> <u>Documents subpoenaed #5:</u>
> All documents, including but not limited to, agreements and written communications concerning the services referred to in item No. 1 of the accompanying Information Subpoena dated August 2, 2022.
>
> <u>Information Subpoena Item No. 1</u> dated August 2, 2022 requested the following:
> #1 Identify (i) the name and full contact information (address, telephone, e-mail and otherwise) for every "client," or other individual or entity, for which You have performed any legal "paymaster" escrow-related or other services from August 1, 2017 through the present; (ii) for each such individual or entity, the precise nature of the services performed; (iii) for each such individual or entity, specifically what compensation You (or any affiliated person or entity, including but not limited to Koraljika Troselj) received for those services;(iv) where such compensation was paid to, in each instance separately (including names, addresses, account numbers, and Your responsible contact officers at each such institution); (v) all subsequent transfers of such compensation received; and (vi) the current whereabouts of all such compensation.

**RELEVANT BACKGROUND HISTORY**

4. On August 2, 2022, Judge Caproni issued an Order, in which she stated in reference to that part of petitioner's requests that may be privileged:

> IT IS FURTHER ORDERED that, as to all escrow agreements that Respondent has failed to produce that are encompassed within the July 14, 2022 Order, Respondent must either produce all such documents by **August 22, 2022**, or must <u>move to quash the subpoena for those agreements not later than **August 19, 2022**</u>.

5. Petitioner knows full well that Respondent has timely filed a Motion to Quash in accordance with the Court's instructions, to protect his client's information on those escrow agreements that he and his clients understood from the outset to be privileged. This Motion was submitted as ordered by August 22, 2022, and for which Respondent's Reply to Petitioner's submission is due September 16th, also as per that same order.

6. There can be no decision yet on that motion, which means the privilege issue in that Motion is still undecided in respect of the Escrow Agreements referenced in the August 2nd order.

7. In Petitioner's new subpoena, called a SUBPOENA DUCES TACUM, requests "All documents, including but not limited to, agreements and written communications concerning the services referred to in item No. 1 of the accompanying Information Subpoena dated August 2, 2022, which relies on it."   As shown above, item No. 1 of the information subpoena requested "the name and full contact information (address, telephone, e-mail and otherwise) for every "client," or other individual or entity, for which You have performed any legal "*paymaster" escrow-related* or other services from  August I, 2017 through the present", which clearly contains all of the still to be decided privileged information stated in

-3-

the order of August 2nd, as those would be the same and the only Escrow Agreements Respondent has ever used for these client services.

8. To make matters even more out of line with privilege, Petitioner asks in his Request #4 for "All documents concerning any escrow agent agreements entered into by You in or after July 2022". This is clearly another violation as they are escrow agent agreements once again and that issue is still to be decided by the Court.

9. Petitioner should have waited until the prior motion was decided before bringing this Motion and requiring the Court and the Respondent to deal with it. He has no right to decide the motion for himself and should await the Court's decision. Notwithstanding this fatal flaw, two new subpoenas, the information subpoena discussed in a separate accompanying motion and the document production subpoena herein, were both attempted to be served on Respondent on August 2, both with a response date of September 1st. Because Respondent was not granted an extension of time to respond to those subpoenas by either the Petitioner via email or by the Court via letter, and because the Petitioner, in his Subpoena has raised the issue of privilege without waiting for the Court's ruling on this issue and preempting the Court's decision as if it was in his favor, along with other flawed issues in his subpoena, Respondent has no other recourse than to bring this motion at this time.

## SERVICE OF THE TWO SUBPOENAS

10. I would also like to make clear what I believe was the improper service of the 2 new subpoenas by Petitioner. August 2nd was the hearing date when Respondent had to appear before Judge Caproni. Respondent had just a few minutes to discuss his situation

with his Public Defender, Amy Gallicchio, in a corner outside the Foley Square courtroom in the Thurgood Marshall Courthouse before going before the Judge. Ms. Gallicchio was only there for him for this court appearance and not representing him in this case. The two new subpoenas were dropped on a courtroom bench by Mr. Joshua Bromberg who broke into an attorney-client discussion, which his firm so clearly does not respect in so many ways, and dropped on the bench next to Respondent, the two new Subpoenas with accompanying papers saying "Here".

11. Respondent believes this attempted service, inside a Courthouse, is improper, and a failure of due process. Petitioner should be made to do a proper service of the subpoenas and all related documents, **at an appropriate time after the Court has dealt with the issue of privilege and made its decision.**

## DATES OUTSIDE THE SCOPE OF THE BENTHOS CASE

12. Respondent is also asking this Court, if and when the Court allows these two subpoenas to be served, to require Petitioner to modify/change the start date of the item(s) requested in Items 5 of this Subpoena referencing Item #1 of the Information Subpoena, which ask for materials that are clearly outside of the scope of this case. Respondent met Benthos on or after August 1, 2018, and it is after that date that the business deal that is the basis for this matter started. The date range that the Subpoena refers to is incorrectly August 1, 201**7** to the present, instead of the date range of August 1, 201**8** to the present. Respondent requests that this subpoena be completely quashed as Petitioner has engaged in actions that the Court should not condone or support. However, should the Court allow this

subpoena to be served at an appropriate time in the future, that it be modified to request from "August 1, 2018 to the present".

**PRIOR DISCLOSURES TO MULTIPLE JUDGES AND ENDLESS SUBPOENAS HAVE MADE THIS NEW SUBPOENA DEMAND UNDULY BURDENSOME AND VIOLATES DUE PROCESS**

13. Elements of the Requested Items #3, and 6, have already been submitted by the Respondent to several of the four judges on this matter, including Your Honor, Judge Caproni, as well as to Petitioner, contrary to Petitioner's continuing mistaken and unfounded claims of non-compliance, as if he were speaking of a Respondent who ignored his subpoenas, instead of one who has done his best within limitations of working pro se and alone. In this instance, not only has Respondent supplied information on his landlord and credit cards, but would continually provide updated information.

14. So for now to require Respondent to once more laboriously and single-handedly reassemble the already submitted information and go through the expense (unfunded by deep pocketed clients) of recopying and resubmitting this same material yet again now, will so clearly cause undue burden on Respondent and violate due process. Item #3 & 6 asks for this same information again, and therefore should be excluded from the subpoena as it is unduly burdensome on respondent to have to do this yet another time, when it has already submitted.

15. From the very first hearing before Judge Batts, Petitioner has tried to accuse and prove Respondent guilty of incorrectly receiving and holding Benthos funds. Judge Batts determined otherwise after hundreds of pages of documents were submitted by Respondent and seven hours of depositions taken of Respondent, showing full compliance. It is an unwarranted and undue process and a violation of human rights to not recognize this decision

of years past based on compliance then and thereafter, and to continue to allow accusations of non-compliance by Petitioner should not be allowed by this Court.

### PETITIONER VIOLATES RESPONDENT'S HUMAN RIGHT IN THE RESTRAINTS CALLED FOR IN THE SUBPOENA WITH THE DAMAGES PROVEN OVER THESE PAST FOUR YEARS

16. Petitioner will NEVER be satisfied and one cannot ever comply sufficiently with their firm's relentless Subpoenas and Restraining Orders, as the facts in this case, notwithstanding the one-sided arbitration award (in which only the Petitioner's accusations were the basis for the award and the judgment based on it) do not permit a finding of any receipt or withholding of any Benthos funds or Respondent ever having had assets at the level of the amount trying to be enforced.

17. What HAS happened is that the relentless action of Petitioner's counsel during four years has resulted in closing Respondent's bank accounts that had limited funds in them, having credit cards terminated with major amounts outstanding still to be paid to this date, as well as unpaid rent accruing to almost $100,000 and now facing eviction which would make it almost impossible to continue working on finding Settlement money for Benthos, as it is very time-consuming, but not as time consuming as the endless Subpoenas served by Plaintiff, which could not possibly benefit Benthos. Respondent's health has significantly deteriorated from these unwarranted, incessant and stressful personal and professional attacks, on him, on relatives, on his sympathetic landlord (now owed some $100 thousand) and on the person (Mel Dussel) who has been openly trying to assist to raise funds for settlement. He has experienced delays beyond his control, but still is working to achieve the resolution to this matter as that is the ONLY way Benthos WILL EVER receive any of the remediation, which I

believe even Plaintiff's counsel realizes. Consistent throughout, Respondent has been trying to find funds for Benthos since August 2018.

18. Judge Nathan recognized that more Subpoenas and Contempt motions (many of whom called for yet more compliance by Respondent) truly benefitted none of the parties, while running up legal fees for Benthos and she referred the matter to Judge Parker for settlement.

19. After more hundreds of pages of bank statements and other documents were submitted by Respondent in compliance to Judge Parker as well as Petitioner, Judge Parker proposed a settlement which Petitioner reluctantly agreed to and then immediately withdrew when Respondent had difficulty in raising funds in the middle of the raging Pandemic.

20. Petitioner has been informed personally and directly of the fact that Mr. Dussel has been actively working on assembling the funds in an amount agreed in settlement with Mr. Popofsky, and although he has had some unforeseen delays, he is determined to do this soonest possible.  It is of no benefit to Benthos under the clear circumstances of this matter and it will be of further material injury to Respondent to demand more compliance, including calling for material already submitted to four judges and Petitioner by Respondent and raising inappropriately issues (like privilege) already before the Court. All this does is increase legal fees for Benthos, while avoiding the need to recognize the impossibility for Respondent to ever end this process if the Court allows it to continue and supports it.

WHEREFORE, for all of the above reasons, it is respectfully requested that this Court quash Petitioner's subpoena in its entirety, or alternatively, defer proper service of it until the Court has ruled on the issue of privilege, and at that time, before allowing the subpoena to be properly served on Respondent, determine the need first to quash or modify certain sections

-9-

and elements of the said subpoena, as described above, and for such other and further relief as the Court deems just and proper.

Dated:   September 1, 2022

                                                  Aaron Etra, pro se
                                                  247 East 47th Street, #12K
                                                  New York, New York 10017
                                                  Telephone: (917) 856-3500
                                                  Email:  aaron@etra.com