USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/26/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENTHOS MASTER FUND, LTD.,

                           Petitioner,

              -against-

AARON ETRA,

                         Respondent.

20-CV-3384 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

       Benthos Master Fund, Ltd. ("Benthos") successfully petitioned this Court to confirm an arbitration award of more than $5 million against Aaron Etra ("Etra"), an attorney who is proceeding here *pro se*, and who released Respondent's funds from escrow in violation of his contractual and fiduciary duties as the escrow agent for a purported cryptocurrency sale. Although Benthos began seeking discovery against Etra to execute the judgment over two years ago, Etra has repeatedly failed to produce documents and information about his finances and has persistently and flagrantly disregarded court orders. Etra is now, belatedly, asserting attorney-client privilege over escrow agreements and related information that he has been ordered on multiple occasions to produce to Petitioner. The Court concludes that the escrow agreements and related information are not privileged and must, therefore, be produced. The Court also denies Etra's untimely motions to quash or modify two recent subpoenas requesting further information and documents regarding Etra's services as an escrow agent.

1

I.  **BACKGROUND**[1]

Petitioner is a California investment firm, and Respondent is a New York attorney. Pet., Dkt. 1, ¶¶ 1, 2. On August 4, 2018, Benthos agreed to pay $5 million for a quantity of the cryptocurrency Bitcoin. *Id.* ¶ 5. Benthos wired $5 million to Etra, who served as the escrow agent on the transaction pursuant to an escrow agreement. *Id.* Benthos never received any Bitcoin for its $5 million. *Id.* ¶ 6. After Etra refused to provide information about the party to whom he had released the funds, Benthos sought preliminary injunctive relief from this Court. *Id.* ¶ 7; *see also* 18-CV-9401. Etra eventually returned $400,000 to Benthos and provided some information about the location of the balance of the funds after Judge Batts, the judge assigned to that matter, threatened to jail him. *Id.*

Pursuant to an arbitration clause in the escrow agreement, on June 28, 2019, Benthos served Etra with a notice of arbitration to recover the remaining $4,600,000. *Id.* ¶¶ 8–9; Escrow Agr., Dkt. 1-3, at 7. Although Etra communicated with Benthos' counsel and the arbitrator, he did not submit a statement of defense and did not attend the arbitration hearing.[2] Pet. ¶¶ 13–14; Final Award, Dkt. 1-1, ¶¶ 17, 19–20, 51. On April 9, 2020, the Arbitrator found that Etra had released the funds without authorization and thus had violated his contractual and fiduciary duties as escrow agent in a manner that was willful or grossly negligent. Final Award ¶¶ 62, 65, 70–72, 77. The Arbitrator awarded Benthos $5,254,561.12, which included damages, the cost of

---

[1] Although not directly relevant to Etra's motion to quash, the history of this dispute is detailed below to make clear that Etra has been given ample time to comply with legitimate subpoenas from his judgment-creditor. The Court also details the background to make clear that Etra has exhausted the Court's patience.

[2] Etra has complained to the Court that the judgment Benthos is attempting to collect was the product "of a [sic] undefended, unilateral arbitration award[.]" Dkt. 173. Etra's complaints bring to mind the adage about the child who killed his parents and then begged for mercy because he is an orphan. Having chosen not to appear or defend himself in the arbitration, Etra will not be heard to whine about the consequences of that decision.

arbitration, and pre-award interest. *Id.* at IX.  He also awarded post-award interest at a simple 4% per annum rate, which began accruing on May 1, 2020. *Id.*

On April 30, 2020, Benthos filed a petition in this Court to confirm the arbitration award. *See generally* Pet.  Judge Nathan, who was assigned to the case, confirmed the award and entered judgment against Etra on August 12, 2020.  *See* Dkt. 14 at 1, 5.  On August 26, 2020, the Court allowed Benthos to begin enforcement proceedings.  *See* Dkt. 21.

Pursuant to Federal Rule of Civil Procedure 69(a)(2) and C.P.L.R. § 5224(a)(2), Benthos promptly served Etra with a subpoena *duces tecum* (the "First Document Subpoena") and a restraining notice with information subpoena (the "First Information Subpoena").  *See* First Doc. Subp., Dkt. 24-1; First Inf. Subp., Dkt. 24-2.  The First Document Subpoena directed Etra to produce fifty-nine categories of documents concerning his finances, including "[a]ll documents concerning any [of his] escrow agent agreements," and to provide a log of any responsive documents withheld as privileged.  First Doc. Subp. at 2, ¶ 32.  The First Information Subpoena directed Etra to respond under oath to thirty-six questions concerning his finances and restrained his use of his property.  *See* First Inf. Subp.  Etra was required to respond or object by September 21, 2020.  *See id.* at 2; First Doc. Subp. at 2; Fed. R. Civ. P. 45(d)(2)(B).  Etra did not object to either subpoena, repeatedly requested extensions to respond, and eventually produced some documents and information to Benthos in September 2020.  Dkt. 24 at ¶¶ 6–12.  On October 12, 2020, Benthos moved to hold Etra in civil contempt for failing to comply with the subpoenas. Dkt. 23.  Judge Nathan denied Respondent's motion without prejudice but stated that it was "clear" that Etra had not adequately responded to the subpoenas.  Dkt. 33.  The Court ordered the parties to submit a joint letter setting forth a mutually agreeable date by which Etra would respond.  *Id.*  In December 2020, the Court referred the parties to Magistrate Judge Parker for a

settlement conference. Dkt. 38. Judge Parker ordered Etra to respond to the subpoenas later that month, Dkt. 39, and the Court eventually extended the deadlines for Etra to respond into January 2021, Dkt. 54.

On January 19, 2021, Benthos again moved to hold Etra in contempt due to his continued non-compliance with the subpoenas and court orders. Dkt. 56. Judge Nathan ordered Etra to comply with the subpoenas as previously ordered. Dkt. 59.

In February 2021, Benthos moved the Court to order Etra to address remaining deficiencies in his responses. Dkt. 60. Among the documents that Etra had not produced were escrow agreements (the "Escrow Agreements") and a privilege log for any documents he was withholding as privileged. *Id.* at 11–12. Judge Nathan referred the case for general pretrial management to Judge Parker, Dkt. 62, who ordered Etra to produce a subset of the subpoenaed documents for *in camera* review by March 15, 2021, and to make a first installment payment toward the judgment by the end of March, 2021. Dkt. 63. After Etra submitted certain records to Judge Parker without fully complying with her order, Dkts. 74 at 1; 95 at 6, the parties reached a settlement agreement on April 1, 2021, Dkt. 95 at 6. Judge Parker denied Petitioner's discovery motion without prejudice in light of settlement. Dkt. 65.

In May 2021, when Etra failed to make any payment, thereby voiding the settlement, Benthos renewed its application for sanctions. Dkts. 66; 74 at 2; 95 at 6.

On May 11, 2021, Benthos issued another subpoena *duces tecum* (the "Second Document Subpoena") seeking the documents Etra had provided to Judge Parker *in camera* and documents regarding Etra's attempt to secure funds for the judgment or settlement agreement. Second Doc. Subp, Dkt. 68-1. In response to the Second Document Subpoena, Etra produced certain

documents but, again, he did not comply fully with the subpoena or outstanding court orders. *See* Dkts. 70; 95 at 7.

On June 17, 2021, Judge Parker ordered Etra to produce the documents he had provided the Court *in camera* or to show cause why the documents should not be produced to Benthos by July 2, 2021. Dkt. 74. Judge Parker denied Petitioner's renewed request to hold Etra in contempt without prejudice. *Id.* Etra notified Judge Parker that he had complied with her orders and had provided requisite documents to Benthos, Dkt. 78, but, in fact, he had produced only a small portion of the required documents, Dkt. 95 at 7.

On September 30, 2021, Benthos once again moved for Etra to be held in civil contempt for his failure to make payments on the judgment and for his continued non-compliance with the subpoenas, including with Petitioner's request for the Escrow Agreements. *See* Dkt. 81. Judge Parker held an evidentiary hearing on the motion. Dkt. 89.

On March 14, 2022, Judge Parker issued a report and recommendation ("R&R") recommending sanctions be imposed against Etra. Dkt. 95.[3] Neither party filed objections, and Etra did not comply with the order that he produce certain documents within a week. Dkts. 103–05; 108 at 2. On April 12, 2022, the case was reassigned to the Undersigned.

On May 16, 2022, the Court adopted the R&R in part. Dkt. 108. The Court denied Petitioner's request for conditional incarceration without prejudice and ordered Etra to produce a list of documents regarding certain accounts alongside an affidavit stating that he has no other

---

[3] Continuing his pattern of delay, Etra requested an extension to object to the R&R. Dkt. 97. Benthos consented to the request so long as Etra produced the Escrow Agreements and certain other documents. Dkt. 99 at 3. The Court granted Etra a one-week extension either to file objections to the R&R or to file a letter affirming that he had satisfied certain discovery requests, including by providing the Escrow Agreements, but Etra did not do so. Dkts. 102; 108 at 2 n.1

open accounts or assets (or identifying assets) by June 20, 2022. *Id.* at 3–4. The Court ordered a $50 per-day fine until Etra achieved full compliance. *Id.* at 4–6.

Predictably, Etra requested an extension to comply with the order. Dkt. 110. Benthos consented and asked the Court to order prompt compliance with certain requests, including its long-outstanding subpoena for the Escrow Agreements. Dkt. 111; *see also* Dkt. 99 at 3. The Court granted Etra an extension until July 1, 2022, and specifically ordered him to produce the documents Petitioner requested in its letter. Dkt. 113. Etra asked for another extension and a hearing. Dkt. 114. The Court denied Etra's extension request and scheduled a hearing regarding whether he should be held in contempt. Dkt. 116. The Court further ordered Etra to appear with the documents he was ordered to produce by July 1, 2022, and stated that if he failed to satisfy the Court's orders, he would be incarcerated until he complied. *Id.*

Etra sent certain tax documents to Petitioner's counsel, Dkts. 119–21, 125, but did not fully satisfy the Court's orders by the date of the hearing, which he failed to attend, Dkt. 126 at 1.

On July 7, 2022, the Court ordered Etra to show cause before the Court on July 13, 2022, why a warrant for his arrest should not be issued so he could be imprisoned as a coercive sanction until he complied fully with the Court's orders. *Id.* The Court also ordered that Etra's $50 per-day fine would increase to $1000 effective the following day and would thereafter double every day until Etra fully complied or was jailed. *Id.* at 4.

On July 10, 2022, Etra produced certain responses and documents purportedly to satisfy the Court's orders, Dkts. 127, 129, and refused to provide certain subpoenaed information, Dkt. 130. In response to the Court's order regarding documents that Etra had withheld as privileged, including the Escrow Agreements, Etra asked to discuss "in camera matters regarding any

information regarding clients' funds and other elements" with the Court. Dkts. 127 at 32; 129 at 98. He also submitted that he had "no other savings, money market, certificates of deposit, investments, retirement accounts, safety deposit boxes or financial assets" beyond the minimal financial information provided to Petitioner's counsel. Dkt. 129 at 98.

The parties appeared before the Court on July 13, 2022. Dkt. 132. The Court found Etra in civil contempt for failing to produce documents as ordered and remanded him into the custody of U.S. Marshals. *Id.* at 1. Later that day, the Court ordered Etra released from custody subject to his commitment to comply with a document production schedule. *Id.*

On July 14, 2022, Etra was ordered to produce a number of documents by certain dates with accompanying affidavits. *Id.* at 2–5. Included among the documents Etra was ordered to produce were the Escrow Agreements. *Id.* at 2. The Court also ordered Benthos to submit a letter to the Court setting forth any continued deficiencies by July 26, 2022, *id.* at 5, and withdrew the reference to Judge Parker, Dkt. 133.

On July 25, 2022, Benthos informed the Court of Etra's remaining deficiencies and violations of its restraining order restricting his use of property. Dkt. 136. Benthos stated that Etra refused to produce the Escrow Agreements on privilege grounds despite evidence that he was conducting a substantial amount of escrow account business. *Id.* at 2. The Court ordered Etra to show cause at the next status conference why he should not be held in civil contempt and remanded in light of his continued violation of court orders. Dkt. 137 at 13. The Court also required Benthos to submit a spreadsheet reflecting the items Etra had been ordered to produce pursuant to the Court's July 14, 2022, order, the items Benthos had received, and the items Benthos did not receive but believes exist. *Id.*

In its spreadsheet, Benthos stated that Etra had produced two forms of escrow agreements and two escrow agreements, but that Etra had failed to produce additional responsive escrow agreements that undoubtedly exist and are within his custody and control. Dkt. 140-1 at 1. In support of that contention, Benthos stated that Etra represented that only two clients had allowed him to release their information but that bank statements Etra had produced reflected "dozens of transactions" in his attorney escrow accounts. *Id.*

In response, Etra stated (among other comments) that "the escrow arrangements are only for a term of 12 months," after which "they terminate and no documents are retained." Dkt. 141 at 3. He further stated that escrow arrangements are "confidential" and that "this commitment to clients as well as privilege deserves to be respected . . . ." *Id.*

Following a status conference on August 2, 2022, the Court found Etra in contempt of its July 14, 2022, order. Dkt. 143 at 1. The Court ordered Etra to produce certain account documents by August 10, 2022, and either to produce the Escrow Agreements associated with certain named clients (whose identities were derived from the bank account statements he had finally produced) by August 22, 2022,[4] or to move to quash the First Document Subpoena for those documents by August 19, 2022.[5] *See* Dkts. 143, 144. The parties were cautioned to "brief only the narrow legal issue of whether the escrow agreements are privileged recognizing that the names of clients, which Petitioner represented at the August 2, 2022 hearing was the only material it sought, have already been disclosed." Dkt. 144 at 2–3.

---

[4]   The names of at least thirty-one of Etra's escrow clients were ascertained from the attorney escrow account documents Etra belatedly produced. Dkt. 144 at 3–4.

[5]   There has never been any explanation why, if Etra, a licensed attorney, actually believed these documents were privileged, he did not move to quash the subpoenas when they were first received or at some point along the many months between then and August 2022.

On August 2, 2022, Benthos served Etra with another subpoena *duces tecum* (the "Third Document Subpoena") requesting nine categories of documents, including "[a]ll documents concerning any escrow agent agreements" Etra entered into starting in July 2022, and "[a]ll documents, including but not limited to agreements and written communications, concerning the services referred to in item No. 1" of an accompanying information subpoena (the "Second Information Subpoena").[6] *See* Third Doc. Subp., Dkt. 155-2. The first item of the Second Information Subpoena directs Etra to identify "(i) the name and full contact information (address, telephone, e-mail and otherwise) for every 'client,' or other individual or entity, for which [Etra] ha[s] performed any legal, 'paymaster,' escrow-related or other services from August 1, 2017 through the present; (ii) for each such individual or entity, the precise nature of the services performed; (iii) for each such individual or entity, specifically what compensation [Etra] (or any affiliated person or entity, including but not limited to Koraljka Troselj[7]) received for those services; (iv) where such compensation was paid to, in each instance separately (including names, addresses, account numbers, and [Etra's] responsible contact officers at each such institution); (v) all subsequent transfers of such compensation received; and (vi) the current whereabouts of all such compensation." Second Inf. Subp., Dkt. 155-3, ¶ 1. The subpoenas required responses or objections by September 1, 2022. *See* Third Doc. Subp. at 1; Second Inf. Subp. at 1; Fed. R. Civ. P. 45(d)(2)(B).

On August 19, 2022, Etra moved to quash the First Document Subpoena to the extent it requires production of the Escrow Agreements (the "First Motion to Quash"). Dkt. 149.

---

[6] The portions of the Third Document Subpoena and Second Information Subpoena seeking documents or information regarding Etra's escrow agreements, together with the Escrow Agreements, are referred to as the "Escrow Agreements and Related Information."

[7] Petitioner suspects that Ms. Troselj, who is based in Europe, is Etra's wife. *See* Dkt. 93.

Benthos opposed the motion and filed a cross-motion for an order granting relief for Etra's apparent spoliation of subpoenaed documents[8] and ongoing willful violations of Petitioner's restraining notice. Dkt. 151.

On August 29, 2022, the Court denied Petitioner's cross-motion without prejudice to re-raise the motion if, after its motion to quash is decided and the Escrow Agreements are (again) ordered to be produced, Etra states that he cannot do so as to some or all of the agreements because they have been lost or destroyed. Dkt. 154.

On August 30, 2022, after already missing the deadline to reply to the Third Document Subpoena and the Second Information Subpoena, Etra requested an extension of time to respond, Dkt. 155, which the Court denied, Dkt. 157. Two days later, Etra moved to quash those subpoenas in their entirety or, at minimum, those portions requesting "privileged information and related information . . . ." (the "Second and Third Motions to Quash"). Dkts. 158, 164. Etra also moved the Court to find that the subpoenas were improperly served and to modify the date range covered. *Id.* Benthos opposed, Dkt. 162, and Etra replied seven days late, Dkt. 166, after the Court advised that no extensions would be granted, Dkt. 163. Etra then asked the Court to stay the case pending the parties' settlement discussions, Dkt. 167; Benthos opposed that request, stating that the parties have not reached a settlement, Dkt. 168. The Court denied Etra's request for a stay. Dkt. 169. On September 20, 2022, Etra reiterated his views on settlement and admitted that he "took modest fees" over the last "four years of this matter." Dkt. 170.[9]

---

[8] Etra has repeatedly stated that he lost documents, including apparently copies of escrow agreements, when work was done on his computer. He has not, however, produced any evidence of that beyond his own say-so. Given Etra's tendency to prevaricate, his say-so is of virtually no value.

[9] On September 23, 2022, Etra asked the Court "to recognize and support the parties constructively finalizing a settlement solution at hand." The Court is fully supportive of the parties resolving this matter, but unless and until a settlement is consummated, Etra must comply fully with subpoenas and Court orders or he will be held accountable for his failure to do so. Etra has had years to propose and consummate a settlement.

## II. DISCUSSION

### A. Etra Has Not Established that the Escrow Agreements and Related Information Are Privileged

To prevail on his motion to quash portions of Benthos' subpoenas that require production of the escrow agreements and information regarding them, Etra has the burden of showing that the Escrow Agreements and Related Information are protected by attorney-client privilege. *See In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007). The attorney-client privilege attaches "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (citation omitted); *United States v. Tomero*, 471 F. Supp. 2d 448, 450–51 (S.D.N.Y. 2007) (same).

The Second Circuit has "consistently held that, absent special circumstances, client identity and fee information are not privileged." *In re Grand Jury Subpoena Served upon Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (citations omitted); *see also Lefcourt v. United States,* 125 F.3d 79, 86 (2d Cir. 1997) (holding that the attorney-client privilege does not protect client-identifying information "simply because [the information] could prejudice the client" in a case); *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504–07 (2d Cir. 1991) (holding that the privilege does not protect client identity and fee information from an IRS subpoena).

Although what constitutes "special circumstances" has "not been precisely defined," the Second Circuit has recognized that a client's identity should not be revealed where it would be "tantamount to exposing the purposes for which the client sought legal advice," and that fee payment information should not be disclosed where it would "inhibit open, full and frank

11

discussion between [a lawyer] and his client concerning legal representation." *Vingelli v. United States*, 992 F.2d 449, 450–54 (2d Cir. 1993). Such "special circumstances" are "seldom found to exist," *Lefcourt*, 125 F.3d at 88, and do not arise even where the information "might incriminate the client," *Goldberger*, 935 F.2d at 505. The Second Circuit expressly declined to adopt "a broad privilege against the disclosure of the identity of clients and of fee information" because it "might easily become an immunity for corrupt or criminal acts." *In re Shargel*, 742 F.2d 61, 62 (2d Cir. 1984) (citation omitted).

In support of his motions to quash those portions of the subpoenas requesting the Escrow Agreements and Related Information,[10] Etra argues that compliance would reveal his clients' private business information and that his non-party clients are irrelevant to this action.[11] Resp. First Mem., Dkt. 150, at 5. Benthos counters that the Escrow Agreements set forth business transactions for which Etra did not function as a lawyer, do not involve communications, and contain unprivileged identity and fee information. Pet. First Mem. in Opp., Dkt. 153, at 4.

Etra has not even attempted to meet his burden of showing that any of the exceptional circumstances the Second Circuit has articulated that would render client identities or fee information privileged apply here, especially where at least some client identities are already known. Moreover, the Second Circuit has expressly rejected Etra's argument that the Escrow Agreements and Information should not be disclosed because his clients are non-parties. *See In*

---

[10] The Court has not considered Etra's untimely reply. Even if it were considered, however, it would not change the Court's analysis.

[11] Etra also asks the Court to seal bank statements that reveal his clients' names because he produced the account documents "under duress." Resp. First. Mot. at 5. As further discussed in the Court's opinion, the names are not privileged, but even if they were, courts in this Circuit have "repeatedly found sealing improper where the relevant material was already made public." *Shetty v. SG Blocks, Inc.*, 20-CV-550 (ARR) (MMH), 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) (collecting cases). The notion that Etra was under duress because, having failed to properly object or move to quash the subpoena, he was ordered to produce relatively few documents after receiving myriad extensions, is ludicrous.

*re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 71–72 (2d Cir. 1986) (rejecting a subpoenaed party's argument that "the identities, awards and fee arrangements of [a] [law] firms' clients should not be disclosed since the attorneys, not the clients, are the target of [a] grand jury investigation" because "the rationale underlying the attorney-client privilege is inapplicable").

It is telling that Etra magnifies the minimal burden of producing the requested documents on himself rather than on those whom the privilege is primarily designed to protect: his clients. Because Etra falls woefully short of establishing privilege, his First Motion to Quash and the portions of his Second and Third Motions to Quash regarding the Escrow Agreements and Related Information are DENIED.

### B. Etra's Other Arguments for Quashing Petitioner's Subpoenas Are Meritless

Although the parties were expressly instructed to limit their briefing to whether the Escrow Agreements are privileged, the Court briefly addresses the additional arguments raised in Etra's Second and Third Motions to Quash. As a threshold matter, the Second and Third Motions to Quash were made sixteen days late and without leave from the Court. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."). Even overlooking Etra's procedural default, his objections to Petitioner's subpoenas are groundless.

Federal Rule of Civil Procedure 69(a)(2) provides that "[i]n aid of" the execution of a judgment, "the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). New York civil procedure allows judgment-creditors to serve "information subpoenas" to obtain evidence relating to the judgment-debtor's assets and any

other "matters relevant to the satisfaction of the judgment." *Giuliano v. N.B. Marble Granite*, No. 11-MC-00753, 2014 WL 2805100, at *3 (E.D.N.Y. June 20, 2014); *see also* N.Y. C.P.L.R. §§ 5223–5224.

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (Rule 69 "permits 'wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings.'" (quoting *Gibbons v. Smith*, No. 01-CV-1224, 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010))); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, No. 88-CV-3039, 1993 WL 50528, at *1 (E.D.N.Y. Feb. 23, 1993) (a judgment-creditor "is entitled to a very thorough examination of a judgment debtor with respect to its assets" (internal quotation marks omitted)).

Under Rule 45(d), a subpoena recipient may move to quash or modify the subpoena if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citations omitted).

Etra first complains that two of Petitioner's subpoenas were improperly served because they were served while he was in a courthouse. Resp. Second Mem., Dkt. 159, at 4; Resp. Third Mem., Dkt. 165, at 4. Although there may be circumstances pursuant to which a person is immune from service in a courthouse, Etra has articulated no basis for the Court to conclude that he was immune from service at the time he was served. As a general matter, "[a] subpoena may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). Next, Etra objects that items one, four, and six of the Second Information Subpoena (and by extension item five of

14

the Third Document Subpoena) improperly request financial information going back to August 1, 2017, even though the parties only began their business engagement in August 2018. Resp. Second Mem. at 5; Resp. Third Mem. at 5. This objection ignores settled law that a judgment-creditor "must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor," *First City*, 281 F. 3d at 54 (internal quotations and citation omitted); by its nature, that inquiry has nothing to do with when the parties first began transacting with one another. Etra also claims that item four of the Second Information Subpoena, which orders him to list all of his financial accounts going back to August 1, 2017, and items three and six of the Third Document Subpoena, which order him to produce account documents and landlord communications going back to August 1, 2017, are unduly burdensome because he already produced the information in response to multiple court orders. Resp. Second Mem. at 5–7; Resp. Third Mem. at 6–7  But those same court orders repeatedly admonished Etra for his deficiencies, *see* Dkts. 33, 108, 144, and if he already collected most or all of the information in response to Petitioner's prior subpoenas, the burden of producing it again should be minimal.[12] Finally, Etra argues that Petitioner's subpoenas violate his human rights. Resp. Second Mem. at 7–9; Resp. Third Mem. at 7–9. Etra could have spared himself the indignities he complains about by (a) not wrongfully releasing Benthos' funds from escrow and (b) promptly complying with his legal obligations. The remaining portions of his Second and Third Motions to Quash are DENIED.

## CONCLUSION

For all foregoing reasons, Respondent's motions to quash Petitioner's subpoenas are DENIED. Respondent must produce all escrow agreements that were in force and effect at any

---

[12]  Petitioner also voluntarily withdrew several requests in the Second Information Subpoena and the Third Document Subpoena, further easing Etra's burden. *See* Pet. Second Mem. in Opp., Dkt. 161, at 5 & n.2.

time between August 1, 2017, and the present to which he is or was a party, including any escrow agreements previously withheld as privileged and any escrow agreements with the clients listed in the Court's August 2, 2022 Order, Dkt. 144 at 3–4, not later than **Friday, September 30, 2022**. Respondent must also fully respond to Petitioner's Third Document Subpoena and Second Information Subpoena not later than **Friday, October 7, 2022**. If Respondent continues to proceed *pro se*, he must file any submissions to the Court via ECF. If Respondent fails to produce all of the documents and information ordered above to be produced, Petitioner can move for an order to show cause why Respondent should not be held in contempt and jailed as a coercive sanction until he complies.

    The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 149, 158, and 164. The Clerk of Court is further directed to mail a copy of this Order to Mr. Etra and to note the mailing on the public docket.

**SO ORDERED.**

Date:  September 26, 2022                                   **VALERIE CAPRONI**
      New York, New York                                     **United States District Judge**