Exhibit 10

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

BENTHOS MASTER FUND, LTD,

                                    Petitioner,

                    -against-

AARON ETRA,

                                    Respondent.

----------------------------------------------------------------X

**ORDER**

**20-CV-3384 (VEC) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**.

On October 4, 2022, the Court received the attached correspondence from Respondent via email asking the Court to cancel the Evidentiary Hearing currently scheduled on Thursday, October 6, 2022.  The Court subsequently received the attached response from the petitioner.  Parties are reminded to file any correspondence with the Court via ECF.  (ECF No. 146.)

The purpose of the Evidentiary Hearing scheduled on October 6, 2022 is to address the question of whether Respondent has "control" for purposes of Federal Rule of Civil Procedure 34(a), over monthly statements from two foreign bank accounts at Uni-Credit and Sberbank, over a certain time period.  The Order scheduling the evidentiary hearing, which was issued on August 3, 2022 – over two months ago – directs the parties to be prepared to present witness testimony and evidence as well as argument, and specifically instructs Respondent to bring witnesses such as Mr. Helmut Allesch and clients who can provide testimony regarding the accounts in question.

Respondent asks that the Evidentiary Hearing be cancelled, because he claims that other than two documents he already provided to the Court, which he claims resolve the issue of "control," Respondent has no further evidence to present.  Respondent also notes the

1

Evidentiary Hearing is scheduled during the Jewish High Holiday period. Petitioner responded that it plans to present evidence at the Hearing that contradicts Respondent's evidence – including testimony from Respondent. Petitioner also notes that the Evidentiary Hearing was scheduled over two months ago, and that the date of the Hearing – October 6, 2022 – is <u>not</u> a Jewish Holiday on which work is prohibited.

The Court agrees with Petitioner. The Evidentiary Hearing will take place per the Court's Order at ECF No. 146 on Thursday, October 6, 2022 at 2:00 p.m. in Courtroom 17-D, United States Courthouse, 500 Pearl Street, New York, New York. Parties **must** attend in person and should be prepared to present evidence and argument on the issue. If Respondent has no further evidence to present, that is fine, however Respondent shall be prepared to be cross-examined by Petitioner.

**The Court requests that Petitioner serve this order on Respondent via email and first class mail to his address of record.**

**SO ORDERED.**

Dated: October 4, 2022
New York, New York

_Katharine H. Parker_

KATHARINE H. PARKER
United States Magistrate Judge

| | |
|---|---|
| **From:** | Steven Popofsky |
| **To:** | Parker NYSD Chambers |
| **Cc:** | Aaron Etra |
| **Subject:** | RE: 20-cv-03384-VEC-KHP EVIDENTIARY HEARING 10/06/2022 2:00PM - COURTROOM 17D |
| **Date:** | Tuesday, October 4, 2022 12:17:28 PM |

**CAUTION - EXTERNAL:**

Dear Judge Parker:

The undersigned will appear as ordered on behalf of petitioner on Thursday, October 6 at 2:00 PM. We expect Mr. Etra to be present, per Your Honor's order (Dkt. 146), as we will call him to testify under cross-examination and will question him about various documents that will be introduced as exhibits.

As the Court is aware, this hearing was ordered more than two months ago. The Court ordered at that time that we serve the Order Scheduling Evidentiary Hearing on Mr. Etra "via email and first class mail" and we did so the very next day. On August 18, I discussed the hearing with Mr. Etra via e-mail (in the course of explaining why I could not grant the lengthy adjournment he requested to produce certain documents, which I explained would be used at the hearing, in response to petitioner's August 2, 2022 subpoena).

So Mr. Etra has been fully aware of this hearing since early August. If he chooses to rest on the e-mail below and its attachments, that is his choice, but petitioner is entitled to put on its case, and has prepared in reliance upon the Court's directive that "the parties must attend the conference in person. . . ."

We can expect that next, Mr. Etra will claim inability to attend Thursday due to Yom Kippur tomorrow. (See the extensive recent docket entries in which he has been bombarding Judge Caproni with extension requests due to the Jewish holidays, all of which requests Judge Caproni has denied.) Mr. Etra has had over two months to prepare for this hearing, and Yom Kippur (which I observe as well) is irrelevant. Furthermore he was of course aware of the date of the hearing, and of the dates of the Jewish holidays, and he made no request for over two months that the hearing "be cancelled" or adjourned.

This last-minute request is a typical Aaron Etra ploy ("classic Etra," to quote Judge Caproni in a related context), and it should be denied. Petitioner respectfully requests that before sundown tonight, the Court reaffirm its August 3 Order that "the parties

must attend the conference in person. . . ."  Thank you.

**STEVEN R. POPOFSKY**
**D** 212.880.9882  |  [spopofsky@kkwc.com](mailto:spopofsky@kkwc.com)
**F** 212.986.8866  |



**Kleinberg, Kaplan, Wolff & Cohen, P.C.**
500 Fifth Avenue, New York, NY 10110
[kkwc.com](http://kkwc.com)  |  Follow us on [LinkedIn](http://linkedin.com)

[Read our latest insights](http://kkwc.com) and sign up to receive our latest client alerts, invitations to events and more.

---

**From:** Aaron Etra <aaronetra@gmail.com>
**Sent:** Tuesday, October 4, 2022 11:59 AM
**To:** Parker NYSD Chambers <Parker_NYSDChambers@nysd.uscourts.gov>
**Cc:** Steven Popofsky <SPopofsky@kkwc.com>
**Subject:** Re: 20-cv-03384-VEC-KHP EVIDENTIARY HEARING 10/06/2022 2:00PM - COURTROOM 17D

Dear Judge Parker,

Thank you for this notice regarding an evidentiary hearing which I am reading when I am with family observing the Jewish High Holidays and guarding my fragile health.

Please find attached the 16 July 2022 material received from Mag. Helmut Allesch, the owner and operator of these now closed European fiduciary accounts, who holds funds in his escrow accounts for clients. It took a long time and many requests to have him provide this material, understandable under well- recognized and to be respected confidentiality and privacy regulations. This signed and sealed document was finally received and provided to both Judge Caproni and Mr. Popofsky after this aspect of the Benthos matter had been referred to you.

In Mag. Allesch's letter to me, in addition to confirming his operation of the accounts, he also states that: "The clients have always been identified to me" and that "I can confirm that you have never asked me to hold any funds for, from or due to Benthos Master Capital Funds, Ltd., nor have I ever received any funds in any way associated with that party or its activities".

I believe that Mag. Allesch's letter makes the facts as clear as can be, and that there is nothing more I can provide as evidence or that needs to be said by me about the ownership or operation of the accounts and the absence of any connection to the Benthos matter.  The two bank accounts, now closed as he has confirmed, were his and for his clients and he was the only one entitled to and received, or could request, all statements and communications from the banks.

Under these circumstances, I respectfully request that the hearing be cancelled and/or, if you require anything further from me, please request it and understand that I will be able to deliver it,

th

health permitting, after October 18th, the end of the High Holiday period, if not in person than virtually.

I thank Your Honor for your understanding at this time.

Respectfully submitted,

/s/Aaron Etra

Aaron Etra
240 East 47th Street-12A
New York, NY 10017
Tel. 917-856-3500
Email: aaron@etra.com

---

**From:** Parker NYSD Chambers <Parker_NYSDChambers@nysd.uscourts.gov>
**Date:** Monday, October 3, 2022 at 4:41 PM
**To:** aaron@etra.com <aaron@etra.com>, aaronetra@gmail.com <aaronetra@gmail.com>
**Subject:** 20-cv-03384-VEC-KHP EVIDENTIARY HEARING 10/06/2022 2:00PM - COURTROOM 17D

**NOTICE TO THE PARTIES: REMINDER of the Evidentiary Hearing scheduled for Thursday, October 6, 2022, at 2:00 p.m. in Courtroom 17-D, United States Courthouse, 500 Pearl Street, New York, New York - before Judge Katharine H. Parker re: 146 Order.(ca) (Entered: 10/03/2022)**

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Wirtschaftstreuhänder**
## Mag. Helmut ALLESCH
**Steuerberater**

**A-9020 Klagenfurt am Wörthersee**
**Gabelsbergerstraße 2**
**DVR: 0493031**

Telefon   0463/50 6 41
Telefax   0463/50 6 41 - 20

e-mail: office@allesch.at

To: Aaron Etra

Klagenfurt, 16 July 2022

Re: Fiduciary Accounts

Dear Mr. Etra,

I am a fiduciary, based in Austria, who operates fiduciary/trust accounts for clients' funds in several European countries and banking groups including those of Sperbank and Uni-Credit.

You have asked me to function for various clients of yours, for whom I have held funds in escrow in my accounts. The clients have always been identified to me and to my satisfaction.

I can confirm that you have never asked me to hold any funds for, from or due to Benthos Master Capital Fund, Ltd., nor have I ever received any funds in any way associated with that party or its activities

You have also asked me to provide monthly and closing statements for some of my accounts which I advised have been closed. I have replied that, regrettably, the only such statement I can provide is the attached one for my closed Sperbank account, which I confirm I sent to you in response to your requests.

I hope this communication is of value.

Yours Faithfully,

# SBERBANK

## SEPA ÁTUTALÁSI MEGBÍZÁS
### SEPA PAYMENT ORDER *SEPA PAYMENT ORDER*

*Kitöltési segédlet az ügyfél példányának hátoldalán található.*

| Speciális utasítások (ha eltér a normálistól): | Egyedi árfolyammal (EUR 20.000 felett) | | Indítás napja | 2 | 0 | | 1 | | 1 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|
| *With special exchange rate (not less than EUR 20.000)* | *Starting date* | | | | | | | | | |

**Specific Instructions (if differ as normal)  With special exchange rate (not less than EUR 20.000)  Starting date**

## MEGBÍZÓ ADATAI / ORDERING CUSTOMER'S DATA  ORDERING CUSTOMER'S DATA

**Név\*** / *Name\** / **Name**: M Á J A L E S C H E A M U T

**Megbízó azonosítója** / *Ordering customer ID* / **Ordering customer ID**

**Ügyintéző** / *Contact person* / **Contact person**    **Telefon** / *Phone*

**Terhelendő számla száma\*** / *A/C No. to be debited\** / **A/C No. to be debited**: HU6E A1400 275 288 EA 8 136 006

| Utalandó deviza | **EUR** | A megbízás összege az átutalás devizanemében\*\* | | | | | | | | |
| *Payment currency* | | *Amount in the currency of the payment\*\** | | | | | | | | |
| **Payment currency** | | **Amount of currency of the payment\*** | | | | | | | | |

A megbízás összege a terhelendő számla devizanemében\*\* ... E C ... C F E N L E G S Z A M A Z A S
*Amount in the currency of the account\*\**
**Amount in the currency of the account**

**Összeg betűvel\*** / *Amount in words\** / **Amount in words**: TELJES EGYENLEG ROMRAZASAS MIATT

**Tényleges fizető** / *Ultimate debtor* / **Ultimate debtor**

**Tényleges fizető azonosítója** / *Ultimate debtor ID* / **Ultimate debtor ID**

## KEDVEZMÉNYEZETT ADATAI / BENEFICIARY'S DATA  BENEFICIARY'S DATA

**Név\*** / *Name\** / **Name**: MAGBAL GUT ALLESEV

**Partner azonosítója** / *Beneficiary ID* / **Beneficiary ID**

**Cím\*** / *Address\** / **Address**: SP BEL SZERGER STR 1 9000 KLAGENFURT

**Számlaszám/IBAN\*** / *Account No./IBAN\** / **Account No. IBAN\***: AT62 1400 0964 1074 2884

**Tényleges kedvezményezett** / *Ultimate beneficiary* / **Ultimate beneficiary**

**Tényleges kedvezményezett azonosítója** / *Ultimate beneficiary ID* / **Ultimate Beneficiary ID**

## KEDVEZMÉNYEZETT BANKJA / BENEFICIARY'S BANK  BENEFICIARY'S BANK

**SWIFT/BIC kód** / *SWIFT/BIC Code* / **SWIFT/BIC Code**: BAWAATWW

**Közlemény** / *Details of payment* / **Details of payment**

| ☐ | Igazolást kérünk a teljesítésről. Fax szám/e-mail: |
|---|---|
| | *Issuing a Certificate is requested. Fax No./E-mail:* |
| | **Issuing a certificate is requested. Fax No./Email:** |

| ☒ | Külföldi bankköltség a kedvezményezetten **SHA** |
|---|---|
| | *Foreign bank charge on beneficiary* **SHA** |
| | **Foreign bank charge on beneficiary SHA** |

| ☐ | Partnerek közötti egyedi azonosító | | | | | | | | *Dátum\* / Date\** | 18-11-2020  **11/18/2020** |
|---|---|---|---|---|---|---|---|---|---|---|
| | *EndtoEnd ID* | | | | | | | | | **Date\*** |
| | **EndtoEnd ID** | | | | | | | | | |

*Banknál bejelentett aláírás\* / Authorized signature(s)\**
**Authorized signature(s)**

**Under penalties of perjury I hereby declare that I am acquainted with the relevant foreign exchange legistration.**
Büntetőjogi felelősségünk tudatában kijelentjük, hogy a vonatkozó devizajogszabályokat ismerjük és a devizát a devizagazdálkodási szabályoknak
megfelelően igényeljük és használjuk fel. / *Under penalties of perjury I hereby declare that I am acquainted with the relevant foreign exchange legislation.*
I shall use the foreign currency amount in accordance with the rules concerning foreign exchange control. **I shall use the foreign currency amount in accordance with the rules concerning foreign exchange control.**

| Átvétel visszaigazolása | Aláírás(ok) rendben | Fedezet rendben | *A devizaátutalás teljesítésének egyéb feltételeit és részletes szabályait a Bank hatályos* |
|---|---|---|---|
| *Payment order received* | *Signature(s) verified* | *Cover secured* | *üzletszabályzatai tartalmazzák és azok jelen megbízásnak elválaszthatatlan részét képezik.* |
| **Payment Order Received** | **Signature(s) verfied** | **Cover secured** | *Other rules and conditions concerning the execution of the present transaction* |
| | | | *are detailed in Business Rules of the Bank and they are integral part of this Order.* |

**\* Mező kitöltése kötelező! / *Field mandatory!*  Field mandatory!**
**\*\* Két összeg mező közül csak az egyiket kell kitölteni! / *Only one field must be completed***
**Only one field must be completed**

**Other rules and conditions concerning the execution of the present transaction are detailed in Business Rules of the Bank and they are integral part of this Order**

**Kitöltési segédlet a SEPA átutalási megbízáshoz:**

Tisztelt Ügyfelünk!

Kérjük, hogy a megbízás kitöltésénél ügyeljen a nyomtatványon szereplő mezők pontos, teljes körű kitöltésére! Ne írjon több karaktert egy mezőbe, illetve a jelzett maximális karakterek számát ne lépje túl!

**Speciális utasítások: (ha eltér a normál teljesítéstől)**
Egyedi árfolyammal: További információk a Bank mindenkor hatályos hirdetményében.

**Név:**
Számlatulajdonos neve, maximum 35 karakter hosszan.
**Megbízó azonosítója:**
Opcionális mező, az átutaló ügyfél egyedi azonosítója
**Ügyintéző:**
A számlatulajdonos, illetve meghatalmazottjának neve.
**Telefon:**
A számlatulajdonos, illetve meghatalmazottjának telefonszáma.
**Terhelendő számla száma:**
28 karakteres terhelendő számla IBAN számát.
**Utalandó deviza:**
A kiutalandó összeg devizaneme SEPA utalás esetén mindig EUR.
**A megbízás összege az átutalás devizanemében:**
Ezt a mezőt abban az esetben kell kitölteni, ha az utalás összege a kiutalandó összeg devizanemében ismert. Felhívjuk szíves figyelmét, hogy a két összeg mező közül csak az egyiket kell kitölteni!
**A megbízás összege a terhelendő számla devizanemében:**
Ezt a mezőt abban az esetben kell kitölteni, ha az utalás összege a terhelendő / indító számla devizanemében ismert. Felhívjuk szíves figyelmét, hogy a két összeg mező közül csak az egyiket kell kitölteni!
**Összeg betűvel:**
Utalandó összeg szövegesen.
**Tényleges fizető:**
Ezt a mezőt akkor kell kitölteni , ha a számlatulajdonos neve eltér a tényleges fizető fél személyétől
**Tényleges fizető azonosítója:**
A tényleges fizető fél egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )

**Kedvezményezett neve:**
A maximum karakterek figyelembe vételével az átutalás végső címzettjének neve.
**Partner azonosítója:** a kedvezményezett egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )
**Kedvezményezett címe:**
A maximum karakterek figyelembe vételével az átutalás végső címzettjének címe.
**Kedvezményezett számlaszáma:**
A kedvezményezett IBAN formátumú számlaszáma.
**Tényleges kedvezményezett:**
Ezt a mezőt abban az esetben kell kitölteni, ha a kedvezményezett neve eltér a tényleges kedvezményezett nevétől.
**Tényleges kedvezményezett azonosítója:**
a tényleges kedvezményezett egyedi azonosítója ( pl: személyi igazolvány szám, vezetői engedély szám, útlevélszám )

**SWIFT/BIC kód:**
A végső kedvezményezett bank 8 vagy 11 karakteres SWIFT-kódja, ahol a végső kedvezményezett a számláját vezeti.

**Közlemény:**
Kérjük, ebben a mezőben rögzítse a kedvezményezett részére szánt üzenetet, maximum 2*33 karakter hosszan. A közlemény rovat kitöltése nem kötelező!

**Igazolást kérünk a teljesítésről. Fax szám/e-mail:**
Kérjük, azt a fax számot/e-mail címet tüntesse fel, ahova szeretné, hogy küldjük az átutalásról kiállított igazolást. Amennyiben nem tüntet fel fax számot/e-mail címet, abban az esetben az igazolást a számlavezető fiókjába küldjük el.

**Külföldi bankköltség a kedvezményezetten (SHA):**
SHA költséggel megjelölt utalás esetén a fizető fél vállalja a saját bankjánál felmerülő költségeket, a kedvezményezett pénzforgalmi szolgáltatójánál felmerülő költséget a kedvezményezett viseli.

**Partnerek közötti egyedi azonosító:**
opcionális mező, partnerek közötti egyedi azonosító kód.

Amennyiben a kitöltési útmutatóban foglaltak mellett további információra van szüksége megbízása benyújtásához, forduljon bizalommal ügyfélreferenséhez vagy ügyintézőinkhez a +36-1-5-57-58-59-es telefonszámon!

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
BENTHOS MASTER FUND, LTD,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/2021

Petitioner,

**ORDER**

-against-

**20-CV-3384 (AJN) (KHP)**

AARON ETRA,

Respondent.
------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

On April 30, 2020, Petitioner filed a petition to confirm an arbitration award in the amount of $5,314,448.72 (ECF No. 1). After the award was confirmed by the court (ECF Nos. 14-15), and pursuant to Federal Rule of Civil Procedure 69(a)(2), the Petitioner sought post-judgment discovery and served several subpoenas to various financial institutions in aid of the judgment.

Since February 9, 2021, the Respondent has failed to comply with three court orders (ECF Nos. 39, 54, 59) and two subpoenas, prompting Petitioner to request that the Court order the Respondent to answer to his discovery requests. (ECF No. 60)

On February 26, 2021, I held a conference with the parties and issued an order in aid of settlement that ordered the Respondent to produce the requested records for in camera review with the aim of assisting the parties in reaching a resolution of this matter. (ECF No. 63) On March 15, 2021, the Respondent submitted certain records for in camera review consistent with this Court's Order and that also were responsive to Petitioner's prior requests.

On April 1, 2021, this Court held a settlement conference whereby the parties discussed a resolution of the matter, subject to Petitioner making certain payments and, upon failing to make such payments, providing the documents that were previously ordered produced and provided to the Court in camera. Consequently, I denied Petitioner's letter motion for discovery (ECF No. 60) but allowed the Petitioner to renew his motion should the Respondent fail to comply. (ECF No. 65)

Respondent failed to make any payments and, as a result, Petitioner now renews his motion seeking information about the whereabouts of Defendant's assets for purposes of collecting amounts due. (ECF No. 66)

WHEREFORE, Respondent is hereby ORDERED to, by **no later than July 2, 2021**, produce the documents responsive to Petitioner's prior requests and provided to the Court in camera or show cause by that date why the Court should not release the documents provided in camera to Petitioner.

To the extent Petitioner renews his request to hold Respondent in contempt for failing to comply with the Court's pre-March 15, 2021 Orders, the motion is denied without prejudice. Petitioner shall file a letter requesting permission to file such a motion, consistent with this Court's Individual Practices Rules, if Respondent fails to comply with this Order.

**The Petitioner is directed to serve this order on the Respondent and file an affidavit of service of same with this Court. The Court also will mail a copy of this Order.**

SO ORDERED.

Dated: June 17, 2021
New York, New York

2

KATHARINE H. PARKER
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/14/2020
```

Benthos Master Fund, Ltd.,

                    Petitioner,

         –v–                                    20-cv-3384 (AJN)

Aaron Etra,                                     ORDER

                    Respondent.

ALISON J. NATHAN, District Judge:

        Respondent is ordered to file a response to Petitioner's motion to hold Respondent in

contempt by October 23, 2020.  Petitioner may file a reply by October 30, 2020.  Petitioner shall

serve a copy of this Order, the motion, and all supporting documentation on Respondent and file

an affidavit of service on the public docket by October 16, 2020.


        SO ORDERED.


Dated: October 14, 2020                    _____
       New York, New York
                                                   ALISON J. NATHAN
                                                United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BENTHOS MASTER FUND, LTD,

                                    Petitioner,                          **ORDER**

            -against-                                                **20-CV-3384 (AJN) (KHP)**

    AARON ETRA,

                                    Respondent.
-------------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

On April 30, 2020, Petitioner filed a petition to confirm an arbitration award in the

amount of $5,314,448.72 (ECF No. 1). After the award was confirmed by the court (ECF Nos.

14-15), and pursuant to Federal Rule of Civil Procedure 69(a)(2), the Petitioner sought post-

judgment discovery and served several subpoenas to various financial institutions in aid of the

judgment.

Since February 9, 2021, the Respondent has failed to comply with three court orders

(ECF Nos. 39, 54, 59) and two subpoenas, prompting Petitioner to request that the Court order

the Respondent to answer to his discovery requests. (ECF No. 60)

On February 26, 2021, I held a conference with the parties and issued an order in aid of

settlement that ordered the Respondent to produce the requested records for in camera

review with the aim of assisting the parties in reaching a resolution of this matter. (ECF No. 63)

On March 15, 2021, the Respondent submitted certain records for in camera review consistent

with this Court's Order and that also were responsive to Petitioner's prior requests.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/2021

On April 1, 2021, this Court held a settlement conference whereby the parties discussed a resolution of the matter, subject to Petitioner making certain payments and, upon failing to make such payments, providing the documents that were previously ordered produced and provided to the Court in camera.  Consequently, I denied Petitioner's letter motion for discovery (ECF No. 60) but allowed the Petitioner to renew his motion should the Respondent fail to comply. (ECF No. 65)

Respondent failed to make any payments and, as a result, Petitioner now renews his motion seeking information about the whereabouts of Defendant's assets for purposes of collecting amounts due. (ECF No. 66)

WHEREFORE, Respondent is hereby ORDERED to, by **no later than July 2, 2021**, produce the documents responsive to Petitioner's prior requests and provided to the Court in camera or show cause by that date why the Court should not release the documents provided in camera to Petitioner.

To the extent Petitioner renews his request to hold Respondent in contempt for failing to comply with the Court's pre-March 15, 2021 Orders, the motion is denied without prejudice. Petitioner shall file a letter requesting permission to file such a motion, consistent with this Court's Individual Practices Rules, if Respondent fails to comply with this Order.

**The Petitioner is directed to serve this order on the Respondent and file an affidavit of service of same with this Court.  The Court also will mail a copy of this Order.**

SO ORDERED.

Dated: June 17, 2021
      New York, New York

2

KATHARINE H. PARKER
United States Magistrate Judge





**Steven R. Popofsky**
*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

June 21, 2022

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____6/21/22____

<u>**VIA ECF**</u>

Judge Valerie Caproni
United States District Judge
United States District Court
40 Foley Square, Room 240
New York, NY 10007

Re: <u>**Benthos v. Etra, 20-CV-3384**</u>

Dear Judge Caproni:

 In response to Mr. Etra's letter of June 17, we note that he undoubtedly did nothing to comply with the Court's order even before June 6. Nonetheless we do not oppose a brief extension. We would ask, however, that Mr. Etra be ordered to comply promptly with item 12 of Dkt. 108, and that upon any extended deadline he also be directed to provide the information and documents requested in items 2 and 3 on pages 3-4 of our letter at Dkt. 99.

 Thank you.

Respectfully submitted,

Steven R. Popofsky

cc: Aaron Etra (via e-mail and ECF)

The deadline for Mr. Etra to produce all documents outlined in the Court's order other than the executed IRS Form 2848 is hereby ADJOURNED *nunc pro tunc* from June 20, 2022, to **July 1, 2022**. The executed IRS Form 2848, *see* Dkt. 108 at 5, is due not later than **June 24, 2022**.

Because the Court has granted Mr. Etra's request for an extension, he must also produce contact information for Koraljka Troselj and "privileged" information as outlined in Petitioner's letter, *see* Dkt. 199 at 2-3, by **July 1, 2022**.

Respondent is reminded that he shall be fined $50 per day until there is full compliance beginning on June 25, 2022, should he fail to turn over the executed IRS Form 2848, and beginning on July 2, 2022, should he fail to turn over the remainder of the required documents as outlined in the Court's prior order and in this endorsement.

SO ORDERED.

*Valerie Caproni* 6/21/22

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/5/22___

MEMO ENDORSED

Aaron Etra
240 East 47th Street-12A
New York, NY 10017
Tel. 917-856-3500

July 1, 2022

(Via email to Temporary Pro Se Office)
Judge Valorie Caproni
U. S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Benthos v. Etra 20-CV 3384 (VEC) Order of May 16, 2022

Dear Judge Caproni,

In my letter of June 17th, I reported to this Court that I was hit head on by a MTA bus on June 6th and had to be treated at the site by a NYPD ambulance (please see the attached accident report), and that I would be continuing treatment for my physical impairments caused by the impact, and for the existing neurological and immunological conditions further impacted by the trauma.

At my follow-up appointment yesterday on June 30th at NY Presbyterian Hospital, (see attached hand band), to review my condition after being hit by the MTA bus (accident report again attached), during the examination they performed certain tests and ordered others, some diagnostic, to further determine the consequences, and scheduled these for the weeks ahead and will try to move them up as appointments become available. The results and consequences will be the subject of further consultations with me and I am under instructions to continue to respect significant limitations on both my physical and mental activities and certainly totally avoid further stress until further notice from them.

On top of everything, my computer died, which is my only computer and contains all my records and data.   It had to be left with Apple for extensive repairs (see attached), and should be in their shop for about a week or so. I am currently only able to use my cellphone to communicate by voice and text, including with Your Honor, but cannot access documents or files on my computer.

Notwithstanding these disabilities and the fact that it is an objectionable invasion of my privacy, prior to this calamity, I sent the IRS Form 2848 on June 24th to Plaintiff's counsel as ordered by Your Honor. Since then, Plaintiff's counsel has continued their relentless personal harassment of me by having their paralegal while they are away on vacation, harass me to include on the form, the tax year 2017, a year before this matter of a business loss even took place; and they also want me to authorize not one but two persons, who they did not even identify themselves as members of a law firm, to pry into matters that should be just between me and the government.  This should not be supported by the Court.

As well, not content with having harassed, along with me, a distant cousin and a person seeking to help fund the settlement, they want information to harass my wife, who lives a separate life from and supports herself. She and I have lived apart, on two different continents, since 2008, ten years before the 2018 business loss occurred. She has had nothing to do with this matter as is clear and I have so attested. I strongly object and trust the Court will not support causing injury to and invading the privacy of an innocent person with no connection to this matter.

I respectfully request Your Honor to schedule a hearing on this matter at your earliest convenience, which I would hope to able to participate by phone or zoom if my doctors permit. Please suspend any enforcement action until then, including but not limited to, matters in the order dated May 16th, 2022, and appreciate my good faith efforts to comply with your Orders without any assistance or resources to present my entitlements and privilege under the law and in the face of three corporate lawyers, which would be relevant to the hearing and my need for appropriate legal assistance.

The facts in this case have not changed since 2018. The parties, of which I am NOT one, ALL suffered a loss when they were unable to complete a business transaction, for reasons totally unrelated to the services that I correctly and honorably performed. I have been trying to voluntarily assist Benthos ever since, while they then turned two different law firms on to attack me personally, ruining my good reputation developed since 1966 with smears all over the internet , limiting my ability to function, including assisting in funding the agreed settlement with Benthos.

I submitted hundreds of pages of documents and underwent seven hours of depositions, which completely described the matter, to Judge Batts who rejected Plaintiff's counsel's contempt motion. Plaintiff's counsel then resorted to a unilateral arbitration proceeding in which I was unable financially to participate as well as not being a party, and, based on the totally one-sided result, which resulted in the judgment before this Court, and since then they have been attacking me under the guise of enforcement by having my bank accounts frozen and closed, cards terminated, and my health severely impaired. Under Judge Nathan's supervision and as an 81 year old non-litigator without any legal assistance, I submitted hundreds more pages to the Court and Plaintiff's counsel. Judge Nathan also rejected contempt motions and directed the parties to settle under the direction of Judge Parker. I have been trying, with the assistance of business friends, to fund that settlement that Judge Parker brought Plaintiff's counsel to grudgingly accept. Plaintiff's counsel has not permitted this effort to be done reasonably but rather has attacked those wanting to help by subpoenas and verbal harassment, and persisted with their damaging enforcement action against me which , after four years, has had only the result of hundreds of thousands of legal fees to Plaintiff's counsel, hence charges to Benthos. There is and never has been any possible benefit to Benthos from this enforcement action as it is clear now, as it has been all along, that no funds from this matter have ever been received for my benefit, and I do not have and never had anything remotely like the amount of money in the award or judgment called for by the Award and Judgment. Settlement is the only solution and You Honor is respectfully requested to keep the parties on this track, and to be a focus of the requested hearing, as well as the other issues mentioned above.

I respectfully submit this letter, and look forward your proposed hearing date.

Respectfully submitted,

Aaron Etra
cc. S. Popofsky, Esq.

Encl.:  Police Accident Report
         Medical bracelet from New York Presbyterian Hospital
        Apple Service Invoice

Application GRANTED in part and DENIED in part.  Respondent's request for an extension of the deadline to comply with the Court's order is denied.  Respondent's request for a hearing is, however, granted.  The parties must appear on **Thursday, July 7, 2022, at 10:30 a.m.** in **Courtroom 443**, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007 for a hearing regarding whether Respondent should be held in contempt of Court.  Respondent may not appear by telephone or video, and must attend in person.

Respondent must appear with contact information for Koraljka Troselj and the "privileged" information as outlined in Petitioner's letter, *see* Dkt. 99 at 3-4, which the Court previously ordered him to turn over by July 1, 2022, *see* Dkt. 113.  Petitioner must also appear with all remaining documents he has been ordered to turn over by July 1, 2022, *see id.*, including the tax returns and full set of monthly and closing statements for the accounts described in the Court's order adopting Magistrate Judge Parker's Report and Recommendation ("R&R"), *see* Order Adopting R&R, Dkt. 108 at 4-5.

Petitioner must appear with a new IRS Form 2848 that omits the name of the attorney that is no longer employed by Petitioner's counsel.  *See* Letter, Dkt. 115 at 2.

**If Respondent fails to appear at the hearing, fails to bring the materials ordered by the Court, or fails to sign the IRS Form 2848 at the hearing, the Court will remand him into custody until he complies.**

The Clerk of Court is respectfully directed to mail a copy of this order to the *pro se* Respondent.  The Court will also email a copy of this order to him.

 SO ORDERED.

7/5/22

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENTHOS MASTER FUND, LTD., | |
| Petitioner, | |
| -against- | |
| AARON ETRA, | |
| Respondent. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___7/14/22___

20-CV-3384 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

WHEREAS the parties appeared on July 13, 2022, in response to an order to show cause why Respondent Aaron Etra should not be held in civil contempt for failure to comply with orders dated May 16, 2022, June 21, 2022, and July 5, 2022, *see* Dkts. 108, 113, 116 (hereafter "the Orders"), *see also* Order to Show Cause, Dkt. 126;

WHEREAS after hearing from the parties, and having found that Respondent was in civil contempt for failure to produce all documents as required by the Orders, the Court remanded Respondent into the custody of the U.S. Marshals;

WHEREAS the Court appointed the Federal Defenders to represent Respondent for the limited purpose of litigating whether, to coerce compliance with the Orders, he should remain in custody until he purged his contempt; and

WHEREAS the Court held a second conference with the parties at 3:00 p.m., on July 13, 2022, *see* Order, Dkt. 128, and ordered Respondent released from the custody of the U.S. Marshals subject to his commitment to comply with the following schedule for producing documents required to be produced by the Orders;

IT IS HEREBY ORDERED that, not later than **Friday, July 15, 2022, at 6:00 p.m.**, Respondent must produce to Petitioner all documents that he has heretofore withheld as

1

"privileged" that are responsive to Petitioner's previously-served subpoena *duces tecum*. This includes, as discussed at the hearings on July 13, 2022:

- all escrow agent agreements as to which Respondent is or was a party, whether the escrow agreement is still in effect or not, in effect from August 1, 2018 to the present;

- monthly statements for all bank accounts that were previously withheld as "privileged," including all Interest on Lawyer Accounts ("IOLA" accounts), whether in Respondent's name individually, jointly, in trust, as custodian, as nominee, or as a beneficiary, individually or with other persons or entities, from August 1, 2018 until the present.

IT IS FURTHER ORDERED that, not later than **Friday, July 15, 2022, at 6:00 p.m.**, Mr. Etra must produce to the Petitioner all monthly statements for Respondent's account at Piermont Bank, which is referenced in the Piermont Bank account documents produced on July 11, 2022 as "DDA 2060." *See*, *e.g.*, Dkt. 129 at 67 (noting transfers to and from "DDA 2060").

IT IS FURTHER ORDERED that, not later than **Friday, July 15, 2022, at 6:00 p.m.**, Respondent must file a sworn statement, executed under penalty of perjury, certifying that the documents ordered to be produced in the two paragraphs above were produced as required.

IT IS FURTHER ORDERED that Respondent must produce the following items not later than **Tuesday, July 18, 2022, at 6:00 p.m.**:

- Any other banking record including, but not limited to, credit applications and records and statements for any checking, savings, money market, certificate of deposit, investments, bonds, retirement accounts, safety deposit boxes or any other financial assets maintained with any banking or financial firm or institution,

whether in Respondent's name individually, jointly, in trust, as custodian, as nominee, as a beneficiary or in conjunction with any other person or persons.  For the avoidance of any doubt, the records that are required to be produced pursuant to this paragraph include monthly statements for **all** of Respondent's bank accounts and brokerage accounts that have not previously been produced that were open at any point between August 1, 2018 and the present.  Among the records that must be produced in response to this bullet are monthly bank statements for the account into which Respondent's social security checks were deposited prior to the time such payments began to be deposited into his account at Piermont Bank.

- All monthly statements for the HSBC bank account ending in x9990 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see* Order, Dkt. 126 ¶ 5;

- All monthly statements for the HSBC bank account ending in x6096 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the HSBC bank account ending in x6100 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the HSBC bank account ending in x7955 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the HSBC bank account ending in x6401 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the HSBC bank account ending in x6410 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the HSBC bank account ending in x6509 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the Uni-Credit account from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- All monthly statements for the SberBank bank account (for which a two-page untranslated document was previously provided, *see* Dkt. 86 at 5–6) from August 1, 2018 to present, or, if that account has been closed, statements from August 1, 2018, through the closing, *see id.*;

- The closing statements for Citibank accounts ending in x0330, x0669, x1370, x4852, and x8687, *see id.* ¶ 9; and

- A notarized declaration, submitted under penalty of perjury, attesting to the fact that Mr. Etra has no other open bank or brokerage account that he has not disclosed to Petitioner.

IT IS FURTHER ORDERED that, not later than **Tuesday**, **July 19, 2022, at 6:00 p.m.**, Respondent must file a sworn statement, executed under penalty of perjury, certifying that the documents ordered to be produced in the paragraphs above were produced as required.

IT IS FURTHER ORDERED that the parties must appear for a status conference on **Thursday, July 28, 2022, at 10:30 a.m.** in **Courtroom 443**, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

IT IS FURTHER ORDERED that not later than **Tuesday, July 26, 2022**, Petitioner must submit a letter to the Court setting forth any continued deficiencies in Respondent's productions as of that date.

IT IS FURTHER ORDERED that the financial sanctions imposed on Respondent for his failure to comply with the Orders, *see* Dkt. 126 at 4, shall continue to accrue until Respondent has complied fully with the Orders.

IT IS FURTHER ORDERED that if Respondent does not comply fully with this Order, he must be prepared to show cause at the conference on **July 28, 2022** why the Court should not find that financial penalties are not sufficient to coerce compliance with this Court's Orders and that he should be remanded into custody as a coercive sanction until he fully complies with the Orders.

IT IS FURTHER ORDERED that the Clerk of Court is respectfully directed to mail a copy of this order to Respondent.

**SO ORDERED.**

Date:  **July 14, 2022**
      **New York, New York**

                                    **VALERIE CAPRONI**
                                  **United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENTHOS MASTER FUND, LTD., | |
| Petitioner, | |
| -against- | |
| AARON ETRA, | |
| Respondent. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/2/22____

20-CV-3384 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

WHEREAS the parties appeared for a conference on August 2, 2022;

IT IS HEREBY ORDERED that, for the reasons stated on the record at the August 2, 2022 hearing, the Court finds that Respondent Aaron Etra is in contempt of its order issued on July 14, 2022. *See* Order, Dkt. 132.

IT IS FURTHER ORDERED that Petitioner Benthos Master Fund, Ltd. must inform the Court not later than the close of business on Wednesday, August 3, 2022, whether it will continue to seek information related to the two European accounts at SberBank and Uni-Credit that have been identified throughout the course of this litigation, and whether Petitioner continues to seek information related to an IOLA account that Mr. Etra previously represented he held at Metropolitan Commercial Bank. On the former, should Petitioner continue to seek information related to the European accounts, the Court will refer that issue to the parties' assigned Magistrate Judge. A separate order regarding the documents Mr. Etra must produce by August 10, 2022 will issue after Petitioner has updated the Court.

**SO ORDERED.**

**Date:  August 2, 2022**
**New York, New York**

_Valerie Caproni_
**VALERIE CAPRONI**
**United States District Judge**

1



Aaron Etra
240 East 47th Street- 12A
New York, NY 10017
Tel. 917-856-3500

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____8/31/22____

August 29, 2022

(Via Email to Temporary Pro Se Office)
Judge Valerie Caproni
U.S. District Court for
  the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Benthos v. Etra 20 cv 03384

Dear Judge Caproni,

During the few minutes I had together with my Public Defender, Amy Gallicchio, in a corner outside the Foley Square courtroom in the Thurgood Marshall Courthouse, the morning of August 2nd, Mr. Joshua Bromberg came over to where we were trying to have some semblance of privacy, interrupted Ms. Gallicchio, broke into our discussion and dropped on the bench next to me the attached pile of papers comprising of two new Subpoenas and a new Restraining Order calling for a response by September 1st, saying "Here". Please appreciate the pressure and tension I felt then immediately before such a consequential hearing on which I needed to focus and the surprise Ms. Gallicchio felt that lawyers would act that way.

Both in that August 2nd hearing and in all my submissions I have made before and after, I believe that Your Honor has seen how truly compliant I have tried to be with all your Orders and the efforts I have made, as an 81 year old pro se defendant in fragile health and economic condition, unable to afford the hundreds of thousands of dollars in private counsel fees needed to deal in a balanced fashion with four years of relentless Subpoenas, Restraining Orders and Contempt Motions of Mr. Popofsky and his corporate several person legal team, which have so clearly been, and can only be, of no benefit to his clients. Their only consequence has been and can only be ever more enormous legal bills to Benthos and further injury to someone who has never received any funds in this matter, never has had anywhere near the funds in issue here and has never wronged anyone.

Per the attached email, I respectfully asked Mr. Popofsky for reasonable time to now deal with the 2 new subpoenas/restraining order that were dropped on a courtroom corridor bench, while we are in the midst of litigation on Respondent's Motion to Quash that your Honor set in her Order of August 2, 2022 a date of September 16th for Respondent to file his Reply to Petitioner's Opposition papers, which he has now filed.

Furthermore, in response to Respondent's Motion to Quash the privileged Client Escrow Agreements designated by Your Honor in her order of August 2nd, instead of filing just an opposition affirmation, Petitioner filed a Cross Motion with new elements.  While a Cross Motion can be allowable in general, Your Honor specifically limited the parties in this instance to a focus on the issue of privilege as she presented it in her Order, in which she reminded the parties that they must confine their submissions within the narrow range she set forth:

> IT IS FURTHER ORDERED that, as to all escrow agreements that Respondent has failed to produce that are encompassed within the July 14, 2022 Order, Respondent must either produce all such documents by August 22, 2022, or must *move to quash the subpoena for those agreements not later than August 19, 2022*…

> *The parties are reminded that they must brief only the narrow legal issue of whether the escrow agreements are privileged recognizing that the names of clients, which Petitioner represented at the August 2, 2022 hearing was the only material it sought,* have already been disclosed.

When your Honor set the date September 16th for Respondent to file his Reply, she had no way to know, anticipate or be expected to condone that the Petitioner would be going outside the mandated focus of her clear and explicit Order. Contrary to Your Honor's instructions, Petitioner filed an accompanying Cross Motion with new elements beyond the scope of Your Honor's Order, demanding that they be dealt with, if Your Honor approves this tactic, in opposition papers to the Cross Motion, which would all be due at the same time, as Respondent's reply to the issue at hand, of privilege, on the 16th.

If, contrary to your Honor's strict direction, the attempted Cross Motion would be allowed, additional time would need to be granted by Your Honor, for me to do an opposition to the Cross Motion, which also includes Petitioner's 10 page Memorandum of Law, especially difficult and time-consuming when Respondent is a pro se defendant with no litigation or research experience nor access to counsel.

If this was not enough for someone of my age with my limited resources to legal help, the serving of these 2 new subpoenas/restraining order create an impossibility to respond by the September 1st deadline, while working under Your Honor's direction on the Motion to Quash. Petitioner clearly has no respect for the efforts needed for me to deal with this important question of privilege, pursuant to Your Honor's instructions, especially with him now filing this Cross Motion, which was not contemplated by Your Honor when setting the subject matter and calendar dates for the Motion to Quash.

 In spite of everything filed by Petitioner, I would not have contacted Your Honor at this point in time if the Petitioner would have given me the respectfully requested extension to respond to the two new subpoenas/restraining order dropped on me at the Courthouse. Since not even the courtesy of a response to date has been forthcoming from Petitioner to my email requesting an extension, and Petitioner filed Cross Motion clearly beyond the scope of the

Court's clear instructions, I therefore must ask for Your Honor's intervention to set an appropriate date to respond to these two new subpoenas, preferably not at the same time, and allow me the time at this juncture to devote my efforts to the important privilege issue in the Motion to Quash. Please also give me direction as to the need to respond to Petitioner's Cross Motion, which should be eliminated altogether, as it appears to be contrary to your Order.

Under these circumstances, I respectfully request Your Honor to require Mr. Popofsky to properly serve his new subpoenas with a return dated at the end of September at the earliest, unless a later date is deemed more appropriate by Your Honor in view of the recent attempted cross filing by Petitioner. Please also advise regarding the appropriateness of the Cross Motion, and its September 16th reply date. Any consideration of issues other than privilege as specifically formulated by the Court in the order of August 2nd, should surely await final settlement of that issue by this Court.

Thank you,

Aaron Etra

cc. S. Popofsky, Esq.

---

Respondent's request for an extension to comply with Petitioner's subpoenas is DENIED. Contrary to his representations, Respondent has not been cooperative with Petitioner and has not complied with its subpoenas. The Clerk of Court is respectfully directed to mail a copy of this order to Respondent.

SO ORDERED.

8/31/22

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/26/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENTHOS MASTER FUND, LTD., | |
| Petitioner, | 20-CV-3384 (VEC) |
| -against- | ORDER |
| AARON ETRA, | |
| Respondent. | |

VALERIE CAPRONI, United States District Judge:

Benthos Master Fund, Ltd. ("Benthos") successfully petitioned this Court to confirm an arbitration award of more than $5 million against Aaron Etra ("Etra"), an attorney who is proceeding here *pro se*, and who released Respondent's funds from escrow in violation of his contractual and fiduciary duties as the escrow agent for a purported cryptocurrency sale. Although Benthos began seeking discovery against Etra to execute the judgment over two years ago, Etra has repeatedly failed to produce documents and information about his finances and has persistently and flagrantly disregarded court orders. Etra is now, belatedly, asserting attorney-client privilege over escrow agreements and related information that he has been ordered on multiple occasions to produce to Petitioner. The Court concludes that the escrow agreements and related information are not privileged and must, therefore, be produced. The Court also denies Etra's untimely motions to quash or modify two recent subpoenas requesting further information and documents regarding Etra's services as an escrow agent.

1

I.    BACKGROUND[1]

Petitioner is a California investment firm, and Respondent is a New York attorney.  Pet.,

Dkt. 1, ¶¶ 1, 2.  On August 4, 2018, Benthos agreed to pay $5 million for a quantity of the

cryptocurrency Bitcoin.  *Id.* ¶ 5.  Benthos wired $5 million to Etra, who served as the escrow

agent on the transaction pursuant to an escrow agreement.  *Id.*  Benthos never received any

Bitcoin for its $5 million.  *Id.* ¶ 6.  After Etra refused to provide information about the party to

whom he had released the funds, Benthos sought preliminary injunctive relief from this Court.

*Id.* ¶ 7; *see also* 18-CV-9401.  Etra eventually returned $400,000 to Benthos and provided some

information about the location of the balance of the funds after Judge Batts, the judge assigned to

that matter, threatened to jail him.  *Id.*

Pursuant to an arbitration clause in the escrow agreement, on June 28, 2019, Benthos

served Etra with a notice of arbitration to recover the remaining $4,600,000.  *Id.* ¶¶ 8–9; Escrow

Agr., Dkt. 1-3, at 7.  Although Etra communicated with Benthos' counsel and the arbitrator, he

did not submit a statement of defense and did not attend the arbitration hearing.[2]  Pet. ¶¶ 13–14;

Final Award, Dkt. 1-1, ¶¶ 17, 19–20, 51.  On April 9, 2020, the Arbitrator found that Etra had

released the funds without authorization and thus had violated his contractual and fiduciary

duties as escrow agent in a manner that was willful or grossly negligent.  Final Award ¶¶ 62, 65,

70–72, 77.  The Arbitrator awarded Benthos $5,254,561.12, which included damages, the cost of

---

[1]    Although not directly relevant to Etra's motion to quash, the history of this dispute is detailed below to
make clear that Etra has been given ample time to comply with legitimate subpoenas from his judgment-creditor.
The Court also details the background to make clear that Etra has exhausted the Court's patience.

[2]    Etra has complained to the Court that the judgment Benthos is attempting to collect was the product "of a
[sic] undefended, unilateral arbitration award[.]"  Dkt. 173.  Etra's complaints bring to mind the adage about the
child who killed his parents and then begged for mercy because he is an orphan.  Having chosen not to appear or
defend himself in the arbitration, Etra will not be heard to whine about the consequences of that decision.

arbitration, and pre-award interest.  *Id.* at IX.  He also awarded post-award interest at a simple

4% per annum rate, which began accruing on May 1, 2020.  *Id.*

On April 30, 2020, Benthos filed a petition in this Court to confirm the arbitration award.

*See generally* Pet.  Judge Nathan, who was assigned to the case, confirmed the award and

entered judgment against Etra on August 12, 2020.  *See* Dkt. 14 at 1, 5.  On August 26, 2020, the

Court allowed Benthos to begin enforcement proceedings.  *See* Dkt. 21.

Pursuant to Federal Rule of Civil Procedure 69(a)(2) and C.P.L.R. § 5224(a)(2), Benthos

promptly served Etra with a subpoena *duces tecum* (the "First Document Subpoena") and a

restraining notice with information subpoena (the "First Information Subpoena").  *See* First Doc.

Subp., Dkt. 24-1; First Inf. Subp., Dkt. 24-2.  The First Document Subpoena directed Etra to

produce fifty-nine  categories of documents concerning his finances, including "[a]ll documents

concerning any [of his] escrow agent agreements," and to provide a log of any responsive

documents withheld as privileged.  First Doc. Subp. at 2, ¶ 32.  The First Information Subpoena

directed Etra to respond under oath to thirty-six questions concerning his finances and restrained

his use of his property.  *See* First Inf. Subp.  Etra was required to respond or object by September

21, 2020.  *See id.* at 2; First Doc. Subp. at 2; Fed. R. Civ. P. 45(d)(2)(B).  Etra did not object to

either subpoena, repeatedly requested extensions to respond, and eventually produced some

documents and information to Benthos in September 2020.  Dkt. 24 at ¶¶ 6–12.  On October 12,

2020, Benthos moved to hold Etra in civil contempt for failing to comply with the subpoenas.

Dkt. 23.  Judge Nathan denied Respondent's motion without prejudice but stated that it was

"clear" that Etra had not adequately responded to the subpoenas.  Dkt. 33.  The Court ordered the

parties to submit a joint letter setting forth a mutually agreeable date by which Etra would

respond.  *Id.*  In December 2020, the Court referred the parties to Magistrate Judge Parker for a

settlement conference.  Dkt. 38.  Judge Parker ordered Etra to respond to the subpoenas later that

month, Dkt. 39, and the Court eventually extended the deadlines for Etra to respond into January

2021, Dkt. 54.

On January 19, 2021, Benthos again moved to hold Etra in contempt due to his continued

non-compliance with the subpoenas and court orders.  Dkt. 56.  Judge Nathan ordered Etra to

comply with the subpoenas as previously ordered.  Dkt. 59.

In February 2021, Benthos moved the Court to order Etra to address remaining

deficiencies in his responses.  Dkt. 60.  Among the documents that Etra had not produced were

escrow agreements (the "Escrow Agreements") and a privilege log for any documents he was

withholding as privileged.  *Id.* at 11–12.  Judge Nathan referred the case for general pretrial

management to Judge Parker, Dkt. 62, who ordered Etra to produce a subset of the subpoenaed

documents for *in camera* review by March 15, 2021, and to make a first installment payment

toward the judgment by the end of March, 2021.  Dkt. 63.  After Etra submitted certain records

to Judge Parker without fully complying with her order, Dkts. 74 at 1; 95 at 6, the parties reached

a settlement agreement on April 1, 2021, Dkt. 95 at 6.  Judge Parker denied Petitioner's

discovery motion without prejudice in light of settlement.  Dkt. 65.

In May 2021, when Etra failed to make any payment, thereby voiding the settlement,

Benthos renewed its application for sanctions.  Dkts. 66; 74 at 2; 95 at 6.

On May 11, 2021, Benthos issued another subpoena *duces tecum* (the "Second Document

Subpoena") seeking the documents Etra had provided to Judge Parker *in camera* and documents

regarding Etra's attempt to secure funds for the judgment or settlement agreement.  Second Doc.

Subp, Dkt. 68-1.  In response to the Second Document Subpoena, Etra produced certain

documents but, again, he did not comply fully with the subpoena or outstanding court orders. *See* Dkts. 70; 95 at 7.

On June 17, 2021, Judge Parker ordered Etra to produce the documents he had provided the Court *in camera* or to show cause why the documents should not be produced to Benthos by July 2, 2021. Dkt. 74. Judge Parker denied Petitioner's renewed request to hold Etra in contempt without prejudice. *Id.* Etra notified Judge Parker that he had complied with her orders and had provided requisite documents to Benthos, Dkt. 78, but, in fact, he had produced only a small portion of the required documents, Dkt. 95 at 7.

On September 30, 2021, Benthos once again moved for Etra to be held in civil contempt for his failure to make payments on the judgment and for his continued non-compliance with the subpoenas, including with Petitioner's request for the Escrow Agreements. *See* Dkt. 81. Judge Parker held an evidentiary hearing on the motion. Dkt. 89.

On March 14, 2022, Judge Parker issued a report and recommendation ("R&R") recommending sanctions be imposed against Etra. Dkt. 95.[3] Neither party filed objections, and Etra did not comply with the order that he produce certain documents within a week. Dkts. 103–05; 108 at 2. On April 12, 2022, the case was reassigned to the Undersigned.

On May 16, 2022, the Court adopted the R&R in part. Dkt. 108. The Court denied Petitioner's request for conditional incarceration without prejudice and ordered Etra to produce a list of documents regarding certain accounts alongside an affidavit stating that he has no other

---

[3] Continuing his pattern of delay, Etra requested an extension to object to the R&R. Dkt. 97. Benthos consented to the request so long as Etra produced the Escrow Agreements and certain other documents. Dkt. 99 at 3. The Court granted Etra a one-week extension either to file objections to the R&R or to file a letter affirming that he had satisfied certain discovery requests, including by providing the Escrow Agreements, but Etra did not do so. Dkts. 102; 108 at 2 n.1

open accounts or assets (or identifying assets) by June 20, 2022. *Id.* at 3–4. The Court ordered a $50 per-day fine until Etra achieved full compliance. *Id.* at 4–6.

Predictably, Etra requested an extension to comply with the order. Dkt. 110. Benthos consented and asked the Court to order prompt compliance with certain requests, including its long-outstanding subpoena for the Escrow Agreements. Dkt. 111; *see also* Dkt. 99 at 3. The Court granted Etra an extension until July 1, 2022, and specifically ordered him to produce the documents Petitioner requested in its letter. Dkt. 113. Etra asked for another extension and a hearing. Dkt. 114. The Court denied Etra's extension request and scheduled a hearing regarding whether he should be held in contempt. Dkt. 116. The Court further ordered Etra to appear with the documents he was ordered to produce by July 1, 2022, and stated that if he failed to satisfy the Court's orders, he would be incarcerated until he complied. *Id.*

Etra sent certain tax documents to Petitioner's counsel, Dkts. 119–21, 125, but did not fully satisfy the Court's orders by the date of the hearing, which he failed to attend, Dkt. 126 at 1.

On July 7, 2022, the Court ordered Etra to show cause before the Court on July 13, 2022, why a warrant for his arrest should not be issued so he could be imprisoned as a coercive sanction until he complied fully with the Court's orders. *Id.* The Court also ordered that Etra's $50 per-day fine would increase to $1000 effective the following day and would thereafter double every day until Etra fully complied or was jailed. *Id.* at 4.

On July 10, 2022, Etra produced certain responses and documents purportedly to satisfy the Court's orders, Dkts. 127, 129, and refused to provide certain subpoenaed information, Dkt. 130. In response to the Court's order regarding documents that Etra had withheld as privileged, including the Escrow Agreements, Etra asked to discuss "in camera matters regarding any

information regarding clients' funds and other elements" with the Court.  Dkts. 127 at 32; 129 at 98.  He also submitted that he had "no other savings, money market, certificates of deposit, investments, retirement accounts, safety deposit boxes or financial assets" beyond the minimal financial information provided to Petitioner's counsel.  Dkt. 129 at 98.

The parties appeared before the Court on July 13, 2022.  Dkt. 132.  The Court found Etra in civil contempt for failing to produce documents as ordered and remanded him into the custody of U.S. Marshals.  *Id.* at 1.  Later that day, the Court ordered Etra released from custody subject to his commitment to comply with a document production schedule.  *Id.*

On July 14, 2022, Etra was ordered to produce a number of documents by certain dates with accompanying affidavits.  *Id.* at 2–5.  Included among the documents Etra was ordered to produce were the Escrow Agreements.  *Id.* at 2.  The Court also ordered Benthos to submit a letter to the Court setting forth any continued deficiencies by July 26, 2022, *id.* at 5, and withdrew the reference to Judge Parker, Dkt. 133.

On July 25, 2022, Benthos informed the Court of Etra's remaining deficiencies and violations of its restraining order restricting his use of property.  Dkt. 136.  Benthos stated that Etra refused to produce the Escrow Agreements on privilege grounds despite evidence that he was conducting a substantial amount of escrow account business.  *Id.* at 2.  The Court ordered Etra to show cause at the next status conference why he should not be held in civil contempt and remanded in light of his continued violation of court orders.  Dkt. 137 at 13.  The Court also required Benthos to submit a spreadsheet reflecting the items Etra had been ordered to produce pursuant to the Court's July 14, 2022, order, the items Benthos had received, and the items Benthos did not receive but believes exist.  *Id.*

In its spreadsheet, Benthos stated that Etra had produced two forms of escrow agreements and two escrow agreements, but that Etra had failed to produce additional responsive escrow agreements that undoubtedly exist and are within his custody and control. Dkt. 140-1 at 1. In support of that contention, Benthos stated that Etra represented that only two clients had allowed him to release their information but that bank statements Etra had produced reflected "dozens of transactions" in his attorney escrow accounts. *Id.*

In response, Etra stated (among other comments) that "the escrow arrangements are only for a term of 12 months," after which "they terminate and no documents are retained." Dkt. 141 at 3. He further stated that escrow arrangements are "confidential" and that "this commitment to clients as well as privilege deserves to be respected . . . ." *Id.*

Following a status conference on August 2, 2022, the Court found Etra in contempt of its July 14, 2022, order. Dkt. 143 at 1. The Court ordered Etra to produce certain account documents by August 10, 2022, and either to produce the Escrow Agreements associated with certain named clients (whose identities were derived from the bank account statements he had finally produced) by August 22, 2022,[4] or to move to quash the First Document Subpoena for those documents by August 19, 2022.[5] *See* Dkts. 143, 144. The parties were cautioned to "brief only the narrow legal issue of whether the escrow agreements are privileged recognizing that the names of clients, which Petitioner represented at the August 2, 2022 hearing was the only material it sought, have already been disclosed." Dkt. 144 at 2–3.

---

[4]    The names of at least thirty-one of Etra's escrow clients were ascertained from the attorney escrow account documents Etra belatedly produced. Dkt. 144 at 3–4.

[5]    There has never been any explanation why, if Etra, a licensed attorney, actually believed these documents were privileged, he did not move to quash the subpoenas when they were first received or at some point along the many months between then and August 2022.

On August 2, 2022, Benthos served Etra with another subpoena *duces tecum* (the "Third Document Subpoena") requesting nine categories of documents, including "[a]ll documents concerning any escrow agent agreements" Etra entered into starting in July 2022, and "[a]ll documents, including but not limited to agreements and written communications, concerning the services referred to in item No. 1" of an accompanying information subpoena (the "Second Information Subpoena").[6]  *See* Third Doc. Subp., Dkt. 155-2.  The first item of the Second Information Subpoena directs Etra to identify "(i) the name and full contact information (address, telephone, e-mail and otherwise) for every 'client,' or other individual or entity, for which [Etra] ha[s] performed any legal, 'paymaster,' escrow-related or other services from August 1, 2017 through the present; (ii) for each such individual or entity, the precise nature of the services performed; (iii) for each such individual or entity, specifically what compensation [Etra] (or any affiliated person or entity, including but not limited to Koraljka Troselj[7]) received for those services; (iv) where such compensation was paid to, in each instance separately (including names, addresses, account numbers, and [Etra's] responsible contact officers at each such institution); (v) all subsequent transfers of such compensation received; and (vi) the current whereabouts of all such compensation."  Second Inf. Subp., Dkt. 155-3, ¶1.  The subpoenas required responses or objections by September 1, 2022.  *See* Third Doc. Subp. at 1; Second Inf. Subp. at 1; Fed. R. Civ. P. 45(d)(2)(B).

On August 19, 2022, Etra moved to quash the First Document Subpoena to the extent it requires production of the Escrow Agreements (the "First Motion to Quash").  Dkt. 149.

---

[6]    The portions of the Third Document Subpoena and Second Information Subpoena seeking documents or information regarding Etra's escrow agreements, together with the Escrow Agreements, are referred to as the "Escrow Agreements and Related Information."

[7]    Petitioner suspects that Ms. Troselj, who is based in Europe, is Etra's wife.  *See* Dkt. 93.

Benthos opposed the motion and filed a cross-motion for an order granting relief for Etra's apparent spoliation of subpoenaed documents[8] and ongoing willful violations of Petitioner's restraining notice. Dkt. 151.

On August 29, 2022, the Court denied Petitioner's cross-motion without prejudice to re-raise the motion if, after its motion to quash is decided and the Escrow Agreements are (again) ordered to be produced, Etra states that he cannot do so as to some or all of the agreements because they have been lost or destroyed. Dkt. 154.

On August 30, 2022, after already missing the deadline to reply to the Third Document Subpoena and the Second Information Subpoena, Etra requested an extension of time to respond, Dkt. 155, which the Court denied, Dkt. 157. Two days later, Etra moved to quash those subpoenas in their entirety or, at minimum, those portions requesting "privileged information and related information . . . ." (the "Second and Third Motions to Quash"). Dkts. 158, 164. Etra also moved the Court to find that the subpoenas were improperly served and to modify the date range covered. *Id.* Benthos opposed, Dkt. 162, and Etra replied seven days late, Dkt. 166, after the Court advised that no extensions would be granted, Dkt. 163. Etra then asked the Court to stay the case pending the parties' settlement discussions, Dkt. 167; Benthos opposed that request, stating that the parties have not reached a settlement, Dkt. 168. The Court denied Etra's request for a stay. Dkt. 169. On September 20, 2022, Etra reiterated his views on settlement and admitted that he "took modest fees" over the last "four years of this matter." Dkt. 170.[9]

---

[8]     Etra has repeatedly stated that he lost documents, including apparently copies of escrow agreements, when work was done on his computer. He has not, however, produced any evidence of that beyond his own say-so. Given Etra's tendency to prevaricate, his say-so is of virtually no value.

[9]     On September 23, 2022, Etra asked the Court "to recognize and support the parties constructively finalizing a settlement solution at hand." The Court is fully supportive of the parties resolving this matter, but unless and until a settlement is consummated, Etra must comply fully with subpoenas and Court orders or he will be held accountable for his failure to do so. Etra has had years to propose and consummate a settlement.

## II.    DISCUSSION

### A.  Etra Has Not Established that the Escrow Agreements and Related Information Are Privileged

To prevail on his motion to quash portions of Benthos' subpoenas that require production of the escrow agreements and information regarding them, Etra has the burden of showing that the Escrow Agreements and Related Information are protected by attorney-client privilege.  *See In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  The attorney-client privilege attaches "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived."  *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (citation omitted); *United States v. Tomero*, 471 F. Supp. 2d 448, 450–51 (S.D.N.Y. 2007) (same).

The Second Circuit has "consistently held that, absent special circumstances, client identity and fee information are not privileged."  *In re Grand Jury Subpoena Served upon Doe*, 781 F.2d 238, 247 (2d Cir. 1986) (citations omitted); *see also Lefcourt v. United States,* 125 F.3d 79, 86 (2d Cir. 1997) (holding that the attorney-client privilege does not protect client-identifying information "simply because [the information] could prejudice the client" in a case); *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504–07 (2d Cir. 1991) (holding that the privilege does not protect client identity and fee information from an IRS subpoena).

Although what constitutes "special circumstances" has "not been precisely defined," the Second Circuit has recognized that a client's identity should not be revealed where it would be "tantamount to exposing the purposes for which the client sought legal advice," and that fee payment information should not be disclosed where it would "inhibit open, full and frank

11

discussion between [a lawyer] and his client concerning legal representation." *Vingelli v. United States*, 992 F.2d 449, 450–54 (2d Cir. 1993). Such "special circumstances" are "seldom found to exist," *Lefcourt*, 125 F.3d at 88, and do not arise even where the information "might incriminate the client," *Goldberger*, 935 F.2d at 505. The Second Circuit expressly declined to adopt "a broad privilege against the disclosure of the identity of clients and of fee information" because it "might easily become an immunity for corrupt or criminal acts." *In re Shargel*, 742 F.2d 61, 62 (2d Cir. 1984) (citation omitted).

In support of his motions to quash those portions of the subpoenas requesting the Escrow Agreements and Related Information,[10] Etra argues that compliance would reveal his clients' private business information and that his non-party clients are irrelevant to this action.[11] Resp. First Mem., Dkt. 150, at 5. Benthos counters that the Escrow Agreements set forth business transactions for which Etra did not function as a lawyer, do not involve communications, and contain unprivileged identity and fee information. Pet. First Mem. in Opp., Dkt. 153, at 4.

Etra has not even attempted to meet his burden of showing that any of the exceptional circumstances the Second Circuit has articulated that would render client identities or fee information privileged apply here, especially where at least some client identities are already known. Moreover, the Second Circuit has expressly rejected Etra's argument that the Escrow Agreements and Information should not be disclosed because his clients are non-parties. *See In*

---

[10]    The Court has not considered Etra's untimely reply. Even if it were considered, however, it would not change the Court's analysis.

[11]    Etra also asks the Court to seal bank statements that reveal his clients' names because he produced the account documents "under duress." Resp. First. Mot. at 5. As further discussed in the Court's opinion, the names are not privileged, but even if they were, courts in this Circuit have "repeatedly found sealing improper where the relevant material was already made public." *Shetty v. SG Blocks, Inc.*, 20-CV-550 (ARR) (MMH), 2021 WL 4959000, at *4 (E.D.N.Y. Oct. 26, 2021) (collecting cases). The notion that Etra was under duress because, having failed to properly object or move to quash the subpoena, he was ordered to produce relatively few documents after receiving myriad extensions, is ludicrous.

*re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985*, 793 F.2d 69, 71–72 (2d Cir. 1986) (rejecting a subpoenaed party's argument that "the identities, awards and fee arrangements of [a] [law] firms' clients should not be disclosed since the attorneys, not the clients, are the target of [a] grand jury investigation" because "the rationale underlying the attorney-client privilege is inapplicable").

It is telling that Etra magnifies the minimal burden of producing the requested documents on himself rather than on those whom the privilege is primarily designed to protect: his clients. Because Etra falls woefully short of establishing privilege, his First Motion to Quash and the portions of his Second and Third Motions to Quash regarding the Escrow Agreements and Related Information are DENIED.

**B. Etra's Other Arguments for Quashing Petitioner's Subpoenas Are Meritless**

Although the parties were expressly instructed to limit their briefing to whether the Escrow Agreements are privileged, the Court briefly addresses the additional arguments raised in Etra's Second and Third Motions to Quash.  As a threshold matter, the Second and Third Motions to Quash were made sixteen days late and without leave from the Court.  *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.").  Even overlooking Etra's procedural default, his objections to Petitioner's subpoenas are groundless.

Federal Rule of Civil Procedure 69(a)(2) provides that "[i]n aid of" the execution of a judgment, "the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  New York civil procedure allows judgment-creditors to serve "information subpoenas" to obtain evidence relating to the judgment-debtor's assets and any

13

other "matters relevant to the satisfaction of the judgment." *Giuliano v. N.B. Marble Granite*, No. 11-MC-00753, 2014 WL 2805100, at *3 (E.D.N.Y. June 20, 2014); *see also* N.Y. C.P.L.R. §§ 5223–5224.

"[B]road post-judgment discovery in aid of execution is the norm in federal and New York state courts." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 54 (2d Cir. 2002); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011) (Rule 69 "permits 'wide latitude in using the discovery devices provided by the Federal Rules in post-judgment proceedings.'" (quoting *Gibbons v. Smith*, No. 01-CV-1224, 2010 WL 582354, at *3 (S.D.N.Y. Feb. 11, 2010))); *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, No. 88-CV-3039, 1993 WL 50528, at *1 (E.D.N.Y. Feb. 23, 1993) (a judgment-creditor "is entitled to a very thorough examination of a judgment debtor with respect to its assets" (internal quotation marks omitted)).

Under Rule 45(d), a subpoena recipient may move to quash or modify the subpoena if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "[T]he burden of persuasion in a motion to quash a subpoena . . . is borne by the movant." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citations omitted).

Etra first complains that two of Petitioner's subpoenas were improperly served because they were served while he was in a courthouse. Resp. Second Mem., Dkt. 159, at 4; Resp. Third Mem., Dkt. 165, at 4. Although there may be circumstances pursuant to which a person is immune from service in a courthouse, Etra has articulated no basis for the Court to conclude that he was immune from service at the time he was served. As a general matter, "[a] subpoena may be served at any place within the United States." Fed. R. Civ. P. 45(b)(2). Next, Etra objects that items one, four, and six of the Second Information Subpoena (and by extension item five of

the Third Document Subpoena) improperly request financial information going back to August 1, 2017, even though the parties only began their business engagement in August 2018. Resp. Second Mem. at 5; Resp. Third Mem. at 5. This objection ignores settled law that a judgment-creditor "must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor," *First City*, 281 F. 3d at 54 (internal quotations and citation omitted); by its nature, that inquiry has nothing to do with when the parties first began transacting with one another. Etra also claims that item four of the Second Information Subpoena, which orders him to list all of his financial accounts going back to August 1, 2017, and items three and six of the Third Document Subpoena, which order him to produce account documents and landlord communications going back to August 1, 2017, are unduly burdensome because he already produced the information in response to multiple court orders. Resp. Second Mem. at 5–7; Resp. Third Mem. at 6–7   But those same court orders repeatedly admonished Etra for his deficiencies, *see* Dkts. 33, 108, 144, and if he already collected most or all of the information in response to Petitioner's prior subpoenas, the burden of producing it again should be minimal.[12] Finally, Etra argues that Petitioner's subpoenas violate his human rights. Resp. Second Mem. at 7–9; Resp. Third Mem. at 7–9. Etra could have spared himself the indignities he complains about by (a) not wrongfully releasing Benthos' funds from escrow and (b) promptly complying with his legal obligations. The remaining portions of his Second and Third Motions to Quash are DENIED.

## CONCLUSION

For all foregoing reasons, Respondent's motions to quash Petitioner's subpoenas are DENIED. Respondent must produce all escrow agreements that were in force and effect at any

---

[12]    Petitioner also voluntarily withdrew several requests in the Second Information Subpoena and the Third Document Subpoena, further easing Etra's burden. *See* Pet. Second Mem. in Opp., Dkt. 161, at 5 & n.2.

time between August 1, 2017, and the present to which he is or was a party, including any escrow agreements previously withheld as privileged and any escrow agreements with the clients listed in the Court's August 2, 2022 Order, Dkt. 144 at 3–4, not later than **Friday, September 30, 2022**.  Respondent must also fully respond to Petitioner's Third Document Subpoena and Second Information Subpoena not later than **Friday, October 7, 2022**.  If Respondent continues to proceed *pro se*, he must file any submissions to the Court via ECF.  If Respondent fails to produce all of the documents and information ordered above to be produced, Petitioner can move for an order to show cause why Respondent should not be held in contempt and jailed as a coercive sanction until he complies.

The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 149, 158, and 164.  The Clerk of Court is further directed to mail a copy of this Order to Mr. Etra and to note the mailing on the public docket.

**SO ORDERED.**

Date:  **September 26, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENTHOS MASTER FUND, LTD.,

                              Petitioner,

              -against-

AARON ETRA,

                              Respondent.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____         │
│ DATE FILED:____8/2/22_____           │
└─────────────────────────────────────┘
```

20-CV-3384 (VEC)

ORDER

VALERIE CAPRONI, United States District Judge:

WHEREAS the parties appeared for a conference on August 2, 2022; and

WHEREAS at that conference, the Court found Respondent Aaron Etra in contempt of its

order issued on July 14, 2022, *see* Order, Dkt. 143;

IT IS HEREBY ORDERED that, as the Court stated on the record at the August 2, 2022

hearing, not later than **August 10, 2022**, Mr. Etra must produce the following items, or otherwise

produce adequate documentation indicating that he is unable to do so:

1) Monthly statements for any IOLA account he held at Metropolitan Commercial Bank,

   from August 1, 2018 until closing or to the present, if the account remains open;

2) Monthly statements from August 1, 2018 to July 1, 2021 for the "DDA 2060" account

   at Piermont Bank;

3) Monthly bank statements for all accounts into which Respondent's social security

   checks were deposited after August 1, 2018 and prior to the time such payments

   began to be deposited into his account at Piermont Bank;

4) All monthly statements for the HSBC bank account ending in x9990 from August 1,

   2018 to the present, or, if that account has been closed, statements from August 1,

   2018, through the closing;

1

5) All monthly statements for the HSBC bank account ending in x6096 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing;

6) The monthly statement for November 2019 for the HSBC bank account ending in x6401, and the monthly statements for that same account from April 30, 2020 through the account's closing on June 19, 2020;

7) All monthly statements for the HSBC bank account ending in x6509 after December 1, 2019 through the account's closing on June 19, 2020;

8) All monthly statements for the HSBC bank account ending in x6509 from August 1, 2018 to the present, or, if that account has been closed, statements from August 1, 2018, through the closing;

9) The closing statement for the Citibank account ending in x0669;

10) Monthly bank statements for the CitiBank IOLA account ending in 0873.

IT IS FURTHER ORDERED that, as to all escrow agreements that Respondent has failed to produce that are encompassed within the July 14, 2022 Order, Respondent must either produce all such documents by **August 22, 2022**, or must move to quash the subpoena for those agreements not later than **August 19, 2022**. The memorandum in support of the motion to quash must be no longer than 15 double-spaced pages with standard margins and otherwise comply with the Undersigned's Individual Rules. Petitioner's response, also limited to 15 double-spaced pages, is due not later than **September 9, 2022**. Respondent's reply, of no more than 5 double-spaced pages, is due not later than **September 16, 2022**. The parties are reminded that they must brief only the narrow legal issue of whether the escrow agreements are privileged recognizing that the names of clients, which Petitioner represented at the August 2, 2022 hearing was the

only material it sought, have already been disclosed.  These escrow agreements include, *but are not necessarily limited to*, agreements with:

1) Day Law & Associates P.C. (Piermont 2292)[1]

2) Renato Corzo (Piermont 2292)

3) 1/Goldfinger Enterprise SL (M&T 7045)

4) Charles L. Weinstein ITF Marlene Mar (M&T 7045)

5) Fisher Enterprise (M&T 3441)

6) Oceanix Inc. (M&T 3441)

7) Steven Kavanagh (M&T 3441)

8) Novavis Medical AG (M&T 3441)

9) Pound International Sender (M&T 3441)

10) Michael E. Bagley (M&T 3441)

11) Alba Lucia Giraldo (M&T 3441)

12) Pass LLC (M&T 3441)

13) Desmond Hinds (M&T 3441)

14) Konrad Jan Banasiak (M&T 3441)

15) 1/Borna Tomicic (M&T 3441)

16) Tennessee Bar Foundation (M&T 3441)

17) Ultima Racing Stable PTE Ltd. (M&T 3441)

18) Fiscal Asset Management Europe Pty (M&T 3441)

19) George Michael Du Plooy (M&T 3441)

20) Patrick Creamer (M&T 3441)

---

[1]    The parentheticals reflect the accounts that identify the particular client.

21) Timothy L. Sanford (M&T 3441)

22) Incept Holdings BVI Ltd. (M&T 3441)

23) Charles Nastasi (M&T 3441)

24) Eric Valdes (M&T 3441)

25) Puerta Del Pacifico (M&T 3441)

26) DIZA Marine Services and Surveys (M&T 3441)

27) Harold Wright Peavy (M&T 3441)

28) John R. Watkins (M&T 3441)

29) Peavy & Co., Inc. (M&T 3441)

30) Valarie Baptiste Irrevocable Private Trust (M&T 3441)

31) Razur 7711 LLC (3441)

Should Respondent's motion to quash be denied, Respondent must be prepared to disclose all escrow agreements, or otherwise produce adequate documentation indicating he is unable to do so, by the time indicated in the Court's order deciding the motion.

IT IS FURTHER ORDERED that the Court will, by separate order, refer to the assigned Magistrate Judge the question of whether Respondent has custody or control over the two European bank accounts at SberBnak and Uni-Credit and, therefore, his failure to produce monthly bank account statements from August 1, 2018 to the present or, if those accounts are closed, statements from August 1, 2018, through their closing, as required by the July 14 Order, *see* Dkt. 132 at 4, constitutes contempt of court.

IT IS FURTHER ORDERED that the Clerk of Court is respectfully directed to mail a copy of this order to Mr. Etra.

4

**SO ORDERED.**

**Date:  August 2, 2022**
       **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BENTHOS MASTER FUND, LTD,

                             Petitioner,

               -against-

  AARON ETRA,

                           Respondent.

------------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #:_____               │
│ DATE FILED: 3/1/2021 _____        │
└─────────────────────────────────────┘
```

**ORDER IN AID OF MEDIATION**

**20-CV-3384 (AJN) (KHP)**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

In connection with the settlement proceedings before this Court, and as directed during the settlement conference on Friday February 26, 2021, Defendant Aaron Etra shall produce to this Court for in camera review the following records:

1. Monthly account statements for the period January 1, 2018 through the present for Aaron Etra 41book credit from which Etra made deposits into HSBC accounts ending with 6401 and 6410;

2. Monthly account statements for the period January 1, 2018 through the present for Aaron Etra 45book debit which received transfers of cash from HSBC accounts ending with 6410 and 6410;

3. Monthly account statements for the period January 1, 2018 through the present for HSBC accounts ending in 9990, 6096, 6100, 7955, 6401, 6410, 6509.  To the extent such accounts have closed, Etra shall nevertheless collect the historical monthly account statements and also provide the account closing statements;

1

4.  Etra shall identify the account from which he made payments to his HSBC credit card account ending in 0169 in July and September 2020.  Etra shall also produce monthly statements of the same HSBC credit card account ending in 0169 from January 1, 2018 through the present, and, if closed, the closing statement in addition to the historical monthly account statements;

5.  Monthly account statements for the period January 1, 2018 through the present for his Uni-credit affiliate account (which Etra informed the Court was an account in Austria);

6.  Monthly account statements for the period January 1, 2018 through the present for his City National Bank Account (referred to in his January 8, 2021 response to the Information Subpoena);

7.  Etra shall identify all bank accounts he maintains or maintained in Europe for the period January 1, 2018 to present, including the name of the bank, the account number, monthly statements, and a closing statement if applicable;

8.  Monthly account statements for the period January 1, 2018 through the present for Metropolitan Commercial Bank accounts ending in 3609 and 3617.  To the extent such accounts have closed, Etra shall nevertheless collect the historical monthly account statements and also provide the account closing statements;

9.  Monthly account statements for the period January 1, 2018 through the present for M&T accounts ending in 3433 and 3441.  To the extent such accounts have closed, Etra shall nevertheless collect the historical monthly account statements and also provide the account closing statements;

2

10. Monthly account statements for the period January 1, 2018 through the present for TD Bank account ending in 3529. To the extent such account is closed, Etra shall nevertheless collect the historical monthly account statements and also provide the account closing statement;

11. Monthly account statements for the period January 1, 2018 through the present for JP Morgan account 4546. To the extent such account is closed, Etra shall nevertheless collect the historical monthly account statements and also provide the account closing statement;

12. Etra shall identify all bank accounts he maintains or maintained since judgment was entered on August 13, 2020, including the name of the bank, the account number, monthly statements, and a closing statement if applicable; and

13. Etra shall identify all credit card accounts he maintains or maintained since judgment was entered on August 13, 2020, including the name of the credit card, the credit card account number, monthly statements, and a closing statement if applicable.

*      *      *      *

The due date for the complete production listed above is **March 15, 2021**. Mr. Etra may email the documents to Parker_NYSDChamber@nysd.uscourts.gov, or, alternatively, provide physical copies. Physical copies may be dropped off at the U.S. Courthouse, Attn: Hon. Katharine H. Parker, 500 Pearl St., Chambers 750, NY, NY 10003.

By **March 31, 2021,** Mr. Etra shall make a first installment in the amount of $83,333 toward the judgment he owes to Petitioner.

3

A second settlement conference will be held on **Thursday, April 1, 2021 at 3:00 p.m.**

The parties are directed to dial in to the conference at the directed time:  **dial (866) 434-5269;**

**access code 4858267**.  A security code for the dial-in line will be provided to the parties in

advance of the conference.

**The Petitioner is directed to serve this order on the Respondent.  The Court also will**

**mail a copy of this Order to the Respondent.**

**SO ORDERED.**

Dated: March 1, 2021
        New York, New York

_____
        KATHARINE H. PARKER
        United States Magistrate Judge

4

December 20, 2020

To: Honorable Alison J. Nathan
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re: Benthos v. Etra 20 Civ. 03384

Dear Judge Nathan,

I received the two Orders I am attaching, via an email from Mr. Steven Popofsky, only a few hours after I received from him, also via email, his letter to you, which I am also attaching, all on Friday, December 4th.

I was disappointed in not being able to send you a response to Mr. Popofsky's letter before you issued your Orders that same day, on December 4th , and I have been unable to even write to you until now. My time and energy has been spent in tests and medical appointments and the recovery from them. The latest was this past Friday when I started with a medical appointment at 10.30am and was released from the New York Presbyterian ER at 9.07pm after tests from which I try to use the weekend to recover (see attached release form). I am facing several subdural brain/skull blood hematoma and arachnoid conditions, cardiac insufficiency and blood cell count fragility, the treatment of which needs to be carefully coordinated among several medical specialties over time but watched closely and remediation undertaken now as there is significant danger in delay or exposure to further stress and exacerbating action.

Mr. Popofsky continues to disregard many things in his relentless pursuit of me, starting with the impact on the person he has targeted and the consequences to my health of his actions, including denying access to funds needed to pay rent and purchase necessities. Also, his insisting on more discovery, notwithstanding all that he has already accumulated in prior depositions and discovery and all current information submitted to him and to your Honor most recently, which, once he gets any such material, leads to his contacting banks which freeze and close any accounts holding my very limited funds. From his first involvement in this matter right up to the present, he refuses to take seriously and act responsively to my offers of cooperation which have dated back to the period when his clients first found themselves in the situation which I had nothing to do with, as he and his clients know full well, and they, the Benthos managers, saw and appreciated how much I devoted myself to trying to help them and their counterparty in the business transaction at only a cost and no benefit to myself. Finally, even in the referral to Judge Parker, Mr. Popofsky's submission does not make clear that his contempt motion was not granted.

Please also appreciate, that far from "scamming " or in any way acting dishonorably, I have consistently acted and assisted Benthos with their knowledge and consent as with all persons I work with, even to the point at which I am now, with human and financial resources dissipated in facing the continuing personal onslaught of Mr. Popofsky's corporate law firm against someone with such limited resources, which cannot be justified as an expenditure of his client's money,

nor as truly professional in dealing with someone he calls to task as a lawyer and
then continually unjustly disparages further injuring my health and economic condition.

There has never been any evidence of my involvement with any untoward activity or unjust
enrichment and all the discovery in the world will not unearth any, because none exists, as that
has never happened and all parties know this. Yes, any loss is regrettable and deserving of
efforts to try to ameliorate, which has been my approach all along .But, this effort should not be
at the cost of the injury to a blameless services provider caused by Mr. Popofsky's actions on
behalf of his well-financed offshore fund, in business to make and cope with loss of money,

Before my conditions and the needed tests intensified, I did suggest several weeks of party to
party settlement discussions, which I had hoped to be able to do by correspondence. Mr.
Popofsky rejected that approach as he has all my good faith offers since he first began his
attacks. Now, I am not sure how physically capable I am currently to deal with Mr. Popofsky's
insensitivity and unresponsiveness.

Under these circumstances, I respectfully request your Honor to order that, until at least the end
of January, when my medical people, hopefully, will have been able to either stabilize my
condition or will have intervened surgically, on which I will report to you or, if I cannot,
will have someone do so on my behalf :

1. Mr. Popofsky releases any holds on my bank accounts and forbears communicating with any
   banks with respect to me;
2. Any dates for discovery or responses to the existing subpoenas will be reviewed at that time
   ;
3. The referral to Judge Parker be postponed from January 7th and reviewed at the end of
   January, including as to its correctness.

I am sorry to not be able to more formally communicate with you other than via this email but I
remain alone and without assistance.

With thanks and respectfully submitted,

/ss/ Aaron Etra

Aaron Etra
240 East 47th Street- 12A
New York, NY 10017
917-856-3500





USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __12/17/2020__

*Direct Dial: 212.880.9882*
*E-Mail: spopofsky@kkwc.com*

December 16, 2020

**Via ECF**
Honorable Alison J. Nathan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    **Benthos v. Etra, 20 Civ. 03384**

Dear Judge Nathan:

Last evening, judgment debtor Aaron Etra sent me what appeared to be a copy of an e-mail addressed to Your Honor, with no indication of when it was sent and no visible e-mail addressee.  Mr. Etra, a Member of the Bar, knows quite well how to file through the ECF system – see, e.g., Dkt. 28 (16-page memorandum of law) and Dkt. 31 (Notice of Appeal with detailed statement of purported issues) – and he should be required to do so.  In any event, please accept this brief response.

•        An independent arbitrator ruled that Mr. Etra breached his fiduciary duties to my client, and this Court confirmed the award.  Mr. Etra may pretend otherwise, but surely he understands the consequences of my client (which he put out of business) having a judgment against him.

•        Mr. Etra seems to have no trouble seeking here to relitigate his liability and his adjudicated misconduct, over and over,[1] yet he has not been able to trouble himself even to list all of his financial accounts and credit cards since 2018, nor to print the corresponding statements from his (many) banks' websites, much less to comply with the rest of our subpoenas.

---

[1] His comments remain outrageous, not to say Orwellian, and not worthy of rebuttal at this juncture.  "Offers of cooperation"!  "I devoted myself to trying to help them"!  "Far from . . . acting dishonorably, I have consistently . . . assisted Benthos"!  "There has never been any evidence of my involvement with any untoward activity"!  "Blameless"!



Honorable Alison J. Nathan
December 16, 2020
Page 2

• From the moment he received our subpoenas in August, he has adamantly refused to comply with <u>any</u> <u>aspect</u> of them (consistent with his history of prevarication and defiance), including for several months before his recent hospital visit (and he has sent nothing coming close to establishing his inability to comply, which he clearly could do if motivated to do so). He is determined to conceal his financial details, and he has done a good job so far: four months in and we have two pieces of paper.

• We will address settlement issues with the Magistrate Judge, but it is important to repeat that Mr. Etra has never offered one single penny – all he proposes is in effect "you stop judgment enforcement and maybe I will make a concrete proposal months from now." Given my client's principals' experience with Mr. Etra, who was instrumental in stealing $5 million from them and who lied repeatedly to them and to Judge Batts, they (and we) see that for what it is: nothing other than a further delay tactic.

Benthos respectfully refers the Court to my December 4th letter (Dkt. 37), and to our recent contempt papers (Dkt. 24 et seq.). This remains one big stall, and Mr. Etra should not be relieved from the Court's December 4th Order (Dkt. 39). He may as well shout from the rooftops, "I will never reveal my finances until the judge is on the verge of incarcerating me" (just as he refused to return Benthos's $400,000 from his attorney escrow account until Judge Batts told him, "pack your toothbrush").

long it will take to reach that point.

Respectfully yours,

/s/Steven R. Popofsky

Steven R. Popofsky

SO ORDERED.    12/17/2020
ALISON J. NATHAN, U.S.D.J.

The Court has received no email correspondence from Mr. Etra that is not reflected on the public docket. The Court reminds Mr. Etra that pro se filings should be made through the Court's Pro Se Intake Unit. Instructions for pro se filing, including use of the temporary pro se filing email address that the Court has made available during the COVID-19 pandemic, are available on the Court's website at https://www.nysd.uscourts.gov/prose. The Court will not accept filings made by email to Chambers, and notes that on at least one prior occasion, Mr. Etra's intended email to Chambers was not received because it misspelled the Chambers email address. The parties should advise the Court, by properly filed letter, if any judicial action is requested at this time. The Clerk of Court is respectfully directed to mail a copy of this Order to Mr. Etra and to note the mailing on the public docket. SO ORDERED.



Gmail - court orders by Judge Alison J. Nathan

**From:** Aaron Etra <aaron@etra.com>
**Date:** Tuesday, December 15, 2020 at 9:46 AM
**To:** "temporary_pro_se_filing@nysd.uscourts.gov" <temporary_pro_se_filing@nysd.uscourts.gov>
**Subject:** FW: court orders by Judge Alison J. Nathan

(Via Email)

To: Honorable Alison J. Nathan

Thurgood Marshall U.S. Courthouse

40 Foley Square

New York, NY 10007

Re: Benthos v. Etra 20 Civ. 03384

Dear Judge Nathan,

On Friday, December 4th, I received via an email from Mr. Steven Popofsky the two Orders from your Honor that I am attaching,  only a few hours after I received from him, also via email,  his letter to you,  which I am also attaching.

I was disappointed that evening (which is when the material was received) in not having been able to send you a response to Mr. Popofsky's letter before you issued your Orders that day of December 4th  and I have wanted to contact you ever since. My time and limited energy has been spent in tests and medical appointments and the recovery from them. The latest was this past Friday when I started with a medical appointment at 10.30am and was released from the NY  Presbyterian ER at 9.07pm, after tests and procedures from which I try to best  use the time thereafter to recover (see attached release form from the hospital). I am facing several subdural brain/skull blood hematoma and arachnoid conditions, cardiac  insufficiency and blood cell count fragility, the treatment of which needs to be carefully coordinated among several medical specialties over time while being watched closely and remediation undertaken now, as there is significant danger in lack of attention  or having exposure to further stress and exacerbating action.

Mr. Popofsky continues to disregard many things in his relentless pursuit of me, starting with the impact on the person he has targeted and the consequences to my health and basic living conditions of his actions , including denying me access to funds urgently needed to be available to pay unpaid rent and purchase basic necessities. Also, his insisting on more major discovery, notwithstanding all that he has already accumulated in prior depositions and discovery and all  the current information already  submitted to him several times, as well as to your Honor most recently. Once Mr. Popofsky gets any such material,  it leads to his contacting banks which unfailingly  freeze and close any accounts holding my funds, the very limited extent of which was disclosed to your Honor as well as to Mr. Popofsky.

From his first involvement in this matter right up to the present,  Mr. Popofsky refuses to take seriously and act responsively to my offers of cooperation  which have dated back to the period when his clients first found themselves in the situation which I had nothing to do with, as he and his clients know full well. They, the Benthos managers,  saw and appreciated how much I devoted myself to trying to help them and their counterparty in the business transaction, at only a cost and no benefit to myself at any time.

Finally, even in the referral  to Judge Parker, Mr. Popofsky's submission does not appear to make clear that his contempt motion was not granted, nor does it fairly present the opportunity for settlement that has long been available and its desirability in this matter.

Please also appreciate,  your Honor, as  the facts support, that far from "scamming " or in any way acting dishonorably, I have consistently acted and  assisted Benthos with their knowledge and consent as with all persons I work with . Far from the way a person who committed any wrongdoing would act, I continue to offer to be constructive and for the benefit of Benthos , even to the point at which I am now, with human and financial resources dissipated in facing the continuing personal onslaught of Mr. Popofsky's corporate law firm against someone with such limited resources.

Continuing to attack me personally in my present state surely cannot be justified as an expenditure of his client's money or deserving of encouragement or support, nor as truly professional in dealing with someone he calls to task as a lawyer and then  continually unjustly disparages, further injuring my health and economic condition for no valid purpose, rather than accepting an offer which has the best potential for delivering value to his clients while avoiding causing further harm.

There has never been any evidence of my involvement with any untoward activity or unjust enrichment and all the discovery in the world will not unearth any, because none exists, as that has never happened and all parties know this. Yes,  any loss is regrettable and deserving of efforts to try to ameliorate, which has been my approach all along .But, this effort should not be at the cost of the continuing injury to a blameless services provider caused by Mr. Popofsky's  actions on behalf of his crypto-currency investment offshore fund clients, with no possible benefit to any party from doing so.

Before my conditions and the needed tests intensified, I did suggest several weeks of party to party  settlement discussions, which I had hoped to be able to do by correspondence.  Mr. Popofsky rejected even that outreach, as he has to all my  good faith offers since he first entered the matter and began his attacks. Now, I am not sure how physically capable I am currently to deal with Mr. Popofsky's insensitivity and unresponsiveness.

Under these circumstances, I respectfully request your Honor to order that, until at least the end of January, when my medical people, hopefully, will have been able to either stabilize my condition or  will have intervened surgically, on which I will report to you or, if I cannot,  I will  have someone do so on my behalf :

1. Mr. Popofsky releases any holds on my bank accounts and forbears communicating with any banks  with respect to me;
2. Any dates for discovery or responses to the existing subpoenas will be  deferred and be  reviewed at that time ;
3. The referral to Judge Parker be postponed from January 7th and reviewed at the end of January, including as to the correctness and completeness of the submission.

I am sorry to not be able to more formally communicate with you other than via this email message but I remain alone, with limited capacity and without assistance. Please be good enough to communicate with me directly to aaron@etra.com rather than my having to rely on Mr. Popofsky.



With thanks and respectfully submitted,

[Quoted text hidden]

---

**4 attachments**

**037 Letter from SRP[1].pdf**
218K

**038 Order of Reference to a Magistrate Judge.pdf**
554K

**039 Order[1].pdf**
99K

**NY PREBYTERIAN RELEASE FORM 12-11-20.pdf**
147K



*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

December 4, 2020

**Via ECF**
Honorable Alison J. Nathan
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:    <u>Benthos v. Etra, 20 Civ. 03384</u>

Dear Judge Nathan:

This firm represents judgment creditor Benthos.  In accordance with your orders dated November 19 and November 25, 2020 (Dkt. 33 and 36 respectively), we sought to reach agreement with judgment debtor Aaron Etra on "mutually agreeable" dates by which Mr. Etra would comply with our two judgment-enforcement subpoenas dated August 27, 2020.  Mr. Etra has declined to agree to any such dates whatsoever.

This firm's proposed joint letter to the Court, suggesting actual dates, is attached as Exhibit 1.  Mr. Etra's counter-letter, Exhibit 2, proposes nothing more than that "he will provide within a reasonable amount of time whatever responses and materials he can in support of what he has already provided to date."

Mr. Etra appears to believe that compliance with our subpoenas, and with Your Honor's order, is optional.  His excuse, as it were, of being "under medical supervision" is belied by, among other things, his ready ability to engage immediately in "two weeks of direct settlement discussions," followed by participating in a mediation.  He is willfully concealing details of his bank and credit card accounts, which would be easy for him to list, in response to the information subpoena, and equally easy for him to obtain with a few clicks on his banks' websites.[1]

---

[1] Our focus on bank statements and credit card records is of course without prejudice to the other items sought in our subpoenas.  But these are among the most important, and the easiest.



Honorable Alison J. Nathan
December 4, 2020
Page 2

      With regard to settlement, Benthos is certainly willing to participate in direct negotiations with Mr. Etra for two weeks, as he proposes, before referral to a Magistrate Judge for a settlement conference – as long as there is no stay of discovery during such period.  But Mr. Etra has repeatedly told us that his idea of settlement is that Benthos suspends judgment enforcement for a year while he attempts to "raise" money, at the end of which period he will inform us whether he has been successful or not.[2]  Our client's principals, having been scammed once by Mr. Etra and seen their business destroyed as a result, are not that gullible – at the end of whatever time period he could obtain, Mr. Etra will tell us "Sorry, no money."  If he truly wants to settle, nothing has stopped him from making a proposal and he does not need two additional weeks in which to do so; he has never put one single concrete penny on the table, and there is no reason at all to think that he will do so now.  This is all just the continuation of one big stall.

      We respectfully refer the Court to our motion papers for Mr. Etra's history, in this matter and otherwise.  We understand the Court is not going to hold him in contempt of court now – notwithstanding that this member of the Bar is now into his 10th week of willful defiance of two subpoenas, with no end in sight, and that he has not complied with the Court's order to present "mutually agreeable" dates for such compliance – and we know we will have to wait patiently until he reaches the limits of Your Honor's indulgence.  But make no mistake about it:  Aaron Etra does nothing, including comply with subpoenas or court orders, until he is convinced that contempt of court is imminent.

      Benthos respectfully requests that the Court enter an order reflecting the terms set forth in Exhibit 1 attached.  Thank you for your consideration.


                  Respectfully yours,

                  /s/Steven R. Popofsky

                  Steven R. Popofsky


cc:    Aaron Etra

---

[2] Yes, there is a pattern here – he commits to nothing, and hopes he can get away with it.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

| | USDC SDNY |
| --- | --- |
| | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: ___12/4/2020___ |

ORDER OF REFERENCE
TO A MAGISTRATE JUDGE

Plaintiff,    Benthos Master Fund, Ltd.

    -v-

Defendant.    Aaron Etra

20cv3384    ( AJN ) ( KHP )

    :
    :
    :
    :
    :
    :
    :
    :
    :
    :
    x
------------------------------------------------------------

        The above entitled action is referred to the designated Magistrate Judge for the following
purpose(s):

☐ General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement)

☐ Specific Non-Dispositive Motion/Dispute:*
_____
_____
_____

    If referral is for discovery disputes when the District Judge is unavailable, the time period of the referral: _____

☒ X  Settlement*

☐ Inquest After Default/Damages Hearing

☐ Consent under 28 U.S.C. §636(c) for all purposes (including trial)

☐ Consent under 28 U.S.C. §636(c) for limited purpose (e.g., dispositive motion, preliminary injunction)
Purpose: _____

☐ Habeas Corpus

☐ Social Security

☐ Dispositive Motion (i.e., motion requiring a Report and Recommendation)
Particular Motion: _____
_____

    All such motions: _____

*Do not check if already referred for general pretrial.

Dated ___12/4/2020___

SO ORDERED:    _[signature]_
_____
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  12/4/2020
```

Benthos Master Fund, Ltd.,

          Petitioner,

    —v—

Aaron Etra,

          Respondent.

20-cv-3384 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

       Mr. Etra shall respond separately to each numbered request in Benthos Master Fund's information subpoena by December 18, 2020.  By December 18, 2020, Mr. Etra shall identify all numbered requests in Benthos Master Fund's subpoena duces tecum to which no responsive documents exist.  Mr. Etra shall produce all documents responsive to the subpoena duces tecum to Benthos Master Fund by December 23, 2020.  Mr. Etra's obligation to produce responsive documents includes and extends to obtaining documents from financial institutions, even if he does not presently possess copies of such documents, if the responsive documents are available electronically from the financial institutions.

       The Court will refer this case to a magistrate judge for settlement by separate order.  The Court expects that the parties will participate in a settlement conference in good faith.  The parties are of course also free to continue direct settlement discussions.

       SO ORDERED.

Dated: December 4, 2020
      New York, New York
                           ALISON J. NATHAN
                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____            │
│ DATE FILED:  10/14/2020          │
└─────────────────────────────────┘
```

Benthos Master Fund, Ltd.,

                Petitioner,

       –v–

Aaron Etra,

                Respondent.

20-cv-3384 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

Respondent is ordered to file a response to Petitioner's motion to hold Respondent in contempt by October 23, 2020. Petitioner may file a reply by October 30, 2020. Petitioner shall serve a copy of this Order, the motion, and all supporting documentation on Respondent and file an affidavit of service on the public docket by October 16, 2020.

       SO ORDERED.

Dated: October 14, 2020
      New York, New York

                                    _____
                                      ALISON J. NATHAN
                               United States District Judge

MEMO ENDORSED

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:____7/5/22____

Aaron Etra
240 East 47th Street-12A
New York, NY 10017
Tel. 917-856-3500

July 1, 2022

(Via email to Temporary Pro Se Office)
Judge Valorie Caproni
U. S. District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Benthos v. Etra 20-CV 3384 (VEC) Order of May 16, 2022

Dear Judge Caproni,

In my letter of June 17th, I reported to this Court that I was hit head on by a MTA bus on June 6th and had to be treated at the site by a NYPD ambulance (please see the attached accident report), and that I would be continuing treatment for my physical impairments caused by the impact, and for the existing neurological and immunological conditions further impacted by the trauma.

At my follow-up appointment yesterday on June 30th at NY Presbyterian Hospital, (see attached hand band), to review my condition after being hit by the MTA bus (accident report again attached), during the examination they performed certain tests and ordered others, some diagnostic, to further determine the consequences, and scheduled these for the weeks ahead and will try to move them up as appointments become available. The results and consequences will be the subject of further consultations with me and I am under instructions to continue to respect significant limitations on both my physical and mental activities and certainly totally avoid further stress until further notice from them.

On top of everything, my computer died, which is my only computer and contains all my records and data.   It had to be left with Apple for extensive repairs (see attached), and should be in their shop for about a week or so. I am currently only able to use my cellphone to communicate by voice and text, including with Your Honor, but cannot access documents or files on my computer.

Notwithstanding these disabilities and the fact that it is an objectionable invasion of my privacy, prior to this calamity, I sent the IRS Form 2848 on June 24th to Plaintiff's counsel as ordered by Your Honor. Since then, Plaintiff's counsel has continued their relentless personal harassment of me by having their paralegal while they are away on vacation, harass me to include on the form, the tax year 2017, a year before this matter of a business loss even took place; and they also want me to authorize not one but two persons, who they did not even identify themselves as members of a law firm, to pry into matters that should be just between me and the government.  This should not be supported by the Court.

As well, not content with having harassed, along with me, a distant cousin and a person seeking to help fund the settlement, they want information to harass my wife, who lives a separate life from and supports herself.  She and I have lived apart, on two different continents, since 2008, ten years before the 2018 business loss occurred. She has had nothing to do with this matter as is clear and I have so attested. I strongly object and trust the Court will not support causing injury to and invading the privacy of an innocent person with no connection to this matter.

I respectfully request Your Honor to schedule a hearing on this matter at your earliest convenience, which I would hope to able to participate by phone or zoom if my doctors permit. Please suspend any enforcement action until then, including but not limited to, matters in the order dated May 16th, 2022,  and appreciate my good faith efforts to comply with your Orders without any assistance or resources to present my entitlements and privilege under the law and in the face of three corporate lawyers, which would be relevant to the hearing and my need for appropriate legal assistance.

The facts in this case have not changed since 2018. The parties, of which I am NOT one, ALL suffered a loss when they were unable to complete a business transaction, for reasons totally unrelated to the services that I correctly and honorably performed. I have been trying to voluntarily assist Benthos ever since, while they then turned two different law firms on to attack me personally, ruining my good reputation developed since 1966 with smears all over the internet , limiting my ability to function, including assisting in funding the agreed settlement with Benthos.

I submitted hundreds of pages of documents and underwent seven hours of depositions, which completely described the matter, to Judge Batts who rejected Plaintiff's counsel's contempt motion.  Plaintiff's counsel then resorted to a unilateral arbitration proceeding in which I was unable financially to participate as well as not being a party, and, based on the totally one-sided result, which resulted in the judgment before this Court, and since then they have been attacking me under the guise of enforcement by having my bank accounts frozen and closed, cards terminated, and my health severely impaired.  Under Judge Nathan's supervision and as an 81 year old non-litigator without any legal assistance, I submitted hundreds more pages to the Court and Plaintiff's counsel. Judge Nathan also rejected contempt motions and directed the parties to settle under the direction of Judge Parker. I have been trying, with the assistance of business friends, to fund that settlement that Judge Parker brought Plaintiff's counsel to grudgingly accept.   Plaintiff's counsel has not permitted this effort to be done reasonably but rather has attacked those wanting to help  by subpoenas and verbal harassment, and persisted with their damaging enforcement action against me which , after four years, has had only the result of hundreds of thousands of legal fees to Plaintiff's counsel, hence charges to Benthos. There is and never has been any possible benefit to Benthos from this enforcement action as it is clear now, as it has been all along, that no funds from this matter have ever been received for my benefit, and I do not have and never had anything remotely like the amount of money in the award or judgment called for by the Award and Judgment. Settlement is the only solution and You Honor is respectfully requested to keep the parties on this track, and to be a focus of the requested hearing, as well as the other issues mentioned above.

I respectfully submit this letter, and look forward your proposed hearing date.

Respectfully submitted,

Aaron Etra

cc. S. Popofsky, Esq.

Encl.:  Police Accident Report

   Medical bracelet from New York Presbyterian Hospital

  Apple Service Invoice

---

Application GRANTED in part and DENIED in part.  Respondent's request for an extension of the deadline to comply with the Court's order is denied.  Respondent's request for a hearing is, however, granted.  The parties must appear on **Thursday, July 7, 2022, at 10:30 a.m.** in **Courtroom 443**, Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007 for a hearing regarding whether Respondent should be held in contempt of Court.  Respondent may not appear by telephone or video, and must attend in person.

Respondent must appear with contact information for Koraljka Troselj and the "privileged" information as outlined in Petitioner's letter, *see* Dkt. 99 at 3-4, which the Court previously ordered him to turn over by July 1, 2022, *see* Dkt. 113.  Petitioner must also appear with all remaining documents he has been ordered to turn over by July 1, 2022, *see id.*, including the tax returns and full set of monthly and closing statements for the accounts described in the Court's order adopting Magistrate Judge Parker's Report and Recommendation ("R&R"), *see* Order Adopting R&R, Dkt. 108 at 4-5.

Petitioner must appear with a new IRS Form 2848 that omits the name of the attorney that is no longer employed by Petitioner's counsel.  *See* Letter, Dkt. 115 at 2.

**If Respondent fails to appear at the hearing, fails to bring the materials ordered by the Court, or fails to sign the IRS Form 2848 at the hearing, the Court will remand him into custody until he complies.**

The Clerk of Court is respectfully directed to mail a copy of this order to the *pro se* Respondent.  The Court will also email a copy of this order to him.

  SO ORDERED.

7/5/22

HON. VALERIE CAPRONI

UNITED STATES DISTRICT JUDGE





**Steven R. Popofsky**
*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

June 21, 2022

**VIA ECF**

Judge Valerie Caproni
United States District Judge
United States District Court
40 Foley Square, Room 240
New York, NY  10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___6/21/22___

Re:    **Benthos v. Etra, 20-CV-3384**

Dear Judge Caproni:

       In response to Mr. Etra's letter of June 17, we note that he undoubtedly did nothing to comply with the Court's order even before June 6. Nonetheless we do not oppose a brief extension. We would ask, however, that Mr. Etra be ordered to comply promptly with item 12 of Dkt. 108, and that upon any extended deadline he also be directed to provide the information and documents requested in items 2 and 3 on pages 3-4 of our letter at Dkt. 99.

       Thank you.

                        Respectfully submitted,

                        Steven R. Popofsky

cc:    Aaron Etra (via e-mail and ECF)

The deadline for Mr. Etra to produce all documents outlined in the Court's order other than the executed IRS Form 2848 is hereby ADJOURNED *nunc pro tunc* from June 20, 2022, to **July 1, 2022**. The executed IRS Form 2848, *see* Dkt. 108 at 5, is due not later than **June 24, 2022**.

Because the Court has granted Mr. Etra's request for an extension, he must also produce contact information for Koraljka Troselj and "privileged" information as outlined in Petitioner's letter, *see* Dkt. 199 at 2-3, by **July 1, 2022**.

Respondent is reminded that he shall be fined $50 per day until there is full compliance beginning on June 25, 2022, should he fail to turn over the executed IRS Form 2848, and beginning on July 2, 2022, should he fail to turn over the remainder of the required documents as outlined in the Court's prior order and in this endorsement.

SO ORDERED.

*Valerie Caproni* 6/21/22

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE