**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
**BENTHOS MASTER FUND, LTD.,**                      :
                                                    :
                              Petitioner,           :
                                                    :        Case No. 20-cv-03384 (VEC)
                 - against -                        :
                                                    :
                                                    :
**AARON ETRA,**                                     :
                                                    :
                              Respondent.           :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO HOLD RESPONDENT AARON ETRA IN CIVIL AND CRIMINAL CONTEMPT AND FOR RELATED RELIEF

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
500 Fifth Avenue
New York, New York 10110
Telephone:    (212) 986-6000
Facsimile:    (212) 986-8866

Attorneys for Petitioner
    **BENTHOS MASTER FUND, LTD.**

Petitioner and judgment creditor Benthos Master Fund, Ltd. respectfully submits this memorandum of law in support of its motion pursuant to Federal Rule of Civil Procedure 45(g), 18 U.S.C. § 401, Federal Rule of Criminal Procedure 42 and this Court's inherent authority to issue various remedies to coerce, punish and prevent respondent Aaron Etra in various respects due to his two-year, and ongoing, defiance of multiple court orders, subpoenas and restraining notices.

## PRELIMINARY STATEMENT

This Court may (or may not) find it hard to believe, but Aaron Etra is still concealing his current finances, and still defying recent subpoenas with which he was ordered to comply. By way of examples only, he is concealing from Benthos where he currently banks, having told the Court that his Piermont Bank account is closed but refusing to produce any statements after those ending in June 2022. And when required to provide communications "concerning . . . petitioner's . . . judgment enforcement efforts" – as well as those concerning "attempts (by anyone) to obtain or provide funds from which to satisfy the Judgment," and concerning "all Court orders issued in this matter" – "to or from any person whatsoever," what did Mr. Etra produce? Copies of our subpoenas; nothing else. Of course he has sent and received responsive e-mails, over this two-year period, but he does not wish to disclose them.

So some level of coercion surely is still required. But at this point, Mr. Etra's two-year and continuing misconduct warrants remedies well beyond mere coercion of financial information. Documents he produced recently revealed that he has been living the high life, notwithstanding being under a restraining notice (which he has treated as a nullity, while taking pains to hide his violations for two years): He repeatedly flies to Europe and travels there for extended periods of time, and has been spending (in Europe, and when home in New York) substantial funds, all of

which money belongs to his judgment creditor Benthos (not to mention the many hundreds of thousands of dollars that have passed through his escrow accounts with no satisfactory explanation, and his spoliation of evidence).

He concealed all of that – including the very fact that he banked at Piermont Bank, through which most of his spending took place – for two years, until he was incarcerated briefly for contempt of court.  He was able to accomplish that concealment only by repeatedly violating multiple court orders, several subpoenas and two restraining notices, and by committing perjury regarding his accounts.

He should now be punished for all of that defiance.  And while this Court cannot get Benthos back the money Mr. Etra has spent, it does have the tools to prevent him from continuing to violate the restraining notice by brazenly traveling the world and spending money as though he were under no constraint.

Everything else has failed.  Or, more precisely, the actions of Judge Nathan, Judge Parker and Judge Caproni have succeeded only to the extent of exposing still more contempt, which was ongoing (and hidden) while all those court orders were being issued, and which is continuing to this day – and which will continue, unless the Court grants the relief sought in this motion.

Otherwise we are caught in an endless loop.  The Court can order Mr. Etra to produce current bank statements, and can order him (yet again) to comply with petitioner's recent subpoenas, and can lecture him (yet again) that "you've been playing this game too long, Mr. Etra," and "if [you haven't] heard it from  me loud and clear and three hours in the federal pen didn't do it, . . . we're not playing 20 questions anymore."  The Court even can (and should) incarcerate him until at least he complies with the recent subpoenas.  But that alone will not change the fundamental dynamic here:  He will have gotten away with everything for two years (rewarding

2

him, and encouraging future judgment debtors to do the same); and he will withhold future documents and information, forcing Benthos (and the Court) to use further resources to again compel compliance; and he will continue traveling the globe and otherwise dissipating money he is required to pay over to Benthos.

The United States federal courts do have the power to deal effectively with all of this. In addition to (i) incarcerating Mr. Etra for civil contempt until he complies with the recent subpoenas (he is, of course, utterly impervious to mere fines, no matter how large), the Court should (as requested in more detail in the accompanying Notice of Motion) (ii) incarcerate him, as punishment, for his repeated defiance that has risen to the level of criminal contempt; (iii) order him to surrender his passport and refrain from foreign travel; (iv) enjoin him from continuing to violate the restraining notice; (v) order him to forward all income he receives, from "clients" and otherwise (excluding Social Security payments), to his judgment creditor; (vi) order him to produce current bank and credit card statements on a going-forward basis every month; and (vii) order a forensic examination, at Mr. Etra's expense, of his computer and cellphone(s) to address his virtually-admitted spoliation of evidence and/or to assess his claims that subpoenaed evidence conveniently has been lost.

## THE RELEVANT (AND INCRIMINATING) FACTS

Respondent, a Member of the Bar, is a judgment debtor who owes petitioner over $5 million. He has been adjudicated to have misapplied funds entrusted to his care as Escrow Agent (not for the first time in his career), acting with "gross negligence or willful misconduct" in breach of his fiduciary and contractual duties.

To avoid unnecessary repetition, the Court is respectfully referred to the accompanying Declaration of Steven R. Popofsky dated November 15, 2022, with its accompanying exhibits, for

3

the salient facts. Virtually all of those facts are essentially uncontested. Mr. Etra's only response has essentially been that he has been compliant and persecuted, both of which absurd contentions this Court has rejected repeatedly.

## ARGUMENT

There is ample authority for all of the relief sought on this motion, given the magnitude and persistence of Mr. Etra's wrongdoing. In that regard, the Court's attention is respectfully directed to the long-running saga of Steven Donziger, and the measures taken by other judges in this district to remedy his misconduct.

For example, in connection with supplementary proceedings to satisfy a money judgment, as here, the Court found that "Donziger largely has stonewalled [judgment creditor] Chevron's efforts. . . . He has ignored the fundamental 'proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.'" *Chevron Corp. v. Donziger*, 384 F. Supp.3d 465, 472 (2019).

The Court held Donziger in contempt for several violations, including violating "a restraining notice by transferring assets that otherwise could have been used to satisfy the Money Judgment" (id. at 473). Mr. Etra, of course, while under a restraining notice has spent perhaps hundreds of thousands of dollars that rightfully belonged to his judgment creditor, which has been incurring legal fees all that time seeking to secure his basic compliance with straightforward subpoenas and court orders.

Pronouncing that "The violation of a restraining notice constitutes contempt of court," the *Donziger* Court sustained allegations that Donziger had "violated, and likely continues to violate, the restraining notice served by Chevron," and found further that "[t]he likelihood that he will

continue to [disregard his obligations] is high."  Id. at 476, 505; see also id. at 500 (footnoted citations omitted):

> CPLR Section 5222, which applies to Chevron's efforts to collect the Money Judgment by virtue of Federal Rule 69(a), allows a judgment creditor to serve a judgment debtor with a restraining notice that prohibits the judgment debtor from transferring or assigning any property in which the debtor has an interest. Violation of a restraining order is 'punishable by contempt' including by a federal court where, as here, the restraining notice was served to enforce a federal judgment.

The Court went on to find that:

> [T]he restraining notice was clear and unambiguous. The proof that Donziger and his law firm both failed to comply with the restraining notice by transferring property in which he had an interest is clear and convincing. It further finds that he has not diligently sought to comply with the restraining notice. . . .  Accordingly, the Court finds, by clear and convincing evidence, that both Donziger and his law firm are in contempt of the restraining notice.

Id. at 502, concluding also (and also quite pertinent here) that the fact that Donziger "sought to avoid discovery of [certain] transfers . . . bears on the scope of the relief that should be granted . . ." (id. at 487-88).

In a later order, "in light of the ineffectiveness to date of [prior remedies]," the Court ordered Donziger to surrender his passport.  *Chevron Corp. v. Donziger*, No. 11-cv-00691, ECF No. 2232 (June 11, 2019).  Previously, "having been left with virtually no choice, the Court directed that Donziger's electronic devices, storage media, and email and other digital accounts be forensically imaged and examined." 384 F. Supp.3d at 476.[1]  He also had been required "to convey to Chevron all of his right, title and interest in" certain assets" (id. at 473).

This Court, of course, already has exercised its power to hold Mr. Etra in civil contempt of court for his multiple violations of repeated court orders.  (See, e.g., Dkt. Nos. 132 and 144.) Federal Rule of Civil Procedure 45(g) provides that the Court "may hold in contempt a person

---

[1] The Forensic Protocol described in that decision (384 F. Supp.3d at 502-03) would be a good model here.

who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." A court's power to punish contempt is an inherent and integral element of its power to assert its authority by order or decree (*Interstate Commerce Comm'n v. Brinson,* 154 U.S. 447 (1894)), and has further been codified in 18 U.S.C. § 401:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others, as —
>
> > (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> >
> > (2) Misbehavior of any of its officers in their official transactions;
> >
> > (3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

The purpose of a civil contempt proceeding is to coerce compliance and/or compensate complainant for losses sustained by the contemnor's conduct. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 657 (2d Cir. 2004). Coercion may be achieved by imprisonment of the contemnor until they purge themselves of the contempt, and/or by a prospective, conditional fine. *Id.; NY State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir. 1989). "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics,* 369 F.3d at 657. "In order to prevail on a civil contempt motion, the moving party must establish that (1) the court order with which the alleged contemnor failed to comply was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner. . . . [N]o proof of bad faith or wilfulness is required in order to establish civil contempt." 384 F. Supp.3d at 488-89.[2]

---

[2] In *Musalli Factory v. New York Fin. LLC*, No. 06-cv-82 (AKH), 2010 BL 133627, at *4, 2010 WL 2382415, at *4 (S.D.N.Y. June 14, 2010), a judgment debtor, much like respondent here, refused to comply with subpoenas notwithstanding the creditor's accommodations, extensions and attempts to avoid judicial

Courts have "'broad discretion to design a remedy that will bring about compliance'" with lawful orders, and "the power to imprison a recalcitrant litigant for contempt impl[ies] the lesser power to set conditions on freedom." (Id. at 505, citing *Paramedics*, 369 F.3d at 657**;** *Chevron Corp. v. Donziger*, No. 11-cv-00691, ECF No. 2232 (June 11, 2019). Thus, all of the non-criminal relief sought in the Notice of Motion is authorized and appropriate, given the scope of the misconduct to be addressed here.

Beyond civil contempt, however, Federal Rule of Criminal Procedure 42 provides that "Any person who commits criminal contempt may be punished for that contempt after prosecution on notice," and sets out procedures for the imposition of such punishment. Judge Preska has described "the crucial distinction between civil contempt, which serves to coerce compliance with an outstanding order, and criminal contempt, which punishes the contemnor for a 'completed act of disobedience' [citation omitted]. In the same way that a car theft defendant cannot extricate himself from exposure by eventually returning the stolen vehicles, a contempt defendant is not entitled to dismissal because he eventually complied with the previously disobeyed orders." *United States v. Donziger*, 2020 BL 171489 (S.D.N.Y. May 7, 2020), at *10.

"Completed act[s] of disobedience" – oodles of them – is precisely what Mr. Etra has committed here. Civil contempt should no longer be deemed sufficient.

After Steven Donziger, like Mr. Etra, had violated multiple court orders over a prolonged period of time, Judge Kaplan issued an Order To Show Cause "why he should not be held in

---

intervention. Also like respondent here, the judgment debtor professed "sincere . . . cooperation" but failed actually to cooperate. The court held that the judgment debtor's "contumacy has concealed his financial situation from Plaintiff and from this Court [but his] contemptuous conduct will not shield him from civil sanctions designed to bring about his compliance with the law[,]" and found that "arrest is an appropriate coercive sanction for [the judgment debtor's] contempt, and it will compel his compliance with the subpoenas and with this Court's orders."

criminal contempt of court." *Chevron Corp. v. Donziger*, No. 11-cv-00691, ECF No. 2276 (July 31, 2019). Judge Preska thereafter denied Donziger's motion to dismiss (*United States v. Donziger*, 2020 BL 171489 (S.D.N.Y. May 7, 2020), at \*10):

> From the facts set forth in the parties' papers, . . . it appears that Mr. Donziger left Judge Kaplan with no real option other than criminal charges. Mr. Donziger is alleged to have repeatedly defied court orders, openly invited civil contempt, and refused to budge even when faced with coercive sanctions. That course of conduct gives 'no basis for thinking that more orders, warnings, or threats would have produced improvement.' *In re Holloway*, 995 F.2d 1080, 1087 (D.C. Cir. 1993); see also *In re Levine*, 27 F.3d 594, 595 (D.C. Cir. 1994) ('When the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern `what lesser remedy [the judge] could have reasonably employed').

So too here. The stark history of this matter, not repeated here but recounted in the incontestable facts set forth in the accompanying moving declaration – including (but of course not limited to) Mr. Etra's most recent conduct, after already having been incarcerated, in refusing to produce current bank statements (among many other things) and defiantly announcing, "I'm entitled to travel" – makes clear that it is time for Mr. Etra to be punished.

Judge Caproni noted, on July 13, 2022, that "willfully hiding bank accounts" could constitute "criminal contempt" (moving Declaration Ex. 12), and at that time, she did not know of Mr. Etra's perjury in concealing his Piermont bank accounts, nor did she know what the later-produced account would reveal. And of course, much more exists here than willfully hiding bank accounts, including the repeated intentional violation of multiple court orders from Judges Nathan and Caproni, and the ongoing defiance of subpoenas after his motions to quash were denied.

There is also the virtually admitted spoliation of evidence, or at least its admitted disappearance. The typical remedies for spoliation will not do any good here,[3] and accordingly, a

---

[3] See generally, e.g., *Zubulake v. UBS Warburg*, 220 F.R.D. 212 (S.D.N.Y. 2003); *Ottosn v. SMBC Leasing*, 268 F. Supp.3d 570 (S.D.N.Y. 2017).

forensic examination of Mr. Etra's computer and cellphones is required in order to determine at least (i) whether the missing Escrow Agreements (possibly among other things) can be retrieved; (ii) the circumstances of the spoliation (according to Mr. Etra, Apple reported "Liquid Damage" which he has not deigned to explain, but which he claims conveniently occurred on June 29, 2022, just after he was ordered to produce documents on July 1 (see Dkt. 150 at para. 11, Dkt. 150-2 and Dkt. 113)); and (iii) whether documents exist (or have been destroyed) that are responsive to the recent subpoena duces tecum that Mr. Etra is continuing to defy.  See *United States v. Donziger*, 2020 BL 171489 (S.D.N.Y. May 7, 2020), at *2: "Judge Kaplan . . . enter[ed] an order finding that given Mr. Donziger's persistent stonewalling, he should turn over his electronic devices to a forensic expert so they could be imaged and examined for responsive documents."

## CONCLUSION

For the reasons set forth above and in the accompanying Popofsky Declaration and exhibits, the Court should grant the relief requested in the accompanying Notice of Motion.

Dated:  November 15, 2022

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By:_____ */s/ Steven R. Popofsky*_____
Steven R. Popofsky
Alisa Benintendi

500 Fifth Avenue
New York, New York  10110
Telephone:    (212) 986-6000
Facsimile:    (212) 986-8866
Email:        SPopofsky@kkwc.com
              ABenintendi@kkwc.com

Attorneys for Petitioner
**BENTHOS MASTER FUND, LTD.**

9