Exhibit 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

BENTHOS MASTER FUND, LTD.,

                            Petitioner,

                — against —

AARON ETRA

                           Respondent.

-------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 3/14/2022

**REPORT AND RECOMMENDATION**
**ON CIVIL CONTEMPT**

1:20-cv-03384 (AJN) (KHP)

**TO:**           **THE HONORABLE ALISON J. NATHAN, United States District Judge**
**FROM:**     **THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge**

       Presently before the Court is Petitioner Benthos Master Fund, LTD.'s ("Benthos") motion

to hold Respondent Aaron Etra ("Etra") in civil contempt pursuant to Federal Rule of Civil

Procedure 45(g), 18 U.S.C. § 401 and Local Civil Rule 83.6. The motion is premised on Etra's

continued failure to produce documents notwithstanding three Court Orders issued by the

Honorable Alison J. Nathan, dated December 4, 2020, January 5, 2021, and June 21, 2021 and

Orders by the undersigned. (ECF Nos. 23-25, 81.) The Orders all required Etra to produce certain

information in response to two post-judgment subpoenas issued by Benthos seeking information

about Etra's financial resources. Judge Nathan has referred this matter to the undersigned for

resolution of this motion. (ECF Nos. 38, 62.)

       The Court held a virtual evidentiary hearing on February 16, 2022. (ECF No. 89.) Benthos

was represented by counsel, Steven R. Popofsky and Pamela A. Frederick, and Etra appeared *pro*

*se*. For the following reasons, I recommend GRANTING Plaintiff's motion in part and DENYING

Plaintiff's motion in part.

## **BACKGROUND**

1. **Prior Dealings and Arbitration**

This case arises out of a purported sale of Bitcoin. (Compl. ¶ 5.) On August 4, 2018, Benthos executed an agreement pursuant to which Benthos agreed to pay $5 Million Dollars for a quantity of Bitcoin, which it was to receive within fifteen days of payment or else its money would be returned. *Id.* Etra served as the Escrow Agent on the transaction. Benthos wired $5 Million Dollars into the escrow account held by Etra. (Compl. ¶¶ 5-6.) Benthos never received any Bitcoin. (Compl. ¶¶ 5-6.) Etra ultimately returned only $400,000 of Benthos' money. Benthos contends that the sale was a scam and that Etra breached his fiduciary and contractual duties by misallocating funds entrusted to his care as an Escrow Agent. *Id.*

Benthos sued Etra in arbitration seeking return of the remainder of its money.[1] After Etra failed to appear at the arbitration hearing, the arbitrator issued the final award to Benthos of $5,254,561.12, which included damages, the cost of arbitration, and pre-award interest. (Compl. ¶ 15.) On April 30, 2020, Benthos filed this action to confirm the arbitration award. (ECF No. 1.) On August 12, 2020, Judge Nathan granted Petitioner's motion to confirm the arbitration award. (ECF Nos. 14, 15.; Popofsky Decl. ¶ 5.) Etra filed a notice of appeal on September 14, 2020, but that appeal was dismissed on December 7, 2020. (ECF Nos. 22, 41.)

---

[1] During the pendency of the arbitration, Benthos filed a separate action in this district for preliminary relief in aid of arbitration. *See Benthos Master Fund, LTD. v. Etra*, No. 18-cv-0491 (DAB). In that action, Benthos sought certain information regarding transfers of money from Etra's escrow account. *Id.* (ECF No. 15.) Due to what Benthos believed was a lack of compliance with its discovery requests, it filed a motion for contempt against Etra. The late Honorable Deborah A. Batts denied the contempt motion, finding that Etra "made reasonable efforts to comply with both Orders" and "returned to Benthos $400,000.00 that remained in his [escrow] account." (ECF No. 30, Case No. 18-cv-9401.)

### 2. **Post-Judgment Discovery and Court Orders**

Benthos sought post-judgment discovery concerning Etra's assets so that it could collect on its judgment.  On August 27, 2020, Benthos served Etra with an information subpoena containing 36 requests, and a subpoena *duces tecum* with 59 requests, seeking identification of Etra's bank accounts and other assets and documents from Etra's bank, stock and credit card accounts and reflecting other assets for the period August 1, 2018 through the present.  (ECF Nos. 82-1 and 82-2; Popofsky Decl. ¶ 5.)  Etra served no objections to the subpoenas.  (Popofsky Decl. ¶ 5.)

Etra continually requested extensions of time to respond to the subpoenas, citing upcoming Jewish holidays and his poor health, and also asked Benthos to release holds placed on his accounts as a result of third-party subpoenas issued by Benthos to financial institutions where Etra held accounts.  (ECF Nos. 24-3, 24-4, 24-5, 24-7, 24-9, 24-11.)  Etra ultimately represented he would provide responsive documents to Benthos by September 21, 2020 (ECF No. 24-7), but on that date he turned over only one responsive document: a three-page financial statement dated May 2020, which purported to represent that Etra had insufficient assets to cover the judgment.  (ECF No. 24-8.)  Etra also stated he did not own a car or his apartment.  (ECF No. 24-11.)  On September 27, 2020, Etra provided a one-page property tax notice for a North Carolina property (ECF No. 24-10) and an HSBC credit card screenshot showing a balance of $16,685.96 (as of September 25, 2020) (ECF No. 24-12.)

As a result of Etra's seeming defiance of the two subpoenas, Benthos filed a motion for contempt and reasonable counsel fees on October 12, 2020.  (ECF No. 23.)  Etra opposed the motion and provided additional documents, including an HSBC credit card statement showing a

balance of $16,985.98 as of October 22, 2020, two partially illegible screenshots of two M&T bank accounts (one personal and one business), invoices of unpaid legal bills, and an updated three-page financial statement dated October 2020.  (ECF No. 28.)

Judge Nathan denied Benthos's contempt motion on November 19, 2020 based on the materials provided but stated "it is also clear that Mr. Etra has not provided adequate responses to the judgment enforcement subpoenas.  The Court hopes that Mr. Etra will not put it in the position of needing to impose coercive sanctions to secure his compliance with court orders." (ECF No.  33.)  Judge Nathan requested a joint status letter by November 27, 2020.  *Id.*  After postponing the November 27, 2020 deadline due to Etra being in the hospital, Judge Nathan issued an Order (the "First Order") on December 4, 2020, requiring Etra to respond to the information subpoena and identify the numbered requests in the subpoena *duces tecum* to which no responsive document(s) existed by December 18, 2020, and to produce all documents responsive to the subpoena *duces tecum* by December 23, 2020.[2]  (ECF No.  39.)  While Etra submitted multiple letters to the Court (on December 20, 2020 and December 29, 2020) detailing his medical appointments, his bitter feelings towards Benthos counsel, and a request for further extensions on discovery (ECF Nos. 48 and 52; Popofsky Decl.  ¶ 5.), he failed to produce any further documents or responses to Benthos's discovery pursuant to the First Order.  (Popofsky Decl.  ¶ 5.)

---

[2] The Order stated: "Mr. Etra shall respond separately to each numbered request in Benthos Master Fund's information subpoena by December 18, 2020. By December 18, 2020, Mr. Etra shall identify all numbered requests in Benthos Master Fund's subpoena *duces tecum* to which no responsive documents exist.  Mr. Etra shall produce all documents responsive to the subpoena *duces tecum* to Benthos Master Fund by December 23, 2020.  Mr. Etra's obligation to produce responsive documents includes and extends to obtaining documents from financial institutions, even if he does not presently possess copies of such documents, if the responsive documents are available electronically from the financial institutions."

On January 5, 2021, Judge Nathan issued another Order (the "Second Order") denying Etra's request for further discovery extensions, for holds placed on his accounts to be released (as a result of Benthos's third-party subpoenas), and for Benthos' counsel to refrain from communication, but extended Etra's time to respond to Benthos's subpoenas to January 8, 2021 and January 13, 2021.[3]  (ECF No.  54.)  The Second Order stated that "[t]he Court has reviewed the subpoenas, and compliance with them should not be particularly onerous, especially if Mr. Etra's finances are as straightforward as he represented."  *Id.*  While Etra eventually responded to the information subpoena on January 8, 2021, his answers were insufficient, and Benthos requested supplemental responses on January 14, 2021.  (ECF No.  56-6.)

On January 19, 2021, Benthos filed a letter motion requesting that the Court hold Etra in contempt for noncompliance with the two subpoenas.  (ECF No. 56.)  On January 21, 2021, Judge Nathan issued another Order (the "Third Order"), which stated "[i]t appears that Mr. Etra did not understand, or refuses to accept, the Court's prior orders directing him to comply with Benthos's judgment enforcement subpoenas."  (ECF No.  59.)  The Third Order stated that the previous Orders "did not direct Mr. Etra to comply with the judgment enforcement subpoenas if it was convenient," and it "[gave] Mr. Etra one more opportunity to comply" by January 29, 2021.  *Id.*  Etra did not fully comply.[4]  (Popofsky Decl.  ¶ 5.)  On February 10, 2021, Benthos requested further post-judgment discovery based on Etra's continued incomplete responses.  (ECF No.  60.)

---

[3] The Order stated: "The Court previously ordered Mr. Etra to respond to each request in the information subpoena and identify responsive documents by December 18, 2020, and to produce responsive documents by December 23, 2020.  Those dates are extended to January 8, 2021, and January 13, 2021.  The Court has reviewed the subpoenas, and compliance with them should not be particularly onerous, especially if Mr. Etra's finances are as straightforward as he has represented.  The Court expects Mr. Etra to comply with these extended deadlines."

[4] In relevant part, the order required "providing direct, complete answers to all questions [in the judgment enforcement subpoenas] and producing all responsive documents.  Mr. Etra has a responsibility to communicate

On March 1, 2021, the undersigned issued an Order (the "Fourth Order") that directed Etra to provide a subset of documents from various accounts by March 15, 2021 in camera and make an installment payment towards the monies due to Benthos.  (ECF No.  63, Popofsky Decl. ¶ 9.)  The order included production of monthly account statements for several HSBC accounts, a Uni-credit affiliate account, a City National Bank account, European bank accounts, two Metropolitan Commercial Bank accounts, two M&T bank accounts, a TD bank account, and a JP Morgan account.  (ECF No. 63.)  Etra did not fully comply with the order.  Just by way of example, he failed to produce complete monthly statements from the bank accounts identified in the Court's order.

On April 1, 2021, in a settlement conference before the undersigned, the parties reached a settlement agreement, and this Court retained jurisdiction to enforce its provisions. (ECF No. 66.)  That same day, the undersigned denied without prejudice Benthos's letter motion for contempt dated January 19, 2021 in light of the settlement and Etra's partial compliance with the Court's order.  (ECF No. 64.)  Etra did not make any payments to Benthos, thereby voiding the settlement.

On May 11, 2021, Benthos issued a third subpoena *duces tecum* seeking the documents provided to the undersigned in camera and documents related to Etra's attempt at securing funds for the judgment and/or settlement agreement.  (ECF No.  68-1.)

---

with any financial institutions at which he has or has had accounts to obtain any responsive documents.  He has a responsibility to provide complete answers.  When a subpoena asks for detailed information about an account, it is totally unacceptable to provide only the name of the bank where the account is held and insist Benthos find any other information on its own. . . . Regardless of his views of his personal culpability or the progress of settlement discussions, Mr. Etra must comply with the Court's orders. If he has not done so by January 29, he will be ordered to show cause why he should not be held in contempt."

On May 23, 2011, in response to the May 11, 2021 subpoena, Etra produced (1) an HSBC
credit card account statement, (2) an M&T bank account statement for an account ending in
x3443 from May 2021, and (3) a letter from Melvin H. Dussel regarding his assistance with
Etra's settlement compliance.  (ECF No. 70.)  On June 11, 2021, Etra provided a letter from
HSBC Bank, dated May 28, 2021, that showed his HSBC credit card account was referred to
collections.  (ECF Nos. 71, 72.)  This information was not fully compliant with the Court's prior
orders.

On June 17, 2021, the Court issued another order (the "Fifth Order").  In the Fifth Order,
the undersigned directed Etra to provide the documents he had submitted in camera to
Benthos or show cause as to why the Court should not release the documents to Benthos.  (ECF
No. 74.)  Etra complied with this order and produced the documents that he previously
produced in camera.  (ECF No. 78.)  These documents, however, were largely redundant of
previously produced documents aside from a recent unpaid rent invoice dated June 25, 2021
and an M&T bank account statement for an account ending in x3443 from June 2021.  (ECF Nos.
70, 71, 72.)  Collectively, the documents Etra has produced are only a small portion of the
documents requested in the subpoenas and ordered to be produced by the Court.  Additionally,
Etra has not provided information about other accounts Benthos learned about through third-
party subpoenas.

As a result of Etra's failure to fully comply, Benthos renewed its motion for sanctions.
(Popofsky Decl.  ¶¶ 11-13; ECF Nos.  81-83.)  Etra opposed the motion via a declaration and
attached a number of exhibits to his declaration, which consisted of previously provided
financial documents, with the addition of an M&T bank account statement for an account

ending in x3443 from October 2021 and an updated unpaid rent invoice dated October 29, 2021. (ECF No. 84.) On November 23, 2021, Etra submitted a further opposition to the motion and attached an untranslated document from, what appears to be a European bank account. (ECF Nos. 85-86.)

On February 16, 2022, this Court conducted an evidentiary hearing on Benthos's Motion. At the hearing, Etra answered questions about his accounts and resources. Benthos also presented evidence of additional accounts for which Etra had failed to provide information. After the hearing, Benthos filed a follow-up letter motion for discovery of additional account information based on testimony Etra gave at the hearing. (ECF Nos. 93, 94.)

## DISCUSSION

### 1. Magistrate Judge Jurisdiction

The Federal Magistrate Act provides that magistrate judges have "limited contempt authority" and sets forth the relevant procedure for finding and acting on contempt. 28 U.S.C. § 636(e). In a civil case, such as this one, where the parties have not consented to the jurisdiction of a United States magistrate judge for all purposes, and an act constitutes civil contempt,

> The magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt be reason of the facts so certified. *Id.*

"In certifying the facts under Section 636(e), the magistrate judge's role is to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." *Toxey v. United States*, 2011 WL 4057665, at *2 (S.D.N.Y. Aug. 25, 2011) (internal citation and quotation marks omitted). See *Servaas Inc. v. Republic of Iraq*, 2013 WL 5913363, at *2 (S.D.N.Y.

Nov. 4, 2013) (same). "Under the certification process, the magistrate judge may conduct a hearing." *Hunter TBA, Inc. v. Triple V. Sales*, 250 F.R.D. 116, 118 (E.D.N.Y. Mar. 27, 2008).

When a magistrate judge has certified facts to the district court, "the district court must 'make an independent determination of the facts certified and consider any additional evidence.'" *Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, 2018 WL 5629900, at *1 (S.D.N.Y. Oct. 31, 2018) (quoting 28 U.S.C. § 636(e)(6) (additional citation omitted)). "Absent magistrate judge certification, a district court may not proceed further on a motion for contempt where the conduct at issue occurred before a magistrate judge." *Steller*, 35 F. Supp. 2d 215, 217 (N.D.N.Y. Feb. 2, 1999) (citing *Nova Biomedical Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 423-24 (S.D.N.Y. Sept. 17, 1998)). A magistrate judge may also recommend that certain contempt sanctions be imposed, where warranted by the record. *Soundkillers LLC v. Young Money Entm't, LLC*, 2016 WL 4990257, at *4 (S.D.N.Y. Aug 2, 2016) (citing *Steller*, 35 F. Supp. 2d at 217), *adopted by*, 2016 WL 4926198 (S.D.N.Y. Sept. 15, 2016).

## 2. **Certification of Facts**

The Court hereby certifies that Petitioner Benthos has set forth a *prima facie* case for contempt based on the following facts:

1. After receiving a judgment against Etra for over $5 Million Dollars (ECF No. 15.), Benthos served Etra with judgement enforcement discovery, namely (i) a subpoena *duces tecum* and (ii) a restraining notice with information subpoena on August 27, 2020 (ECF Nos. 24-1, 24-2).

2.  Etra is eighty (80) years old and currently has health conditions that he is treated for, including shingles, a bone marrow disorder, high blood pressure, dangerous skin conditions, and a compromised immune system.

3.  Etra holds a J.D. from Columbia University, other advanced degrees from New York University and Yale University, and has been a practicing attorney and businessman for over fifty years.

4.  Etra has access to a computer and has corresponded with Benthos and the Court via email and made electronic filings with the Court.

5.  Etra served no objections to the two subpoenas, but instead requested numerous extensions of time to provide the requested discovery for health and other reasons. (ECF Nos. 24-3, 24-4, 24-5, 24-7, 24-9, 24-11.) Etra failed to respond by the deadline.

6.  In September of 2020, Etra produced some of the requested documents: Specifically, on September 21, 2020, Etra produced a homemade three-page financial statement dated May 2020 listing expenses, money in accounts, and debts. On September 27, 2020, Etra produced a one-page property tax notice for a North Carolina property and a HSBC credit card screenshot showing a balance of $16,685.96 (as of September 25, 2020).

7.  Etra's September 2020 productions failed to fully respond to the subpoena requests.

8.  Benthos filed a motion for contempt and reasonable counsel fees on October 12, 2020. (ECF No. 23.)

9.  Etra filed opposition papers on October 22, 2020 and attached further responsive documents to the subpoenas. These documents consisted of an HSBC credit card

statement showing a balance of $16,985.98 as of October 22, 2020, two partially illegible screenshots of two M&T accounts, one personal account from September 2020 and one business account ending in x3443 from October 2020, invoices of unpaid legal bills, and an updated three-page financial statement dated October 2020. (ECF No. 28.)

10. Etra's document production in October 2020 also failed to fully respond to the original two subpoena requests.

11. Judge Nathan denied Benthos's contempt motion on November 19, 2020.  (ECF No. 33.)

12. Judge Nathan subsequently issued three Court Orders, dated December 4, 2020, January 5, 2021, and January 21, 2021, directing Etra to comply with Benthos's outstanding two subpoena requests.  (ECF Nos.  39, 54, 59.)

13. Etra, a member of the Bar for over fifty years and a practicing attorney in New York (Compl.  ¶ 2), understood the three Orders and what was required of him.

14. Etra failed to produce relevant responsive documents, even though he has access to a computer and has been representing himself *pro se* and filing documents on PACER.

15. While Etra has been dealing with health issues throughout this case, these issues have not been so severe that they have prohibited Etra from searching diligently for the responsive documents on his computer, as demonstrated by Etra's ability to produce some documents responsive to Benthos's requests.

16. On January 8, 2021, Etra sent Benthos responses to the information subpoena, which stated, among other things, that he has/had accounts at seven different banks,

including M&T Bank, Citibank, HSBC, Uni-Credit Affiliate, JP Morgan, City National Bank, and TD Bank; an HSBC Credit Card that was cancelled; unpaid legal bills for David Hammer, Esq., and Pryor Cashman; and monthly expenses totaling $5,950. (ECF No. 60-1.)

17. On January 14, 2021, Benthos sent a follow-up letter making 21 additional requests and seeking supplemental responses to the information subpoena due to Etra's "deficient responses." (ECF No. 56-6.)

18. On January 29, 2021, Etra sent additional documents, including a closing notice from HSBC for his account ending in x6509, five statements from two of his M&T bank accounts (two statements from one account, and three statements from another), assorted statements from his TD Bank account ending in x529, monthly statements from JP Morgan brokerage account ending in x546 from February 2019 through March 2020 (excluding April and May 2019), and an updated financial statement dated October 2020. (ECF Nos. 60, 60-1, 60-2.)

19. On February 9, 2021, Benthos filed another letter requesting more information about Etra's bank accounts in response to Etra's incomplete January 29, 2021 production and failure to respond to Benthos's request for supplemental responses to the information subpoena. (ECF No. 60.)

20. As of February 9, 2021, the following information remained outstanding in response to Benthos' discovery demands:

    A. Monthly and annual statements from all of Etra's bank accounts at City National Bank;

12

B. Monthly and annual statements from Etra's account at "Uni-credit affiliate;"

C. A complete set of monthly statements from his two accounts at Metropolitan Commercial Bank;

D. A complete set of monthly and annual statements from his three accounts at M&T Bank;

E. A complete set of monthly statements from an account at TD Bank;

F. A complete set of monthly or an annual statement from his HSBC credit card accounts;

G. A complete set of monthly and annual bank statements from three HSBC accounts;

H. Any information or statements from an unspecified European bank account;

I. A complete set of monthly statements from a JP Morgan brokerage account; and

J. All filed communications with the IRS or New York State Department of Taxation or Finance since August 1, 2018. (ECF No. 60.)

21. A settlement conference was held on February 26, 2021, wherein Etra promised to make a first installment payment of $83,333 to Benthos by March 31, 2021 toward amounts due. (ECF No. 63.) Etra failed to make the payment.

22. In a subsequent settlement conference on April 1, 2021, Etra promised to pay Benthos $1 million in twelve (12) equal monthly installments beginning on April 30, 2021 which

13

Benthos agreed to accept in satisfaction of Etra's debt to Benthos.  (Popofsky Decl.  ¶ 8.)  This Court sent the parties the terms of their settlement agreement that same day via email, and it was subsequently confirmed by both parties.  This Court retained jurisdiction over the settlement for purposes of enforcement.

23. Etra failed to make any installment payments.  Under the terms of the settlement, no cessation of judgment enforcement efforts nor any release was to occur until payments were made.  (Popofsky Decl.  ¶ 8, ECF No.  67.)  Therefore, upon Etra's failure to make payments, Benthos was entitled to continue its enforcement efforts for the original amount.

24. On May 11, 2021, Benthos served a third subpoena *duces tecum* on Etra requesting certain information provided in camera to this Court in connection with the settlement discussions and all documents concerning efforts to obtain money for the judgment against him.  (ECF No.  68-1.)

25. On June 17, 2021, the Court directed Etra to produce documents by July 2, 2021, that were responsive to Petitioner's prior requests and provide them to the Court in camera or show cause by that date why the Court should not release the documents provided in camera to Petitioner.  (ECF No. 74.)

26. On July 2, 2021, Etra responded to the Court's prior order and provided responsive documents to Petitioner's subpoenas.  These documents included: (1) an HSBC credit card account statement, (2) an M&T bank account statement for an account ending in x3443 from May 2021, (3) a letter from Melvin H. Dussel regarding his assistance with Etra's settlement compliance, (4) a letter dated May 28, 2021 from HSBC which

14

showed the same credit card account referred to collections emails with Benthos's counsel, and (5) emails sent directly to this Court regarding Etra's health issues, court appearances, and settlement discussions.[5]  He also provided his latest unpaid rent invoice dated June 25, 2021 and an M&T bank account statement for an account ending in x3443 from June 2021.  (ECF No. 78.)

27. Collectively, Etra's responses to Benthos's discovery requests constituted only partial compliance as of September 2, 2021.  (ECF No. 80.)  Specifically, the following documents remain outstanding:

- A complete set of monthly and annual statements from his three HSBC accounts (Aaron Etra 41book credit, Aaron Etra 45book debit, and account ending in x9990) from August 1, 2018 through the present;

- A complete set of monthly and annual statements from his HSBC account ending in x6509 from August 1, 2018 through the present;

- A complete set of monthly and annual statements from his City National Bank account from August 1, 2018 through the present;

- A complete set of monthly and annual statements from his TD Bank account ending in x529 from August 1, 2018 through the present;

- A complete set of monthly and annual statements from the period of August 1, 2018 through September 2020, November 2020 through April 2021, July 2021

---

[5] Documents (1) – (4) were attached to letters Etra filed with the Court on June 7, 2021 and June 11, 2021.  (ECF Nos. 70, 71).

through September 2021, and November 2021 through present from his M&T bank account ending in x3443;

- A complete set of monthly and annual statements from his two M&T bank accounts ending in x2433 and x3441;

- A complete set of monthly and annual statements from his Metropolitan Commercial Bank account ending in x3617 and x3609;

- A complete set of monthly and annual statements from his European bank account;

- A complete set of monthly and annual statements from his Uni-credit affiliate account from August 1, 2018 through the present;

- A complete set of monthly and annual statements from his HSBC credit card account ending in x1069;

- Monthly and annual statements from the period of August 1, 2018 through January 1, 2019, April 1, 2019 through May 1, 2019, and April 2020 through present, for his JP Morgan Brokerage account ending in x546; and

- Etra's filed tax returns, if any, or communications with the IRS or New York State Department of Taxation and Finance for the period of August 1, 2018 through present.  (ECF No. 79.)

28. On September 30, 2021, Benthos filed the instant motion to hold Etra in civil contempt for his defiance of Benthos's judgment-enforcement subpoenas.  (ECF Nos.  81-83.)

29. Etra replied with a declaration in opposition on October 31, 2021.  He also attached a number of exhibits, which consisted of previously provided financial documents as

16

well as an additional statement from October 2021 from an M&T bank account ending in x3443 and an updated unpaid rent invoice from his landlord stating that he is past due on rent and owes $64,000 in rent and $903.07 in electricity bills as of October 29, 2021. (ECF No. 84.) Etra later provided an untranslated document from his European bank account. (ECF No. 86.) At the hearing, Benthos represented that as a result of third-party subpoenas, they became aware of approximately thirty accounts held by Etra but did not specify all thirty accounts. Benthos previously filed a letter with this Court stated that Etra had twenty-six (26) known bank, credit card and investment accounts at various times since August 1, 2018. (ECF No. 60.) At the hearing, Benthos specified fifteen (15) bank, credit card, and investment accounts that Etra has not produced any documents for, one (1) bank account, the M&T bank account ending in x3443, that Etra produced only sporadic statements for, and one (1) credit card that Etra produced a statement for and a letter from HSBC stating the account was referred to collections.

30. Specifically, Etra did not produce any statements for the following fifteen accounts:

- HSBC Aaron Etra 41book credit account;

- HSBC Aaron Etra 45book debit account;

- HSBC account ending in x9990;

- Citi National Bank account;

- European Bank account;

- Uni-Credit Affiliate account;

- HSBC account ending in x6401;

- HSBC account ending in x6410

- Citibank accounts ending in x0330, x0699, x1370, x4852, and x8687; and

- HSBC credit card accounts ending in x6532 and x7154.

31. While Etra did produce statements for his M&T bank account ending in x3443 and a notice from HSBC stating that his bank account ending in x6509 was being closed, this production is not a complete set of monthly and annual statements for the time period requested by Benthos. (ECF No. 60.)

32. Etra testified at the hearing that he does not own any stock or property at the present time. He testified that he is living off of his social security benefits, which amount to $1,500 per month. However, he did not produce any information about the accounts into which his social security payments are deposited.

33. Etra testified that he has only one open bank account: M&T bank account ending in x3443. Etra stated that all of his other accounts have been closed, including all of his HSBC accounts and his European bank accounts. However, Etra has only produced one document demonstrating an account closure: a notice from HSBC stating that his account ending in x6509 was being closed. (ECF No. 60.) Etra testified that upon closure of his HSBC account he received a check from HSBC with the closing balance of his accounts there at the time of closing in the amount of approximately $19,000. Etra testified that he cashed this check but has not produce a copy of the check. Nor has he produced any records demonstrating that the check was cashed. Etra testified that he provided the closing statement of the European bank account as well, but the document Etra provided is untranslated. (ECF No. 86.)

34. Etra's testimony that he has no other accounts and has complied with the information requests was not credible. For example, Etra testified that the reason he had so many accounts in the past was because the banks wanted him to open as many accounts as possible, including business accounts, operating accounts, personal accounts, and money market accounts, even though he claimed he had no use for the accounts. It is simply not credible that Etra would open unnecessary accounts. Etra also testified that he received social security payments in the form of checks which he cashed. Yet federal law mandates that all federal benefit payments, including social security, must be made electronically. 31 C.F.R. § 208.1; *Social Security Direct Deposit*, available at https://www.ssa.gov/deposit/. While there is an option to waive this requirement, Etra did not indicate he did so. *See* 31 C.F.R. § 208.4. Upon cross examination, Etra stated that the social security payments were actually transferred into his M&T bank account ending in x3443. However, he has never produced any account statements showing deposits from social security. Etra further testified that he has been living off approximately $19,000 dollars for two years – from the money he received from HSBC when he closed his HSBC accounts. However, he has provided no documentation for this check or statements reflecting the transfer of money from HSBC into any other account. Plaintiff's counsel showed Etra a statement at the hearing suggesting there is another HSBC account ending in x9990 into which $12,774.06 was transferred at the time of his HSBC account ending in x6509's closure – an account for which no documents or monthly statements were ever provided. Etra was unable to adequately explain this document.

19

35. Finally, Etra has represented to this Court by way of financial statements that he has a personal income of $4,900 per month, not including supplemental income from social security, which in total amounts to $6,500. (ECF No. 60-2.) Yet Etra has not provided any documentation reflecting the source of this additional income or where it is deposited.

36. Based on the testimony at the hearing and the documents produced, it appears that many of the accounts Etra disclosed as having had in the past have been closed and that the only remaining accounts that are open are the HSBC account ending in x9990 and the M&T account ending in x3443.

### 3. Standard for Civil Contempt

A court's power to hold a party in contempt "serves to protect the due and orderly administration of justice and to maintain the authority and dignity of the court." *CBS Broad. Inc. v. Filmon.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 754 (1980)). "The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of [it]." *Badgley v. Santacroce*, 800 F.2d 33, 36 (2d Cir. 1986). "Civil contempt sanctions may serve dual purposes, namely 'to secure future compliance with court orders and to compensate the party that has been wronged.'" *Cordius Trust v. Kummerfeld*, 2009 WL 3416235, at *6 (S.D.N.Y. Oct. 23, 2009) (quoting *Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems*, 369 F.3d 645, 657 (2d Cir. 2004). It is well established that "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (internal quotation marks omitted); *see also* 18 U.S.C. § 401 (authorizing courts "to punish by fine or imprisonment,

or both, at its discretion, such contempt of its authority . . . as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"); *see also* Fed. R. Civ. P. 45(g) ("The Court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.").

Still, "[a] court is obliged to use the least possible power adequate to the end proposed." *Cordius Trust*, 2009 WL 3416235, at *18 (quoting *Spallone*, 493 U.S. at 276). In selecting sanctions, the court is guided by "the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay." *Cordius Trust v. Kummerfeld*, 2009 WL 3416235 (S.D.N.Y. Oct. 23, 2009) (citation omitted) (quoting *Paramedics*, 369 F.3d at 658). "A contemnor may be excused from the burden of a civil contempt sanction if it lacks the financial capacity to comply; but the contemnor bears the burden of production in raising such a defense." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). To meet this burden, the contemnor must "establish his inability [to pay] clearly, plainly, and unmistakably." *Id.* (quoting *United States v. Chusid*, 372 F.3d 113, 117 (citing *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). "Conclusory statements are inadequate to carry this burden." *Huber*, 51 F.3d at 10 (citing *Donovan v. Sovereign Security*, Ltd., 726 F.2d 55, 59 (2d Cir. 1984)).

"Because a contempt order is a severe sanction, it is subject to the higher 'clear and convincing' evidence standard rather than the usual preponderance of the evidence standard applicable to other civil cases." *Chere Amie, Inc. v. Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. 2001) (collecting cases). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a

reasonable certainty that a violation occurred." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 WL 5067500, at *9 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002). "Although the defendant's conduct need not be willful, a plaintiff must also prove that . . . the defendant has not been reasonably diligent and energetic in attempting to comply." *Id.* (internal quotation marks omitted) (quoting *GMA Accessories, Inc. v. Eminent, Inc.*, 2008 WL 2355826, at *2 (S.D.N.Y. May 29, 2008)). However, "[t]he failure of a party to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt." *Dunn v. New York State Dep't of Labor*, 47 F.3d 485, 490 (2d Cir. 1995).

To establish contempt, the movant must show that "(1) the order the [alleged] contemnor failed to comply with is clear and unambiguous; (2) the proof of noncompliance is clear and convincing; and (3) the [alleged] contemnor has not diligently attempted to comply in a reasonable manner." *Grand v. Schwarz*, 2018 WL 1583314, at *3 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks and citations omitted). These elements have all been met.

### a. The Court Orders Issued Are Clear and Unambiguous

For a court order to be clear and unambiguous, it must leave "no uncertainty in the minds of those to whom it is addressed." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 WL 5067500 *9 (S.D.N.Y. Sept. 27, 2017) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995). "A federal court [must] frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Drywall Tapers & Pointers of Greater N.Y., Local 1974 of I.B.P.A.T AFL-CIO v. Local 530 of Operatives Plasterers & Cement Masons Int'l Ass'n*, 889 F.2d 389, 400 (2d Cir. 1989) (internal quotation marks omitted).

Thus, the order must 'be specific in terms' and that it 'shall describe in reasonable detail . . . the act or acts sought to be restrained.'" *Yurman Studio, Inc. v. Castaneda*, 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (quoting *Drywall Tapers*, 889 F.2d at 400).

The three Orders from Judge Nathan, along with the two further Orders issued by the undersigned, were all clear and unambiguous. They ordered Etra to comply with the two subpoenas sent by Benthos and warned that failure to comply with the Orders could lead to sanctions. (ECF No. 59.) ("the Court will Order [Etra] to show cause why he should not be held in contempt."). As Judge Nathan stated in the Second Order, "[t]he Court has reviewed the [two] subpoenas, and compliance with them should not be particularly onerous, especially if Mr. Etra's finances are as straightforward as he has represented." (ECF No. 54.) The two Orders issued by the undersigned were "clear and unambiguous" as evidenced by Etra's response to the Fourth Order in which he sent an assortment of documents (albeit incomplete) to Chambers, and his response to the Fifth Order in which he stated he "complied with Your Honor's Orders." (ECF No. 78.) Since Etra responded to the Order, he clearly has the ability to understand the Orders. Etra never asked Benthos, nor this Court, what he was required to produce, nor did he ever suggest that the Orders were unclear, and he did not understand them. Instead, Etra has continuously represented to this Court that he has fully complied with Benthos's requests when he has not in fact complied.

### b.  Etra's Non-Compliance is Clear and Convincing

Benthos has filed three motions to hold Etra in civil contempt. The instant motion is based on Etra's continued failure to provide a full response to Petitioner's discovery requests, to Court orders requiring Etra to provide responsive documents, and his failure to make any installment

payment pursuant to the parties settlement agreement. An individual properly served with a subpoena *duces tecum* in post-judgment discovery must produce "all responsive documents in its possession, custody or control." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii). An individual responding to a subpoena issued pursuant to Rule 45 has an obligation to conduct a reasonable search for documents. *See also* Fed. R. Civ. P. 26(b). Perfection is not required. *Winfield v. City of New York*, 2017 U.S. Dist. LEXIS 194413, 2017 WL 5664852, *9 (S.D.N.Y. Nov. 27, 2017). However, litigation is not a game, and parties cannot engage in halfhearted or ineffective efforts to identify and produce relevant documents. *Id.* (citations omitted). Partial compliance does not satisfy a party's discovery obligation. *See, e.g.*, *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2014 WL 12834210, at *18-19, 28 (E.D.N.Y. June 27, 2014) (*prima facie* showing of "clear and convincing" non-compliance when party's partial "production" "fell short of" all documents requested, even after requesting party provided an "extremely detailed accounting of missing documents in previous productions"), *report and recommendation adopted*, 2017 WL 1194730, at *9 (Mar. 30, 2017); *Walsh v. Five Corners Food*, 21-mc-00237 (DRH) (ST) (ECF No. 16) (E.D.N.Y. Feb. 1, 2022) (recommending contempt when Respondent's production consisted of only partial compliance).

Etra's search to the present has clearly been inadequate and fallen short of the documents requested by Benthos and ordered to be produced by the Court. Etra has only produced to Benthos a sporadic and assorted batch of documents, for a select few months, and for one account, HSBC x9990, that was only recently revealed, as well as a number of other accounts, no documents at all. Etra also failed to provide any documentation for two European bank accounts. The untranslated two-page document supposedly pertaining to his European accounts is insufficient. Etra likewise failed to assert any legitimate objections to the information

requests.  (Popofsky Decl.  ¶ 6.)  At bottom, even if Etra's accounts are closed, the subpoenas and Court orders required Etra to produce a complete set of monthly statements for all of his accounts, and Etra failed to comply without justification.

Benthos has thus demonstrated clear and convincing proof of Etra's noncompliance.

### c.  Etra Has Not Diligently Attempted to Comply in a Reasonable Manner

"Reasonable diligence, at the very least, requires a party [or non-party] to develop reasonably effective methods of compliance." *Zino Davidoff SA v.  CVS Corp.*, 2008 WL 1775410, at *8 (S.D.N.Y. Apr. 17, 2008); *see, e.g., Cancer Research Inst., Inc.  v.  Cancer Research Soc'y, Inc.*, 744 F.  Supp.  526, 530 (S.D.N.Y. 1990).  "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Yurman Studio*, 2009 WL 454275, at *2 (citations omitted).; *see also Chase Bank USA., N.A. v.  M.  Harvey Rephen & Assocs., P.C.*, 2019 WL 13046982, at *2 (S.D.N.Y. Aug. 16, 2019).  "To determine reasonable diligence, courts examine the defendant's actions and consider whether they are based on a good faith and reasonable interpretation of the court order." *Schmitz v. St. Regis Paper Co.*, 758 F. Supp. 922, 927 (S.D.N.Y. March 8, 1991).  It is not required that a party "exhaust all means available" to comply."  *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 293 (2d Cir. 2008)  However, "[m]ore is required than a grudging, half-hearted or foot dragging attempt at compliance." *Chere Amie, Inc.  v.  Windstar Apparel, Corp.*, 175 F. Supp. 2d 562, 565 (S.D.N.Y. May 3, 2001) (citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:22, at 43 (4th ed.  1999)).

It is not difficult for Etra to contact his bank or former banks and request monthly statements, annual statements and/or closing statements for the period August 1, 2018 to the present. Year-end transaction reports are typically readily available after the close of each year and used for tax filing purposes. Moreover, there is no reason to believe that the banks involved here do not have records going back to August 2018. That an account has closed does not mean that transaction records cannot be recovered, and Etra has never stated otherwise.

Instead of contacting his banks and prior banks and requesting his records, Etra simply produced a closing statement or a few monthly statements for some of his accounts. This is insufficient because some of the accounts may have had higher balances in one month and a lower or no balance in a later month. Benthos is not able to track the flow of funds absent monthly account statements or annual transaction records. And, it is clear that there were transfers of funds, as Etra has admitted that funds were transferred by HSBC to him – but he fails to show the documents reflecting the transfer or deposit of such funds into any other account.

Etra's failings also are demonstrated by his failure to identify all of his accounts. Benthos only learned about some accounts by serving third-party subpoenas on various financial institutions.

Finally, even if it is the case that Etra currently has only one open bank account, namely his business account at M&T ending in x3443, he has only provided four separate months of statements from this account (October 2020, May and June 2021, and October 2021). The Court's orders and the subpoenas requested monthly statements from August 1, 2018 to the present. Likewise, if Etra's two European bank accounts were closed, as he says, he has failed to provide the closing statements.

26

Etra has provided no credible excuse for failing to identify accounts and produce monthly statements. Thus, he has not diligently attempted to comply.

Respondent Etra cannot pick and choose which aspects of a Court order he wishes to comply with. As Judge Nathan stated, the previous Orders "did not direct Mr. Etra to comply with the judgment enforcement subpoenas if it was convenient." (ECF No. 59.) Though Etra is keen to relitigate the underlying merits of the judgment, his thoughts on the merits do not excuse compliance with the subpoenas or the Orders, nor are they relevant to the instant matter.

As a general matter, the Court generally will give a *pro se* litigant special solicitude. But Etra holds a J.D. from Columbia University, other advanced degrees from New York University and Yale University, and has been a practicing attorney and businessman for over fifty years. *Compare Tracy v. Freshwater*, 623 F.3d 90, 92, 101 (2d Cir. 2010) (courts are "ordinarily obligated to afford a special solicitude to *pro se* litigants"); *with Holtz v. Rockefeller & Co.*, 257 F.3d 62, 82 n.4 (2d Cir. 2001) (*pro se* attorneys typically "cannot claim the special consideration which the courts customarily grant to *pro se* parties") (quoting *Harbulak v. County of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)). Etra contends he does not practice litigation (ECF No. 84, Etra Decl. ¶ 3.) Thus, no special solicitude should be given to Etra since he has acquired a good deal, if not all, of "the experience necessary to deal with all aspects of his case." *Tracey*, 623 F.3d at 92. Further, the Court Orders and subpoenas at issue do not require well-developed legal acumen in order to comprehend or comply with. *See Id.* at 102.

For all the above reasons, it is appropriate to find Etra in contempt of Court orders for failure to produce documents ordered to be produced. I do not recommend any sanction for Etra's failure to make a settlement installment payment, as the agreement itself contained the

repercussion for failure to pay—that is, resumption of judgment enforcement and no release of the judgment.

### 3. **Appropriate Sanctions**

"A district court clearly has discretion to impose contempt sanctions for violations of post-judgment discovery orders." *SerVaas Inc. v. Republic of Iraq*, 2014 WL 279507, at *2 (S.D.N.Y. Jan. 24, 2014), *vacated on other grounds*, *Servaas Inc. v. Mills*, 661 F. App'x 7, 8 (2d Cir. 2016); *Export-Import Bank of Republic of China v. Grenada*, 2010 WL 5463876, at *1 (S.D.N.Y. Dec. 29, 2010) (same).

Civil contempt sanctions may be used to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *N.Y. Stale Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989); *see United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989). "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014). But compensatory damages are "available only where the moving party has suffered actual damage." *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2017 WL 5067500, *27 (S.D.N.Y. Sep. 27, 2017) (internal citation omitted). When the purpose of a sanction is coercive, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus. Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982); see also *Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979) ("[T]he district judge, sitting in equity, is vested with wide discretion in fashioning a remedy.").

In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). Essentially, a fine must "be substantial enough to make it more economical for [the contemnor] to comply than not to comply." *Perfect Fit Indus., Inc.*, 673 F.2d at 57. "Arrest is the appropriate coercive sanction for civil contempt, so long as its purpose is not punitive but is instead to compel the contemnor to perform the required act," i.e., if conditioned upon compliance. *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz*, 2006 WL 1643202, at *8 (S.D.N.Y. June 13, 2006). A court also may assess attorney's fees as a sanction for "the willful disobedience of a court order." *U.S. v. D-M Sales Corp.*, 903 F. Supp. 431, 433-434 (E.D.N.Y. Nov. 6, 1995) (quoting *Chambers v. Nasco, Inc.*, 501 U.S. at 45, 111 S. Ct. at 2133) (proclaiming that as part of the sanction a court may impose attorney's fees representing the entire cost of the litigation).

As a result of Etra's continued noncompliance, Benthos has been forced to incur additional legal fees in making a number of applications and requests for production of documents. Benthos has also been prevented from collecting on the judgment. Further, given Etra's persistent and unwavering failure to respond timely, or otherwise, to Court orders, it is more than likely that merely another court order, standing alone, will not secure compliance. (Popofsky Decl. ¶¶ 5-13.) The Court understands Etra is suffering from ongoing health issues and financial difficulties, but this plight does not excuse Etra from responding to Court orders and producing the requested documents. These document demands and Court orders regarding

29

same, unlike the Judgment against Etra, do not cost money to comply with and so Etra should be able to do so.

###### a.  Fines

Benthos requests that the Court "issue a finding of contempt, and order that if Respondent does not comply fully with the requests set forth in Dkt. 60 he is to be apprehended and incarcerated forthwith." (ECF No. 83.)  Benthos cites *Musalli Factory v.  New York Fin.  LLC* in support of their application, but that case is distinguishable from the situation here.  2010 WL 2382415, at *4 (S.D.N.Y. June 14, 2010).  In *Musalli Factory*, the judgment debtor was living in Egypt, claimed "sincere . . . cooperation" with Court yet at the same time ignored the subpoena and the Court's order.  *Id.*  *8-*11.  In this matter, Etra lives in New York, has appeared before this Court, and has not completely ignored the subpoenas nor the Court's order.  Instead, Etra has taken the position that he has complied with the requests though his minimal production of information.  While Etra has not substantially complied, nor has he made a good faith effort to do so, he has partially complied.  Therefore, Benthos's request for conditional incarceration is too severe, especially given Etra's age and health conditions.  Accordingly, Petitioner's motion should be denied to the extent that it seeks incarceration.  *See Close-Up Int'l, Inc.  v.  Berov*, 411 F.App'x 349, 354 (2d Cir. 2010) (though valid in certain circumstances, confinement as a sanction for civil contempt is an antiquated method to assure compliance).  However, after almost a year-and-a-half of noncompliance, it is "nevertheless important to select a sanction which is likely to have some impact." *Adams v.  New York State Educ.  Dep't*, 959 F. Supp.2d 517, 520 (S.D.N.Y. Aug. 1, 2013) (quoting *Securities and Exchange Commission v.  Margolin*, 1996 WL 447996, at *5 (S.D.N.Y. Aug.  8, 1996).

### 4. **Proposed Remedy**

Based on the hearing testimony and Etra's partial compliance, it appears there are several bank accounts that are most relevant to determining Etra's financial status and assets and for which additional documents are needed. In addition, to the extent they are closed, the closing statements for Etra's identified accounts are also relevant to determining Etra's financial status and assets. Etra has also failed to provide any filed tax returns or communications with the relevant tax authorities or closing statements for other accounts —all also relevant. Therefore, at a minimum, the following documents are needed to satisfy the outstanding discovery requests and court Orders:

(1) the full set of monthly statements for the M&T account ending in x3443 from August 2020 to the present;

(2) the full set of monthly statements for the account which Etra receives his social security payments from August 2020 to the present, if separate from the M&T account ending in x3443;

(3) the full set of monthly statements for HSBC Aaron Etra 41book credit account from August 1, 2018 to the present, or in the alternative statements up to the final account statement if closed;

(4) the full set of monthly statements for HSBC Aaron Etra 41book debit account from August 1, 2018 to the present, or in the alternative statements up to the final account statement if closed;

(5) the full set of monthly statements for HSBC bank accounts ending in x9990, x6096, x6100, x7955, x6401, x6410, and x6509,[6] from August 1, 2018 to the present, or in the alternative statements up to the final account statements if closed;

(6) the full set of monthly statements for the Uni-Credit account from August 1, 2018 to the present, or in the alternative statements up to the final account statement if closed;

(7) the full set of translated monthly statements for the European bank account (for which a two-page untranslated document was previously provided) from August 1, 2018 to present, or in the alternative statements up to the final account statement if closed;

(8) the April 2019 and May 2019 monthly statements for the JP Morgan brokerage account ending in x546;

(9) the closing statements for Citi National Bank account; M&T bank accounts ending in x2433 and x3441, Metropolitan Commercial Bank accounts ending in x3617 and x3609, TD Bank account ending in x529, and Citibank accounts ending in x0330, x0669, x1370, x4852, and x8687;

(10) all filed tax returns or communications with the IRS or New York State Department of Taxation and Finance from August 1, 2018 through present; and

(11) proof of all funds Etra has received from any closed bank accounts, including HSBC account ending in x6509, by check or otherwise, from August 2020 to the present.

I recommend that Etra be ordered to produce the above-listed documents within thirty (30) days, along with a notarized Affidavit stating that he has no other open personal, business or custodial accounts (whether in the U.S. or abroad) except for the open M&T account identified

---

[6] While accounts ending in x6096, x6100, and x7955 were not specifically referenced by Benthos in their requests, this Court found these accounts to be held by Etra after an independent review of the documents and testimony provided by Etra throughout this matter.  (ECF No. 60.)

at the hearing, no stocks, no bonds, no real estate, no cryptocurrency or other financial assets or, alternatively, identifying other open accounts and current assets. I recommend that Etra be fined $50 per day for every day past the deadline that he fails to produce the above-recommended documents and information.

Coercive sanctions of this nature are warranted because Petitioner's harm is continuing—as Benthos has not located funds to satisfy the judgment and Etra is continuing to use and disperse his funds. Thirty (30) days should provide Etra enough time to gather the requested documents, which should be readily accessible from the banks and obtainable at no to little cost. While this Court is aware of Etra's represented financial difficulties, Etra's previous submission to this Court represented that he has $6,500 per month in income as of October 2020. (ECF No. 60-2.) In his application to appeal In Forma Pauperis dated November 2, 2020, Etra stated his employment income during the past twelve months was $4,900 per month. (ECF No. 31.) And even if these submissions are no longer accurate, Etra receives approximately $1,500 Dollars per month in social security benefits. Thus, $50 per day is appropriate.

The suggested conditional per diem fine also is consistent with what courts in this District have done in similar situations. *See e.g., Tacuri v. Nithun Constr. Co.*, 2019 WL 6914042 (E.D.N.Y. Dec. 19, 2019) ($100 per diem fine until Defendant have responded in full to Plaintiffs' information subpoenas); *Visa Food Exch., Inc. v. Lawson Foods, LLC*, 2019 WL 5682632, at *19 (S.D.N.Y. Nov. 1, 2019) (imposing a daily fine of $100 from the due date of the subpoena); *Bricklayers Ins. & Welfare Fund v. P.P.L. Constr. Servs. Corp.*, 2017 WL 9481016, at *4 (E.D.N.Y. Jan. 12, 2017) (noting prior imposition of $250 fine for each day that defendant fails to produce all requested records), *report and recommendation adopted*, 2017 WL 1093192 (Mar. 23 2017);

33

*Mitchell Grp. USA, LLC v. Udeh*, 2015 WL 6760109, at *8 (E.D.N.Y. Nov. 5, 2015) (imposing $250 daily fine for failure to produce documents); *U.S. v. D-M Sales Corp.*, 903 F. Supp. 431, 433-434 (E.D.N.Y. Nov. 6, 1995) (civil contempt warranted and $100 per diem fine, where party failed to comply with an order directing them to supplement "incomplete and unsworn answers" answers to a subpoena and "provide requested documents").

Additionally, I recommend that the Court refer this matter to the United States Attorney's Office for the Southern District of New York for investigation regarding the underlying alleged scam of $5 Million Dollars of Bitcoin and Etra's failure to produce information showing where the large majority of those funds went. *See Amaker v. Kelley*, 2009 WL 385413, at *11 n.15 (N.D.N.Y. Feb. 9, 2009) (citation omitted) ("referral . . . to the United States Attorney" is "a matter which [is] within the court's inherent authority in the event of a perceived criminal violation.").

## CONCLUSION

For the reasons set forth above, I recommend that Petitioner's motion to hold Respondent in civil contempt be GRANTED in part. I recommend that if Etra does not provide the above listed documents, along with a notarized Affidavit stating which of his accounts are currently open and affirming that there are no other open accounts, in the United States or abroad, within thirty (30) days from the entry of this Order, a $50 per diem fine be imposed until such time as Etra complies with the Court Order. I further recommend that the record of this case warrants a referral to the United States Attorney's Office for the Southern District of New York for investigation regarding the underlying alleged scam of $5 Million Dollars of Bitcoin. I also recommend that Petitioner's motion to incarcerate Respondent be DENIED.

Dated:  March 14, 2022
        New York, NY

Respectfully submitted,

_Katharine H Parker_

KATHARINE H.  PARKER
United States Magistrate Judge

**NOTICE**

**The plaintiff shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  The defendant shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P.6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J.  Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).   Any requests for an extension of time for filing objections must be addressed to Judge Nathan.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v.  Arn*, 474 U.S.  140 (1985).**

35