# Exhibit 14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
BENTHOS MASTER FUND, LTD.,                :
                                          :          Case No. 20-cv-03384 (AJN)
                                          :
                        Petitioner,       :
       -against                           :
                                          :
                                          :          **RESPONDENT**
AARON ETRA,                               :          **OPPOSITION**
                                          :
                        Respondent.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, **Aaron Etra**, declare the following:

1.      I am the Respondent in this case and respectfully submit my response in opposition to Petitioner's motion to hold Respondent in conditional contempt of court for refusal to comply with judgment enforcement subpoenas for documents and information.

## Introduction

2.      I am a longtime honorable member of the New York Bar (since 1966) and a citizen primarily engaged in voluntary public service at home and overseas, who takes his obligations to the law and society very seriously and has devoted his life to doing so. Petitioner's counsel were engaged by Benthos after an extended period of time during which their management recognized and fully appreciated that my role was of a blameless provider of services who was, without any compensation or expectation thereof, trying to assist them and their fellow business parties in remedying the business predicament in which they found themselves for reasons total unrelated to me and my action. Since counsel's appointment by Benthos, my health has suffered greatly from what is truly a "shocking" and undeserved series of

attacks on me personally and professionally and I have been forced to see doctors on an ongoing basis.   I will be 80 this coming May and have high blood pressure (from which my father suffered and succumbed) and a fragile immune system (on the cusp of AML, from which mother passed away).   My doctor provided me with a letter, which was emailed to opposing counsel explaining the necessity to avoid the consequences of stress from the constraints they have placed on my ability to live decently and the pressures of bank account holds and incessant motions, subpoenas and depositions for the limited relevant material, of which they already have had overwhelming amounts from me directly as well as from their prior actions. [see Exhibit A-letter from Dr. Lee of Weill Cornell Medicine- New York Presbyterian].

3. The result  of counsel's actions have been to  drain down to almost rock bottom my limited human and financial resources in dealing with incessant  attacks and falsely accusatory communications to everyone they can reach on the part of two partners in a corporate law firm with a seemingly unlimited budget from an offshore Cayman Islands investment vehicle client. As recently as October 14th, and as the latest communication to them in an unending flow of messages since they were engaged, I have tried to get counsel to communicate with their client and focus on trying to recover from the seller of the Bitcoins or otherwise recoup funds toward the loss Benthos suffered and to permit me to function so that I can do my part in achieving this result. However, counsel has never veered from refusing to be deterred from avoiding any and all good faith and achievable settlement efforts by me and has concentrated on actions that cannot bring any benefit to their client, since it only injures me further and makes me incapable of any functioning, even if it increases their billing. [See exchange of emails both dated October 14, 2020 between me and Mr. Popofsky, as Petitioner's Exhibits 2 and 3].

4.     With my health always at stake, and during the period of the Jewish High Holidays, I simply asked opposing counsel to be able to participate undistracted in religious

-2-

services and to be free from further harassment then, with time thereafter to gather such information as may be available and relevant from among the demands of their lengthy and detailed information subpoenas for documents and information.

5..    However, instead of simply granting me the few weeks adjournment requested, particularly when I asked weeks in advance of the due date, opposing counsel turned my straightforward request into an all too familiar adversarial and aggressive opportunity and used the occasion to unleash more of their lengthy emails to berate, accuse and condemn me, and argue his position, not granting me an untethered adjournment.

6.    He asked that I submit information by the deadline, and if he finds it acceptable, then he would grant me further time to gather information. He believed that I should have items readily available notwithstanding the lockdown and my condition.

7.    Due to my blood pressure and immune system readings having been in the danger zone and with covid-19 a special risk for me, I was not going to an office anymore. I did create on my laptop a personal financial statement, which I believed would give opposing counsel a full overview picture of my financial situation so he would know what I had and did not have from his list of requested items. I would be held to the truth and relevance of this statement as of when I mailed it to him on September 21, 2020. Although I had created it several months before, it was fully descriptive of my financial condition then because there had been only a gradual deterioration in the circumstances described on it.    [see copy of Personal Financial Statement attached to Petitioner's papers as Exhibit 8]. My financial condition has continued to deteriorate, exacerbated by the action of Petitioner's counsel who have put a hold my main operating account and have caused the closure of other accounts by their subpoena action.  I am attaching a current personal financial  statement dated October 22,2020 [See Respondent's Exhibit B]   On all those statements, the same small piece of land, the only real estate I owned then, I continue to own

now. It is a very small piece of raw land in North Carolina, in which I have a $2,000 interest. [see petitioner's Exhibit 10--- the 2020 Real Estate Tax Bill from Haywood County Tax Collections in Waynesville, North Carolina also emailed to opposing counsel later that day].     The apartments I have lived in Manhattan have always been rentals and my current rent is listed on all said financial statements. As conveyed to Petitioner's counsel, I have no car. I am a renter of a one  bedroom apartment and do not own a home.

8.     I submitted what I had within my possession and what I could assemble in my state of health.   Counsel was not satisfied and complained in his contempt motion that, although I did list in my financial statement my credit card obligations of $18,000 debt, I did not send him then my credit card statements, and although I did list my monthly rent, I did not give him the name of my landlord, and specifics of that nature.   I sent him a response that "what I sent him was truly the picture, with the details not going to add up to more" [petitioner's Exhibit 11], and that same day, I sent him the portion of the page of the HSBC credit card statement showing the some $18,000 debt [petitioner's Exhibit 12], which, as mentioned above, was my only credit card, and should have been sufficient to see the debt amount.   Once again, Petitioner's counsel was not satisfied, and wanted more.    Also, I would like the Court to be aware that HSBC has closed my credit card account and all my bank accounts  It appears to be the practice of banks that once a subpoena or inquiry arrives or  potential collection action is ascertained with respect to any account or account holder, the bank closes out all accounts as a matter of practice.  This has happened to my bank accounts at Citibank and M & T Bank where I had accounts until counsel subpoenaed them or, more recently, put a hold on the small amounts I have in accounts, making it impossible for me to pay my bills, pay rent or buy food, as I have repeatedly told Petitioner's counsel, requesting them to not put holds on my limited funds accounts or cause all

accounts to be closed by their enforcement or subpoena action, leaving me unable to pay basic living expenses.

9. Counsel further complained that my financial statement was 4 months old. So that there is no misunderstanding of my current situation, I am submitting now to this Court,  dated October 22, 2020 and marked as Respondent's Exhibit B, the current version with updated calculations for credit card debt and the current statement for the now closed HSBC credit card [Respondent's Exhibit C],  and other items such as rent, which at this time I am in arrears due to opposing counsel freezing my bank account at M&T Bank, the account that I use to pay rent, food, credit card payments, and other such expenses. [see Exhibit D, Respondent's two M&T Bank accounts, the personal one having been closed, and the business account having been frozen].   I know the seriousness of submitting false information, and this statement continues to be the true picture as it was true four months ago.

10. As to my account at M&T Bank, I have asked opposing counsel to unfreeze it, forbear from taking any further such action and let my life go on, so I can function , pay my rent, my food, and, continue to  work. If I cannot function and live decently.I also cannot do what I would be able to do if left to function normally, which is play a part in raising settlement funds for Benthos in return for setting the record straight with respect to the cause of their loss and the true absence of any responsibility on my part.

**Settlement Efforts and Background**

11. Petitioner holds a judgment against Respondent in the amount of $5,254,561.12 as the result of an Arbitration Award rendered in April 2020.   While the issue of whether or not the judgment should stand is not before the Court at this time, I would like this Court to know that Respondent did not participate in the arbitration, as it was and is his contention that any

-5-

arbitration, which is meant to settle disputes between parties, should have been between the Buyers and Sellers in the transaction. Certainly, this dispute resolution procedure was not meant for an attack by Benthos against the escrow agent alone, a truly blameless and uncompensated, non-party, services provider who acted with the full knowledge and consent of all parties, including Benthos. All concerned, again including Benthos, knew and know that it was the Bitcoin owner/seller who was to deliver the Bitcoins directly to the account of Benthos, the Buyer, not to the escrow agent. They knew and accepted without complaint that, me, as the escrow agent had sent the funds of Benthos to where that owner/seller instructed they be sent , with the full knowledge and consent of Benthos. In fact, the transaction was a sale and purchase business transaction that failed through no fault or misdeed of the escrow agent. Notwithstanding my protests at every stage from the choice of and by the appointing authority onward, a single arbitrator chosen by Benthos agreed to hear the matter, and with no input or participation from any other party or anybody involved in the transaction other than Benthos (themselves only one of three parties to the transaction), held the escrow agent solely and totally responsible for this failed business (in which the escrow agent had no participation) and added all costs Benthos could think of on to this one-sided decision.

12. While settlement procedures are not directly before this Court, I have also made continuing attempts to settle, none of which have been responded to constructively by opposing counsel, nor is it clear that my good faith communications were ever referred to his client, as the requested responses were never conveyed back by counsel. One communication from counsel, at the time the arbitration award was rendered, raised my hope that Petitioner's counsel would understand that cooperation is the only way to ameliorate the situation for the mutual benefit of his client (raising funds toward the loss) and me (setting the record straight) [See Respondent's Exhibit E, email from Steven Popofsky of April 24, 2020 with email of Martin F. Gusy to Steven

Popofsky and Joshiua Bromberg of April 9, 2020].   However, thereafter, whenever I have sent Petitioner's cousel good faith indications of what I could do in my situation if not constrained by his actions, he has only rejected both the approach and the reality it reflects. Choosing instead to spend more of his client's money on inflicting more pain and expense on me through extensive subpoenas, lengthy depositions, continuous motions and heavy and debilitating enforcement action.  Such action surely leads nowhere and does not deserve support from the Court. On the other hand, encouraging me to devote future work to an achievable goal in amount and time is worthwhile and I am willing to do so and have said so continually. As his Benthos clients know, this is not something new. I have acted in their interest, unselfishly from the outset of the problem and I should have been the last person attacked in the way I have been by Petitioner's counsel.  No doubt and understandably, Benthos investors are unhappy with a business loss and I am a soft target here in New York for big firm lawyers anxious to run up as much of a bill as possible.

13.     The funds for settlement would come from enlisting my business relationships to allocate some fruits of future transactions to this purpose of appropriately clearing the record and my reputation while going some way toward reducing an unfortunate loss.   Petitioner attached my resume to his papers to show this Court my online website [Plaintiff's Exhibit 13] in an attempt to show this Court that I should have adequate funds to satisfy the judgment.   While it is true as my website says that I have been the "President/CEO" of a once-active New York corporation "engaged in real estate development, brokerage, management, marketing and consultancy", and supposedly can take on these projects, I have had no such business in those fields for many, many years.    Most of my activities, as seen on my website, is as a volunteer with different civil society organizations and non-profits, focusing on human rights, sustainable development and life sciences, participating in programs and projects in those fields.    At the

-7-

United Nations, as a volunteer, I have represented three NGOs (Non-Governmental Organizations): Academia Mexicana de Derecho Internacional, World Council of Peoples for the United Nations (of which I am a Vice-President) and the World Development Foundation. I am Chair of the Executive Committee of the Council of Organizations of the United Nations Association of the U.S.A. and a Member of its National Council. I have been Vice-Chair of the UN NGO Global Executive Committee and of the B'nai B'rith Council on UN Affairs. I have been an officer of the UN CONGO Committees on Human Rights and Sustainable Development. At the Association of the Bar of the City of New York, I was the Founding Chair of the African Affairs Committee, have been a member of its Middle East and North Africa Committee and am currently a member of the UN Committee. I have served on the Board of Governors of the Technion- Israel Institute of Technology ((which awarded me an Honorary Fellowship) and of the Bezalel Academy of Arts and Design, Jerusalem, whose Friends Organization I helped to form, as I did the support organization for the Cape and Islands Chamber Music Festival. This is not the profile of a criminal, somebody who at my advanced age would commit fraud or theft, someone who would act dishonorably or against the interests, trust or wishes of those he is assisting. My continuing in public service and living modestly is not the traits of one deserving the harangue of Petitioner's counsel and the spreading of disparagement in communications to me and others, especially with the true facts not supporting those accusations.

14.     While I am a "practicing lawyer" as Petitioner states, I am not and have never been a litigation attorney, choosing a different career path. Along that way, I helped to establish a law School in Malawi, one of the poorest African countries, on the Ford Foundation sponsored SAILER  (Staffing African Institutions of Legal Education and Research) program. I helped form and staff the International Law and International Affairs programs of Columbia and N.Y.U. and

served in the Director-General's Office of the UN's International Labor Organization in Geneva, Switzerland. The last time I was employed by a firm like that of Petitioner's counsel was in 1977 and that was my last salaried employment.

15. Notwithstanding the fact that my career has not been directed toward maximizing income, my work on behalf of others and my reputation which there are those who feel it important to clear, would enable me to recruit persons who would work with me to bring in a reasonable sum to put to rest any question of my role in this matter, if I were free to function in doing so. If Petitioner continues to constrain me from using any normal means of functioning and further ruins my health, disparages me and forces me to dissipate my available energy in discovery and motion practice and trying to deal with closed and held accounts and other punitive enforcement action in order to find funds for basic living expenses, nothing will be realized. And much harm will continue to be done undeservedly.

16. As seen from my resume, much of my work has been international. The Seller involved in this failed business transaction is based in Russia and his colleague in Vietnam. When possible, further follow-up on them would be part of the contemplated action, including through contacts, as the Seller has orally offered cooperation, although this was offered before the current worldwide lockdowns. Our country and much of the rest of the world is closed to varying degrees until better control can be achieved over COVID-19, probably sometime well into 2021 or 2022. This has hampered the usual business practices, as the majority of countries, including of course, Europe, have been closed to Americans and will be for some time. We have now no way to know exactly how long this will continue. That is why I have asked Petitioner's counsel to obtain their client's consent for a settlement arrangement that would allow time for the world to refunction globally and give me time to do what I would be able to do there with my contacts.

Hopefully, at least left in peace to function, my health will improve rather than be further damaged by the adverse actions of Petitioner's counsel.

17.     Petitioner attempts to convince this Court that somehow Respondent was negligent by asking for additional time to respond to his subpoenas, when it should have been considered a normal request, especially when the request was made way before the due date.   As discussed above, I am not a litigator, have no representation, and am facing having to respond to 59 separate categories in petitioner's subpoena tecum, with details and documents, and then to submit written responses to 36 other questions, in petitioner's information subpoena, is a massive task.

18.     In my present state of health, I rarely go to my Regus limited use office and have no staff or other services.   Petitioner stated that I have "chosen not to retain counsel in connection with judgment enforcement".   The fact is that the choice was not mine, but rather my finances made the choice for me, especially in view of my account being frozen at M & T Bank by counsel, who has also managed to have other accounts of mine closed as a result of their contacts or word of potential enforcement action.   This scarcity of funds also affected my participation in the arbitration where the arbitrator was asking for tens of thousands of dollars  to begin and along the way, right after I had spent more than $20,000 for counsel to defend myself in the prior rejected and dismissed  contempt motion brought before the late Judge Batts. Her favorable decision contrasts with quotes from the first oral hearing where the Judge took all the accusations of Petitioner's counsel on first blush. [see Exhibit F, copy of Legal Bill from David Hammer, Esq.].     Petitioner's counsel to this day is misrepresenting that procedure and is regularly including it in their litany of false and misleading accusations. Please appreciate what I have to deal with when confronted by family, friends, associates and prospective colleagues who

read such outpouring from professionals who should know better and have some understanding of the unmerited damage they continue to cause.

19.   Furthermore, I did speak about this matter with my prior attorney who represented me in this court before Judge Batts in December 2018, when Petitioner brought that contempt motion against me, and when I was absolved from all charges of contempt. Then, after undergoing 7 hours of depositions and filing more than 500 pages of documents, which are relevant to these current demands for discovery and depositions covering the same ground, since nothing has changed since then except for diminishing resources and more fragile health on my part [see Petitioner's Exhibit 22]. I also learned from my prior attorney that there was a possible deterrent to any attorney to even take my case. He stated that even if I did have the funds to hire an attorney, there could be a possible threat to any attorney of being sued for the legal fees that I had paid to them if it could be proved that such fees to attorney were paid from monies I earned or was owed.

## There is no basis for this contempt proceeding

20.   The bringing of this contempt proceeding by Petitioner besides being unfounded and injurious to me and counterproductive to an effective remedy for his client, is premature and untimely. It was clear from the back and forth emails between Petitioner and myself, that my seeking an extension to complete the various subpoenas, the 59 separate categories in petitioner's subpoena tecum, with details and documents, and the written responses to the 36 other questions in petitioner's information subpoena, coincided with the timing of the Jewish high holidays and the one opportunity for giving my health a chance to improve, would take us to October 31st, approximately 5 weeks in all.

21. Yet, Petitioner's counsel decided to jump the gun as well as inflict more harm by bringing a motion which would take him far out of that time frame in the normal course of events with court calendars, motion papers, etc. At least I would think it would take considerably longer. Of course, it is most unfortunate that valuable time, energy and resources are diverted from cooperating on solutions instead of perpetuating battling on opposing sides in litigation, which is unproductive, except in legal fees for counsel to one party.

22. As suggested above, this case already has a long history of disclosures and documents that have gone back and forth between Petitioner and Respondent. To date, not counting the recent documents from this motion, Petitioner has already received from Respondent some 535 pages of emails, contracts, disclosures, all documents that covered the transaction that took place in August 2018 and ended approximately one to two months later. Also, Respondent took part in a 7-hour in person deposition last year and answered questions about the transaction and his supporting documents, as well as Petitioner having the opportunity to question him about his financial situation, his apartment rental, his office, if he had a car, etc. Therefore, Benthos obtained all the information they wanted then, so there is no reasonable basis for more subpoenas and depositions at this later point in time since my role and situation in life has already been fully exposed to Petitioner's counsel.

23. There have been no new events that have taken place since August 2018 other than efforts to assist the parties, including Benthos, that I was part of voluntarily and continuously, until Petitioner's counsel stopped the cooperative process and turned to litigation against the only targets they could easily find, including the very ones, like myself, who worked hardest to help the parties, especially Benthos, out of their predicament. I was available for Petitioner's counsel to be examined about anything relevant to me and my role in the failed transaction. My

-12-

circumstances are now what they were then, other than being more affected by time and diminished health, as well as by the impact of Corona Virus, which is an existential threat to me because of my age and condition. Nothing relevant has taken place or could take place years after the event which caused the problem. I was not a party to the transaction, have never received any funds, compensation or otherwise, from this transaction, never stole anything and had nothing to do with the business loss of the funds by Benthos in the transaction. I acted honorably, correctly and with the full knowledge and consent of all three parties, including Benthos. There is no evidence otherwise, never has been and never will be any, because there is none and the truth is clear. There was no reason for me to act otherwise and my life and career speaks far louder than accusations of counsel or a one-sided arbitration award rendered, paid for and based on one party's input alone.

24.     In light of the above and contrary to what would seem to be the only mutually beneficial way to proceed, when I have repeatedly asked Petitioner's counsel to please share my offer for settlement and request for the ability to function and be able to implement a viable settlement, their reaction was not to convey a constructive response from their client but rather, most recently, to bring this contempt motion. As far as can be seen, the only purpose of this contempt motion was to harass me and run up their charges to their client and it came as a unexpected reversion to increased aggressioin because I had some reason to believe we had a meaningful opportunity  to focus on  settlement rather than more litigation  As well, there are continually material adverse consequences to their subpoenas and holds on accounts, as the holds on the small amounts in my accounts prevent me from functioning, and, it would clearly serve their client better if I could function and try to help assemble the money to fund a settlement, especially during this difficult Covid period.

-13-

25.    I am including the last exchange of emails clearly showing my ongoing effort to settle.    As recently as October 14th, at 12:10AM in the morning, I sent the following to the Petitioner in response to their email of October 13, 2020 [See Exhibits G for the exchange of emails]

**Sent:** Wednesday, October 14, 2020 12:10 AM
**To:** Steven Popofsky
**Cc:** Joshua K. Bromberg; Pamela Frederick
**Subject:** Re: your voicemail

Mr. :Popofsky,

Surely, you appreciate that your causing all bank accounts to be held or closed makes it impossible for me to function at all, let alone work on raising funds, as I have offered to do many times now.

Please do not continually repeat what is totally untrue and I know your clients understand what is the reality. I have not lied to anyone, have stolen nothing,  have received nothing from this failed business, have spent all too much of my limited resources in trying to defend against unfounded accusations and have been consistent in trying to help all parties, including Benthos, in this matter from the onset of the problem they found themselves in for reasons totally unrelated to me. That remains the background, but we really need to stop looking backward, stop expending human and financial resources on fighting unnecessary battles which only cause injury to the undeserving and not benefitting Benthos.

Please confirm, by return, that you have shared this message and the following specific requests with your Benthos principals, and convey back to me soonest their response, so, hopefully, the focus and efforts finally can be directed to solving this situation and nothing else:

1.    I have made good faith offers to you to raise funds within the limits of my capability, which requires me to be able to function and not be without access to any bank accounts and having to contend with court actions unrepresented. Please, let me work toward raising $1 million within one year during this covid-19 period;
2.    Enforcement action has done nothing for your clients, while exacerbating my fragile health, at almost 80 years of age and with a compromised immune system and high blood pressure during a covid-19 pandemic when I am squarely in the most-threatened group. Please, heed my doctors (you have their message) and do not push my health even further down toward irreparable conditions;
3.    The damage already caused to me by this series of legal actions and their enforcement has left me with difficulty in paying basic living expenses, including rent and food. Please,

release these holds and do not contact banks which now close accounts when you do so. Please, let me pay my rent, purchase food and live decently;

4.  Instead of adding costs to Benthos and both costs and injury to me, now, today, it is an overdue time to stop, as I have requested for some time now. Please, no more depositions on Thursday (you have seven hours from me), or subpoenas (you have hundreds of pages of documents) no more contempt motions (a federal court dismissed the first one),  no subpoenas to distant relatives or other persons who have no reason to be dragged into this matter .

There is truly no basis or value to act other than cooperatively at this point to try to remedy as best I can, as one person, what I certainly never wanted to happen to Benthos. I am sure the managers will have told you their experience with me which supports what I have said all along. Please do not let this opportunity be lost while I still can play a positive part for the benefit of the Benthos investors (with whom I have always been and remain very sympathetic) and when this effort will provide me with the chance to clear my record and reputation while it is still relevant for me to do so.

I look forward to hearing from you after your timely consultation.

Thank you,

Aaron Etra

*********************************************************

## SUMMARY

26.     There is no basis to hold Respondent in contempt. Respondent, as an unrepresented one person, has made every reasonable effort within his limited circumstances to work with Petitioner's counsel to achieve an appropriate compromise within the time frame imposed.  Respondent had no reason to expect that  this compromise effort under way was not sufficiently acceptable to petitioner at this ;point in time and in light of material already in the hands of Petitioner's cousel, when Petitioner brought this contempt motion.    Certainly, there was no willfulness nor contumacy on Respondent's part, and at this point, more than two years into this case,  after having provided massive amounts of material documents and being subjected to every question Petitioner wanted to put to him already, the Petitioner should by now have all he should need from Respondent, without asking for more of the same over and over again as

-15-

part of procedures that tax the already challenged health and  limited resources  of Respondent, for no purpose that is truly necessary for or  beneficial to his client.

27.     The basis for a contempt holding is quite clear [quoting the late Judge Batts in her decision of June 20, 2019 to deny holding Respondent in contempt]:

> To hold a party in civil contempt, it must be shown by clear and convincing evidence that the alleged contemnor violated a "clear and unambiguous order of the court" and that "the contemnor was not reasonably diligent in attempting to comply."  City of New York v. Local 28, Sheet Metal Workers' Int'l Assn., 170 F.3d 279, 282–83 (2d Cir.1999); see also Latino Officers Ass'n City of New York, Inc. v. City of New York, 558 Case 1:18-cv-09401-DAB Document 30 Filed 06/20/19 Page 8 of 11 9 F.3d 159, 164 (2d Cir. 2009) (same).

> Courts should not resort to issuance of contempt orders "where there is a fair ground of doubt as to the wrongfulness of the defendant's conduct." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (quoting California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885) ) .

> Further, the failure of a party to meet the strict requirements of an order does not necessarily subject a party to a holding of contempt. Dunn v. New York State Dep't of Labor, 47 F.3d 485, 490 (2d Cir. 1995).

28.     Here, there has been no civil contempt on the part of Respondent.  There has been continuous communication and no stubbornness to comply.  Even in Petitioner's citation of *Musalli Factory v. New York Fin. LLC*, No. 06-cv-82 (AKH), 2010 BL 133627, at *4, 2010 WL 2382415, at *4 (S.D.N.Y. June 14, 2010), there are more differences from Respondent to Musalli. Musalli refused to comply with subpoenas notwithstanding the creditor's accommodations, extensions and attempts to avoid judicial intervention. Here, in this case, there was no definitive extension, only conditional extension, whereby the decision of what was sufficient was by the Petitioner, and turned on a dime to hold Petitioner in contempt with no warning.  And here, most importantly, there is no attempt to conceal nor has anything been concealed, as Respondent appeared at 7 hour deposition in mid-2019, and responded to the same Petitioner's  counsel's questions about himself and the failed transaction, and Petitioner has had ample opportunity since that time to follow

up with his queries regarding Respondent immediately upon acquiring the judgement at those financial institutions told to him at the deposition. Petitioner has independently taken adverse action with respect to respondent's finances since that time, and has already caused Respondent's credit card and bank accounts to have been closed or frozen by the bank as a result of such inquiries or enforcement.

29.    Finally, no legal fees should be awarded Petitioner.  It should be the reverse.  This contempt motion, as mentioned above, was unexpected, premature and unnecessary, and has caused unnecessary waste, legal fees for Petitioner and putting Respondent's health at additional risk in having to deal with this motion in addition to all of the demands by Petitioner's counsel for material which do not help Benthos in any way, as contrasted with the proferred effort of Respondent, which could be directed in a way that would.

30. I believe the Court would be delivering great assistance and value to the two parties in this matter if it would, by way of much-needed additional relief, instruct them to enter into good faith settlement discussions.     Toward that end and during that period of discussion and beyond, Petitioner's counsel would cease and desist from spending its client's valuable resources and causing damage to Respondent's health and basic living conditions, on, by and through forbearing in engaging in subpoenas, depositions, hold orders on bank accounts, contempt motions and other enforcement action.   The parties would be further well-advised to direct their respective and collective energies toward cooperating in supporting and facilitating Respondent to use his best efforts toward raising funds for achievable settlement goals, with the ultimate objective of generating funds for Benthos and also setting straight the record for Respondent in this case.  Consistent with that approach, counsel would refrain from accusations, disparagement  and denigration in verbal and written communications . If the Court so pleases, it would be appreciated by Respondent, truly on behalf of both parties, if it or an appointed master or other representative, monitored and assisted the parties in this effort to bring the best possible resolution of this matter and for justice to prevail.

-17-

**WHEREFORE**, it is respectfully submitted that this Court deny Petitioner's motion in its entirety, and order for the parties any and other relief that the Court deems just and proper, including as requested above.

Dated: October 22, 2020

_____
Aaron Etra, Respondent
(917) 856-3500

# Exhibit A

# 🔵 Weill Cornell Medicine ⌐ NewYork-Presbyterian

Sangmin Lee, M.D.
Assistant Professor of Medicine
Department of Medicine
Division of Hematology and Medical Oncology

520 East 70ᵗʰ Street
Starr Pavilion, 3ʳᵈ Floor
New York, NY 10021
Telephone: 646-962-2700
Fax: 646-962-0115

Re: Aaron Etra (DOB 5/6/1941)

Mr. Etra is under my care in the hematology clinic. Stress can potentially impact blood pressure and other hematologic values including the immune system; he has elevated blood pressure and we recommend avoiding stress as much as possible.

Please contact us for further information regarding Mr. Etra.

Sangmin Lee, M.D.

# Exhibit B

# INDIVIDUAL
# PERSONAL FINANCIAL STATEMENT
## Prepared for Aaron Etra
### on

| | |
|---|---|
| **NAME:** | Aaron Etra |
| **ADDRESS:** | 240 E 47th St |
| | New York, New York 10017 |
| **HOME PHONE:** | |
| **CELL PHONE:** | 917-856-3500 |
| **SSN:** | |
| **BIRTHDATE:** | 05/06/1941 |

## _DETAILED SUMMARY LISTING OF ASSETS_

### INDIVIDUAL ASSET INFORMATION

**AMOUNT**

| | |
|---|---|
| Accounts Receivable: | |
| Annuity: | |
| Boats: | |
| Bonds | |
| Business Property and Real Estate: | |
| Certificate of Deposit: | |
| Checking Accounts: | $20,000.00 |
| Household Furnishings: | $20,000.00 |
| Jewelry: | |
| Life Insurance: | |
| Mutual Funds: | |
| Notes Receivable: | |
| Other Assets: | |
| Other Real Estate: | $2,000.00 |
| Personal Residence Real Estate: | |
| Recreational Equipment: | |
| Retirement Plans: | |
| Savings Accounts: | $1,000.00 |
| Stocks: | $1,000.00 |
| Trusts: | |
| Vehicles | |

**INDIVIDUAL TOTAL ASSET VALUE:**      **$44,000.00**

## DETAILED SUMMARY LISTING OF LIABILITIES

### INDIVIDUAL LIABILITY INFORMATION                                    AMOUNT

|  |  |
|---|---|
| Mortgage or Rent: | $8,200.00 |
| Home Equity Loan: | $0.00 |
| Other Mortgage: | $0.00 |
| Vehicle Loans: | $0.00 |
| Credit Cards: | $17,000.00 |
| Student Loans: | $0.00 |
| Other Liabilities: | $0.00 |

**INDIVIDUAL TOTAL LIABILITIES:**                          **$25,200.00**

---

## DETAILED SUMMARY LIST OF MONTHLY INCOME ASSET

### INDIVIDUAL MONTHLY INCOME                                MONTHLY AMOUNT

| Individual Employer Name:  self-employed |  |
|---|---|
| Monthly Salary or Wages: | $0.00 |
| Investment Accounts: | $0.00 |
| Alimony: | $0.00 |
| Child Support: | $0.00 |
| Trusts: | $0.00 |
| Other Income Sources: | $6,500.00 |

**INDIVIDUAL TOTAL MONTHLY INCOME ASSET:**              **$6,500.00**

---

## DETAILED SUMMARY LIST OF MONTHLY EXPENSE LIABILITY

### INDIVIDUAL MONTHLY EXPENSES                              MONTHLY AMOUNT

|  |  |
|---|---|
| Paid Alimony: |  |
| Paid Child Care: |  |
| Paid Child Support: | $750.00 |
| Groceries: | $100.00 |
| Healthcare or Medications: | $4,100.00 |
| Housing or Rent: |  |
| Other Mortgage Loans: |  |
| Auto Loans: |  |
| Auto Insurance: | $300.00 |
| Health or Dental Insurance: |  |
| Life Insurance: |  |
| Other Insurance: |  |

| | |
|---|---|
| Credit Cards: | $700.00 |
| Student Loans: | |
| Other Expenses: | |

**INDIVIDUAL TOTAL MONTHLY EXPENSE LIABILITY:**                    **$5,950.00**

### *NET WORTH SUMMARY*

TOTAL ASSETS:                                                    $44,000.00

TOTAL LIABILITIES:                                              $25,200.00

**TOTAL NET WORTH:**                                            **$18,800.00**

I, Aaron Etra, hereby certify and warrant, to the best of my knowledge, that the aforementioned information contained within this Personal Financial Statement is true, accurate and complete.

_____                    DATED: 10/22/20
Aaron Etra

# Exhibit C

10/22/2020

https://evolve.us.hsbc.com/eCustService/faces/xhtml/auth/eCS_BackEnd/accountSummary/accountSummary.xhtml

# HSBC 

| Account Summary | Transaction History | Statements | Account Info | Payments |

Sign Out

## Account Summary

Access Log

This summary reflects the most current account information.

| | |
|---|---|
| Account Number : | XXXX-XXXX-XXXX-0189 |
| Card Type : | Individual-Account |
| Company ID : | 00665860 |
| Company Name : | AARON ETRA |
| Primary Cardholder : | AARON ETRA |
| Email Address : | aaron@etra.com |
| Secondary Cardholder : | AARON ETRA |
| Address : | AARON ETRA<br>240 E 47TH ST APT 12A<br>NEW YORK NY 10017-2134 |
| Home Phone : | (000)856-3500 |
| Work Phone : | (000)856-3500 |
| Statement Delivery Method : | Electronic Only |

Update Account Info

Change Delivery Method

View Transaction History

| | |
|---|---|
| Balance as of 10/22/20 : | $ 16,966.96 |
| Available Credit : | $ 5,514 |
| Credit Limit : | $ 22,500 |

Payments
View Payment History

| | |
|---|---|
| Minimum Payment Due : | $ 0.00 |
| Payment Due Date : | 10/19/20 |
| Last Payment Amount : | $ 700.00 |
| Last Payment Posted : | 09/29/20 |
| Last Statement Balance : | $ 16,665.96 |
| Last Statement Date : | 09/24/20 |

Account Summary | Transaction History | Statements | Account Info | Payments | Help |
Contact Us | Security | Terms and Conditions

# Exhibit D

**M&T**

FOR INQUIRIES CALL:    (800) 724-2440

00   0 00537M NM  017

P

000002127 F1DS1549D01710022010 01 000000

AARON ETRA
240 E 47TH ST APT 12A
NEW YORK NY 10017-2134
UNITED STATES

| Account Type | |
|---|---|
| EZCHOICE CHECKING | |

| ACCOUNT NUMBER | STATEMENT PERIOD |
|---|---|
| 9876132433 | SEP.08-OCT.02.2020 |

| BEGINNING BALANCE | $2,926.19 |
|---|---|
| DEPOSITS & CREDITS | 1,596.00 |
| | 4,524.19 |
| | 0.00 |
| | $0.00 |

INTEREST EARNED FOR STATEMENT PERIOD         $0.00                SUTTON

## ACCOUNT SUMMARY

| BEGINNING BALANCE | DEPOSITS & OTHER CREDITS (+) | | CHECKS PAID | | OTHER DEBITS (-) | | CURRENT INTEREST PD | ENDING BALANCE |
|---|---|---|---|---|---|---|---|---|
| | NO. | AMOUNT | NO. | AMOUNT | NO. | AMOUNT | | |
| $2,926.19 | 1 | $1,596.00 | 0 | $0.00 | 6 | $4,524.19 | $0.00 | $0.00 |

## ACCOUNT ACTIVITY

| POSTED DATE | TRANSACTION DESCRIPTION | DEPOSITS & OTHER CREDITS (+) | WITHDRAWALS & OTHER DEBITS (-) | DAILY BALANCE |
|---|---|---|---|---|
| 09/08/2020 | BEGINNING BALANCE | | | $2,926.19 |
| 09/08/2020 | APPLE.COM BILL     866-712-7753 | | $2.99 | 2,923.20 |
| 09/08/2020 | SSA TREAS 310 XXSOC SEC | $1,596.00 | | 4,521.20 |
| 09/11/2020 | Legal Processing Fee | | 110.00 | |
| 09/11/2020 | NYS REST | | 1,215.20 | 3,196.00 |
| 09/16/2020 | PIN MORTON WILLIAMS   NEW YORK | | 21.78 | 3,174.22 |
| 09/17/2020 | RMG*REGUS     972-340-2021 | | 300.00 | 2,874.22 |
| 09/24/2020 | CLOSEOUT | | 2,874.22 | 0.00 |
| | ENDING BALANCE | | | $0.00 |

## OVERDRAFT AND NSF FEE SUMMARY

| | TOTAL FOR THIS STATEMENT CYCLE | TOTAL FOR CALENDAR YEAR-TO-DATE | TOTAL FOR PRIOR CALENDAR YEAR |
|---|---|---|---|
| TOTAL INSUFFICIENT FUNDS (NSF) FEES | $0.00 | $0.00 | $0.00 |
| TOTAL OVERDRAFT FEES | $0.00 | $0.00 | $38.50 |

Total Insufficient Funds (NSF) Fees include per item fees charged when we return an item unpaid because there are not sufficient funds in the account to cover the item. Total Overdraft Fees include per item fees charged when we pay an item that overdraws the account as well as any Extended Overdraft Fees charged to the account.

L008A (8-16)

10/22/2020

View Account Details | M&T Bank



# Exhibit E

Thursday, October 22, 2020 at 18:07:18 Eastern Daylight Time

**Subject:** RE: Benthos Master Fund, Ltd. v. Aaron Etra
**Date:** Friday, April 24, 2020 at 1:03:23 PM Eastern Daylight Time
**From:** Steven Popofsky
**To:** Aaron Etra
**CC:** Joshua K. Bromberg
**Attachments:** image005.png, image006.png

Mr. Etra, with regard to the arbitration award recently rendered against you, our client would be willing to consider a settlement that would end any and all future legal proceedings against you in connection with this matter. If you are interested in making such a proposal, we will convey it to Benthos and respond in good faith. If not, we will proceed accordingly.

STEVEN R. POPOFSKY
D 212 880 9882   |   spoofsky@kkwc.com
F 212 986 8866   |



Kleinberg, Kaplan, Wolff & Cohen, P.C.
500 Fifth Avenue, New York, NY 10110
kkwc.com   |   Follow us on LinkedIn

Read our latest insights and sign up to receive our latest client alerts, invitations to events and more

From: Gusy, Martin F. [mailto:Martin.Gusy@klgates.com]
Sent: Thursday, April 09, 2020 3:33 PM
To: Steven Popofsky; Joshua K. Bromberg; Aaron Etra
Subject: Benthos Master Fund, Ltd. v. Aaron Etra

In the above captioned matter, please find attached the Final Award.

Martin Gusy
Sole Arbitrator


K&L Gates LLP


Martin F. Gusy
Partner
K&L Gates LLP
599 Lexington Avenue
New York, New York 10022
Phone: +1 (212) 536-4066
Fax: +1 (212) 536-3901
martin.gusy@klgates.com
www.klgates.com

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of the message is prohibited. If you have received this e-mail in error, please contact me at Martin.Gusy@klgates.com

# Exhibit F

**David S. Hammer, Esq.**

---

**500 Fifth Avenue**
**34th Floor**
**New York, New York 10110**
**(212) 941-8118**
**Fax: (212) 754-3701**

**STATEMENT OF LEGAL FEES AND EXPENSES**

---

**January 10, 2019**

**Aaron Etra**
**110 E 59th St**
**New York, NY 10022**

Re:    **Legal Fees for Period 11/21/18 through 1/9/19**

      **A.**    **Time**

1

| DATE | ACTIVITY | HOURS |
|------|----------|-------|
| 11/22/18 | Calls from Laura Horgan, Michael Hess and Aaron Etra re new case. Reading documents and transcripts on Pacer re case, talking to Aaron Etra, taking notes for meeting Friday. | 2 |
| 11/23/18 | Meeting at my office going over facts and documents. | 3.5 |
| 11/24/18 | Reading emails Aaron Etra delivered to my apartment and beginning response to contempt motion. | 2.25 |
| 11/25/18 | Working on response to contempt motion. | 6.5 |
| 11/26/18 | Copying documents delivered by Aaron, delivering courtesy copy to court, delivering to opposing counsel, working and finishing papers in opposition to motion for contempt and sanctions. | 8.5 |
| 11/27/18 | Reading new letter from Popofsky to Court; drafting response. | 2.25 |
| 11/28/18 | Finishing new letter to Court. | 2 |
| 12/2/18 | Reading emails concerning supplementary buyer. | 2.25 |
| 12/3/18 | Reading new materials sent by AE; email to Popofsky. | .5 |
| 12/4/18 | Meeting with AE and Magda, going over emails, redacting emails, drafting affidavit for AE, drafting letter to Popofsky, reading letter from Popofsky. | 5 |
| 12/6/18 | Working on response to Popofsky letter, Law Library Research on Disclosure in 7502 proceedings. | 1.75 |
| 12/7/18 | Research on limits of 7502 discovery. | 1.5 |
| 12/8/18 | Working on letter to court. | 1 |
| 12/9/18 | Finishing letter to court, filing. | 1.25 |
| 1/3/19 | Email from Popofsky requesting information, email exchange with Etra, email to Popofsky. | .25 |
| **Total Hours** | | **40.5** |

1

**B.    Expenses**

| Date | Expense | Amount |
|------|---------|--------|
| 11/27/18 | Quality Imaging Legal Printer – Copying and Velo-binding opposition papers to contempt motion | $30 |
| 12/2/18 | Quality Imaging – scanning and bate stamping emails for production. | $27 |
| 12/9/18 | Magda Abdelrahman – paralegal services in connection with document production | $250 |
| **Total Expenses** | | **$307** |

**C.    Payments**

| Date | Nature of Payment | Amount |
|------|-------------------|--------|
| 11/23/18 | Partial Retainer | $10,000 |
| 12/19/18 | Remainder Due on Retainer and Expenses to Date | $5,307 |
| **Total Payments to 1/10/19** | | **$15,307** |

**D    Summary**

| Hours | Hourly Rate | Total Fees Incurred | Total Expenses | Fees and Expenses | Amount Paid to Date | Unpaid Fees and Expenses |
|-------|-------------|---------------------|----------------|-------------------|---------------------|--------------------------|
| 40.5 | $500 | $20,250 | $307 | $20,557 | $15,307 | $5,250 |

**Please Remit: $5,250**

# Exhibit G

**Subject:** Re: your voicemail

**Date:** Wednesday, October 14, 2020 at 12:10:29 AM Eastern Daylight Time

**From:** Aaron Etra

**To:** Steven Popofsky

**CC:** Joshua K. Bromberg, Pamela Frederick

Mr. :Popofsky,

Surely, you appreciate that your causing all bank accounts to be held or closed makes it impossible for me to function at all, let alone work on raising funds, as I have offered to do many times now.

Please do not continually repeat what is totally untrue and I know your clients understand what is the reality . I have not lied to anyone, have stolen nothing, have received nothing from this failed business, have spent all too much of my limited resources in trying to defend against unfounded accusations and have been consistent in trying to help all parties, including Benthos, in this matter from the onset of the problem they found themselves in for reasons totally unrelated to me. That remains the background, but we really need to stop looking backward, stop expending human and financial resources on fighting unecessary battles which only cause injury to the undeserving and not benefitting Benthos .

Please confirm, by return, that you have shared this message and the following specific requests with your Benthos principals, and convey back to me soonest their response, so, hopefully, the focus and efforts finally can be directed to solving this situation and nothing else :

1. I have made good faith offers to you to raise funds within the limits of my capability, which requires me to be able to function and not be without access to any bank accounts and having to contend with court actions unrepresented. Please, let me work toward raising $1 million within one year during this covid-19 period;

2. Enforcement action has done nothing for your clients, while exacerbating my fragile health, at almost 80 years of age and with a compromised immune system and high blood pressure during a covid-19 pandemic when I am squarely in the most-threatened group. Please, heed my doctors (you have their message) and do not push my health even further down toward irreparable conditions ;

3. The damage already caused to me by this series of legal actions and their enforcement has left me with difficulty in paying basic living expenses , including rent and food. Please, release these holds and do not contact banks which now close accounts when you do so. Please, let me pay my rent, purchase food and live decently ;

4. Instead of adding costs to Benthos and both costs and injury to me, now, today, it is an overdue time to stop, as I have requested for some time now. Please, no more depositions on Thursday (you have seven hours from me), or subpoenas (you have hundreds of pages of documents) no more contempt motions (a federal court dismissed the first one) , no subpoenas to distant relatives or other persons who have no reason to be dragged into this matter .

There is truly no basis or value to act other than cooperatively at this point to try to remedy as best I can, as one person, what I certainly never wanted to happen to Benthos. I am sure the managers will have told you their experience with me which supports what I have said all along. Please do not let this opportunity be lost while I still can play a positive part for the benefit of the Benthos investors (with whom I have always been and remain very sympathetic) and when this effort will provide me with the chance to clear my record and reputation while it is still relevant for me to do so.

I look forward to hearing from you after your timely consultation.

Thank you,

Aaron Etra

From: "Steven R. Popofsky" <SPopofsky@kkwc.com>
Date: Tuesday, October 13, 2020 at 8:58 AM
To: Aaron Etra <aaron@etra.com>
Cc: "Joshua K. Bromberg" <JBromberg@kkwc.com>, Pamela Frederick <PFrederick@kkwc.com>
Subject: your voicemail

Mr. Etra, I am responding to your voicemail from last evening. Hopefully for the last time, let me tell you that if you have the ability to raise money to satisfy the judgment, in whole or in part, as you claim, <u>you should be doing so</u>. You do not need Benthos to forbear from enforcement efforts in order to go about obtaining funds (if you do not have them available, which of course we do not believe in any event).

Given your history of lying repeatedly to Benthos, lying repeatedly to the federal judge, refusing to provide basic information notwithstanding your status as a member of the bar and an Escrow Agent, stalling and delaying, and offering one dishonest excuse after another, it would be insanity for Benthos to forbear from judgment enforcement based solely on your promise to come up with money at the end of that time period. Of course, at that time you would send no money and would offer more dishonest excuses. Benthos's principals – to whom you lied and pretended, time after time with a straight face – and Benthos's lawyers, who have observed your lawless misconduct at close range for two years now, are unanimous in telling you to stop wasting everyone's time making such suggestions.

If, on the other hand, you wish to offer an amount of actual money, in exchange for some period of forbearance, we would perhaps be willing to consider that, depending on how much money and for how long. Absent such a proposal, you can stop asking about forbearance – we will continue enforcing the judgment.

And, also hopefully for the last time, you are not, and never have been, trying to "help" Benthos – initially you "helped" your co-conspirators steal Benthos's investors' money, and anything you may do now is to help yourself get out from under the ensuing $5 million judgment. You are not, and never have been, "compliant" with any of your legal or ethical obligations (quite the contrary, from Day One of your relationship with Benthos through today). You are not, and never have been, acting in "good faith" vis-a-vis Benthos, whose money you shamelessly took into escrow and sent away without authorization as part of a fraudulent scheme.

Please advise whether you accept service of the motion. (If you do not, we will serve through your building's personnel.) As to the deposition, you need not travel and need only click on your computer. We will expect you to appear remotely, and if you do not, we will seek the appropriate relief from the Court.

STEVEN R. POPOFSKY
D 212 880 9842  |  scpopofsky@kkwc.com
F 212 986 8866  |

Kleinberg, Kaplan, Wolff & Cohen, P.C.
500 Fifth Avenue, New York, NY 10110
kkwc.com  |  Follow us on LinkedIn

Read our latest insights and sign up to receive our latest client alerts, invitations to events and more

Page 3 of 3