Exhibit 19

QUESTION 1-part

- all escrow agent agreements as to which Respondent is or was a party, whether the escrow agreement is still in effect of not, in effect from August 1, 2018 to the present;

I am enclosing my two forms of escrow agent Agreements used since August of 2018: one for consultants, and one for owners. Clients register with me for paymaster services for a period of 12 months for a small fee of $150, and they can call any time during that period if they have a transaction they require my services for and I will accommodate them during that year.  If they do not end up needing my services for that year, as is very likely, because for example, their transaction has not come to fruition, the registration expires after that year, and all information is deleted for privacy.   If they need my services again at any time in the future, they call me to discuss their current needs, and register anew at that time also for a further period.

As to the preserving the legitimate  privacy and privilege of the clients who have used my services, I wish to protest and object to have to reveal any aspect of our relationship beginning with the agreements and continuing to all financial information (including all the account statements being delivered in full today and on July 18th),  as I am  being put in an untenable position between maintaining ethics and legitimate civil and professional rights and a contempt order and custody, so I produce this information asking that the  requisite privacy be respected and no aspect of the contents be delivered be examined and analyzed and only the delivery be reported to the Court;

First see below the 2 coordination-paymaster agreements I use, the one for owners followed by the one for consultant-intermediaries:

Here is the Escrow Agent agreement for the owners:

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, _____, holder of _____ passport or other identifying document no. _____, whose address is_____, acting as the duly authorized owner/director of _____, or in a personal or in such other capacity as the undersigned will advise you ("_____"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt, holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1. The C/P agrees to act as the coordinator/paymaster and representative of the interests of _____ with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of_____, the gross proceeds of transfers due to _____ from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2. The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God, or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any

1

claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to _____ regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.  This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this _____ day of _____, 20__

IN BEHALF of:

_____

Owner/Director/Individual (as appropriate)



Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

-

HERE IS THE ESCROW AGENT AGREEMENT FOR CONSULTANTINTERMEDIARIES:

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, _____, holder of _____ passport or other identifying document no. _____, whose address is_____, acting as the duly authorized owner/director of _____, or in a personal or in such other capacity as the undersigned will advise you ("_____"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt, holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1. The C/P agrees to act as the coordinator/paymaster and representative of the interests of _____ with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of_____, the gross proceeds of transfers due to _____ from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2. The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor has or is any legal or financial opinion or other legal, investment, financial advisory or like services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a registered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God, or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any

1

interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.  No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.  It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand U.S. Dollars (US$5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Twenty-Five Dollars ($150.00)..

5.  If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.  If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.  I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

2

8. This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this _____ day of _____, 20___

IN BEHALF of:

_____

Owner/Director/Individual (as appropriate)



Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

I had current Escrow Agent Agreement deleted as part of repair of my my computer breakdown a few weeks ago described in the attached letter from the Apple repair service l, and lost much of the rest of my data.    The Apple receipt was already produced and can be produced again on request.

Two clients have allowed me to release their information:

Here are their Escrow Agent Agreements on the following pages:

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, DR. CLARENCE L. MCNAIR, holder of USA passport or other identifying document no. 21597474, whose address is 18123 KARA COURT, TAMPA, FLORIDA, acting as the duly authorized owner/director of FREEDOM EXCHANGE COMMUNITY DEVELOPMENT CENTERS OF THE AMERICAS FOUNDATION INC., or in a personal or in such other capacity as the undersigned will advise you, wish to engage the services of you, Aaron Etra, Esq., Attorney at law, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt, holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.  The C/P agrees to act as the coordinator/paymaster and representative of the interests of FREEDOMEXCHANGE COMMUNITY DEVELOPMENT CENTERS OF THE AMERICAS FOUNDATION INC., with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of FREEDOMEXCHANGE COMMUNITY DEVELOPMENT CENTERS OF THE AMERICAS FOUNDATION INC., the gross proceeds of transfers due to CONTRIBUTIONS from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2.  The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency

1

claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to _____ regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

2

parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 28TH day of July 2021

IN BEHALF of:

FREEDOMEXCHANGE COMMUNITY DEVELOPMENT CENTERS OF THE AMERICAS FOUNDATION INC.

_____

Owner/Director (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, Lamar J. Bordelon, holder of USA passport or other identifying document No. 537986252, whose address is 11026 Aladdin Drive, Dallas, Texas USA 75229, acting as the duly authorized director of GVU, Inc., or in a personal or in such other capacity as the undersigned will advise you ("GVU"), wish to engage the services of you, Aaron Etra, Esq., whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of GVU with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of GVU, the gross proceeds of transfers due to GVU from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a refistered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any

1



8.  This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.  This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 20th day of October, 2021

IN BEHALF of: GVU, Inc.

*Lamar J. Bordelon*

_____

Treasurer

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3. No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4. It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand of the applicable currency per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Fifty Dollars ($150.00)..

5. If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6. If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7. I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

2

