Exhibit 40

**FROM DAY LAW & ASSOCIATES, P.C.**

# CASH COLLATERAL ESCROW AGREEMENT AND INSTRUCTIONS

This CASH COLLATERAL ESCROW AGREEMENT AND INSTRUCTIONS (herein "Cash Collateral Agreement") is made and entered into this _____ day of _____ by and between Reign Financial International, LLC, an Oregon Limited Liability Company (herein "Reign") and _____ (herein "Borrower").

## RECITALS

WHEREAS, Reign and the Borrower have entered into a loan agreement contemporaneously to the execution of this Cash Collateral Agreement which is annexed hereto amd made a part hereof ( herein the "Loan Agreement"); and

WHEREAS, the Loan Agreement requires the deposit of four million and no dollars ($4,000,000.00) as collateral to secure the Total Project Funding under the terms and conditions of the Loan Agreement; and

NOW, THEREFORE, in consideration of the mutual promises, covenants and agreements, the parties agree as follows:

## ARTICLE I
## TERMS AND CONDITIONS

1.1 **Establishment of Funds.** The Borrower has caused or will cause to be deposited with the Cash Collateral Escrow Agent (as defined below) the sum of FOUR MILLION AND NO DOLLARS ($4,000,000.00) (herein "Cash Collateral Funds") as collateral to secure the Total Project Funding pursuant to the Loan Agreement entered into contemporaneously with this Cash Collateral Agreement.

1.2 **Cash Collateral Escrow Agent**. For purposes of this Cash Collateral Agreement, the Cash Collateral Escrow Agent shall be

> Mr. Aaron Etra, Esq.
> 445 Park Avenue, 9th Floor
> New York, NY 10022
> T: 917-856-3500
> E: aaron@etra.com

(herein "Escrow Agent"). All information concerning the Cash Collateral Escrow Agent is attached as Exhibit 2 to this Cash Collateral Agreement

1.3 **Treatment of Cash Collateral Funds.** The following terms and conditions shall apply to the Cash Collateral Funds.

    1.3.1 <u>Deposit into Escrow.</u> The monies constituting the Cash Collateral Fund shall be deposited by the Borrower into an attorney escrow account held and managed by the Escrow Agent. The escrow account shall be a non-interest bearing IOLTA segregated account of the Escrow Agent known as the Cash Collateral Fund

Account – West Perlas1 (herein "CCF Account"). The Cash Collateral Funds shall not be deposited into an account other than the CCF Account without the prior written consent of Reign and Borrower.

**1.3.2** <u>Release of Cash Collateral Funds to Reign.</u> The Cash Collateral Funds will be released to Reign only upon the occurrence of the following:

    **1.3.2.1** Satisfactory written notice to the Escrow Agent from HSBC Bank, Head Office, London (herein the "Bank"), of the availability to the Borrower of funds in the amount of _____ in Reign's linked HSBC Bank account titled "Worldwide Management Reign" to the Borrower or satisfactory evidence of insurance, bond, and/or Bank Payment Undertaking.

    **1.3.2.2** Within two (2) days after receiving the written notice of the availability of funds required by Section 1.3.2.1 of this Agreement, Borrower shall execute the "Release of Cash Collateral Funds", attached as Exhibit 1 to this Agreement, and deliver the executed Exhibit 1 to the Escrow Agent.

    **1.3.2.3** Upon receipt of the executed Exhibit 1, and once the first tranche listed in EXHIBIT C to the Loan Agreement for the amount of twelve million, five hundred thousand and no dollars (USD $12,500,000.00) has been completed and so notified to the Escrow Agent by the Bank, the Escrow Agent shall release the Cash Collateral Funds to Reign.

    **1.3.2.4** In the event no written notice from the Bank of funds required by Section 1.3.2.1 of this Agreement has been received by the Escrow Agent, the Cash Collateral Funds shall be released to the Borrower.

    **1.3.2.5** In the event the first tranche provided for in 1.3.2.2 above and required by the Loan Agreement has not been made to the Borrower, the Cash Collateral Funds shall be released to the Borrower.

**1.4** **Termination.** This Escrow Agreement shall terminate upon the disbursement of the balance of the funds in accordance with the provisions of Section 1.3 hereof.

**1.5** **Compensation of Escrow Agent.** The cost of the Escrow Agent services shall be paid out of the Cash Collateral Funds immediately on receipt thereof by the Escrow Agent.

    **1.5.1** The Escrow Agent's non-refundable fees for acting as the Escrow Agent hereunder shall be as follows: 1.00% (one percent) of the Cash Collateral Funds, with a minimum fee of Five Thousand U.S. Dollars (USD $5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Thirty Dollars ($130.00).

        **1.5.1.1** It is agreed that, from all monies received into the CCF Account, the Escrow Agent is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Cash Collateral Funds and all other expenses of any party relating thereto, as well as Escrow Agent fees in the agreed amount of 1.00% (one percent) of the Cash Collateral Funds, with a minimum fee of Five Thousand U.S. Dollars (US$5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Thirty

Dollars ($130.00).

    **1.5.1.2** If for any reason any taxing authority requests to withhold or have paid over to them any part of the Cash Collateral Funds, the Escrow Agent is fully authorized and empowered to pay such amounts from the CCF Account, advising the parties hereto of the request and action taken, remitting the balance as instructed.

**1.5.2** The parties to this Agreement (other than the Escrow Agent) hereby jointly and severally agree to fully indemnify and hold the Escrow Agent, its affiliates and their officers, employees, successors, assigns, attorneys and agents (each an "Indemnified Party") harmless from all losses, costs, claims, demands, expenses, damages, penalties and reasonable attorney's fees suffered or incurred by any Indemnified Party or the Escrow Agent as a result of anything which it may do or refrain from doing in connection with this Agreement or any litigation or cause of action arising from or in conjunction with this Agreement or involving the subject matter hereof or Funds or monies deposited hereunder or for any interest upon any such monies, including, without limitation, arising out of the negligence of the Escrow Agent; provided that the foregoing indemnification shall not extend to the gross negligence or willful misconduct of the Escrow Agent. This indemnity shall include, but not be limited to, all costs (including reasonable attorneys' fees) incurred in conjunction with any interpleader which the Escrow Agent may enter into regarding this Agreement.

**ARTICLE II**
**PROVISIONS AS TO THE Escrow Agent**

**2.1.**    **Escrow Agent's Rights and Responsibilities.**

    **2.1.1.**   This Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto, and no implied duties or obligations shall be read into this Agreement against the Escrow Agent. This Agreement constitutes the entire agreement between the Escrow Agent and the parties hereto in connection with the subject matter of this escrow, and no other agreement entered into between the parties, or any of them, shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent notwithstanding that any such other agreement may be referred to herein or deposited with the Escrow Agent or the Escrow Agent may have knowledge thereof, and the Escrow Agent's rights and responsibilities shall be governed solely by this Agreement.

    **2.1.2.**   The Escrow Agent acts hereunder as a depository only, and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of the subject matter of this Agreement or any part thereof, or for the form of execution thereof, or for the identity or authority of any person executing or depositing such subject matter. The Escrow Agent shall be under no duty to investigate or inquire as to the validity or accuracy of any document, agreement, instruction or request furnished to it hereunder reasonably believed by it to be genuine, and the Escrow Agent may rely and act upon, and shall not be liable for acting or not acting upon, any such document, agreement, instruction or request. The Escrow Agent shall in no way be responsible for notifying, nor shall it be its duty to notify, any party hereto or any other party interested in this Agreement of

any payment required or maturity occurring under this Agreement or under the terms of any instrument deposited herewith.

**2.2.** **Authority to Act.**

**2.2.1.** The Escrow Agent is hereby authorized and directed by the undersigned to undertake and deliver the subject matter and action of and called-for by this Agreement only in accordance with the provisions of Article 1 of this Agreement.

**2.2.2.** The Escrow Agent shall be protected in acting upon any written notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other paper or document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, items directing investment or non-investment of funds, items requesting or authorizing release, disbursement or retainage of the subject matter of this Agreement and items amending the terms of this Agreement.

**2.2.3.** The Escrow Agent may consult with legal counsel at the joint and several cost and expense of the undersigned (other than the Escrow Agent) in the event of any dispute or question as to the construction of any of the provisions hereof or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in accordance with the advice of such counsel.

**2.2.4.** In the event of any disagreement between any of the parties to this Agreement, or between any of them and any other person, resulting in adverse claims or demands being made in connection with the matters covered by this Escrow, or in the event that the Escrow Agent, in good faith, be in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by arbitration or a court of competent jurisdiction, or (ii) all differences shall have been adjudged and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all such persons. Notwithstanding the foregoing, the Escrow Agent may in its discretion obey the order, judgment, decree or levy of any court, whether with or without jurisdiction, or of any agency of the United States or any political subdivision thereof, or of any agency of the state of Oregon or state of New York, or of any political subdivision thereof, and the Escrow Agent is hereby authorized in its sole discretion, to comply with and obey any such orders, judgments, decrees or levies. The right of the Escrow Agent under this sub-paragraph are cumulative of all other rights which it may have by law or otherwise.

**2.2.5.** In the event that any controversy should arise among the parties with respect to the Agreement or should the Escrow Agent resign and the parties fail to select another Escrow Agent to act in its stead, the Escrow Agent shall have the right to institute a bill of interpleader in any court of competent jurisdiction to determine the rights of the parties.

**2.2.6.** If for any reason good, clean funds are not deposited in the account within one (1) month after this agreement is executed, this agreement shall terminate, and be

considered null and void. Otherwise, it shall terminate at such time as the Escrow Agent has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

**2.3. Miscellaneous.**

**2.3.1.** The Escrow Agent shall make no disbursement, investment or other use of funds until and unless it has collected funds. The Escrow Agent shall not be liable for collection items until the proceeds of the same in actual cash have been received or the Federal Reserve has given the Escrow Agent credit for the funds.

**2.3.2.** The Escrow Agent may resign at any time by giving written notice to the parties hereto, whereupon the parties hereto will immediately commence efforts to appoint a successor Escrow Agent. Until a successor Escrow Agent has been named and accepts its appointment or until another disposition of the subject matter of this Agreement has been agreed upon by all parties hereto, the Escrow Agent shall not be discharged of any of its duties hereunder.

**2.3.3.** All representations, covenants, and indemnifications contained in this Article 2 shall survive the termination of this Agreement.

**2.3.4.** The Escrow Agent will provide such instructions as are needed by the bank officer(s) in charge of the Cash Collateral Account to transfer the Cash Collateral Funds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the Escrow Agent and said bank officer.

**2.3.5.** No warranties, expressed or implied are provided by the Escrow Agent hereunder, nor has or is any legal or financial opinion or other legal, investment, financial advisory or like services been or is being rendered or provided with respect to any matters related to the Cash Collateral Fund or contemplated by this Agreement, it being expressly understood that the Escrow Agent is not and had not been a registered broker-dealer, investment or financial advisor or planner. In no event, will the Escrow Agent, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the Escrow Agent and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the Escrow Agent, its bank(s) or any other person or organization the Escrow Agent has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority.

## ARTICLE III
## GENERAL PROVISIONS

**3.1. Discharge of the Escrow Agent.** Upon the delivery of all of the subject matter or monies pursuant to the terms of this Agreement, the duties of the Escrow Agent shall terminate, and the Escrow Agent shall be discharged from any further obligation hereunder.

**3.2. Escrow Instructions.** Where directions or instructions from more than one of the undersigned are required, such directions or instructions may be given by separate instruments of similar tenor. Any of the undersigned may act hereunder through an agent or attorney-in-fact, provided satisfactory written evidence of authority is first furnished to any party relying on such authority.

**3.3.** **Notice.** Any payment, notice, request for consent, report, or any other communication required or permitted in this Agreement shall be in writing and shall be deemed to have been given when sent by confirmed despatch email, effective the dispatch date or when personally delivered to the party hereunder specified, effective when delivery has been confirmed or when deposited with an overnight courier service, effectrive when receipt is confirmed and is addressed as follows:

(A)     If to the Escrow Agent, addressed to:

>    Mr. Aaron Etra, Esq.
>    445 Park Avenue, 9th Floor
>    New York, NY  10022
>    T: 917-856-3500
>    E: aaron@etra.com

(B)     If to Reign, addressed to:

>    Ross Day, Esq.
>    Day Law & Associates, P.C.
>    15055 SW Sequoia Parkway, Suite 170
>    Portland, Oregon  97224
>    ross@daylawpc.com

(C)     If to Borrower, addressed to:

>    André BELADINA
>    WEST PERLAS 1, S.A.
>    Trump Tower- Local S13- Punta Pacifica
>    PANAMA- Rep. of Panama
>    a.beladina@islaviveros.com   or   acfasult@gmail.com

Any party may unilaterally designate a different address by giving notice of each such change in the manner specified above to each other party. Notwithstanding the foregoing, no notice to the Escrow Agent shall be deemed given to or received by the Escrow Agent unless actually delivered to the Escrow Agent .

**3.4.** **Governing Law.** This Agreement is being made in and is intended to be construed  as follows and shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns:

>    **3.4.1.** Any disputes between the Escrow Agent and either Reign or the Borrower, under this Agreement shall be determined  and all provisions of this Agreement shall be construed according to the laws of the State of New York without giving effect to its conflict of laws and said disputes shall be fully and finally settled by arbitration under UNCITRAL Rules by a single arbitrator sitting in the City and

State of New York, with the results of said arbitration to be enforceable in any court of competent jurisdiction, to which the parties hereby expressly consent ;

**3.4.2.** Any disputes between Reign and the Borrower, this Agreement shall be construed according to the laws of the state of Oregon;

**3.5.** **Construction.** Words used in the singular number may include the plural and the plural may include the singular. The section headings appearing in this instrument have been inserted for convenience only and shall be given no substantive meaning or significance whatsoever in construing the terms and conditions of this Agreement.

**3.6.** **Amendment.** The terms of this Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by the undersigned and the Escrow Agent.

**3.7.** **Force Majeure**. Escrow Agent shall not be liable to the undersigned for any loss or damage arising out of any acts of God, strikes, equipment or transmission failure, war, terrorism, or any other act or circumstance beyond the reasonable control of the Escrow Agent.

**3.8.** **Written Agreement.** This Agreement represents the final agreement between the parties, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**3.9.** **Loan Agreement.** Contemporaneous to the execution of this Agreement, the parties (not including the Escrow Agent) have executed a Loan Agreement which serves as the primary documents governing the loan transaction between Reign and the Borrower. To the extent any conflict exists between the Loan Agreement and this Agreement, the terms and conditions of the Loan Agreement shall supercede.

**3.10.** **Counterparts.** This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement, binding on all parties, notwithstanding that all parties are not signatories to the same counterpart.

IT IS SO AGREED.

_____          _____
Date                                                              Date

_____          _____
Reign Financial International, LLC

_____          _____
By: (print name)                                          By: (print name)

_____          _____
Its:                                                                Its:

I hereby accept the appointment as Cash Collateral Escrow Agent under the terms and conditions of this Agreement

_____          _____

Case 1:20-cv-03384-ECK-HP   Document 214-1   Filed 09/30/22   Page 9 of 66

_____          _____
Print Name and Date                        Escrow Agent

# RELEASE OF CASH COLLATERAL FUNDS

Pursuant to Section 1.3.2 of the Cash Collateral Escrow Agreement and Instructions entered into by and between Reign Financial International, LLC and _____, dated November _____, 2018, the undersigned hereby instructs the Escrow Agent to release the Cash Collateral Funds to Reign pursuant to Section 1.3.2.3 of the Cash Collateral Escrow Agreement and Instructions, only once the first tranche listed in EXHIBIT C to the Loan Agreement for an amount of  USD12,500,00.00 has been completed, the Escrow Agent shall release the Cash Collateral funds to Reign.

By my signature below I warrant and confirm my authority to execute this release.

_____
Date

_____

_____
By: (print name)

_____
Its:

## NOTARY

SUSCRIBED AND SWORN

This _____ day of _____, 2018, the following person: _____ did sign this Release of Cash Collateral Funds of his/her own free will.

Case 1:20-cv-03384-VEC-KHP   Document 234-1   Filed 11/05/22   Page 11 of 65

_____
Notary Public

Exhibit 2
Cash Collateral Escrow Agent Information
_____

<u>Escrow Agent</u>

Mr. Aaron Etra, Esq.
445 Park Avenue, 9th Floor
New York, NY  10022
T: 917-856-3500
F: 646-217-3766
E: aaron@etra.com

U.S. Passport No: 550062121

<u>Banking Co-ordinates for Escrow Funds:</u>

| | |
|---|---|
| Name of Bank: | Manufacturers and Traders Trust Company (M&T Bank). |
| Address: | 1034 Second Avenue, New York, NY  10022 |
| Account Name: | Aaron Etra Esq. IOLA Account |
| Account Number: | 9871733441 |
| ABA # : | 022000046 |
| SWIFT: | MANTUS33 |
| Bank Officer: | Radha Acklam |
| Tel: | 212-888=0660 |
| Email: | backlam@mtb.com |

<u>Special Instructions</u>:  **WIRE TRANSFERS:** All wire transfers shall incorporate below Text Message (sic) and shall be pre-advised via email to aaron@etra.com, with a copy of Bank Wire Transfer Slip shall be emailed to: aaron@etra.com (sic) for legal verification and REQUIRED documentation pursuant to mandated legislation and regulation with a contract copy to be filed with Participating Banks.

<u>Required Instructions</u>:  **All transfers of funds shall state:**

1. **ORIGIN:** "FUNDS ARE CLEAN & CLEAR, OF NON-CRIMINAL ORIGIN AND ARE PAYABLE IN CASH IMMEDIATELY UPON RECEIPT BY BENEFICIARY'S BANK."

2. ***CONTRACTUALLY* EARNED FEES**: "THE CLEAN, CLEARED, LIEN FREE & UNENCUMBERED FUNDS, EARNED AS FINANCIAL CONSULTING FEES ON COMMERCIAL ENTERPRISES OF NON- CRIMINAL AND NON- TERRORIST ORIGINS, KNOWN BY BUYER AND/OR SELLER."

3. **PAYMENT GUARANTEE:** "FUNDS ARE CONTRACTUALLY GUARANTEED FOR PAYMENT THROUGH THE MASTER PAYMASTER ACCOUNT, AS LISTED HEREIN."

4. **SETTLEMENT:** "FUNDS ARE FOR SAME DAY PAYMENT, FULL CREDIT AND IMMEDIATE SETTLEMENT WITHOUT INTERRUPTION, DELAYS, OR PROTEST."

 Gmail

---

## FW: transferencia de apert. cuenta.

---

This is all I have for Goldfinger Entrerprises

---

**From:** Aaron Etra <aaron@etra.com>
**Date:** Monday, May 2, 2022 at 1:12 PM
**To:** SERVICIOS FINANCIEROS GOLDFINGER <sf@goldfingerenterprise.com>
**Cc:** esierra101@gmail.com <esierra101@gmail.com>
**Subject:** Re: transferencia de apert. cuenta.

Many thanks,



Aaron Etra, Esq.

445 Park Avenue-  9th Floor

New York, NY 10022

Tel. +1-917-856-3500

Skype: indeva

---

**From:** SERVICIOS FINANCIEROS GOLDFINGER <sf@goldfingerenterprise.com>
**Date:** Monday, May 2, 2022 at 1:07 PM
**To:** Aaron Etra <aaron@etra.com>
**Cc:** "esierra101@gmail.com" <esierra101@gmail.com>
**Subject:** transferencia de apert. cuenta.


Buenos Tardes

Según instrucciones de Eduardo Sierra, le enviamos justificante de transferencia de los 150$ para la apertura de cuenta de la operación que lleva Eduardo. Cualquier duda o consulta se ponga en contacto con el Sr. Eduardo.


Un saludo.



### Francisco Martinez

International Broker

Export-Import | Goldfinger Enterprise s.l

☐  +34 632 805 044

☐  info@goldfingerenterprise.com

☐  WWW.GOLDFINGERENTERPRISE.COM

☐  Polig. Ind. Abanilla nave 3, 30.640 Abanilla
(Murcia), España

---

*Antes de imprimir, piensa en el medio ambiente.*

*Este mensaje está dirigido exclusivamente a su(s) destinatario(s) y puede contener información confidencial titualridad de GOLDFINGER ENTERPRISE S.L. si Vd. no es el destinatario de este mensaje, no deberá leerlo, copiarlo, retransmitirlo, divulgarlo o tomar ninguna otra acción sobre la información que contiene. Si ha recibido este mensaje por error, por favor contacte al remitente inmediatamente y proceda a su destrucción. Le informamos que las comunicaciones vía internet no permiten asegurar la adecuada recepción de los mensajes enviados, ni garantizar su confidencialidad, circunstancias por las que GOLDFINGER ENTERPRISE S.L no asume responsabilidad alguna. Este mensaje y los ficheros anexos son confidenciales. LOS Mismos contienen información reservada de la empresa que no puede ser difundida. Su dirección de correo electrónico junto a sus datos personales forman parte de un fichero titularidad de GOLDFINGER ENTERPRISE S.L, cuya finalidad es la de mantener el contacto con Ud. de Acuerdo con la LEY Orgánica 15/1999, usted puede ejercitar sus derechos de acceso, rectificación, cancelación y,en su caso, oposición enviando una solicitud por escrito, acompañada de una fotocopia de su D.N.I diriga a GOLDFINGER ENTERPRISE S.L, en Poligono Industrial Abanilla, nave 3, manzana 15 , 30.640 Abanilla (Murcia) España. o al email info@goldfingerenterprise.com*

**AVISO LEGAL**

En cumplimiento de la Ley 34/2002 de servicios de la sociedad de la información y de comercio electrónico, en adelante LSSI, y del Reglamento General de Protección de Datos UE 2016/679, en adelante RGPD, así como de la normativa nacional que lo desarrolla, le comunicamos que su dirección de correo electrónico, sea por su condición de cliente, o porque nos haya solicitado información comercial, sea porque usted ha autorizado que sus datos figuren en nuestro fichero comercial,  forma parte de un fichero de datos propiedad de GOLDFINGER ENTERPRISE S.L., cuya única finalidad es la de mantener con usted una correcta relación comercial y administrativa, así como informarle de las actividades, productos y servicios comercializados por  nuestra empresa.

Atendiendo a lo indicado en el artículo 21 de la LSSI, si usted no desea recibir más información sobre nuestros productos y servicios, puede darse de baja en la siguiente dirección de correo electrónico, info@goldfingerenterprise.com, indicando en el asunto "baja" o "no enviar correos".

Le informamos que la información contenida en este mensaje y/o archivo(s) adjunto(s) es confidencial/privilegiada y está destinada a ser leída sólo por la(s) persona(s) a la(s) que va dirigida. Si usted lee este mensaje y no es el destinatario señalado, el empleado o el agente responsable de entregar el mensaje al destinatario, o ha recibido esta comunicación por error, le informamos que está totalmente prohibida, y puede ser ilegal, cualquier divulgación, distribución o reproducción de esta comunicación, y le rogamos que nos lo notifique inmediatamente y nos devuelva el mensaje original a la dirección arriba mencionada. Gracias.

Case 1:20-cv-03384-VEC-KHP   Document 214-40   Filed 11/15/22   Page 15 of 66

Aunque hemos tomado las medidas para asegurarnos que este correo electrónico y sus ficheros adjuntos estén libres de virus, recomendamos que, a efectos de mantener buenas prácticas de seguridad, el receptor se asegure que este correo y sus ficheros adjuntos están libres de virus.

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, Michael E. Bagley, holder of Florida Drivers License B240-545-46-106-0 , whose address is 9 Fanshaw A Boca Raton, Florida 33434 , in a personal or in such other capacity as the undersigned will advise you ("Michael E. Bagley"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other  business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Michael E. Bagley with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of Michael E. Bagley, the gross proceeds of transfers due to Michael E. Bagley from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event. will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God .or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any

1

claims, demands, gains, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful defaults.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business or part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any lawing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has cleared or is in the process of being completed.

7.      Proceeds are being paid to Michael E. Bagley regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

2

9.  This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.  A number and/or counterparts copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.  If this foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of this engagement, this agreement it shall be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 9th day of June 2020

IN BEHALF of:

Michael E. Bagley

*[signature]*

Owner/Director/Individual (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Birn, Esq., Attorney at law

3

**BORNA TOMICIC**

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, Mr. Borna Tomicic, holder of Croatia passport or other identifying document no. 311304814, whose address is Lipovac III No.2,10000 Zagreb, Croatia, acting as the duly authorized owner/director of owner , or in a personal or in such other capacity as the undersigned will advise you ("Borna Tomicic"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Mr. Borna Tomicic with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of Mr. Borna Tomicic, the gross proceeds of transfers due to the Proceeds  from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a refistered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way

1

relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand U.S. Dollars (US$5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of  One Hundred and Fifty Dollars ($150.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds  being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

2

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 11. day of November, 2021

 IN BEHALF of:

Mr. Borna Tomicic

Owner/Director/Individual (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

### COORDINATOR/PAYMASTER AGREEMENT
### and Disbursement instructions

I, Ho Ming Hao, holder of Passport No. K2206285B, and Siu Fong Jennie Yeung, holder of Passport No. 512831914, acting as the duly authorized directors of Ultima Racing Group Limited (Company Number 13757050) of Kemp House, 160 City Road, London, EC1V 2NX, United Kingdom, or in a personal or in such other capacity as the undersigned will advise our wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "**C/P**"), for the receipt, holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "**Client Business**").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Ultima Racing Group Limited (Company Number 13757050) with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of Ultima Racing Group Limited (Company Number 13757050), the gross proceeds of transfers due to Ultima Racing Group Limited (Company Number 13757050) from the Client Business or contracts (the "Proceeds") into an account(s) designated by the C/P and set forth on Exhibit B (the "Authorized Account Operator"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon our specific written instructions to be notified by us to the C/P, to disburse them. Subject to further notice from us, the C/P is authorized to send the Proceeds to the specific bank accounts under the companies (the "Recipient's Account"). We may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No  warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an

1

employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on our instructions or with our agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 0.50% (half a percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Recipient's Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void, otherwise it shall remain in all such time as the C/P has completed all obligations it such terms regarding the Transaction or any part thereof, which has already is in the process of being completed.

7.      Proceeds are being paid to <u>Ultima Racing Group Limited (Company Number 13757050)</u> regarding the Client Business, which is intended to be   private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not

2

a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.    This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.    This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.    A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.    If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 28th day of November 2021.

ON BEHALF of Ultima Racing Group Limited (Company Number 13757050), by:

Siu Fong Jennie Yeung, Director

Ho Ming Hao, Director

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

## EXHIBIT A

As per investment memo dated 25th November 2021, the group's international business activities include but not limited to the following:

- a. Horse racing, breeding and investment management,
- b. Polo international clubs and teams,
- c. International real estate,
- d. Hospitality with food & beverages,
- e. Merchandises,
- f. Gaming & entertainment,
- g. Media and technology,
- h. Education, academy and resource management, and
- i. CSR Social programs.

The current group companies include:

1. Ultima Racing Group Holding Limited (Dubai DIFC),

2. Ultima Thoroughbreds Holding Limited (Dubai DIFC),

3. Ultima Bloodstock Management Limited (Dubai DIFC)

4. Ultima Services Management Limited (Dubai DIFC)

5. Ultima Racing Stable Marketing Management Limited (Dubai)

6. Ultima Racing Stable Pte Ltd (Singapore), and

7. Ultima Racing Group Limited (United Kingdom).

The group's financial management plan shall expand to include family offices, wealth management and asset management. The current primary board members are Siu Fong Jennie Yeung, Ho Ming Hao and Choo Koon Lip.

4

**EXHIBIT B**

The current joint Authorized Account Operators are:

1. Siu Fong Jennie Yeung (Passport No. 512831914)

2. Ho Ming Hao (Passport No. K2206285B)

5

# FISCAL ASSET MANAGEMENT EUROPE

### COORDINATOR/PAYMASTER AGREEMENT and Disbursement Instructions

I, Michael James Italiano, holder of Australian passport number PB3354942, whose address is 4/167 The Boulevarde, Fairfield Heights 2165 NSW Australia, acting as the duly authorized director of Fiscal Asset Management Pty Ltd, or in a personal or in such other capacity as the undersigned will advise you ("FAM"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of FAM with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of FAM, the gross proceeds of transfers due to FAM from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties expressed or implied are provided by the C/P hereunder, nor has or is any legal or financial opinion or other legal, investment, financial advisory or like services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a refistered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any



1

interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.     No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.     It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% ( one percent) of the Proceeds, with a minimum fee of Five Thousand of the applicable currency per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Fifty Dollars ($150.00).

5.     If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.     If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.     I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.



2

8. This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 13th day of December 2021

IN BEHALF of:

Fiscal Asset Management Pty Ltd

Director

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3



**PATRICK CREAMER**

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, PATRICK CREAMER, holder of PA7820159 passport or other identifying document no. 040854061, whose address is168 North Road Lower Beechmont Queensland 4211 Australia, acting as the duly authorized CFO/director of CENTENNIAL ENERGY COMPANY LIMITED (Thailand and UK), or in a personal or in such other capacity as the undersigned will advise you ("Centennial Energy Group"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of PATRICK CREAMER with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of CENTENNIAL ENERGY COMPANY LIMITED, the gross proceeds of transfers due to CENTENNIAL ENERGY COMPANY LIMITED NOMINEES from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a registered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be

1

liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% ( one percent) of the Proceeds, with a minimum fee of Five Thousand of the applicable currency per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Fifty Dollars ($150.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds  being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action

2

intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 19TH day of DECEMBER, 2021

 IN BEHALF of : CENTENNIAL ENERGY COMPANY LIMITED



PATRICK CREAMER

CHIEF FINANCIAL OFFICER

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

**Disbursement instructions**

Dear Mr Aaron Etra Esq.
Please consider this your first instructions as we look forward to working with you more as we build the relationship.

First of all we would like to discuss the overview request to move into your account $15% of the total of the account balance for consultant fees plus $5Billion USD for the purchase of GE Merchants LTD corporate bonds, of which you will be given further future detailed instructions and the main objective of $5Billion USD for the purpose of depositing into our Centennial Energy Company Limited accounts in the UK.

The total to be transferred through your account is therefore approximately $43B, in a to be determined drawdown schedule, we request be proposed by yourself , based on your knowledge of what would most certainly receive bank approval.

We summarize in general below:
    A.  5B  Centennial Energy UK accounts +
    B.  5B GE Merchants LTD sub accounts +
    C.  33B (15%) in consulting fees (less the cost of overall bank fees)
TOTAL $43B USD

This would leave approx. $177B of which we would like to keep $150B in that master account for trade programs at HSBC while moving whatever the balance is ($27b approx.) into a new sub account at the NY branch with online access and visa debit cards for board members.

**For Urgent attention**
1.please send 50,000 pounds sterling to Managing Director Richard Butler as a part salary. Richard and Patrick will then open the new Centennial Energy Company Limited accounts at HSBC and Barclays in LONDON.

**Account 1 Richard Butler**

| Bank Name | BARCLAYS BANK |
|---|---|
| Bank Address: | CHANCERY LANE, LONDON |

| Account Name: | MAYORGA BUTLER LTD |
|---|---|
| Account Number: | 70632414 |
| Sort Code ABA: | 206917 |
| SWIFT Code: | BARCGB2106F |

Then $200,000 USD to CFO Patrick Creamer.

4

**Account 2 Patrick Creamer**

| Bank Name | HSBC |
|---|---|
| Bank Address: | 83B Scarborough St, Southport  QLD 4215 |

| Account Name: | Patrick Creamer |
|---|---|
| Account Number: | 342099 285850090 |
| Sort Code ABA: | |
| SWIFT Code: | HKBAAU2S |

| Bank Officer: | Jonathan Waterworth |
|---|---|
| Telephone Number: | +61 7 5664 9003 |
| Email address: | Jonathan.Waterworth@hsbc.com.au |

Then also with urgent attention please deposit $50,000,000 USD into an account on behalf of the Chairman of Centennial Energy Company Limited in the Philippines for humanitarian Aid

**Account 3 Chairman USD $$0m**

| Bank Name | BANCO DE ORO (BDO) PHILIPPINES |
|---|---|
| Bank Address: | 481: Cavite – Dasmarinas FCIE, Philippines |

| Account Name: | JEDIAH M. HERNANDEZ |
|---|---|
| Account Number: | 104810512447 |
| SWIFT Code: | BNORPHMM |

| Bank Officer: | N/A |
|---|---|
| Telephone Number: | +(63) 46 402-1135 or +(63) 2 584-4167 |
| Note: | Funds in benefit of  TIBURCIO VILLAMOR MARCO |
| REQUIRED MESSAGE | All transfer instructions shall state "Funds are clean, clear and are not of criminal origin and are payable in cash immediately upon receipt by "Beneficiary bank". |

Then $12,500,000 USD to go into 2 accounts in Australia in equal parts at Westpac and the Commonwealth Bank for a part deposit for the Bond being issued and other mining investments.

**Account 4 GE Bond deposit  USD $12.5m**

| Bank Name | Westpac Banking Corporation |
|---|---|
| Bank Address: | 743 Military Road, Mosman. 2088. |

| Account Name: | Global Evolution Pty Ltd |
|---|---|
| Account Number: | 032016 615137 |
| Sort Code ABA: | |
| SWIFT Code: | WPACAU2S ( WPACAU2SXXX if 11 characters are required ) |

| Bank Officer: | Nic Siggers |
|---|---|
| Telephone Number: | +61 1800 22 1815 |
| Email address: | nsiggers@westpac.com.au |

**Account 5 Mining deposit USD $12.5m**

| Bank Name | Commonwealth Banking Corporation |
|---|---|
| Bank Address: | 862 Military Road, Mosman. 2088 |

| Account Name: | PW&PC Nominees Pty Ltd |
|---|---|
| Account Number: | 062207 10401081 |
| Sort Code ABA: | |
| SWIFT Code: | CTBAAU2S |

| Bank Officer: | Gina Oei |
|---|---|
| Telephone Number: | +61 299602333 |
| Email address: | mosman.nsw@cba.com.au |

**Account 6 Media Bond and film project deposit  USD $25m**

| Bank Name | Commonwealth Banking Corporation |
|---|---|
| Bank Address: | my centre 36-38  57 station street Nerang qld 4211 |

| Account Name: | Revelation Studios Pty Ltd for the PC Trust |
|---|---|
| Account Number: | 064451 10547885 |
| Sort Code ABA: | |
| SWIFT Code: | CTBAAU2S |

| Bank Officer: | Ewanee Trindorfer |
|---|---|
| Telephone Number: | +61 755962227 |
| Email address: | Ewanee.Trindorfer@cba.com.au |
| REQUIRED MESSAGE | All transfer instructions shall state "Funds are clean, clear and are not of criminal origin and are payable in cash immediately upon receipt by "Beneficiary bank". |

NOT AS URGENT BUT IMPORTANT
The Balance of the $5Billion  into our Centennial Energy Company Limited accounts at HSBC , METRO and Barclays in tranches that you feel will be approved and acceptable to the Banks. We would like to start with a deposit of 500,000,000 USD into three Centennial Energy Company Limited accounts to be provided within 2-5 days after the above deposits.

For Consultant fees in tranches that are approved and acceptable to the Banks.
1.We would like to then deposit 4% of the account total to : Bank account TBD of BLUE INVESTMENT HOLDINGS

2.We would also like to then deposit 8% of the account total to : Bank account TBD of BVI

3.We would like to deposit 3% of the account total less the % Bank fees to : Bank account TBD of Revelation Studios Ltd

4. Finally move the balance of $5Billion into the GE Merchants LTD account TBD to invest in projects purchase Corporate Bonds below with $1B distributed to 5 Sub accounts as deposits for:
   A. Global Evolution 100m
   B. Initio 70m Bond Purchase 10% deposit balance of 700m on settlement of Bond
   C. Delta 100m Australian Mining investment deposit
   D. PW & PC TRUST 100m IT investment deposit
   E. Philippines Project company 630m

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

DATED as of this 19TH day of DECEMBER, 2021

 IN BEHALF of : CENTENNIAL ENERGY COMPANY LIMITED



PATRICK CREAMER

CHIEF FINANCIAL OFFICER

7

THIS WAS INTENTIONALLY OMITTED - SIGNATURE PAGE

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 10th day of January, 2022

IN BEHALF of:

BVL Developments, LLC

Owner

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

**DIZA MARINE SERVICES AND SURVEY**
**SIGNATURE PAGE**

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this **5th day of April, 2022,**

Diza Marine Services & Surveys N.V.
Kitaraweg #4, Santa Rosa, Curacao
Tel: +599-9-5480813 / +1-868-7952424
+1-868-7818492
E-mail: dizamarine@hotmail.com
dizamarine@yahoo.com
Web: www.dizamarine.com

In Behalf of:  **Diza Marine Services & Surveys N.V., Capt. Fitzroy Dorant as:**
**Managin Director**

Agreed and Accepted, on behalf of the C/P, by:

_____

**Aaron Etra, Esq., Attorney at law**

5

**IAN ROBERT STEWART JORDAN**

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, Ian Robert Stewart Jordan, holder of UK passport or other identifying document no. 510620399, whose address is1, Ellis Court, Hemingfield Road, Hemingfield, S73 0PQ UK, acting as the duly authorized owner and director of Vanor Capital Resources Limited, (Co. No. 12330866) (VCR) or in a personal or in such other capacity as the undersigned will advise you, wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1. The C/P agrees to act as the coordinator/paymaster and representative of the interests of VCR with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of VCR, the gross proceeds of transfers due toVCR from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2. The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified to me by the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any

1

JORDAN

claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding,  disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% (one percent) of the Proceeds, with a minimum of  5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to VCR regarding the Client Business, which is intended to be  private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

Case 1:20-cv-02834-AEC-KHP Document 218-1 Filed 09/30/22 Page 43 of 66
Case 1:20-cv-02834-VEC-KHP Document 218-1 Filed 09/30/22 Page 41 of 65
JORDAN

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.      A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.      If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 17th day of August, 2022

 ON BEHALF of: Vanor Capital Resources Limited

**Ian R. S. Jordan**

Ownerand Director




Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

## SUE WHITE **SIGNATURE PAGE**

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10.      A facsimile and/or counterpart copy of this agreement shall each constitute an original. and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.      If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

**DATED** as of this 4th of April, 2022

IN BEHALF of: **RSW Business Systems**

Solveig E. White
Owner/Director/Individual (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

MEDIA LEADER

(form 88)

## COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions

I, **Adam Klein**, holder of USA passport or other identifying document no. 5503333412, whose address is 350 Central Park West #2E, New York, NY 10025, acting as the duly authorized owner/director of **Media Leader LLC,**, or in a personal or in such other capacity as the undersigned will advise you Aaron Etra Esq., wish to engage the services of you, **Aaron Etra, Esq**., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1. The C/P agrees to act as the coordinator/paymaster and representative of the interests of **Adam Klein** with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of **Adam Klein** and/or **Media Leader LLC,** the gross proceeds of transfers due to **Adam Klein** and/or **Media Leader LLC,** from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank.

2. The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor has or is any legal or financial opinion or other legal, investment, financial advisory or like services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood

1

that the C/P is not and had not been a registered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand U.S. Dollars (US$5,000.00) per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Thirty Dollars ($130.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other

2

laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

8.  This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.  This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 18th day of December, 2019

IN BEHALF of:

**Adam Klein** and/or **Media Leader LLC,**

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

# E. SEBASTIAN SANTOS ESCROW AGREEMENT

### COORDINATOR/PAYMASTER AGREEMENT and Disbursement Instructions

I, Euclides Sebastian Saltos Alban, holder of passport or other identifying document no. A7393436, whose address is 325 Roosevelt Blvd. Hempstead, NY 11552 acting as the duly authorized owner/director of Aseinsa Consultant, Corp., or in a personal or in such other capacity as the undersigned will advise you ("Euclides S. Saltos Alban"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt, holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Euclides S. Saltos Alban with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of Euclides S. Saltos Alban, the gross proceeds of transfers due to $50,000.00 from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer.

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designed, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designed, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or

1

Scanned with CamScanner

Scanned with CamScanner

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 18 day of November, 2020

IN BEHALF of:

Owner/Director/Individual (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

AARON ETRA
ESQ.
New York 1966
Attorney and
Counselor at Law

3

Scanned with CamScanner

**LUIS MANUEL PENISGA ESCROW AGREEMENT**

## COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions

I, Luis Manuel Cabrita Penisga , holder of passport Portuguese no. CB571665 , whose address is Rua Carvalho Freirinha nº 62 – 1º Esqª 2800-678 Almada – Portugal , acting as the only Onwer and individual duly authorized owner in such other capacity as the undersigned will advise you (Aaron Etra ), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Luis Manuel Cabrita Penisga , with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of Luis Manuel Cabrita Penisga , the gross proceeds of transfers due to _____ from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or

1

institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to _____ regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

2

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 05 day of November , 2020

IN BEHALF of: Luis Manuel Cabrita Penisga

_____

Owner Individual

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law



3

**LAIMA KHAN**

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement Instructions**

I, Laima Khan, holder of passport no. 553864600, acting as the duly authorized owner/director of Oxford Medwell Limited, a private company incorporated in England and Wales having its registered office at 52 Clarendon Business Centre, Cornmarket Street, Oxford, OX1 3HJ ("OML"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other  business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of OML with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of OML, the gross proceeds of transfers due to OML from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them, Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account").I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No  warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

1

third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business or any part thereof.

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to Citilegal International Limited on behalf of OML regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the laws of England and Wales. Any dispute whether as to the validity, interpretation or termination of this agreement which cannot be determined amicably shall be referred by either party to arbitration to the ICC Paris in

2

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P will deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 0.50% (half a percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof, once the full business between OML and its Buyer is completed.

Para. 5 - Testing at how to

5.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

6.      Proceeds are being paid to Citilegal International Limited on behalf of OML regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

7.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

8.      This agreement shall be governed by and construed in accordance with the laws of England and Wales. Any dispute whether as to the validity, interpretation or termination of this agreement which cannot be determined amicably shall be referred by either party to arbitration to the ICC Paris in accordance with its Rules of Arbitration. The arbitration shall be conducted by a single arbitrator appointed in accordance with the said rules and shall take place in London England in the English language. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

9.      C/P do hereby irrevocably guarantee with full corporate responsibility and authority under penalty of perjury to not involve OML funds to pay any debt or damages that is owned by C/P and all

2

## COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions

I, __SORT MAO_____, holder of  United States Driving License/ passport or other identifying document no.  Driving License number **E3566470**_____, whose address is__**5863 linden avenue Long Beach, Ca 90805, USA**, acting as the duly authorized owner/director of **Phsaryoung**, or in a personal or in such other capacity as the undersigned will advise you ("**_SORT MAO__**"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9ᵗʰ floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other  business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.       The C/P agrees to act as the coordinator/paymaster and representative of the interests of _SORT MAO_____ with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of___SORT MAO_____, the gross proceeds of transfers due to _SORT MAO_____ from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.       The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No  warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P

1

has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client Business, in connection with the Client Business or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable currency for any transaction or aspect of Client Business of part thereof and after payment upon registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to __SORT MAO_____ regarding the Client Business, which is intended to be private dealings and activity among qualified and responsible parties who are knowledgeable regarding the underlying business and who intend to comply with all applicable laws and regulations. As such, participation in the Client Business is not being offered to, solicited from or intended for members of or parties from the general public. Neither the principals, nor the undersigned have relied on the protection or application of any securities or other laws or regulations, as they and the undersigned believe and represent the Client Business to be exempt from or not in contravention of any such securities or other laws or regulations by reason of the nature of the Client Business and the parties involved and action intended to be in compliance with any applicable law. The C/P is not a registered or licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited securities in connection with any aspect of the Client Business.

2

8. This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 27th day of 04, 2021___

IN BEHALF of:

SORT MAO

Owner/Director/Individual (as appropriate)

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law



3

## COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions

KUAM INVERSIONES E.I.R.L. a Peruvian company Registered with RUC No. 20544417895, with it is Legal Representative & CEO RUDOLFO EDUARDO DIAZ VILCA, holder of Peruvian Passport No. 116824757, whose address is Jiron Carabaya No. 928 Oficina No. 207 Lima – Perú / Southamerica, acting as the duly authorization in such other capacity as the undersigned from now on will be named as the "COMPANY", wish to engage the services of  Dr. AARON ETRA, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of THE COMPANY with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of the COMPANY, the gross proceeds of transfers due to the COMPANY from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a refistered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any

1



other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum fee of Five Thousand of the applicable currency per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Fifty Dollars ($150.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.



2

8. This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9. This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10. A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11. If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this November 16, 2020

IN BEHALF of:

The COMPANY

DIAZ VILCA, RUDOLFO EDUARDO

CEO

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law





3

**AARON ETRA, ESQ. PAYMASTER – M & T BANK- ATTORNEY ACCOUNT**
445 Park Avenue – 9ᵗʰ floor, New York, NY 10022

COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions / CONSULTANTS SUB-FEE AGREEMENT

### COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions

I, Gordon Oliver, holder of Canadian passport or other identifying document no. AB134022, whose address is 470 Trumpeter Road, Kelowna B.C., Canada V1W 5J4, acting as the duly authorized owner/director of Sisu Inc. or in a personal or in such other capacity as the undersigned will advise you ("_____"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9ᵗʰ floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments in conjunction with the purchase and sale of commodities or other assets and other business activities further described in Exhibit A hereto (the "Client Business").

This agreement will be valid for the duration of the Client Business, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Sisu Inc. with respect to the Client Business, as described herein. As such, the C/P shall be authorized and responsible to receive and accept, on behalf of Sisu Inc., the gross proceeds of transfers due to Sisu Inc. from the Client Business (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Client Business to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor is any legal opinion or other legal services being rendered or provided relative to the Client Business. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P, its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Client

1



**AARON ETRA, ESQ. PAYMASTER – M & T BANK- ATTORNEY ACCOUNT**
445 Park Avenue – 9ᵗʰ floor, New York, NY 10022

COORDINATOR/PAYMASTER AGREEMENT and Disbursement Instructions / CONSULTANTS SUB-FEE
AGREEMENT

Business, in connection with the Client Business or in any way relating thereto or arising out of the
performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except
for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate
or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with
it in any way in connection with the Client Business without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct
and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of
relevant services, for their services, including for the receipt, holding, disbursement and transfer of all
or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in
the agreed amount of 1.00% (one percent) of the Proceeds, with a minimum of 5,000 of the applicable
currency for any transaction or aspect of Client Business of part thereof and after payment upon
registration of a non-refundable registration fee of One Hundred Fifty Dollars ($150.00).

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of
the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the
request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after
this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise,
it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the
Transaction or any part thereof, which has closed or is in the process of being completed.

7.      Proceeds are being paid to of Sisu Inc. regarding the Client Business, which is intended to be
private dealings and activity among qualified and responsible parties who are knowledgeable regarding
the underlying business and who intend to comply with all applicable laws and regulations. As such,
participation in the Client Business is not being offered to, solicited from or intended for members of or
parties from the general public. Neither the principals, nor the undersigned have relied on the
protection or application of any securities or other laws or regulations, as they and the undersigned
believe and represent the Client Business to be exempt from or not in contravention of any such
securities or other laws or regulations by reason of the nature of the Client Business and the parties
involved and action intended to be in compliance with any applicable law. The C/P is not a registered or
licensed broker-dealer, investment or financial advisor or planner and has not offered or solicited
securities in connection with any aspect of the Client Business.

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors,
personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the
parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All
notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the
United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the
applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving
effect to its conflict of laws. No amendment of this agreement may be made except by mutual

2



**AARON ETRA, ESQ. PAYMASTER – M & T BANK- ATTORNEY ACCOUNT**
445 Park Avenue – 9ᵗʰ floor, New York, NY 10022

COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions / CONSULTANTS SUB-FEE
AGREEMENT

agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Client Business.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 8th day of August, 2020

IN BEHALF of:                                   IN BEHALF of:

Sisu Inc.                                           BECER CONSULTING

Gordon Oliver                                   CAVIT B BECER
Owner/Director/Individual (as appropriate)   Owner/Director/Individual (as appropriate)
(Canadian Passport No. AB134022)            (Canadian Passport No. HH322771)

IN BEHALF of:

Mr.Anas R. A Alhirtani

Mr.Anas R. A Alhirtani (Palestinian Passport No. 3961241)
Owner/Director/Individual (as appropriate)

DATED as of this 8th day of August, 2020

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3

**OLEKSANDER ARBETOV**

**COORDINATOR/PAYMASTER AGREEMENT and Disbursement instructions**

I, Oleksandr Arbetov, holder of Canadian passport or other identifying document no. HP444392, whose address is 941 West 20th Ave, Vancouver, BC, V5Z 1Y4, acting as the duly authorized owner/director of N/A, or in a personal or in such other capacity as the undersigned will advise you ("Oleksandr Arbetov"), wish to engage the services of you, Aaron Etra, Esq., Attorney at law, holder of United States passport no. 550062121, whose business address is 445 Park Avenue- 9th floor, New York, NY 10022, USA, acting through institutions and entities designated by you, as coordinator/paymaster (the "C/P"), for the receipt , holding and disbursement of funds received on behalf of the undersigned, pursuant to the provisions of this agreement.

The afore-mentioned funds are being received by the undersigned as payments of certain fees and commissions for services to buyers and/or sellers of commodities and financial instruments and, in this instance, relating to a transaction described in Exhibit A hereto (the "Transaction").

This agreement will be valid for the duration of the Transaction, if not otherwise modified or renewed by a further written agreement between the parties hereto.

The engagement is to be under the following terms and conditions:

1.      The C/P agrees to act as the coordinator/paymaster and representative of the interests of Oleksandr Arbetov with respect to the Transaction, as described herein. As such, the C/P shall be authorized and responsible to receive and hold, on behalf of Oleksandr Arbetov, the gross proceeds of transfers due to Oleksandr Arbetov from the Transaction (the "Proceeds") into an account designated by the C/P and set forth on Exhibit B (the "Account"), or such other account as the C/P deems appropriate and desirable for this purpose, and deal with the holding and disbursement of the Proceeds. The C/P will provide such instructions as are needed by the bank officer(s) in charge of the Transaction to transfer the Proceeds by S.W.I.F.T., Fed wire transfer or as otherwise agreed between the C/P and said bank officer .

2.      The C/P's only responsibilities under this agreement shall be to receive the Proceeds into the Account, hold and/or invest them as agreed between the parties hereto, and, upon my specific written instructions to be notified by me to the C/P, to disburse them. Subject to further notice from me, the C/P is authorized to send the Proceeds to the bank account specified in Exhibit C (the "Recipient's Account"). I may request that some of the Proceeds be held for a term in excess of thirty (30) days. The C/P, or any person or entity acting as an employee, associate, affiliate or designee, will not be liable to any person for any claimed failure to perform, except for a willful default. No warranties, expressed or implied are provided by the C/P hereunder, nor  has or is any legal or financial opinion or other legal, investment, financial advisory or like  services been or is being rendered or provided with respect to any matters related to the Transaction or contemplated by this agreement, it being expressly understood that the C/P is not and had not been a refistered broker-dealer, investment or financial advisor or planner. In no event, will the C/P, or any person or entity acting as an employee, associate, affiliate or designee, be liable for any action taken or omitted, in reliance upon any notice or document delivered to the C/P and believed to be genuine; or for any act of God ,or unauthorized contacts by or with the C/P,

1

its your bank(s) or any other person or organization the C/P has dealt with, by any person, or for any interference or intervention by any regulatory agency or authority. The undersigned hereby indemnifies and will hold the C/P, and all persons, organizations or institutions employed by, associated or affiliated with, or utilized by the C/P, fully harmless for any claims, demands, suits, losses, or damages, costs, fees or expenses, including attorney's fees, or other detriment, by any persons, including, but not limited to third parties claiming an interest in the Transaction, in connection with the Transaction or in any way relating thereto or arising out of the performance by or on behalf of the C/P or the undersigned as provided for under this agreement, except for willful default.

3.      No person, acting on my instructions or with my agreement, shall contact or attempt to operate or instruct the Account, the holder thereof, or any institution in which it is deposited or which deals with it in any way in connection with the Transaction without the express permission of the C/P.

4.      It is agreed that, from all monies received into the Account, the C/P is authorized to first deduct and pay any charges, expenses or fees of the bank(s) in which they are held, or any other provider of relevant services, for their services, including for the receipt, holding, investment, disbursement and transfer of all or any part of the Proceeds and all other expenses of any party relating thereto, as well as C/P fees in the agreed amount of 1% ( one percent) of the Proceeds, with a minimum fee of Five Thousand of the applicable currency per transaction or part thereof, in addition to an initial and non-refundable registration fee of One Hundred and Fifty Dollars ($150.00)..

5.      If for any reason any taxing authority requests to withhold or have paid over to them any part of the Proceeds, the C/P is fully authorized and empowered to pay such amounts, advising us of the request and action taken, remitting the balance as instructed.

6.      If for any reason good, clean funds are not deposited in the Account within one (1) year after this agreement is executed, this agreement shall terminate, and be considered null and void. Otherwise, it shall terminate at such time as the C/P has completed all obligations set forth herein regarding the Transaction or any part thereof, which has closed or is in the process of being completed.

7.      I affirm that the Proceeds  being paid to me from the Transaction, are in respect of what is intended to be a private transaction among qualified and responsible parties who are knowledgeable regarding the underlying business of the Transaction and who intend to comply with all applicable laws and regulations. I further affirm that the Transaction has not been and is not being offered to, solicited from, advised to, structured for, or intended for use by me or any other members of or parties from the general public, by the C/P or as a result of its efforts, which are expressly limited to those provided for hereunder. I also confirm, on which the C/P can rely, that neither the principals of the Transaction, nor the undersigned, have relied on the advice or assistance of the C/P with respect to the application or the protection of any securities or other laws or regulations, as they and the undersigned believe and represent the Transaction to be exempt from and/or not in contravention of any such securities or other laws or regulations by reason of the nature of the Transaction and the parties involved and action intended to be in compliance with any applicable law and not involving the creation of a security or other interest which requires registration, regulatory review or like action.

2

8.      This agreement shall be binding on and inure to the benefit of the respective heirs, executors, personal representatives, successors and assigns of the parties hereto. Any notice shall be sent to the parties at the addresses set forth above, or such other addresses as shall be notified pursuant hereto. All notice shall be sent by first class airmail and shall be effective five (5) business days after dispatch.

9.      This agreement shall be governed by and construed in accordance with the applicable law of the United States and of the jurisdiction consented to. The parties agree to consent to the jurisdiction of the applicable courts in the State of New York, for the settlement of disputes, and to its law, without giving effect to its conflict of laws. No amendment of this agreement may be made except by mutual agreement in writing and the parties agree that this agreement is the sole basis for their agreement regarding the Transaction.

10.     A facsimile and/or counterpart copy of this agreement shall each constitute an original, and each may be signed at different times and places. Together the counterparts shall constitute one agreement.

11.     If the foregoing fully and correctly sets forth our agreement and understanding of the terms and conditions of the engagement, this agreement should be signed as set forth below by the duly authorized representatives of the parties hereto and delivered, thereby constituting a binding agreement between the signatories and enforceable in accordance with its terms.

DATED as of this 5th day of September, 2022

 IN BEHALF of: Oleksandr Arbetov

_____

Individual

Agreed and Accepted, on behalf of the C/P, by:

Aaron Etra, Esq., Attorney at law

3