Exhibit 41

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                             :

BENTHOS MASTER FUND, LTD.,                :         Case No. 20V-03384(VEC)
                                                                         :
                           Petitioner,           :
        -against-                         :         AFFIDAVIT OF AARON ETRA
                                                                         :

Aaron Etra,                                       :
                                                                         :
                                 Respondent.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                           :

I, AARON ETRA, under the penalty of perjury, declare the following:

        1.        I am the Respondent in the above-captioned action and respectfully submit this affidavit in support of Respondent's motion to quash that part of Petitioner subpoena that requests all or any part of privileged documents and related information, personal and financial, as the release of such material would (i) invade the protection of the attorney-client privilege; and (ii) subject the party served to undue burden.

        2.        This motion to quash is about that part of Petitioner's subpoena dealing with privileged information as stated Judge Caproni's most recent Order of August 2, 2022 [<u>Exhibit</u> A], as follows:

The parties are reminded that they must brief only the narrow legal issue of whether the escrow agreements are privileged recognizing that the names of clients, which Petitioner represented at the August 2, 2022 hearing was the only material it sought, have already been disclosed. These escrow agreements include, but are not necessarily limited to, agreements with:

1) Day Law & Associates P.C. (Piermont 2292)
2) Renato Corzo (Piermont 2292)
3) 1/Goldfinger Enterprise SL (M&T 7045)
4) Charles L. Weinstein ITF Marlene Mar (M&T 7045)

-1-

5) Fisher Enterprise (M&T 3441)
6) Oceanix Inc. (M&T 3441)
7) Steven Kavanagh (M&T 3441)
8) Novavis Medical AG (M&T 3441)
9) Pound International Sender (M&T 3441)
10) Michael E. Bagley (M&T 3441)
11) Alba Lucia Giraldo (M&T 3441)
12) Pass LLC (M&T 3441)
13) Desmond Hinds (M&T 3441)
14) Konrad Jan Banasiak (M&T 3441)
15) 1/Borna Tomicic (M&T 3441)
16) Tennessee Bar Foundation (M&T 3441)
17) Ultima Racing Stable PTE Ltd. (M&T 3441)
18) Fiscal Asset Management Europe Pty (M&T 3441)
19) George Michael Du Plooy (M&T 3441)
20) Patrick Creamer (M&T 3441)
21) Timothy L. Sanford (M&T 3441)
22) Incept Holdings BVI Ltd. (M&T 3441)
23) Charles Nastasi (M&T 3441)
24) Eric Valdes (M&T 3441)
25) Puerta Del Pacifico (M&T 3441)
26) DIZA Marine Services and Surveys (M&T 3441)
27) Harold Wright Peavy (M&T 3441)
28) John R. Watkins (M&T 3441)
29) Peavy & Co., Inc. (M&T 3441)
30) Valarie Baptiste Irrevocable Private Trust (M&T 3441)
31) Razur 7711 LLC (3441).

**RELEVANT BACKGROUND HISTORY**

3. Relevant to this Motion, Respondent has fully complied as is possible with the detailed items from the Orders of July 7th, by his responses submitted on July 15th, July 19th, August 1st, and most recently, complied with that part of the Court's August 2, 2022 Order that requested 10 items in addition to the 31 Escrow Agent agreements cited above, where all of the 10 items were produced with the exception of 2 items, one from HSBC and one from Citibank, which Respondent submitted a detailed explanation of the diligence shown by Respondent to secure everything with respect to these bank statements, which the banks have indicated may not exist. Because what is

-2-

known is that, after repeated requests, neither Citibank nor HSBC was able to produce anything more in respect of the two items, and Respondent had already turned in all of the bank statements that were in his possession or on his computer, including the ones delivered earlier to Judge Nathan, Judge Parker, and Judge Caproni, with no other record with respect to these two references. Furthermore, there was no way this information was present and then lost on Respondent's computer, as the dates of his searches for these items both in his possession and on his computer preceded his computer failure issues on or about June 29th, 2022, which Apple restored to operational condition after 7 days, although it resulted in losing data from his client data files [<u>Exhibit B-</u> See Apple Receipt Summary]. Therefore, those two missing items, have been continuously requested directly from Citibank for one, and HSBC for the other, and Respondent would submit anything when and if the banks subsequently find any material under those references.

**QUASHING OR MODIFYING A SUBPOENA**

4. The Federal Rules of Civil Procedure P.45(d)(3)(A)(iii)-(iv) state in relevant part:

   (3) *Quashing or Modifying a Subpoena.*

   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

   …(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

   (iv) subjects a person to undue burden.

5. Judge Caproni has already set the date as August 19th for this motion to be made, and it is being made timely as ordered.

-3-

6. Judge Caproni also restricted this motion to be based on the narrow issue of privileged information regarding the escrow agreements as set forth above, and further stated in her order, that the names of which Petitioner represented at the August 2, 2022 hearing was the only material it sought, *have already been disclosed*.

7. What may have not been clear in and to the Court and not addressed in Judge Caproni's Order, is that the names of the 31 clients in respect of whom Petitioner was requesting the Escrow Agreements thereof, were not *disclosed* by Respondent in answer to a subpoena or email or letter, or any other fashion, but were instead *taken* by Petitioner from Respondent's escrow bank account statements from M&T Bank and Piermont Bank, which Respondent delivered, under protest as to all information in or about those Escrow Accounts and Agreements being privileged information, was forced to turn over under the threat of severe financial penalties and physical duress. This included the application of incarceration, which for an 81-year-old frail person with severe ongoing medical conditions, was life-threatening, as discussed with his doctors who had wanted him to undergo tests and therapy to stabilize his medical condition on the very day he was put into an underground detention cell and with shackles for hours.

8. Under these circumstances, Respondent protested as much as he could to protect his clients and not to breach their privacy and his obligations to them of confidentiality and respect for privilege. Under the terrible stress coupled with ongoing high blood pressure, and confinement in the hot summer which could have killed him, he turned over the client escrow bank statements, which revealed their names which Petitioner is now using to take to the next level of not only their names, but to reveal

their Escrow Agreements which would not only contain their names, but also, among other things, their private business information as well.

9. Each and every one of these clients, is a non-party, irrelevant, and has nothing to do with Benthos or anyone connected in any way to Benthos, and Petitioner should have no need of their Escrow Agreement arrangements with Respondent. [see a sample Escrow Agreement attached as Exhibit C]. To be clear, these Escrow Agreement are one-year agreements in which clients can use or not use Respondent's services anytime during that year to receive funds into his Escrow for a business transaction that client would discuss with Escrow Agent for it and when it would come to pass. When an Agreement has expired after a year, it is void and deleted, and a new Agreement would need to be created for a Client if a new business situation emerges for that particular Client.

10. This Court should not allow Petitioner's request to reveal these non-party, irrelevant Escrow Agreements, and should rather seal the already-submitted bank account statements from M&T Bank and Piermont Bank which Petitioner used to form his list, and that Respondent was forced to reveal under duress. To deny this Motion and force Respondent to reveal this privileged information would amount to supporting a fishing expedition on Petitioner's part, especially in light of Petitioner's aggressive action with respect to others in like non-connection with this matter, and would violate the purpose and necessary application of the Federal Rules of Civil Procedure P.45(d)(3)(A)(iii), and allow harassment and possible injury to innocent parties who should not be forced to participate or be harassed and their business

-5-

information and arrangements exposed, when they are irrelevant to this case in every way.

11. Furthermore, the revealing of Respondent's clients' private information would also cause great hardship on Respondent as these clients were entitled to a one-year Escrow arrangement and its privilege protection. All Escrow Agreements expire automatically after a year when there are to be deleted. Most of the aforesaid list of 31 are much older than a year. Those few that were in the one-year period, all were prior to Respondent's computer breakdown on June 29, 2022, which as mentioned above, was when his one computer went to an Apple tech for repairs for almost a week. They were not recoverable by Apple when Respondent's computer came back from the deep repair facility it had to be sent to; although Apple deep tech did get it up and running, replacing the equipment with an updated operating system resulted in client data being lost. The two active Escrow Agreements that Respondent was able to give Petitioner were from two of his clients with permission, and who had not needed his Escrow Agreement services because their business dealings had not come to a point where they would have needed such services.

12. To attempt to retrieve any part of the 31 Escrow Agreements listed above would be an undue burden on Respondent, as he does not keep in touch with the client regarding their Agreement after it expires. They would need to come to him again when and if they have relevant future business, knowing they would need to enter into a new Escrow Agreement for any new business and discuss it with Respondent first. The demand to produce these Escrow Agreements would require Respondent to search for all these clients again, search the internet for any active

-6-

phone numbers they might have, and in, the event they are located, explain to them why he would need copies of an expired Escrow Agreement and why he assumed they might still have a copy. He would have to inform them that it was being produced for a Court matter, and they would rightly protest that they should have no involvement with a Court matter which has nothing to do with them. They would believe, as Respondent did when giving them the Agreement, that they were working with an attorney and that their information would be protected under applicable law.

13. The request for this privileged information would also cause extreme hardship on Respondent professionally as clients would expect Respondent to honor their confidentiality and privacy and that both they and Respondent would be protected by all Courts as all attorneys and their clients are meant to be.

WHEREFORE, it is respectfully requested that this Court quash Petitioner's subpoena as to the Escrow Agreements or any part thereof, and seal the underlying Escrow Attorney bank statement from M&T Bank and Piermont Bank, from which the Escrow Agreement list of names was procured by Petitioner, and for such other and further relief as the Court deems just and proper.

Dated: August 19, 2022

Aaron Etra, pro se
247 East 47th Street, #12K
New York, New York 10017
Telephone: (917) 856-3500
Email: aaron@etra.com