UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
                                         :
BENTHOS MASTER FUND, LTD.,               :    Case No. 20CV-03384(VEC)
                                         :
                    Petitioner,          :
       -against-                         :    DECLARATION OF AARON ETRA
                                         :
Aaron Etra,                              :
                                         :
                    Respondent.          :
                                         :
---------------------------------------- x

I, AARON ETRA, under the penalty of perjury, declare the following:

1. I am the Respondent in the above-captioned action and respectfully submit this Declaration in opposition to Petitioner's Motion to hold respondent in civil and criminal contempt and for related relief.

RELEVANT HISTORY

2. Petitioner holds a judgment against Respondent in the amount of $5,254,561.12 as a result of an Arbitration Award rendered in April 2020, which Respondent did not participate in as it was his contention that the Arbitration was meant to settle disputes between parties, which in the instant case, should have been between the Buyers and Sellers in the transaction, not by Benthos against the Escrow Agent alone, when it was the Bitcoin owner/seller who was to deliver the Bitcoin directly to the Buyer's account, and failed to do so. Notwithstanding Respondent's protests to the appointing authority, a single arbitrator chosen by Benthos agreed to hear the matter, and with no input or participation from

-1-

anybody involved in the transaction other than Benthos, the Arbitrator held the Escrow Agent totally responsible for this failed business transaction and added all costs Benthos could think of on to this one-sided decision.

3. The case then went to the U.S. Federal Courts for the enforcement of the judgement and various subpoenas, contempt motions and restraining orders were served and imposed on Respondent.  Respondent informed the Court in 2020 of his background and having no litigation experience.  His background includes for the most part work as a volunteer with different civil society organizations and non-profits, focusing on human rights, sustainable development and life sciences, participating in programs and projects in those fields.  At the United Nations, as a volunteer, he has represented three NGOs (Non-Governmental Organizations): Academia Mexicana de Derecho Internacional, World Council of Peoples for the United Nations (of which he is a Vice-President) and the World Development Foundation. Respondent is the Chair of the Executive Committee of the Council of Organizations of the United Nations Association of the U.S.A. and a Member of its National Council, as well as having been an officer of the UN CoNGO Committees on Human Rights and Sustainable Development. Respondent was the founding Chair of the African Affairs Committee of the NYC Bar Association and a member of its Middle East and North Africa Committee and of the UN Committee. He also served on the Board of Governors of the Technion- Israel Institute of Technology (which awarded him an Honorary Fellowship) and of the Bezalel Academy of Arts and

Design, Jerusalem, whose Friends Organization he helped to form, as he did the support organization for the Cape and Islands Chamber Music Festival.

4. This is not the profile of a criminal, somebody who at his age would commit fraud or theft, someone who would act dishonorably or against the interests, trust or wishes of those he is assisting.

5. While he is a registered and in good standing attorney in New York State, he does not and has not practiced in the courts and is not and never has been a litigation attorney, choosing a different career path entirely---helping on a global scale to improve the lives and communities of those in need and encouraging a give back to their communities by providing essential services. He himself helped to establish a law School in Malawi, one of the poorest African countries, working in the Ford Foundation sponsored SAILER (Staffing African Institutions of Legal Education and Research) program. He also used his legal background to help staff the International Law and International Affairs programs of Columbia and N.Y.U. and served in the Director-General's Office of the UN's International Labor Organization in Geneva, Switzerland.

6. Respondent has focused on this humanitarian work since 1977, which ended his employment relationships and access to paychecks. Since his work is global, it often requires travel, sponsored by the organizations he is serving. Although it is sometimes difficult with Respondent's age and ongoing health issues, travel is necessary. Often, Respondent has been able to combine the trips with medical procedures where he can obtain therapy and preventive treatments not available in the USA, which have been desirable to improve his health, which has

been affected severely by the adverse results of the constant personal attacks of this case.

## DISCUSSION

7. While Respondent cannot claim to be perfect in his responses, with his one-person firm, no legal help and no litigation experience, he has acted constructively and in good faith, producing hundreds of pages of bank statements and other material, answering questions, and constantly communicating with the Court during four years with four judges and with Petitioner's counsel. By comparison, Petitioner has a 5-person skilled legal team of litigators to handle this case, who seek every possible imperfection in Respondent's responses no matter how much is included in the submissions, and always ready to attack and twist every reasonable explanation Respondent has given when Respondent has given the only explanation of what he had or did not have or why he did not have it at the time of that submission.

8. They refuse to accept that although Respondent has requested of banks any missing old statements, the banks, were unable to produce some material that was for both old and/or for closed accounts, some closures as a result of the action of Petitioner's counsel. The banks during the relevant period were also subject to takeovers, or closed their local branches. Respondent has provided these answers and material to Petitioner's counsel over and over again, and even included copies of his requests to bank and the phone numbers he called over and over again to secure these old/closed accounts. It has not been and never will be enough for Petitioner's counsel, who is trying to prove the

unprovable, that Respondent received any Benthos funds or has or ever had enough personal assets to come anywhere near satisfying the nflated and unwarranted arbitration award and judgement based on it.

9. Petitioner's latest papers are yet another contempt motion and call for incarceration, containing the latest of continuing personal attacks of Petitioner's counsel. Prior to Petitioner serving this latest motion, Respondent had been waiting for a response from Petitioner's counsel to Respondent's letter to Petitioner, [Exhibit A], in which he asked Petitioner's counsel and the Court if the subpoena responses could be coordinated and organized between the parties directly as they were so cumbersome and exceeded or tested email limits, in some cases in sending and in others in receiving. Only after review by the two parties, can Respondent send or resend missing items, or otherwise explain whether or not certain items could still be secured from the banks, such as the 2017 bank statements, more recently requested of Respondent, even though the failed business transaction took place in August 2018.

10. However, there has no favorable response from the Petitioner [nor from the Court to support this request], for both sides to work together to sort out the subpoena responses. Instead, Petitioner's counsel submitted the current contempt motion, now including criminal contempt, and with scathing attempts to paint Respondent as some kind of a criminal and disgrace him for his imperfect responses and using a case law comparison that involves RICO crimes and bribing a judge, etc.

11. In his papers, Petitioner's counsel relies heavily and continually on the *Chevron v. Donziger* saga law case, originating in the 1990's and continuing through today, which could not be more different on the major relevant issues and facts, and only being similar on non-relevant issues, such as both Respondents being attorneys-at-law.

12. The Donziger case concerns schemes/RICO/racketeering and bribing a judge. Steven Donziger, a lawyer, won a $9.5 billion judgment against Chevron Corp for polluting the Ecuadorian rainforest.

13. In a 2014 decision, U.S. District Judge Lewis Kaplan in Manhattan refused to enforce a $9.5 billion judgment that Donziger won in an Ecuadorian court three years earlier. Donziger had won that judgment after representing villagers in Ecuador's Lago Agrio region who blamed water and soil contamination on Texaco, later acquired by Chevron. Kaplan said in his decision that Donziger had secured that judgment after bribing the judge, ghostwriting a court opinion and environmental report, which was the final verdict, and tampering with witnesses and extortion. Chevron then sought to recoup money from Donziger. Donziger transferred an interest in his asset, that being his interest in the multi-billion dollar judgment, after he was served with subpoenas/restraining order.

14. Mr. Donziger was found guilty for six counts of criminal contempt of court for withholding evidence in a long, complex legal fight with Chevron, which claims that Mr. Donziger fabricated evidence in the 1990s to win a lawsuit he filed against the oil giant on behalf of 30,000 Indigenous people in Ecuador.

15. This case went on for decades and even if compared minimally, it is nothing even close to Respondent's case.

16. In addition to there being no schemes/RICO/racketeering and bribery [including a judge] in Respondent's case, an important legal difference of utmost relevance between the Respondent and the Donziger case is that Donziger transferred an asset after being served with a subpoena and restraining order, which would have been his interest [believed to be 6.4%] in the multi-billion judgment that he won in the Ecuadorian Court years earlier. Transfer of his interest in that asset would have clearly violated the Restraining order.

17. In the instant case, Respondent not only did not transfer any asset, but has had little or no assets to transfer during the course of this litigation. Respondent lives in a one-bedroom rental and has no car. Respondent listed his limited assets on his financial statement in 2019-2020 which was stock worth approximately $1,000 and a small piece of raw land in North Carolina, in which he has a $2,000 interest, both of which were disclosed on his financial statement submitted to Petitioner and the Court. [see Exhibit B--- the 2020 Real Estate Tax Bill from Haywood County Tax Collections in Waynesville, North Carolina].

**LIVING EXPENSES**

18. While it is true that an asset(s) cannot be purposefully hidden or transferred and would be in violation of the enforcement of a restraining notice if this were done, a party should be allowed to continue to pay their living expenses, and

still be able to keep his home and have the normal expenses he needs to maintain his life.   And in the case of when

19. In addition to a financial statement to list assets and liabilities, and various monthly expenses, Respondent also prepared details of his living expenses, as recently as the submission of October 7, 2022 along with his attachments that got cut off that evening, and Respondent is still not certain what was actually submitted in response to Petitioner's information/document subpoenas and what was cut off as the files exceeded transfer limits.  This list of living expenses was requested by Petitioner, and included Respondent's monthly rent and a statement showing the arrears.   His monthly expenses have roughly been the same for years, as he continues to maintain the same modest life style he has sustained for years.   When he travels it is not to fly high or live the high life as Petitioner wants this Court to envision, but the travel is always curtailed economically, often covered by the organizations he is working with and necessary to promote and maintain the communication and their programmatic requirements worldwide. This travel has been getting more and more difficult with age and the challenges of health, getting around commercial airports, travelling economy style, taking flights that have several stops to save money, etc., and is no doubt exhausting.

**RESPONSES TO SUBPOENAS/RESTRAINING ORDERS**

20. As to the multiple subpoenas, Respondent has always responded and sent what he could find on his computer at the time or was able to get from banks, which was limited during the COVID period, and limited by the fact that many were closed

accounts, as explained in his responses on several occasions. When the situation improved a little, Respondent succeeded in getting some additional bank statements and provided them in a timely fashion to Petitioner and the Court. He is also providing some of the updated statements from July 2022 to November for the open accounts, which respondent has in his possession or could obtain to date, as some accounts were closed during that period and statements were no longer available online. He already submitted some updated statements from July to September 2022 on October 7th, but they somehow got separated from the massive October 7th submission submitted to Petitioner's counsel and the Court[1]. In any event, Respondent is now submitting updated material, which would include through October. [see Exhibit C-- July through October 2022 statements]

21. Also, it is only recently that Respondent was asked for the 2017 bank statements, which was before the case started or the failed transaction itself. Respondent has reached out to the various banks and so far has not secured any additional statements from the closed/old accounts, but he is attaching the one account that he printed from Citibank for 2017, that he had in his possession with the other Citibank statements that he did submit in a prior submission because the 2017 was not asked for at that time as it was prior to the inception of this failed transaction, but is now being asked for and being submitted. [see Exhibit D -- 2017 Citibank statement].

---

[1] The submission for the October 7th has attachments cut off because the email content size may have been too large, and this was explained in a prior letter from Respondent to the Court.

22. Since Respondent listed pages of single incidents from various bank accounts to prejudice the Court into believing that these incidents somehow were inappropriate, including imply that somehow because Respondent has some clients with money that he should have money.  Unfortunately this was not Respondent's money to give to Benthos.   Respondent knows that whatever was done or not done, was either at the instruction of his bank for transactions or after discussions with bank officers under the circumstances, and cannot remember the details at this point well enough to present them in response to Petitioner's paper. Especially when every word will be attacked by this 5-person law team, that was even ready this past weekend, on the sabbath, in order to dissect and destroy every well-meaning submission.   What all concerned know full well is that these are not simple motion papers. With the penalties asked for by Petitioner's counsel being so severe, a proper response to this contempt motion, must involve an attorney to protect Respondent's rights, who cannot defend himself properly against this 5-person law firm.

23. Respondent has not had an office job or pay check since 1977 from a law firm and does not ever do litigation or court work for clients.   There can be no doubt that even Petitioner and this Court have recognized Respondent's lack of litigation skills, which fall short time and again to those of Petitioner's highly skilled 5-person law team, focusing on more and more ways to attack and injure Respondent and have had great success in doing so.

24. Respondent's physical and mental health at 81 have been on a dangerous downward spiral from this lawsuit. His reputation has been significantly

tarnished and destroyed. To the disadvantage of Benthos, this has constrained the efforts to assemble and closed off sources of funds for a settlement with Benthos, to which Respondent is committed. As well Respondent has had his income diminished to the point where he faces eviction at the end of December. A few emergency back payments were made to his landlord to keep him from starting an official eviction, and these few back payments were mentioned by Petitioner in his papers as being somehow irregular under a Restraining Notice, when these occasional amounts have been part of a basic living expenses where Respondent now still owes about $100,000 in rent alone [see landlord Termination notice attached as <u>Exhibit E</u>].  Respondent's life has turned upside down from this case where he never made a cent, and now has a multi-million dollar judgment against him, a disgraced reputation, causing potential sources of raising funds for Benthos to go elsewhere, making it very difficult to secure funds for Benthos as has been his efforts from the onset.

25. My simple needs also include having my one and only computer, which I pride myself on taking great care of.  I was totally devastated when it unexpectedly developed lines on its screen and then went blank and ceased to function at all that one day in early summer. I had to rush it to the Apple store in Grand Central and plead with them to rush to fix it.   Yet, Petitioner used my unfortunate calamity to berate me and suggest suspicious activity and use that as a basis to attempt to take my one and only compute.  This mention of liquid stemmed from the Apple technician who initially assessed the situation without taking it apart, and from my description of the computer blackout to him, and

his wanting the next level of tech expertise to consider that it may have been caused by liquid damage as a suggestion because Respondent told him that his screen blacked out unexpectedly. The higher tech department never did say what the real cause was. I believe they took it opened it and changed parts, but did say that the operating system was corrupted and they had to install a new one. That was what happened, unfortunate and debilitating as it was.

26. However, for Petitioner's counsel to imply that I would have done something deliberate to damage my only way of working, is just outrageous. I keep all forms of drinks and food away from my computer and the liquid damage issue never panned out when the higher level tech did his work on the computer.

27. Petitioner will NEVER be satisfied and one cannot ever comply sufficiently with their firm's relentless Subpoenas and Restraining Orders, as the facts in this case, notwithstanding the one-sided arbitration award (in which only the Petitioner's accusations were the basis for the award and the judgment based on it) do not permit a finding of any receipt or withholding of any Benthos funds or Respondent ever having had assets at the level of the amount trying to be enforced.

28. Yet Benthos' latest threats have been the worst with the most severe penalties, and with unfounded suggestions of accusations, and Respondent, with no counsel to preserve his rights and assist, has no choice than to submit this paper in whatever manner possible to make an attempt to make the Court further understand Respondent's background and continuing global humanitarian work that continues to play a part in his daily life and way of living.

-13-

29. Respondent's one source of hope to secure funds for Benthos has come about through other humanitarian contacts, specifically Mel Dussel, who has been engaged in his state in humanitarian causes for over 15 years, so these efforts could be of great benefit to Benthos in Respondent securing funds for Benthos, which has been his intention since 2018, when the failed incident occurred, and all through the COVID days, and continues to be every day, and can only hope this will be settled in the near future so all this can end.

WHEREFORE, for all of the above reasons, it is respectfully requested that this Court deny Petitioner's contempt motion in its entirety, or alternatively, allow Respondent to have a more professional legal response with the help of a pro bono attorney knowledgeable on the law of the case, and for such other and further relief as the Court deems just and proper.

Dated:  December 6, 2022

                Aaron Etra, pro se
                247 East 47th Street, #12K
                New York, New York 10017
                Telephone: (917) 856-3500
                Email:  aaron@etra.com