N2GDBENC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  BENTHOS MASTER FUND, LTD.,

4              Plaintiff,

5        v.                           20 CV 03384

6  AARON ETRA,

7              Defendant.
                                      Hearing
8  ------------------------------x
                                      New York, N.Y.
9                                     February 16, 2023
                                      3:00 p.m.
10
   Before:
11
                   HON. VALERIE E. CAPRONI,
12
                                      District Judge
13

14                     APPEARANCES

15 KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
        Attorney for Plaintiff
16 BY:  STEVEN RICHARD POPOFSKY

17 FEDERAL DEFENDERS OF NEW YORK
        Attorney for Defendant
18 BY:  AMY GALLICCHIO

19 AARON ETRA, PRO SE

20 Also Present:  Jennifer Brown

21

22

23

24

25

N2GDBENC

1          (Case called; appearances noted)

2          THE COURT:  So first up on my hit parade is what is

3     the unwaivable conflict?

4          MS. BROWN:  Your Honor, I can't go into too much

5     detail because of confidentiality, but it involves a present

6     current Federal Defender client other than Mr. Etra.

7          THE COURT:  That was taken on after Mr. Etra?

8          MS. BROWN:  Prior.

9          THE COURT:  Taken on prior?

10         MS. BROWN:  Yes.

11         THE COURT:  Okay.  And the Federal Defender did not

12    recognize that the conflict actually exists until recently?

13         MS. BROWN:  Until the day that we -- the day that Amy

14    sent the letter.

15         THE COURT:  Okay.  That client's confidential

16    information from that conflict could be adverse to Mr. Etra?

17         MS. BROWN:  I don't want to say any more, your Honor.

18         THE COURT:  Okay.  Got it.

19         Mr. Etra, has Ms. Brown and Ms. Gallicchio explained

20    what's going on here?

21         MR. ETRA:  Your Honor, they explained that there's

22    been a conflict, and that I would need new counsel.

23         THE COURT:  Correct.

24         So for the same reason that I appointed the Federal

25    Defender, I'm going to appoint a CJA attorney, but for the same

N2GDBENC

```
1   limited purpose for which the Federal Defender was appointed to

2   represent you, which is exceedingly limited.

3              The CJA attorney -- does he have anything to write on

4   or with?

5              MS. GALLICCHIO:  I can give him --

6              THE COURT:  We can give him a piece of paper.

7              MS. GALLICCHIO:  Okay.

8              THE COURT:  This is a fine federal piece of paper, Mr.

9   Etra.

10             MR. ETRA:  Thank you, your Honor.

11             THE COURT:  Any time.

12             We'll notify him separately that he's being appointed.

13             Mr. Etra, your new attorney is Harvey Fishbein.

14  That's F-i-s-h-b-e-i-n.  His email address is H, as in Harvey,

15  F, as in Fishbein, @Harvery --

16             That's got to be a typo, right, Ana?  It's got to be

17  Harvey -- @Harveyfishbein.com.

18             COURTROOM DEPUTY:  It's Harveyfishbein.com, yes.

19             THE COURT:  HF@Harveyfishbein.com.

20             THE DEPUTY CLERK:  Yes.

21             THE COURT:  H-a-r-v-e-y Fishbein.com.  212-233-9555.

22             MS. GALLICCHIO:  Your Honor, could I have one minute

23  with Mr. Etra, just briefly?

24             THE COURT:  Sure.

25             MS. GALLICCHIO:  Your Honor, obviously I can't be
```

N2GDBENC

1   making arguments on behalf of Mr. Etra, but I just had informed

2   Mr. Etra of the Court's ruling with respect to his response to

3   the forensic protocol.

4           THE COURT:  Yes.  I was going to turn to that next.

5           MS. GALLICCHIO:  Okay.  And so I would leave it to

6   Mr. Fishbein to maybe request a short amount of time as Mr.

7   Etra just learned of the Court's ruling today.

8           THE COURT:  Yes.  Okay.  So, again, with all -- as the

9   Federal Defender knows, I truly appreciate the work that you've

10  done on behalf of Mr. Etra.

11          Mr. Etra, let me review with you where I understand we

12  are right now, which is by February the 10th, so that would

13  have been last week, you were required to show cause why

14  $30,787 and $20,806.71 ought not to be added to the dollar

15  amount which you are required to pay Benthos in order to purge

16  contempt.

17          I received nothing by February the 10th.  Did you, in

18  fact, make a submission?

19          MR. ETRA:  Your Honor, since December 14th I've been

20  able to do nothing in the way of communications, including --

21          THE COURT:  So the answer is no?

22          MR. ETRA:  Yes, your Honor.

23          THE COURT:  You did not make a submission.  Here's the

24  thing.  You're at MDC.  You have paper.  You have a pen.  And

25  if you don't, you need to figure out a way to get it.

N2GDBENC

| | |
|---|---|
| 1 | MR. ETRA:  Your Honor, we're locked down most of the |
| 2 | time. |
| 3 | THE COURT:  I am aware of the issues with MDC, but |
| 4 | this was the requirement.  Did you or did you not make a |
| 5 | submission? |
| 6 | MR. ETRA:  Your Honor, I have not made a submission, |
| 7 | but as I say -- |
| 8 | THE COURT:  Okay. |
| 9 | MR. ETRA:  -- I'm not sure your Honor is fully aware |
| 10 | of the circumstances at MDC for us.  In my unit in particular, |
| 11 | we have been totally locked down most of the time.  We've been |
| 12 | unable to get any communications out most of the time.  I'm in |
| 13 | a unit with more than 120 people, which maybe -- the short |
| 14 | times that we're out, maybe one computer is working, maybe one |
| 15 | telephone that is not gang controlled is available. |
| 16 | So I've been totally incommunicado.  I've been able to |
| 17 | do nothing on either purging my contempt or on the settlement |
| 18 | that is obviously so critical to this matter, which I could do |
| 19 | had I been out and had I had the equipment to do it. |
| 20 | So my effectiveness from December 14th to now and |
| 21 | beyond is totally minimal, and I don't believe your Honor is |
| 22 | fully aware of the MDC circumstances. |
| 23 | THE COURT:  I am fully aware of the MDC circumstances. |
| 24 | Here's the thing.  Do you remember last summer when I had you |
| 25 | in Marshals' custody for a couple of hours, and then I told |

N2GDBENC

| 1 | you, Mr. Etra, it is going to be very difficult to do what you |
| 2 | are required to do if you get remanded into custody?

| 3 |     Do you remember me telling you that?

| 4 |     MR. ETRA:  I do, your Honor, but I also remember the
| 5 | efforts that I made after that to avoid being --

| 6 |     THE COURT:  We're not going down that, because what I
| 7 | know and have made findings is that you did not make a good
| 8 | faith attempt to cooperate and to comply with the orders that
| 9 | were outstanding.

| 10 |     MR. ETRA:  Your Honor, I beg to differ on that. I
| 11 | truly do, because if you look at the record of the hundreds of
| 12 | pages that were submitted after that, and I believe right up
| 13 | until the December 14th hearing, my impression of coming to
| 14 | that hearing was that the list of what hasn't been provided
| 15 | would be provided then and I would do that.

| 16 |     So my good faith has I think been honored, and this
| 17 | process of December 14th has impeded it.  It's been
| 18 | counterproductive to it.  If I were out, if I were able to use
| 19 | my equipment, I would produce and continue to produce based on
| 20 | all of these manners, but since December 14th I've been
| 21 | incarcerated.  My power of attorney, my wonderful friend who's
| 22 | only received his power of attorney well into January, and --
| 23 | so for that whole month there was nothing that I could do.

| 24 |     And to this day, yesterday we were totally locked
| 25 | down.  I was awoken at 5:00 this morning.  I didn't know about

N2GDBENC

1    this hearing, because I didn't get any communications

2    yesterday.  It's not productive to compliance or to settlement

3    to have me incarcerated.  That's the reality.

4              THE COURT:  Okay.

5              MR. ETRA:  And it's punitive because --

6              THE COURT:  It's not punitive.  It's warranted.

7              MR. ETRA:  My health has totally fallen apart.  I

8    should be in medical services today.  I'm not.  I was woken up

9    at 5:00 a.m.  I didn't know why.  And only I was told there was

10   a court date.  I was, what, you know, court date is there?

11             It's totally against your Honor's wishes for me to

12   comply to keep me incarcerated and to not let me, now that I do

13   have an attorney -- power of attorney system to comply and to

14   be in good faith -- I mean, if your Honor looks at the reality,

15   it's that the best way to achieve compliance, the best way to

16   achieve settlement is to have me functional, not dysfunctional,

17   truly.

18             THE COURT:  Okay.  We tried that, Mr. Etra.  I tried

19   that for two and a half years.  Judge Nathan tried that before

20   me, and we're not doing that anymore.  You've made your bed,

21   Mr. Etra, and you are now lying in it.

22             So let me be clear, because you did not respond by

23   February 10th, the amount of money to pay in order to purge

24   contempt has been increased by $51,647.71.

25             MR. ETRA:  Your Honor, again --

N2GDBENC

1          THE COURT:  Listen to me.

2          MR. ETRA:  Yes.

3          THE COURT:  That sum is, as every other sum in all of

4    the orders, subject to being reduced if, but only if, you can

5    demonstrate by credible, admissible evidence an inability to

6    pay, or that some portion of that sum is from exempt -- is

7    exempt from the restraining order.

8          So do you plan to argue that some of those dollar

9    amounts that are added into that sum are, in fact, exempt for

10    the restraining order?

11          MR. ETRA:  Yes, your Honor, and I --

12          THE COURT:  All right.  So I'm going to set a deadline

13    for that.  So that submission needs to be made by -- I was

14    going to say March 31st.  That would give you a month and a

15    half.

16          Do you want more time than that?

17          MR. ETRA:  If possible, your Honor, because I'd also

18    like to consult with my new counsel if I may.

19          THE COURT:  Well, let me be clear that that's not the

20    role of your new counsel.  Your new counsel is limited to

21    issues that revolve specifically about you being in jail.  This

22    has to do with how much money you have to pay to get out, which

23    is different.

24          MR. ETRA:  I understand, your Honor.

25          THE COURT:  All right.  So I'm going to give you until

N2GDBENC

```
 1    April 15th.  That is more than enough time to do it.  I think
 2    April 15 is not a weekday.
 3            THE DEPUTY CLERK:  Saturday.
 4            THE COURT:  So let's say April 17th.
 5            So any showing that you desire to make that some or
 6    all of the dollars that are rolled into this sum that you must
 7    pay in order to purge your contempt, I only want to hear
 8    whether they are exempt.  That is, that's what your submission
 9    is limited to.  That's due on April the 17th.
10            If he makes a submission on April the 17th and Benthos
11    would like to respond to it, your response will be due on May
12    the 5th.
13            If Mr. Etra wishes to reply, his reply will be due
14    May 26.
15            All right.  The next issue is the protocol for dealing
16    with your laptop.  What Ms. Gallicchio passed on to me of your
17    concern and objection and your desire for more time was that
18    you have neither the expertise -- that you don't have the
19    expertise for dealing with the question of whether the protocol
20    that they are performing is appropriate.
21            You have known that this was going to happen since
22    December 14th, so what efforts have you made since December 14
23    to get help so that you would understand something about
24    forensic examination of computers?
25            MR. ETRA:  Well, I first of course consulted with my
```

N2GDBENC

1    counsel, who said it was not their area of expertise.

2              THE COURT:  When was that?

3              MR. ETRA:  I think that was quite recently.

4              THE COURT:  Okay.  What did you do in December and

5    January?

6              MR. ETRA:  Well, I couldn't communicate with anybody

7    in most of December, and I only had my power of attorney person

8    appointed toward the end of January.

9              THE COURT:  You don't need a power of attorney to

10   discuss how you're going to deal with the privacy aspects of an

11   exam --

12             MR. ETRA:  Well, to see --

13             THE COURT:  Mr. Etra, here's the thing --

14             MR. ETRA:  I'm sorry.

15             THE COURT:  You really shouldn't interrupt me --

16             MR. ETRA:  Yes.

17             THE COURT:  -- so we have a clean record.

18             What I'm asking you about is what effort you made in

19   December and January to obtain the sort of expertise that you

20   would need to deal with the issue of -- the privacy issue

21   aspects of the forensic examination of your computer?

22             MR. ETRA:  I believe, your Honor, I didn't receive the

23   protocol until well into January.

24             THE COURT:  Yeah, but you knew it was coming?

25             MR. ETRA:  Your Honor, it's an area I know nothing

N2GDBENC

| | |
|---|---|
| 1 | about, and I know that there are rights that one has, and I |
| 2 | really believe that I'm entitled to get input on both the |
| 3 | expertise and my rights, whether it's Fourth Amendment rights |
| 4 | or other rights in respect of that.  And I couldn't do that, |
| 5 | first of all, until I saw the protocol, and then that was much |
| 6 | later.  And I only found out much later that counsel could not |
| 7 | do that, and my power of attorney, who is the only other person |
| 8 | who could act on it, since I can't contact people from where I |
| 9 | am, has been diligently working on doing everything that they |
| 10 | have been doing. |
| 11 | So I really respectfully request that he –– now |
| 12 | primarily him, since, again, I'm completely unable to seek |
| 13 | myself directly to find the input on what my rights are and |
| 14 | what the expertise –– I'm not trying to avoid it.  I realize I |
| 15 | need to face up to it, and I will do it, but I really would |
| 16 | like to know what my rights are and how it applies to the |
| 17 | protocol at present. |
| 18 | So it's not avoidance, it's not stalling, not anything |
| 19 | other than trying to at least have the basis to say what my |
| 20 | rights are and how it applies in the way of expertise or the |
| 21 | protocol.  So I respectfully request, your Honor, just to let |
| 22 | that process continue for a reasonable amount of time.  And I |
| 23 | also hoped that I would be able to do that in person. |
| 24 | THE COURT:  Well, that's an unreasonable hope given |
| 25 | that you have done essentially nothing to comply with the |

N2GDBENC

1   order.  You have an entire order that lays out soup to nuts

2   what you have to do in order to purge contempt, and you have

3   not done it.

4           MR. ETRA:  I respectfully say that that's not the

5   case, that, as I say, I can't do anything from where I am.  And

6   my power of attorney only came into force and in person well

7   into January.  And that has been submitted to counsel, and

8   counsel I believe has submitted to the Court.

9           I'm totally out of touch.  I only get things by mail,

10  which usually is a week to ten days after an event.  So to ask

11  me to personally do any of this incarcerated is totally

12  unrealistic.  And, as I say, I think, with all due respect, I

13  think it's a genuine good faith effort on behalf of my power of

14  attorney to do all that he has done.  So to say nothing has

15  been submitted, I don't think that's correct.

16          I mean, maybe counsel would want to speak on that.

17          THE COURT:  No.  That's not their role.

18          Mr. Etra, let me stress to you that is not their role

19  and that's not going to be Mr. Fishbein's role.  If you want an

20  attorney to represent you, you need to hire an attorney.  I

21  recommended that to you six months ago, eight months ago, ten

22  months ago.  You still haven't done it.

23          Having seen your bank account and having seen how much

24  money you spend on things, it is not a problem of a lack of

25  funds.  It is a problem of your unwillingness to hire counsel.

N2GDBENC

1        That's not their role.  That's all I'm saying.  On top

2  of that, they have a conflict, and so it's really not their

3  role.

4        Here's the thing, tell me what you have done since

5  January 26 to obtain expert help with regard to the protocol

6  for examining your laptop.

7        MR. ETRA:  I've asked my power of attorney to pursue

8  that.

9        THE COURT:  When did you make that request?

10        MR. ETRA:  As soon as I --

11        THE COURT:  When?

12        MR. ETRA:  Your Honor, again, I don't recollect dates.

13  I didn't even know that today was the 16th.  We have no way of

14  knowing the dates where I am.  But I think in respect of what

15  has been submitted to your Honor --

16        THE COURT:  Mr. Etra, really --

17        MR. ETRA:  It is relevant to incarceration I believe,

18  and maybe counsel can speak to that, because she has made on --

19        THE COURT:  She's conflicted.  She cannot represent

20  you on that.

21        MR. ETRA:  But she has represented me in the point of

22  -- and she has filed with your Honor the work of my power of

23  attorney.

24        THE COURT:  I ruled on that.  I considered everything

25  that I was given.  There is an order, and it lays out what you

N2GDBENC

1    haven't done.  It lays out the fact that this -- you have yet

2    another bank account that had never been disclosed into which

3    your Social Security was now being deposited.

4            So it's not that I haven't reviewed the material that

5    has been submitted to me.  It is that I don't believe that that

6    rises to the level that is required for you to purge your

7    contempt.  I am appreciative, and I am sure you are

8    appreciative that you have someone who's willing to help you

9    who is not in jail.  Again, had you done what you should have

10   done last summer, we wouldn't be here, so this is truly the

11   chickens have come home to roost, Mr. Etra.

12           MR. ETRA:  Your Honor, I believe you're perhaps not

13   giving me full credit for what was done since the summer.  And

14   in respect to my bank accounts, I think the facts are there's

15   always been a very minimal amount in my bank account.  So

16   having money for counsel has not been an option to me.

17           THE COURT:  Okay.  I'm not going to argue about that.

18   It's your decision whether you want to hire counsel or not.

19   You have not told me anything you want to have done, or you

20   haven't been specific when you have made efforts to get an

21   expert to help you with the forensic examination of your

22   devices.

23           You have had the protocol, because I confirmed it with

24   the MDC that you got the protocol on January 26.  So my

25   question is, when did you take action?

N2GDBENC

1              Let me just be clear, Mr. Etra.  Here's how I view it.

2      This is yet more delay.  This is the Etra play book of not

3      doing anything, asking for more time, asking for more time.

4              You have all of that.  I gave you over the summer.  I

5      gave it to you in the fall.  You're out of extensions.  You

6      have to act diligently, or you can sit in jail.

7              I personally would like to get you out, but I'm not

8      going to get you out until you purge the contempt, because I

9      don't trust that you will do what you need to do if you're out

10     of jail.

11             MR. ETRA:  Your Honor, I think -- I acted as I

12     indicated to you, asking my power of attorney to work on that

13     diligently as far as --

14             THE COURT:  I have asked several times, and still one

15     more time --

16             MR. ETRA:  I don't know --

17             THE COURT:  -- when did you make that request?

18             MR. ETRA:  I don't remember the date.  I could

19     probably get that from my power of attorney as to when that was

20     and get that input to your Honor.  Again --

21             THE COURT:  Your power of attorney is here.  When did

22     he make that request?

23             Could you state your name for the record?

24             MR. SKLAR:  He mentioned it to me approximately two

25     weeks ago.

N2GDBENC

1          THE COURT:  What's your name?

2          MR. ETRA:  Mark Sklar, S-k-l-a-r.

3          THE COURT:  Okay.  Thank you, Mr. Sklar.

4          MR. ETRA:  Your Honor, I restate my both intention and

5     action on that intention to comply, and to give the best

6     possible compliance I can, which of course would be if I were

7     out and able to assist my power of attorney to do that.  But,

8     again, he's a person who has his life, and I think I'm very

9     grateful to him for devoting himself to do this.

10          He knew nothing of my work.  He knew nothing of my

11    activities, and he took on this responsibility.  I would

12    appreciate it if you'd give him an additional amount of time to

13    complete the search for the right input on that, because he's

14    committed to do it and will do it.  And in fairness to him, if

15    not to me, to give that opportunity.

16          And again, I'm not ducking.  Obviously, my stay in

17    incarceration is painful.  I should today be in medical

18    services.

19          THE COURT:  You mentioned that.

20          MR. ETRA:  Yes.  But it's the reality.  I wish it was

21    otherwise, but to me, if you look at the time between

22    December 14th and now, it's a very nonproductive time for me,

23    because you cannot be productive -- had I been out, I would

24    have been productive.  I think if you look at what was

25    submitted in the summer and so on -- these old bank accounts

N2GDBENC

1    are very, very difficult to unearth, and banks are very

2    difficult to get them out of the deep, dark storage they live

3    in.

4           I have no reason not to comply.

5           THE COURT:  Mr. Etra, you didn't produce current bank

6    accounts.  You didn't produce current credit accounts.  Don't

7    tell me about digging things out of archives.  You didn't

8    produce what was available to you.  You haven't produced a

9    single email.  I mean, it goes on and on and on.

10          I'm not going to repeat what's in a 30-page order,

11   going through chapter and verse what you haven't done, so --

12          MR. POPOFSKY:  Your Honor, can I be heard on the

13   forensics for a moment?  Nothing else.

14          THE COURT:  Yes.  All I'm interested in is really

15   setting a date for --

16          MR. POPOFSKY:  Yes, I understand.

17          I have no problem giving Mr. Etra the time he says he

18   needs, notwithstanding everything else.  However, I would ask

19   that he be required to make at least a modest contribution

20   towards the cost of our forensic expert.

21          It's not fair to --

22          THE COURT:  Good luck with that.

23          MR. POPOFSKY:  Well, he has funds, your Honor.  He

24   spent money from jail, and he has Social Security money.  We

25   can't seize it, but there's nothing that says he can't spend

N2GDBENC

1  it.

2          It's not fair to Benthos, who's been incurring

3  attorneys fees.  That's another issue, that after all of this

4  they have to lay money out of pocket to pay a forensic expert

5  given everything he has concealed and withheld and claimed,

6  out -- evidence to have lost.  It seems to me totally

7  reasonable for your Honor to forebear the cost of that, at

8  least a modest amount, a few thousand dollars.

9          THE COURT:  How much does your forensic expert say

10  it's going to cost?  They probably don't know until they look

11  at it.

12          MR. POPOFSKY:  They don't know, but I have an estimate

13  of $7,500, which my client paid $1,500 already.  Mr. Etra

14  should have to pay the balance in order to get an extension and

15  in order to be able to impose a forensic protocol.  It's

16  reasonable.  I'm not trying to overreach.  If he wants to do --

17  given the history, I do not need to recount --

18          THE COURT:  You definitely do not.  Here's the thing.

19  Here's what I'm going to do.

20          Mr. Etra, I'm going to give you two additional weeks.

21  Again, let me be clear.  I said this before.  I'm giving you

22  two additional weeks, not two additional weeks and a day, not

23  two additional weeks and a half day.  Two additional weeks.  So

24  it was due on the 17th.  It is now going to be due on March the

25  3rd.

N2GDBENC

1          Let me be clear what has to be in there.  Any

2     objection to the protocol and an explanation why I should not

3     grant Benthos' request to order you to pay half of the cost of

4     the forensic examination, that's what's due on March the 3rd.

5     No extensions will be granted.  You might want to write that

6     down.

7          Any response from Benthos to the objections to the

8     protocol will be due March the 10th.

9          Okay.  Mr. Etra, do you have any questions?

10          MR. ETRA:  Your Honor, my basic question is to you,

11     recognizing, as you say, that you do -- the reality of

12     incarceration, and the inability of the person incarcerated,

13     whether it's me or anybody else, however you want to

14     characterize that person, to really participate fully in

15     compliance, and I must add fully participate in settlement,

16     which is I think on the reality front the only solution to this

17     matter, but it really is true the spirit that you would like,

18     that is, to comply, to keep me incarcerated rather than to let

19     me out and let me do my full participation in compliance and

20     settlement -- the fact that I'm, on a personal level, 82 years

21     old and facing situations that I do there, and with all due

22     respect, I think unless you spend some time in one of the

23     general population units, as I've had to, notwithstanding the

24     fact that that facility didn't want me to be put in there and

25     notwithstanding the fact that the medical and every other

N2GDBENC

1    department there cannot understand why I'm still being kept

2    there, at the risk to not only me but to the other inmates,

3    because if I do contract something, and I'm battling at the

4    moment with several things, it can spread throughout that

5    facility.  So they want me out.

6            In addition to --

7            THE COURT:  Well, you know what, Mr. Etra, the prison

8    does not determine who is in its facilities.

9            MR. ETRA:  I'm not saying that they should or do, your

10   Honor.  I'm just saying I'm requesting you to recognize the

11   reality that my incarceration doesn't help the process that

12   we're talking about, and it certainly doesn't help the person

13   who is trying to do this, both compliance and settlement.  It

14   doesn't help.

15           THE COURT:  Mr. Etra, this is exactly what you have

16   been telling me since I've had this case, that you're trying,

17   you're trying, you're trying, that you're acting in good faith,

18   and you're not, and you haven't.  And I warned you.  I told you

19   what was going to happen.  You still didn't comply.  You did

20   not -- did not exercise good faith.  You did not produce

21   materials that were easily and readily available to you.  And

22   you still haven't.

23           So, you know, I, again -- Mr. Sklar must be a very

24   good friend of yours, but the reality is you have to produce

25   the materials that have been demanded.  You have to pay the

N2GDBENC

1   money or demonstrate to me that it is -- that it is not subject

2   to the restraining order.  So when you do that, and you produce

3   all of the stuff that is low hanging fruit, then come back to

4   me and tell me about what good faith you're going to put in

5   when you get out of jail.  But until then, jail is coercive.

6   It continues to be coercive.  I know it's coercive, because

7   you've now got a friend who's helping you do the things that

8   you should have done a year ago.  You should have done it two

9   years ago.  So it's having an impact.

10           MR. ETRA:  Your Honor, I think --

11           THE COURT:  Do you have any other questions for me?

12           MR. ETRA:  Well, again, my question really is, beyond

13   what I've been unable to do, and my power of attorney is doing,

14   I understand that that's something that needs to be done.  And

15   I'm committed to do that.  Again, I think what you call low

16   hanging fruit, what I guess -- you're not recognizing what has

17   been submitted already by my power of attorney.

18           THE COURT:  Has anything been produced that I haven't

19   seen?

20           MR. POPOFSKY:  Well, we received some limited

21   statements a couple of days ago.  I didn't send those.

22           THE COURT:  You imaged --

23           MR. POPOFSKY:  I didn't send that to your Honor, but

24   we don't even have the Piermont statements starting in July.

25           THE COURT:  Right.  So these are bank statements that

N2GDBENC

1     are less than a year old.

2           MR. ETRA:  Your Honor, I think whether my power of

3     attorney wants to comment on his efforts to show that what he

4     has been doing, which doesn't I think get full credit in this

5     discussion -- I don't know whether you want to ask him.

6           THE COURT:  I don't.  I mean, he in the most recent

7     submission from Ms. Gallicchio laid it out.  He had a

8     chronology of going to Piermont, not being able to get in, and

9     now he's gotten in and spoken to a banker, et cetera, et

10     cetera, et cetera.  But here's the thing, you could have done

11     this a long time ago.  So I'm sorry that it's taking him a

12     while.  I don't know what the availability is online of those

13     statements.  Many, many, many of these records are readily

14     available online.  Maybe not Piermont Bank.  I don't know.  You

15     may have picked the one bank for that period, that was your

16     bank to pick, a bank that's not particularly tech savvy.

17           MR. ETRA:  Your Honor, both in my submissions and his

18     efforts we have tried to do what is possible with each -- each

19     bank is its own universe.

20           THE COURT:  I know.

21           MR. ETRA:  And none of them are particularly

22     interested in closed accounts, which most of them are,

23     including Piermont.  There's no account left open at Piermont.

24     So online is not possible.  These are not low hanging fruit,

25     nor any ones we've been talking about are low hanging fruit.

N2GDBENC

1          THE COURT:  Have you produced all your American

2    Express bills yet?

3          MR. ETRA:  The which?

4          THE COURT:  American Express.

5          MR. ETRA:  I believe whatever my power of attorney has

6    been able to find on American Express has been provided and

7    will be provided.

8          MR. POPOFSKY:  Can I just address Piermont for one

9    moment, your Honor?

10          THE COURT:  Sure.

11          MR. POPOFSKY:  The Piermont account, which was

12    withheld and concealed for so long, revealed that's where Mr.

13    Etra was running most of his life out of, and that's where,

14    after he concealed it, we discovered the dozen European trips.

15    Then we're in court in mid July and all of this came out.  And

16    we only had statements through June 30th.  You ordered him to

17    produce statements after that.

18          If he's closed the Piermont account, he closed it in

19    order to conceal what that must have showed after June 30th.

20    And, your Honor, I have one limited application.

21          THE COURT:  It's certainly unusual timing.

22          MR. ETRA:  It was not closed by me.  It was closed by

23    the bank.  So making these allegations --

24          THE COURT:  Hold it.  You moved the account into which

25    your Social Security was deposited from Piermont to another

N2GDBENC

```
 1    account?

 2              MR. ETRA:  When Piermont closed the account.

 3              THE COURT:  In September?

 4              MR. ETRA:  When Piermont closed the account.  It

 5    wasn't --

 6              MR. POPOFSKY:  If Piermont closed the account, where

 7    was he running his life out of?

 8              I have one application, your Honor, limited --

 9              THE COURT:  Yes.

10              MR. POPOFSKY:  Can we get the identification of the

11    child, the question asked two years ago in the information

12    request?

13              THE COURT:  Oh, yes.  You were -- there was an

14    information request to you from Benthos a long time ago to

15    identify any children, and you responded "none" or didn't

16    respond?

17              MR. ETRA:  I didn't --

18              MR. POPOFSKY:  He ducked it, your Honor.

19              And Judge Nathan ordered him to respond, and he ducked

20    it.

21              THE COURT:  Do you have any children?

22              MR. ETRA:  Your Honor, I have children.

23              My reaction to Mr. Popofsky's based on the fact that

24    he found a nephew of mine and harassed that nephew of mine to

25    claim that -- some connection to this transaction.  This is the
```

N2GDBENC

1    action of Mr. Popofsky.  So disclosing any family connections,

2    results in Mr. Popofsky harassing that person.

3                MR. POPOFSKY:  There was no harassment.

4                MR. ETRA:  There was harassment.  That person had to

5    get an attorney to get Mr. Popofsky off that poor young fellow,

6    who had nothing to do with this matter.

7                THE COURT:  So by March 3rd, in that same submission

8    that's due on March 3rd, respond to the information request to

9    identify any -- the request is for children specifically,

10   correct?

11               MR. POPOFSKY:  The request was for immediate family

12   members.

13               THE COURT:  Immediate --

14               MR. POPOFSKY:  He didn't disclose the wife.  We found

15   out eventually.

16               THE COURT:  I got you the wife a long time ago.

17               MR. POPOFSKY:  Agreed.

18               THE COURT:  So to identify any children that you have.

19               You want their names and addresses?

20               MR. POPOFSKY:  Name, address, telephone number, email

21   address.

22               THE COURT:  So name and contact information.  That's

23   due on March 3rd as well.

24               Do you have any questions for me, Mr. Etra?

25               MR. ETRA:  No, your Honor.  Thank you.

N2GDBENC

```
 1                THE COURT:  Thank you.

 2                MS. GALLICCHIO:  Your Honor, I have a question.  I do

 3      have Mr. Etra's electronic devices and passport.

 4                THE COURT:  What I want you to do is hold onto them.

 5      The orders entered appointing Mr. Fishbein will also order him

 6      to take custody of the phone as well.

 7                MS. GALLICCHIO:  Yes.

 8                THE COURT:  Phones, laptop, and passport.

 9                MS. GALLICCHIO:  Yes.

10                THE COURT:  So all of that will go to Mr. Fishbein.

11                MS. GALLICCHIO:  Okay.

12                THE COURT:  And you can make arrangements for that.

13                MS. GALLICCHIO:  Yes.

14                THE COURT:  Anything further, Mr. Popofsky?

15                MR. POPOFSKY:  No, your Honor.

16                THE COURT:  Anything further from the Federal

17      Defender?

18                MS. GALLICCHIO:  No, your Honor.

19                THE COURT:  Anything further from the power of

20      attorney?

21                MR. SKLAR:  No, your Honor.

22                THE COURT:  Okay.  Thank you.

23                (Adjourned)

24

25
```