

Steven R. Popofsky<br>
E-Mail: spopofsky@kkwc.com<br>
Direct Dial: 212.880.9882

April 27, 2023

<u>VIA ECF</u>

Hon. Valerie Caproni
United States District Court
40 Foley Square, Room 240
New York, NY 10007

      Re:    <u>Benthos v. Etra, 20-CV-3384</u>

Dear Judge Caproni:

    I write on behalf of Benthos with regard to four related matters.

    *First*, since my letter of March 15th, Mr. Etra has provided none of the documents or information specified in Your Honor's order at Dkt. 260.  I should have informed you of that on April 15th and apologize for the oversight.

    *Second*, we recently learned of a lawsuit filed against Mr. Etra regarding an Escrow Agreement he entered into in October 2022.  The complaint in that action, filed by the law firm Akin Gump Strauss Hauer & Field, with its relevant exhibits, are annexed hereto as Exhibit 1.  It appears that Mr. Etra received a $1 million escrow deposit on or about October 20, 2022 in connection with a transaction whereby the plaintiff Berkley Equity was to purchase "nitrile examination gloves" from Mr. Etra's co-defendant Motherland Medical Ltd.  Berkley alleges that "Things went sideways as soon [as] Berkley made the deposit"; that Motherland failed to provide the number of gloves contractually required and failed to explain the shortfall; that Berkley "repeatedly asked Etra and Motherland for its deposit back, . . . [but] Defendants refused . . . [and that] Etra and Motherland manufactured a pretext to retain Berkley's money."  Berkley also alleges that "Etra has used [a] contrived 'dispute' as a purported basis to withhold Berkley's entire deposit . . . [y]et despite numerous requests by Berkley, Etra has refused to explain the actual dispute [and] has also refused multiple requests to provide a full accounting of Berkley's deposit. . . . Further, Etra has not explained why he is still holding the entire $1,000,000 deposit . . . and has thus far refused to give a penny back. . . . Even worse, Etra has tried to use his position as the escrow agent of the deposit as leverage against Berkley and in favor of Motherland . . ., threaten[ing] to charge fees from Berkley's deposit to pressure Berkley to come to an agreement with Motherland, despite Motherland's inability to deliver the promised one million boxes of gloves."

    All of that, of course, is strikingly reminiscent of the events that led to Benthos's $5 million judgment against Mr. Etra.  Be that as it may, the relevance to our current situation is as follows:



Hon. Valerie Caproni
April 27, 2023
Page 2

- Mr. Etra did not disclose the Escrow Agreement between Motherland and Berkley that is attached to the Berkley complaint as Exhibit B.

- Mr. Etra has not produced any bank statement reflecting the $1 million escrow deposit into an unknown account of his (the account information having been redacted in the publicly-filed Exhibit A to the Berkley complaint).

- Mr. Etra has not provided any description or accounting of the services in connection with the Motherland/Berkley transaction and its $1 million escrow deposit, nor has he provided copies of any documentation or communications in that regard.[1]

- My March 15, 2023 letter (Dkt. 299) previously reported "[a] mysterious $10,000 "Online Transfer From Aaron Etra Ref #1b0Gplq5Fn Business Checking Motherland/Berkley."  That transfer is now somewhat less mysterious, although we still do not know where it came from or where the million dollar escrow deposit is.

- That March 15, 2023 letter also had reported that last fall, prior to his incarceration, Mr. Etra had made "[f]our payments to American Express totaling $12,610."  To be more specific, two of those payments, totaling $8,000, were made during the two-day period following the $1 million escrow deposit and the "mysterious" $10,000 transfer referred to above.  One can reasonably infer that the $10,000 was Mr. Etra's fee for participating in this latest of his escrow scams, and that he then sent $8,000 of that money to American Express instead of to his judgment creditor Benthos as required by law.  This never ends.

*Third*, Benthos wishes to register its objection to the Court providing Mr. Etra with a free lawyer in connection with his belated and unsupportable attempt to shield his financial records from judgment enforcement through assertion of the Fifth Amendment.  While we understand that the Court may view the issue as arguably falling within the ambit of its appointment of counsel to protect Mr. Etra's rights in connection with his incarceration, we vigorously dispute that he should be deemed indigent so as to be so entitled.  Benthos has been incurring, and paying, legal fees as a result of Mr. Etra's defiance of multiple court orders and subpoenas, while

---

[1] The second part of the second paragraph on page 2 of my March 15, 2023 letter (Dkt. 299) summarizes various sections of the Court's Order at Dkt. 260 with which Mr. Etra has not even tried to comply – independent of any issues he may claim to have in obtaining documents from financial institutions while incarcerated – and his failure to provide documents and information in connection with the Motherland/Berkley transaction and escrow payment is a further example of his continued willful non-compliance.



Hon. Valerie Caproni
April 27, 2023
Page 3

he was flying off to Europe on a dozen occasions and otherwise living what the Court characterized as a lifestyle of "lavish spending habits," all in flagrant and knowing violation of the restraining notice.[2]  The Court previously expressed grave skepticism about the veracity of Mr. Etra's claim of entitlement to free counsel (Dkt. 258 at 2, in addition to orally at one or more hearings), and given his utter (and repeatedly adjudicated) lack of credibility, he no longer should be given the benefit of the doubt on that score.

*Fourth*, Benthos respectfully renews its request that the Court consider instituting criminal contempt proceedings against Mr. Etra.

Benthos thanks the Court, as always, for its continued attention.  The undersigned would also like to make the Court aware that I will be out of town participating in a trial through the end of next week, and that my colleague Ms. Benintendi is currently on vacation, so our ability to address any communications from Mr. Etra or his representatives, and from the Court, will be limited over the next ten days (although of course we will comply with any legal obligations, or seek extensions to do so, as appropriate).

                                                Respectfully yours,

                                                Steven R. Popofsky

Enclosures

cc:   Daniel McGuinness (via ECF and e-mail)
       Aaron Etra (per Dkt. 263 n.2)
       Marc Sklar (via e-mail)

---

[2] It bears repeating yet again that Mr. Etra is a Columbia Law School graduate (sad to say).  He has known throughout exactly what he was doing, and that it was in violation of the law in multiple respects.  He did not care.  He still does not care.