# Exhibit 1

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 2 of 32

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BERKLEY EQUITY, LTD.,

                           Plaintiff,

             - against -

AARON ETRA and MOTHERLAND MEDICAL LTD,

                      Defendants.

Index No.

**<u>SUMMONS</u>**

Plaintiff designates New York County as the place of trial.

Venue is proper pursuant to CPLR § 503(a).

TO THE ABOVE-NAMED DEFENDANTS:

      YOU ARE HEREBY SUMMONED and required to serve upon plaintiff's attorney, at the address stated below, an answer to the attached complaint within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons was not personally delivered to you within the State of New York; upon your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

      This Court has jurisdiction over this action pursuant to CPLR §§ 301 and 302. Venue is proper in this Court pursuant to CPLR § 503(a), as at least one of the defendants resides in New York County and plaintiff has designated New York County as the place of trial.

Dated: New York, New York
       November 17, 2022

                      Respectfully submitted,

                      AKIN GUMP STRAUSS HAUER & FELD LLP

                      By:  /s/ Uri A. Itkin
                         Uri A. Itkin
                         Kristen W. Chin

Case 1:20-cv-03384-VEC-KHP   Document 329-1   Filed 04/27/23   Page 3 of 32

One Bryant Park
New York, NY 10036
Tel: 212-872-1027

*Attorneys for Berkley Equity, Ltd.*


To:    The Law Offices of Aaron Etra, Esq.
455 Park Avenue, 9th Floor
New York, NY 10022

Motherland Medical Ltd
71-75 Shelton Street,
Covent Garden WC2H 9JQ, United Kingdom

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BERKLEY EQUITY, LTD.,

                                    Plaintiff,

                    - against -

AARON ETRA and MOTHERLAND MEDICAL LTD,

                                    Defendants.

Index No.

**COMPLAINT**

        Plaintiff Berkley Equity, Ltd. ("Berkley"), for its complaint against defendants Aaron Etra,

Esq. ("Etra") and Motherland Medical LTD ("Motherland"), alleges as follows:

## PRELIMINARY STATEMENT

        1.        This is an action to recover Berkley's $1,000,000 deposit that is being wrongfully

held by defendants.  The deposit is held in escrow by Etra, as the escrow agent, pursuant to an

escrow agreement executed by all three parties.  Etra, who is also Motherland's lawyer, is

exploiting his role as escrow agent for Motherland's benefit.

        2.        Berkley is entitled to get its full deposit back under the escrow agreement.  It has

repeatedly requested the return of the deposit, but defendants, acting in concert, have refused to

return it.  Berkley is compelled to bring this action to enforce its plain and unambiguous

contractual rights.

        3.        On or about October 4, 2022, Berkley agreed to buy one million (1,000,000)

boxes of nitrile examination gloves from Motherland for $28,750,000.  On or about October 19,

2022, the parties signed the escrow agreement where Berkley agreed to put down a deposit of

$1,000,000 to inspect the gloves.  Upon a satisfactory inspection, Berkley agreed to fund the

balance of the purchase price.  If, however, the inspection was not satisfactory to Berkley, it was

entitled to a full refund of its entire deposit.

4.    Etra, who represented Motherland in the transaction, serves as the escrow agent under the escrow agreement.

5.    Berkley transferred $1,000,000 to Etra's escrow account on or about October 20, 2022.  Upon inspection, however, Berkley discovered that Motherland only had ten thousand (10,000) boxes of gloves, not the one million boxes as promised.  Berkley repeatedly asked for a refund of its entire deposit, including by a demand notice and other written communications through counsel.  Defendants have refused to return any of Berkley's deposit.

6.    After further communications with defendants, Berkley has realized that Motherland never had the promised one million boxes of gloves to begin with.  Rather, Motherland induced Berkley into signing the escrow agreement and making the deposit with the intention of forcing Berkley into buying the 10,000 boxes of gloves and extorting Berkley's $1,000,000 deposit.

7.    Accordingly, Berkley seeks an order against defendants awarding it the entire amount of the deposit, as well as its costs, expenses, and attorneys' fees.

## PARTIES

8.    Plaintiff Berkley is the buyer under the escrow agreement.  Berkley is a company located at 3rd Floor Market Square Building, P.O. Box 3175 Road Town, Tortola, BVI.

9.    Defendant Etra is a lawyer admitted to practice in the State of New York.  He is the escrow agent under the escrow agreement.  Etra's law office is located at 445 Park Avenue, 9th Floor, New York, New York 10017.

10.    Defendant Motherland is the seller under the escrow agreement.  Motherland is a company located at 71-75 Shelton Street, Covent Garden WC2H 9JQ, United Kingdom.  Upon information and belief, Motherland is controlled by Ms. Dee Miller.

2

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to CPLR §§ 301 and 302 because the parties explicitly submitted to jurisdiction of New York State courts in Section 1.8 of the escrow agreement.

12.     Venue is proper in this Court pursuant to CPLR § 503(a) because the parties submitted to jurisdiction in New York county, and at least one of the defendants resides in New York County.

## FACTS

13.     This case concerns a deposit made by Berkley to Etra pursuant to an escrow agreement in connection with a potential sale by Motherland.

14.     On or about October 4, 2022, Berkley agreed to purchase from Motherland one million (1,000,000) boxes of nitrile examination gloves for $28,750,000. The parties agreed on a purchase price of $28.75 per box.

15.     The parties also agreed on the transaction procedure: first, they would sign an irrevocable corporate purchase order ("ICPO"); then, they would sign a commercial invoice ("CI"); then, Motherland would provide product documents to confirm authenticity of the gloves, including bills of lading ("BOL"), airway bills ("AWB"), and SGS reports ("SGS," and collectively with the BOL and AWB, the "Product Documents"); then, Berkley would deposit $1,000,000 in escrow with Etra; then, Berkley would inspect the gloves; finally, it would wire the balance and take title to the gloves.

16.     The parties entered into the ICPO on or about October 4, 2022. In relevant part, the ICPO described the terms and procedures of the sale:

| COMMODITY: | Cranberry Evolve® Nitrile Powder-Free Examination Gloves 300-Ct box |
|---|---|

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 7 of 32

| APPEARANCE: | Medical Examination, CE, FDA 510(K), ISO, EN, GMP, QUATEST3 |
|---|---|
| SHIPPING TERMS of SALE: | 100% physically on the ground in USA cleared US Customs ("OTG") |
| | |
| CONTRACT QUANTITY: | One Million (1,000,000) boxes with Rolls & Extensions |
| DURATION OF CONTRACT: | Duration of fulfillment |
| | |
| TARGET PRICE PER BOX: | Up to Twenty-eight dollars and 75 cents ($28.75 USD) NET |
| DESTINATION TERMS: | Exact details to be given in SPA |
| PROCEDURES: | Execute SOP; Buyer's KYC/AML - DD; Buyer's ICPO; Buyer/Seller call; Seller issues CI..signed by buyer…seller provides SGS/BOL/inspection report to buyer; buyer deposits $1M into seller attorney escrow Aaron Etra, Esq…Buyer Inspects; Wire Balance; Buyer takes Title & warehouse leases |
| INSPECTION: | SGS Inspection Report and Buyer's physical inspection |

17.     As contemplated, the parties entered into the CI (commercial invoice) on or about

October 5, 2022.  A true and correct copy of the CI is filed herewith as Exhibit A.

18.     The CI further confirmed the terms and procedures of the sale.  It reiterated that

the transaction was for one million boxes, at $28.75 per box, for a total price of $28,750,000.00.

The CI also reiterated the procedure agreed by the parties, including the $1,000,000 deposit and

inspection before full payment:

    Procedure As Follows:
    ICPO
    CI
    SGS/BOL/AWB
    FUND ESCROW $1,000,000.00 deposit
    INSPECT
    PAY

4

Case 1:20-cv-03384-VEC-KHP   Document 329-1   Filed 04/27/23   Page 8 of 32

19.     On or about October 19, 2022, Berkley entered into the escrow agreement with Motherland and Etra, as escrow agent.  A true and correct copy of the escrow agreement is filed herewith as Exhibit B.

20.     The escrow agreement, which is governed by New York law, once again confirms the terms and procedure of the sale.  It reiterates that the transaction was for one million boxes of gloves at $28.75 per box.  In the event of any conflict between the escrow agreement and the CI, Section 1.9(a) of the escrow agreement provides that the terms of the CI shall govern.

21.     In Section 1.9(b), which is at issue here, the escrow agreement describes the procedure for the return of Berkley's deposit.  Specifically, it provides that if Berkley does not accept the Product Documents as described, it can request and receive all of its money back — "the full refund of the entire money deposited into escrow" — without any deductions for escrow fees or bank fees:

> The Buyer will inspect the Product Documents for validity, and if the Buyer does not accept the Product Documents to be as described, then the Buyer will request a refund (if applicable), in writing, and a refund will be returned to the Buyer. If a refund shall occur, then the Buyer will have the full refund of the entire money deposited into escrow and returned to the Buyer's account by wire within two (2) Business Days. The amount returned shall not have Escrow Agent's fees and bank fees deducted and will not include any interest accrued. The escrow fees and bank fees will be the responsibility of the Seller at this stage and the Escrow Agent shall be entitled to retain the Escrow Funds until these fees and charges are paid to the Escrow Agent.

22.     On or about October 19, the same day the parties entered into the escrow agreement, Motherland sent Berkley the Product Documents.

23.     On or about October 20, 2022, Berkley transferred its $1,000,000 deposit to Etra.

24.     Things went sideways as soon Berkley made the deposit.  The escrow agreement required Motherland to provide the address of a physical location of the warehouse where the gloves were stored within one hour of Etra confirming receipt of the $1,000,000 deposit so

5

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 9 of 32

Berkley could inspect them.  Motherland failed to do so.  It did not provide the address for five days, until October 27, 2022.

25.     When it finally provided the address, Motherland directed Berkley to a warehouse located at 2393 Bateman Avenue, Irwindale, CA 91010.

26.     On or about October 29, 2022, Berkley sent an inspector to inspect the warehouse. The inspector discovered that there were only 10,000 boxes of the gloves at the warehouse.

27.     A second inspection done two days later confirmed these findings.  Berkley had lined up an end buyer, who sent its own inspector on or about October 31, 2022.  That inspector also confirmed that there were only 10,000 boxes of gloves at the warehouse.

28.     Berkley promptly raised the shortfall with Motherland.  After Motherland failed to explain it, Berkley repeatedly asked Etra and Motherland for its deposit back, including by letter dated November 2, 2022.  Defendants refused.

29.     Instead, Etra and Motherland manufactured a pretext to retain Berkley's money.

30.     Motherland sent an email to Etra on or about November 4, 2022, which Etra forwarded to Berkley.  A true and correct copy of the email, as received by Berkley, is attached hereto as Exhibit C.

31.     In its email, Motherland conceded that there were only 10,000 boxes at the location it sent.  But rather than agreeing to return Berkley's deposit, Motherland tried to rewrite the parties' deal.  It claimed, without any basis whatsoever, that Berkley "was meant to fund the 10 000 boxes [sic] and move on to the next warehouse as per our agreement."

32.     There is no support for this claim in any of the documents the parties entered, including the ICPO, the CI, or the escrow agreement.  Nonetheless, Etra has used the contrived "dispute" as a purported basis to withhold Berkley's entire deposit.

6

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 10 of 32

33.     Yet, despite numerous requests by Berkley, Etra has refused to explain the actual dispute.  Etra has also refused multiple requests to provide a full accounting of Berkley's deposit.

34.     Further, Etra has not explained why he is still holding the entire $1,000,000 deposit.  Even accepting Motherland's claim at face value, Motherland would be entitled to payment for only 10,000 boxes.  At $28.75 a box, that adds up to only $287,500 — far less than $1,000,000.  Yet, Etra has insisted on retaining the entire $1,000,000 deposit and has thus far refused to give a penny back.

35.     Even worse, Etra has tried to use his position as the escrow agent of the deposit as leverage against Berkley and in favor of Motherland, Etra's client.  Even though the escrow agreement obligates Etra to return Berkley's entire deposit without deducting fees, Etra has threatened to charge fees from Berkley's deposit to pressure Berkley to come to an agreement with Motherland, despite Motherland's inability to deliver the promised one million boxes of gloves.

36.     After repeated, unsuccessful attempts to get its money back, Berkley had no choice but to file this case.

### FIRST CAUSE OF ACTION

**Declaratory Judgment**

**(Against Etra and Motherland)**

37.     Berkley repeats all of the foregoing allegations as if fully set forth herein.

38.     Etra is required to return Berkley's entire $1,000,000 deposit upon Berkley's request under Section 1.9(b) of the parties' escrow agreement.

39.     Etra has refused to return Berkley's deposit despite Berkley's repeated written requests.

7

Case 1:20-cv-03384-VEC-KHP   Document 329-1   Filed 04/27/23   Page 11 of 32

40.     Etra is therefore in breach of the escrow agreement.

41.     By reason of the foregoing, Berkley has suffered damages of at least $1,000,000,

and there is a live and justiciable controversy concerning defendants' obligations under the

escrow agreement with respect to returning Berkley's deposit.

## SECOND CAUSE OF ACTION

### Breach of Contract

### (Against Etra and Motherland)

42.     Berkley repeats all of the foregoing allegations as if fully set forth herein.

43.     Etra is required to return Berkley's entire $1,000,000 deposit under Section 1.9(b)

of the parties' escrow agreement.

44.     Etra has refused to return Berkley's deposit despite Berkley's repeated written

requests.

45.     Etra and Motherland are therefore in breach of the escrow agreement.

46.     By reason of the foregoing, Berkley has suffered damages of at least $1,000,000.

## THIRD CAUSE OF ACTION

### Fraudulent Inducement

### (Against Motherland)

47.     Berkley repeats all of the foregoing allegations as if fully set forth herein.

48.     Motherland represented to Berkley that Motherland had one million boxes of

nitrile examination gloves to sell to Berkley.

49.     Motherland made this representation in order to induce Berkley to enter into the

escrow agreement and wire $1,000,000 to Motherland's lawyer, Etra.

8

50. As Berkley discovered upon physical inspection and as Motherland conceded in its November 4, 2022 email to Etra, its representation was false, as Motherland had only 10,000 boxes of gloves to sell to Berkley.

51. By reason of the foregoing, Berkley has suffered damages of at least $1,000,000, plus costs, expenses, and attorneys' fees that Berkley has had to incur in order to get its deposit back.

## PRAYER FOR RELIEF

WHEREFORE, Berkley respectfully requests that the Court enter against defendants, awarding Berkley:

1. $1,000,000;

2. Costs, expenses, attorneys' fees, pre- and post-judgment interest;

3. Punitive damages; and

4. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 17, 2022

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: /s/ Uri A. Itkin
      Uri A. Itkin
      Kristen W. Chin

One Bryant Park
New York, NY 10036
Tel: (212) 872-1027

*Attorneys for Berkley Equity, Ltd.*

9

Exhibit A

## Invoice

**MOTHERLAND MEDICAL**

**Motherland Medical ltd**

75 Shelton Street

London

WC2H

| BILL TO | | Invoice # | 110/1121501 |
| --- | --- | --- | --- |
| Berkley Equity LTD | | Date | 5 Oct 2022 |
| | | Due date | 6 Oct 2022 |

3rd floor. Yamraj Building, Market Square, PO Box
3175, Road Town, Tortola, BVI

PO Box 73, Lyford Cay N7776 Nassau, Bahamas

| Item | Quantity | Price | Amount |
| --- | --- | --- | --- |
| Cranberry Evolve Nitrile Powder-Free Examination Gloves 300-Ct box | 1000000 | $28.75 | $28,750,000.00 |

| | | |
| --- | --- | --- |
| **Payment Instruction** | Subtotal | $28,750,000.00 |
| Aaron Etra, ESQ | | |
| Bank Wire Transfer made to : █████████████████ | | |
| ████████████████ | Total | $28,750,000.00 |
| Account number: ██████████ Routing : ██████████ CHIPS/ABA: | | |
| ████ SWIFT CODE: ████████ | | |

| Amount Due | |
| --- | --- |
| | $28,750,000.00 |

### Note

Procedure As Follows:

ICPO

CI

SGS/BOL/AWB

FUND ESCROW $1,000,000.00 deposit

INSPECT

PAY

### Terms of Service

All PPE sales are final, by paying this invoice you agree to the terms and conditions of the above.

By signing this document, the customer agrees to the services and conditions described in this document.

**Berkley Equity LTD**

DocuSigned by:

651159C128904FD...

(     /     /     )

Exhibit B

DocuSign Envelope ID: Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 17 of 32

# THIS ESCROW AGREEMENT

**dated as of October 19, 2022 (the "Escrow Agreement") and is made by and among**

**Motherland Medical Ltd**

**("Seller")**

**AND**

**Berkley Equity LTD**

**("Buyer")**

**AND**

**The Law Offices of  Aaron Etra, Esq.**


**Third Party Escrow Agent ("Escrow**

**Agent" for:**

**Transaction Code: /BKL/MTL/20220923/20/1**

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 18 of 32

**WHEREAS** Motherland Medical LTD, a company located at located at 71-75 Shelton Street, Covent Garden WC2H 9JQ the United Kingdom represented by Ms. Dee Miller (the "Seller") and Berkley Equity Ltd., a company located at 3rd Floor Market Square Building, P.O. Box 3175 Road Town, Tortola, BVI (the "Buyer"), have entered into a Commercial Invoice ("CI") dated as of 5th October 2022 for the procurement of One Million (1,000,000) Boxes of Cranberry Brand Nitrile Gloves ("Product(s)") at USD 28.75 per box ("Purchase Price"); and

**WHEREAS**, as per the terms of the Commercial Invoice (CI), dated October 5th, 2022, the Buyer agrees to pay the Seller an amount equal to the sum of USD 1,000,000 ( One Million US Dollars)as deposit in order to attend a physical inspection of the Product ("Initial Deposit"); and

**WHEREAS**, on signing this Escrow Agreement, the Buyer will be provided with verifiable Product documents including the SGS inspection report and Bill of Lading ("BOL") as noted in the CI between the Buyer and the Seller (collectively the "Product Documents"); and

**WHEREAS**, On verifying the Product Documents to Buyer's satisfaction, Buyer shall pay the Initial Deposit to the Escrow Account (as defined herein) of the Escrow Agent; and

WHEREAS, within one (1) hour of the Escrow Agent confirming receipt of the Initial Deposit, Buyer shall be provided with a physical inspection of the Product; and

WHEREAS, on Buyer completing its physical inspection of the Product and confirming that the Product conforms with the specifications provided herein and in the CI, the Buyer shall wire within one (1) business day the sum (comprising the "Escrow Funds") totaling USD 27,750,000 (Twenty Eight Million Seven Hundred and Fifty Thousand US Dollars) to the Escrow Account. The Buyer will instruct the Escrow Agent that the funds deposited in the Escrow Account for a designated tranche of the Product are released to the Seller, and that those funds shall be at the free disposal of the Seller. Such instructions shall be given in writing by email in the form for Notices contained in this Escrow Agreement. To avoid any confusion, no funds shall be wired to Seller until the ownership and legal title of the relevant amount of Product is transferred to Buyer.

**NOW, THEREFORE, IN CONSIDERATION** of the mutual covenants in this Escrow Agreement and of other consideration, the receipt, and sufficiency of which are acknowledged, the Parties agree as follows:

## ARTICLE 1 – DEFINITIONS

### 1.1    Definitions, Terms & Conditions

In this Escrow Agreement, in addition to the terms and conditions defined and

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 19 of 32

provided for above, which shall be deemed to be part of this Escrow Agreement, the following terms and conditions shall have the following respective meanings:

"**Applicable Date**": October 19, 2022

"**Business Day**": means any day other than a Saturday, a Sunday or a day which is a statutory or civic holiday in the United States of America.

"**Court**": The United States District Court for the District of New York.

"**Governmental Authority**": means any government, regulatory authority, governmental department, agency, agent, commission, bureau, official, minister, Crown corporation, court, body, board, tribunal or dispute settlement panel or other law, rule or regulation-making organization or entity: (a) having or purporting to have jurisdiction on behalf of any nation, province, territory, state or other geographic or political subdivision thereof; or (b) exercising, or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power.

"**Notice**": means any notice, approval, demand, direction, consent, designation, request, document, instrument, Acceptance, or other communication required or permitted to be given under this EA delivered pursuant to Article 5.1 hereof.

"**Parties**": means, collectively, the Buyer, the Seller, and the Escrow Agent, and **"Party"** means any of these as the context requires.

"**Person**": shall be broadly interpreted and includes an individual, body corporate, partnership, trust, association, unincorporated organization, Crown, any Governmental Authority or any other entity recognized by law.

"**Buyer Acceptance**": means a written document attesting the acceptance of the Goods by Buyer signing off on acceptance of the goods, Buyer will arrange pick up at the designated location.

**1.2**    **Entire Agreement**

This Escrow Agreement and all documents contemplated by or delivered under or in connection with this Escrow Agreement, constitute the entire agreement between the Parties with respect to the subject matter hereof, and they supersede all prior agreements, negotiations, discussions, undertakings, representations, warranties and understandings, whether written or oral, with respect to the subject matter hereof and thereof, including any memoranda or statements prepared by any of the Parties or their respective counsel concerning the proposed terms and conditions of this Escrow Agreement.

**1.3**    **Headings and Table of Contents**

The division of this Escrow Agreement into articles and sections and the insertion of headings are for convenience of reference only and are not to affect the construction or interpretation of this Escrow Agreement.

**1.4**    **References**

Unless otherwise specified, references in this Escrow Agreement to Articles and Sections

Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 20 of 32

are to articles of and sections of this Escrow Agreement.

**1.5    Number and Gender; extended meanings**

Unless otherwise specified, words importing the singular include the plural and vice versa and words importing gender include all genders. The term "including" shall be interpreted to mean "including without limitation".

**1.6    Time of Day**

Unless otherwise specified, references to time of day or date mean the local time or date in the Eastern Time Zone, United States of America.

**1.7    Business Day**

If under this Escrow Agreement any payment or calculation is to be made or any other action is to be taken, on or as of a day which is not a Business Day, that payment or calculation is to be made, and that other action is to be taken, as applicable, on or as of the next day that is a Business Day. Any extension of time will be included for the purposes of computation of interest.

**1.8    Governing Law**

This Escrow Agreement and each of the documents contemplated by or delivered under or in connection with this Escrow Agreement, are to be governed by and are to be construed and interpreted in accordance with, the laws of the State of New York, without giving effect to its conflict of laws, and the Parties hereby submit to the non-exclusive jurisdiction of New York , NY and the competent state and federal courts located in New York County, New York.

**1.9    Conflicts & Inspection**

(a)If there is a conflict between any provision of this Escrow Agreement and any other document contemplated by or delivered under or in connection with this Escrow Agreement, the terms of the CI shall govern.

(b)The Buyer will inspect the Product Documents for validity, and if the Buyer does not accept the Product Documents to be as described, then the Buyer will request a refund (if applicable), in writing, and a refund will be returned to the Buyer. If a refund shall occur, then the Buyer will have the full refund of the entire money deposited into escrow and returned to the Buyer's account by wire within two (2)Business Days. The amount returned shall not have Escrow Agent's fees and bank fees deducted and will not include any interest accrued. The escrow fees and bank fees will be the responsibility of the Seller at this stage and the Escrow Agent shall be entitled to retain the Escrow Funds until these fees and charges are paid to the Escrow Agent.

**1.10    Time of Essence**

For every provision of this Escrow Agreement, time is of the essence.

**1.11    Severability**

If any provision of this Escrow Agreement is or becomes illegal, invalid or unenforceable in any jurisdiction, the illegality, invalidity or unenforceability of that provision shall not affect the legality, validity or enforceability of the remaining provisions of this Escrow Agreement.

## ARTICLE 2 - THE ESCROW RELATIONSHIP

Case 1:20-cv-03384-VEC-KHP   Document 329-1   Filed 04/27/23   Page 21 of 32

## 2.1 Escrow

The Buyer shall deposit the Escrow Funds comprising the Purchase Price  with The Law Offices of Aaron Etra as Escrow Agent to the account indicated in **Schedule A** (below), and the Escrow Agent shall acknowledge receipt of the said  Escrow Funds. The Escrow Funds shall be held in a non-interest- bearing IOLTA account of the Escrow Agent. The Escrow Funds shall be distributed by the Escrow Agent in accordance with the terms and conditions of this Escrow Agreement, and as designated by the CI.

## 2.2     Rights and Obligations of the Parties

The Escrow Agent shall be entitled to such rights and shall perform such duties of the escrow agent as set forth herein in accordance with the terms and conditions of this Escrow Agreement. As among themselves, the Parties shall be entitled to their respective rights and shall perform their respective duties and obligations as set forth herein and in the CI, as the case may be, all in accordance with the terms hereof and thereof.

## ARTICLE 3 - RELEASE OF ESCROW FUNDS

## 3.1     Release of Escrow Funds

On completion of the steps provided for herein for the inspection of a tranche of the Product to the Buyer, the Buyer shall instruct the Escrow Agent that the funds deposited in the Escrow Account for a designated tranche of the Product are released to the Seller and that those funds shall be at the free disposal of the Seller. Notwithstanding the foregoing, no funds shall be released to Seller until legal title and ownership of the relevant amount of the Product has been transferred to Buyer. Moreover, no funds shall be released unless authorized through Buyer's written instructions notified to Escrow Agent. Such instructions shall be given in writing by email in the form for Notices  contained in Article 5.1 of this Escrow Agreement.

## ARTICLE 4 - ESCROW AGENTS

## 4.1     Exculpatory Provisions; Indemnification

(a)  The Escrow Agent shall be obligated only for the performance of such duties as are specifically set forth herein and as are set forth in any additional written escrow instructions, which the Escrow Agent may receive after the date of this Escrow Agreement, and which are agreed to by all of the Parties. The Escrow Agent retains the right not to act, and will not be liable for refusing to act, unless it has received clear and reasonable documentation which complies with the terms of this Escrow Agreement. The Escrow Agent shall not be liable in any respect on account of the  identity, authority or rights of the Parties executing or delivering or purporting to execute or deliver this Escrow Agreement or any documents or papers deposited or called for hereunder, so long as Escrow Agent acts with reasonable diligence in

Case 1:20-cv-03384-VEC-KHP   Document 329-1   Filed 04/27/23   Page 22 of 32

relation to confirming such identity and/or authority.

(b) The Escrow Agent is hereby expressly authorized to comply with and obey orders, judgments, or decrees of any court of law, notwithstanding any notices, warnings or other communications from any Party or any other Person to the contrary. In case the Escrow Agent obeys or complies with any such order, judgment or decree, the Escrow Agent shall not be liable to any of the Parties or to any other Person by reason of such compliance, notwithstanding any such order, judgment or decree being subsequently reversed, modified, annulled, set aside, vacated or found to have been entered without jurisdiction.

(c) The Escrow Agent shall not be responsible for the genuineness, validity, enforceability, or sufficiency of title to any Escrow Funds or other property delivered to it hereunder.

(d) In performing any duties under or in connection with this Escrow Agreement, the Escrow Agent shall not be liable to any party for damages, losses, or expenses, except for gross negligence or willful misconduct on the part of the Escrow Agent. The Escrow Agent will exercise reasonable diligence in determining and verifying the authority of any Person acting or purporting to act on behalf of any Party. In no event shall the Escrow Agent be liable for special, consequential, or indirect damages which damages are not caused by the neglect or willful conduct of Escrow Agent. The Escrow Agent shall incur no liability with respect to the delivery or non-delivery of any Acceptances whether delivered by hand, mail or any other means.

(e) If any controversy arises between the Parties, or with any other Person, concerning the subject matter of this Agreement, its terms or conditions, the Escrow Agent will not be required to determine the controversy or to take any action regarding it. The Escrow Agent may hold all documents and the Escrow Funds and the Interest and may wait for settlement of any such controversy by final appropriate legal proceedings or other means. If an action is commenced in respect of which the Escrow Agent shall interplead all funds received pursuant to the Civil Practice Law and Rules or the United States Federal Rules of Civil Procedure, or if an action is commenced by the Escrow Agent to interplead, the Escrow Agent may deposit the Escrow Funds and the Interest into a Court of competent jurisdiction.

(f) The Buyer and the Seller hereby agree jointly and severally to indemnify and hold the Escrow Agent, its partners, officers, representatives and employees, harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, counsel fees, and disbursements that may be imposed on the Escrow Agent or incurred by the Escrow Agent in connection with the performance of its duties under or in connection with this Escrow Agreement, including any litigation arising from or in connection with this Escrow Agreement or involving its subject matter, provided that any such litigation or investigation does not arise out of the Escrow Agent's own gross negligence or willful misconduct. This indemnity shall survive the termination of this Escrow Agreement and the removal or resignation of the Escrow Agent.

Case 1:20-cv-03384-VEC-KHP Document 329-1 Filed 04/27/23 Page 23 of 32

(g) On the Escrow Agent's delivery of all the Escrow Funds in accordance with the provisions of this Escrow Agreement, the Escrow Agent shall be automatically and immediately released from all obligations under this Escrow Agreement to any Party and to any other Person with respect to any part of the Escrow Funds or income thereon previously held in escrow under this Escrow Agreement.

(h) The Escrow Agent may employ such counsel, representatives and advisers as it may reasonably require for the purpose of discharging its duties under this Escrow Agreement, and the Escrow Agent may act, and shall be protected in acting in good faith, on the opinion or advice of or information obtained from any such counsel or adviser in relation to any matter arising in the administration of this Escrow Agreement.

## 4.2 Amendment

The duties of the Escrow Agent may be altered, amended, modified or revoked only by a written agreement signed by all the Parties.

If the Escrow Agent reasonably requires other or further action or the creation and delivery of any instruments or other items in connection with the execution of its duties hereunder, the Parties shall fully cooperate and join in taking such action or furnishing such instruments or other items without delay and at their expense after so requested by thew Escrow Agent

## 4.3 Resignation and Removal of the Escrow Agent

The Escrow Agent may resign at any time upon giving at least five (5) days' writtennotice to the Parties; provided, however, that no such resignation shall become effective until the appointment of a successor escrow agent which shall be accomplished as follows: The Parties shall use their best efforts to mutually agree on a successor escrow agent within 10 days after receiving such notice. If the Parties fail to agree upon a successor escrow agent within such time, the Escrow Agent shall have the right to appoint a successor escrow agent authorized to do business in the State of New York. The successor escrow agent shall execute and deliver an instrument accepting such appointment and shall, without further acts, be vested with all the estates, properties, rights, powers, and duties of the predecessor escrow agent as if originally named as escrow agent. The Escrow Agent shall be discharged from any further duties and liability under this Escrow Agreement. Notwithstanding the foregoing, if no successor escrow agent can be identified or if no other Person will agree to be the escrow agent, then the Escrow Agent may deposit the Escrow Funds and the Interest, if any, into Court.

## 4.4 Escrow Fees and Expenses

The Escrow Agent shall charge a designated fee (**See Schedule B**) for the services it provides in connection with this Escrow Agreement (including in the initial establishment of the escrow arrangement, in reviewing and settling the form of this Escrow Agreement and in releasing Escrow Funds), all of which shall be borne equally by the Seller and the Buyer.

**ARTICLE 5 - GENERAL TERMS**

Case 1:20-cv-03384-VEC-KHP Document 329-1 Filed 04/27/23 Page 24 of 32

## 5.1 Notice

Any notice, demand or other communication (in this Section, a "Notice") required or permitted to be given or made hereunder shall be in writing and shall be sufficiently given or made if sent as follows: (a) by email to the addresses designated in this Escrow Agreement or other address subsequently provided by any Party pursuant hereto and effective on confirmed dispatch during normal business hours; or (b) via hard copy by certified or Priority USPS mail, commercial courier, or other customary means of delivery that allows for mail tracking, to the address designated in this Escrow Agreement or as subsequently notied pursuant hereto, effective on confirmed receipt..

## 5.2 Currency

The currency to be used in this Escrow Agreement is United States Dollars (USD).

## 5.3 Amendment

This Escrow Agreement may only be amended or supplemented by a written agreement signed by all the Parties.

## 5.4 Successors and Assigns

This Escrow Agreement shall inure to the benefit of and be binding upon the Parties and their respective heirs, successors and assigns.

## 5.5 Counterparts

This Escrow Agreement may be executed in any number of counterparts. Each executed counterpart shall be deemed to be an original. All executed counterparts taken together shall constitute one and the same Escrow Agreement.

### ACCEPTANCE AND SIGNATURES ON THE NEXT PAGE

**TO WITNESS THEIR AGREEMENT**, the Parties, by their duly authorized representatives, have executed this Agreement as of the date firstset out above.

**SELLER: Motherland Medical LTD**
In capacity as: CEO Name:
Dee Miller



Signature: ⎧ DocuSigned by:
⎨ Dee Miller
⎩ 7B35270C74D44FD...
Dee Miller

Address: 71 Shelton Street
London Wc2h

Email Address: ……………………………………………..

**BUYER:**    **Berkley Equity Ltd**

In capacity as: CEO

Name

Signature:

Address:    Lyford cay, nassau

Email:    Bahamas

…………………………………………………..

**ESCROW AGENT: The Law Offices of Aaron Etra**

**Escrow Agent for both Parties, the Seller and Buyer.**

By: **Mr. Aaron Etra, Esq.**

Its Authorized Representative

Address: 445 Park Avenue- 9th Floor, New York, NY 10017

Email: █████████████

DocuSign Envelope ID: 441AD48E-3BB5-4ED1-ABE7-1B9BFE53CCE8
Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 26 of 32

# Schedule A

| PAYMASTER – Bank Account Information & Coordinates | |
|---|---|
| **PAYMASTER NAME AND ADDRESS** | Aaron Etra, Esq.<br>445 Park Avenue – 9th floor, New York, NY 10022 |
| **PASSPORT NUMBER** | ███████ |
| **PAYMASTER TELEPHONE/FAX** | ███████ |
| **PAYMASTER E-MAIL ADDRESS** | ███████ |
| **BANK NAME** | ███████ |
| **BANK ADDRESS** | ███████ |
| **BANK OFFICER** | ███ |
| **BANK OFFICER TELEPHONE** | ███████ |
| **BANK OFFICER E-MAIL ADDRESS** | ███████ |
| **FOR DOMESTIC WIRES** | Wire Routing Transit Code Number (RTN/ABA) |
| | ████ |
| **FOR INTERNATIONAL WIRES** | SWIFT/BIC code ███████ |
| **ACCOUNT NAME** | ███████ |
| **ACCOUNT HOLDER'S ADDRESS** | 445 Park Avenue- 9th floor, New York, NY 10022 |
| **ACCOUNT HOLDER'S TELEPHONE** | ███████ |
| **ACCOUNT NUMBER** | █████ |
| **CURRENCY** | **TO BE PAID IN USD PER INSTRUCTIONS** |
| **SPECIAL INSTRUCTIONS** | **WIRE TRANSFERS:** All Wire transfers shall incorporate below Text Message and pre-advised via email to ███████ , with a copy of Bank Wire Transfer Slip e-mailed to ███████ for legal verification and required documentation pursuant to mandated Patriot Act/Banking Regulations with one (1) original contract copy to be filed with Participating Banks. |
| **REQUIRED INSTRUCTIONS** | **All transfers of FUNDS shall state:**<br><br>1) **ORIGIN:** "FUNDS ARE CLEAN & CLEAR, OF NON-CRIMINAL ORIGIN AND ARE PAYABLE IN CASH IMMEDIATELY UPON RECEIPT BY BENEFICIARY'S BANK."<br><br>2) **CONTRACTUALLY EARNED FEES:** "THE CLEAN, CLEARED, LIEN FREE & UNENCUMBERED FUNDS, EARNED AS FINANCIAL CONSULTING FEES ON COMMERCIAL ENTERPRISES OF NON-CRIMINAL AND NON- TERRORIST ORIGINS, KNOWN BY BUYER AND/OR SELLER."<br><br>3) **PAYMENT GUARANTEE:** "FUNDS ARE CONTRACTUALLY GUARANTEED FOR PAYMENT THROUGH THE MASTER PAYMASTER ACCOUNT, AS LISTED HEREIN."<br><br>4) **SETTLEMENT:** "FUNDS ARE FOR SAME DAY PAYMENT, FULL CREDIT AND IMMEDIATE SETTLEMENT WITHOUT INTERRUPTION, DELAYS, OR PROTEST." |
| | |

DocuSign Envelope ID: 9EE4AACA-D944-4AB7-8E14-FBAB669A9451
Case 1:20-cv-03384-VEC-KHP    Document 329-1    Filed 04/27/23    Page 27 of 32

## Schedule B

**Administration/Escrow Fees: Fees to be charged per tranche as per the table below**

| Transaction Size | Escrow Agent Fee (Basis Points) |
|---|---|
| $0.00 to $100,000,000.00- 1% (100) | |
| $100,000,001.00 to $1,000,000,000.00-0.50% (50) | |
| $1,000,000,001.00 to $2,500,000,000.00-0.25% (25) | |
| $2,500,000,001.00 to $5,000,000,000.00-0.10% (10) | |

Exhibit C

| | |
|---|---|
| **From:** | Yoni Anijar ███████████ |
| **Sent:** | Friday, November 4, 2022 8:16 AM |
| **To:** | Itkin, Uri |
| **Subject:** | Fwd: Craberries |

**\*\*EXTERNAL Email\*\***

See below.

---------- Forwarded message ---------
From: **Aaron Etra** ██████████
Date: Fri, Nov 4, 2022 at 8:12 AM
Subject: Craberries
To: Yoni Anijar ████████████
CC: Dee Mate ███████████████

Dear Yoni,


Per the exchange below, this is notice to Berkley that there is in fact a dispute between the Parties to the Escrow Agreement and pursuant to the relevant Commercial Invoice.


As I advised, Motherland, I recommend that the Parties themselves resolve this dispute at the earliest opportunity in order to minimize its impact.


At this point already, I will need to take some of the steps provided for in the Escrow Agreement, including utilizing and reserving funds for my fees and expenses and those of counsel and other advisors and services providers I would appoint to assist me.


Best,


Aaron

Aaron Etra, Esq.

445 Park Avenue- 9th Floor

New York, NY 10022

Tel. ███████████

Email: ███████████

Skype: ██████

**From:** Aaron Etra ███████████
**Date:** Friday, November 4, 2022 at 7:54 AM
**To:** ████████████████████████
**Subject:** Re: Berkley Group

Dear Dee,

Well-received and noted.

There is clearly a dispute between the Parties to the Escrow Agreement and I will need to take the measures provided for in that agreement.

I will notify the Berkley Group of the existence of a dispute by sending them this exchange of corresponsence as the first step and advise them, as I am now advising you, of the desirability of the Parties reaching agreement on resolving it in a timely fashion and my need to utilize funds in my possession to cover my fees in dealing with this matter to date and gong forward as well as for engaging counsel and such other action as I deem necessary under these circumstances and as the matter develops.

Best,

Aaron

Aaron Etra, Esq., as Escrow Agent

2

445 Park Avenue- 9th Floor

New York, NY 10022

Tel. ███████████

Email: ███████████

Skype: ███████

**From:** ████████████████████████████████
**Date:** Friday, November 4, 2022 at 7:07 AM
**To:** Aaron Etra ████████████████
**Subject:** Berkley Group

Dear Aaron,

Thank you for the email you sent, I have reviewed and my position is as follows:

We provided the client ( BERKLEY) SGS/ BOL and attestation of goods to which thy were meant to fund Escrow thereafter as per the signed CI- which they funded the deposit for the goods.

Motherland made it very clear that the Buyer would inspect a small LOT in order to guarantee that the end buyer had funds to transact and could move their monies within reasonable timeframes.- Motherland provided the inspection Address and The client inspected the goods. THE GOODS ARE REAL AND MEET ALL STANDARDS.

The client was meant to fund the 10 000 boxes and move on to the next warehouse as per our agreement.- WHICH THE CLIENT DID NOT FOLLOW THE PROCEDURE AND AGREEMENT.

This agreement was to inspect and pay per warehouse and complete the contract with aggregated goods.

A this point the client has failed to fund for a small amount of goods as per the agreement.

3

The EA clearly states that in the event that this were to occur the CI will govern the dispute.

I have attached a screenshot of the paragraph that endorses this.

Kind Regards

Dee

As a gesture of goodwill we

Sent with Proton Mail secure email.

--

**Yoni Anijar| Principal**
**Tel:** ███████████
**Email:** ███████████████

E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you