UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X--------------------------------------------------X

BENTHOS MASTER FUND, LTD.,　　　　　　Index No. 20-cv-3384(VEC)

　　　　　Petitioner,

　　-v.-

AARON ETRA,

　　　　　Respondent.
X--------------------------------------------------X

 

## AARON ETRA'S MEMORANDUM
## IN SUPPORT OF HIS ASSERTION OF HIS FIFTH
## AMENDMENT PRIVILEGE

 

LAW OFFICES OF
DANIEL A. MCGUINNESS, PC
353 Lexington Avenue, Suite 900
New York, NY 10016
(646) 496-3057
Attorney for Respondent

Table of Contents

I. Introduction ........................................................................................................... 1

II. Factual Background ............................................................................................. 2

III. Discussion ............................................................................................................ 8

    A. The Fifth Amendment Protects Testimonial Aspects of
Document Production. ................................................................................. 8

    B. The Threat of Criminal Prosecution is Readily Apparent
in this Matter. .............................................................................................. 9

    C. Disclosure of the Ordered Documents would Constitute
Testimonial Acts that Should be Afforded Fifth
Amendment Protection. ............................................................................. 11

IV. Conclusion .......................................................................................................... 14

I.   **Introduction**

Respondent is an 82-year-old former corporate attorney in poor health who is presently incarcerated in the Metropolitan Detention Center for failure to comply with subpoenas and Court Orders related to an investment fund's persistent efforts to collect on a judgment. The judgment stems from a financial transaction gone awry that Petitioner has consistently characterized as a fraud perpetrated by Respondent. Approximately a year ago, Magistrate Judge Kathleen Parker recommended the matter to the United States Attorney's Office for the Southern District of New York for prosecution of Respondent in the underlying transaction. Shortly thereafter, Respondent requested counsel be assigned to represent him, but the recommendation to refer for prosecution was not adopted.

Upon his remand to custody on December 14, 2022, Respondent, who had been proceeding *pro se* and no litigation experience, was assigned counsel to represent him. At a subsequent appearance, Respondent asserted his Fifth Amendment right against self-incrimination as to the required production of documents. The Court Ordered Respondent to file a brief in support of that position. Dkt. 307. Respondent respectfully submits this memorandum in support of his assertion of his Fifth Amendment Privilege.

## II. Factual Background

This case stems from an attempted financial transaction in which Respondent was to act as escrow agent. On August 4, 2018, Petitioner agreed to pay $5 million for a quantity of Bitcoin and wired that amount to Respondent's escrow account. Pet., Dkt. 1, ¶5. Petitioner did not receive the Bitcoin as expected and also did not receive information from Respondent as to the status of their funds. *Id.* ¶¶ 6-7.

Petitioner commenced an action in this district for preliminary injunction to, *inter alia*, compel information from Respondent. *See Benthos Master Fund, Ltd. v. Etra, Ltd.*, 18-cv-9401(DAB). On October 17, 2018, a temporary restraining order was entered directing Respondent to provide information related to his escrow account. *Id.*, Dkt. 4 at 2. On November 20, 2018, Petitioner moved for Respondent to be held in contempt for his failure to produce records. *Id.*, Dkt. 15. The Court ultimately denied the motion for contempt against Respondent on June 20, 2019, finding, "Etra has made reasonable efforts to comply with" the Court's orders. *Id.*, Dkt. 30 at 9.

Petitioner then proceeded to arbitration against Respondent pursuant to the escrow agreement. Pet., Dkt. 1 at ¶¶8-9. Respondent did not participate in the arbitration. *Id.* ¶¶ 13-4. On April 9, 2020, the Arbitrator found that Respondent had improperly released the funds and had violated his contractual and fiduciary duties

2

as escrow agent in a matter that was willfully or grossly negligent. Final Award, Dkt. 1-1, ¶¶62, 65. Petitioner was awarded $5,254,561.12, plus a 4% post award interest. *Id.* at IX.

On April 30, 2020, Petitioner commenced the instant action against Respondent to confirm the arbitration award. Pet., Dkt 1. Respondent submitted opposition *pro se,* arguing, *inter alia,* that he was not liable for the loss, lacked the resources to properly defend himself, and that exculpatory evidence was turned over in the form of hundreds of pages of documents and a seven-hour deposition. Aug. 5, 2020 Letter from Etra, Dkt. 13. The Honorable Allison J. Nathan confirmed the award, entered judgment on August 12, 2020, and allowed for enforcement proceedings to proceed two weeks later. *See* Dkt. 14 at 1, 5; 21.

On August 27, 2020, Petitioner served Respondent with an information subpoena (the "First Information Supboena") and a subpoena *duces tecum* (the "First Document Subpoena"). *See* First Doc. Subp., Dkt. 24-1; First Inf. Subp., 24-2. The First Doc. Subp. directed production of fifty-nine categories of documents spanning a two-year period. Dkt. 24-1 at 4-14. The categories were vastly broad. *See e.g. Id.* at 8 (No. 30: "All communications with any person regarding Your financial status…"), 10 (No. 53: "All other documents relating to Your liabilities and expenses"). The First Inf. Subp. similarly directed answers to thirty-six wide-ranging categories of information. *See* First Inf. Subp., Dkt. 24-2 at 6-12.

3

Respondent, still acting *pro se,* sought extensions for the time in order to respond in emails dated September 2, 2020 and September 15, 2020, citing the Jewish Holidays and his health condition. *See* Dkt. 24-3; 24-5. In response to the subpoenas, Respondent produced to the Petitioner a financial statement and disclosed ownership of a property, stocks and credit card debt via email. *See* Popofsky Decl., Dkt. 24 at ¶¶ 10, 11. On October 12, 2020, Petitioner filed a voluminous motion to compel, consisting of a twelve-page declaration with twenty-two exhibits and a supporting memorandum of law. Dkt. 24, 25. In response, Respondent stated, *inter alia,* that he was 79-years-old, suffering from high-blood pressure, and the still-rampant COVID-19 pandemic hindered his ability to produce documents; that he was proceeding *pro se* due to his inability to pay for an attorney; and that he wished to engage in settlement discussions. Dkt. 28 at ¶¶2, 7, 18. The Court declined to hold Respondent in contempt and recommended the parties to consider mediation for a settlement amount. Dkt. 33.

Following additional discovery disputes, the parties reached a settlement agreement on April 1, 2021. Dkt 95 at 6. When the initial payment did not arrive by May 2021, Petitioner reengaged with its pursuit for documents and information, including issuing a second document subpoena (the "Second Document Subpoena"). Dkt. 66; 68-1. Over the course of several months, Petitioner argued that the Respondent failed to adequately comply with subpoenas and sought sanctions. *See* Dkt. 70; 74.

On September 30, 2021, Petitioner, again, moved for Respondent to be held in contempt. Dkt. 81. On October 31, 2021, Respondent filed a sworn Declaration in Opposition, stating, *inter alia*, that he had complied to the subpoenas and court orders as best he could. Dkt. 84. On March 14, 2021, Judge Parker issued a report and recommendation recommending sanctions and referral of the "underlying alleged scam of the $5 Million…" Dkt. 95 at 34. On March 22, 2021, and March 29, 2021, Respondent wrote to the Court protesting his innocence, stating that he had no litigation experience, reciting various medical ailments and requesting an appointment of a public defender. Dkt. 97; 100 at 2.

On May 16, 2022, this Court adopted the recommendation in part, denying criminal referral or incarceration, but ordering compliance with the subpoenas and issuing a $50 per-day fine until compliance. Dkt. 108. Following requests for extensions, the Court ordered a hearing on July 1, 2022, and advised that Respondent would be incarcerated if he did not appear with the ordered documents. Dkt. 116. Respondent failed to appear on that date, so the Court increased the fine to $1,000 per-day until compliance and ordered Respondent to appear on July 13, 2022.

On July 10, 2022, Respondent filed two documents comprising 130 pages. Dkt. 127, 129. He stated that the documents represented full compliance, other than privileged materials, and that he had "no other savings, money market,

5

certificates of deposit, investments, retirement accounts, safety deposit boxes, or financial assets" beyond what had already been disclosed. Dkt. 129 at 98.

At the July 13, 2022 conference, Respondent was placed into custody as the Court found he had not complied as directed. Dkt. 132. He was briefly assigned counsel and released subject to his commitment to adhere to a document production schedule. *Id.*

On August 2, 2022, Petitioner served Respondent with another subpoena *duces tecum* (the "Third Document Subpoena") and information subpoena (the "Second Information Subpoena"). *See* Dkt. 155-2; 155-3. On August 19, 2022, Respondent moved to quash the First Doc. Subp. to the extent that it required production of Escrow Agreements which were subject to the attorney-client privilege. Dkt. 149. Respondent later moved to quash the Third Doc. Subp. and Second Inf. Subp. Dkts. 158, 164. On September 26, 2022, the Court denied the Motions to Quash. Dkt. 174.

On November 15, 2022 Petitioner made another motion to hold Respondent in contempt. Dkt. 209. At a December 14, 2022 hearing, the Court held Respondent in contempt for failure to comply with the subpoenas and Court orders. Dkt. 261. On December 20, 2022, the Court Ordered that Etra may purge his contempt by producing the following 10 categories of documents and information, Dkt 260 at 18-26:

1. Complete Accounting of Funds Received from Legal, Paymaster, Escrow-Related or Other Services from August 1, 2017 Through the Present

2. Monthly Citibank -0873 Statements

3. European Bank Account Monthly Statements from August 1, 2017 Through the Present

4. Monthly Account Statements for an M&T Bank Account Into Which His Social Security Payments Are Purportedly Now Being Made

5. Piermont -2060, Piermont -2992, and M&T -3441 Monthly Account Statements from July 2022 Through the Present

6. American Express -4005, HSBC -0136, Apple -6423, Barclays, and Barclays/Old Navy Credit Card Statements from August 1, 2017 Through the Present

7. Complete and Final Escrow Agreements for the 41 Clients of Etra's Escrow/Paymaster Business that Have Been Identified

8. Financial and Judgment-Related Communications from August 13, 2020 Through December 14, 2022

9. Documents Concerning the Legal, Paymaster, Escrow-Related or Other Services Provided from August 1, 2017 Through the Present

10. List of All Financial Accounts From August 1, 2017 Through August 2, 2022

At a March 28, 2023 conference before the Court, Respondent asserted his Fifth Amendment privilege to the compelled disclosure of his electronic devices and the Order to disclose information and documents to purge his contempt finding. On March 30, 2023, the Court Ordered Respondent to brief the issue of how his Fifth Amendment privilege may be asserted in this proceeding. Dkt. 307.

III. Discussion

   A. The Fifth Amendment Protects Testimonial Aspects of Document Production.

The Fifth Amendment declares, in part, that "No person… shall be compelled in any criminal case to be a witness against himself." This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951). The privilege against self-incrimination is not absolute and "does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a testimonial communication that is incriminating." *Fischer v. United States*, 425 U.S. 391, 408 (1976).

The Supreme Court has long recognized, however, that the "act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own wholly, aside from the contents of the papers produced." *Id.* at 410. A subpoena may compel the responding party to perform acts with testimonial acts that have an incriminating effect. *See United States v. Doe*, 465 U.S. 605, 612 (1984). Document production can constitute a testimonial act by conveying four types of potentially incriminating information: (1) That the documents do exist; (2) that they are in the possession or control of the subpoenaed party; (3) that the documents produced are authentic; and (4) that the responding party "believes that the documents produced

are those described in the subpoena." *See United States v. Hubbell*, 167 F.3d 552, 567-68 (D.C. Cir. 1999), *aff'd* 530 U.S. 27 (2000).

### B. The Threat of Criminal Prosecution is Readily Apparent in this Matter.

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman,* at 486-87. The claimant of the privilege may be forced to answer only when his fear of incrimination is unfounded. *See Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990). A witness is only required to show a reasonable possibility that his own testimony will incriminate him, not establish it by a preponderance of the evidence. *Id.* The inquiry of whether the privilege should apply does not depend on the assessment of the likelihood of a prosecution or the government's intention to prosecute, but rather only whether the information given by the witness would tend to incriminate him. *Id.* The privilege extends not only to information that would itself support a criminal conviction, but also to any information that could "furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman*, 341 U.S. at 486.

In this case, the reasonable possibility of the subject information to be used as a "link in the chain" of a criminal prosecution is readily apparent. The Petitioner has frequently repeated its view that Respondent's conduct in the underlying transaction constituted a criminal act. *See e.g.* Sept. 21, 2020 Email from S.

Popofsky to A. Etra, Dkt. 24-9 at 3 ("You were an integral part of the criminal conspiracy and you may be disbarred, indicted and eventually jailed."); Pet'r's Reply Br., Dkt 29 at 3 ("...Mr. Etra and his henchmen bilked them out of all the funds they had raised... [Respondent's status as an attorney] serves only to enhance the credibility of a conman perpetrating fraudulent schemes."); Letter from S. Popofsky dated Jan. 19, 2021, Dkt 56 at 4 (stating the underlying conduct in this matter "cannot have been the first time he engaged in this sort of fraudulent scam."); Letter from S. Popofsky dated Feb. 9, 2021, Dkt. 60 at 1 (labeling Respondent as a "flimflam artist"); Letter from S. Popofsky dated April 3, 2023, Dkt. 309 (opining that Respondent is "likely a career criminal"). The Court succinctly summarized the Petitioner's view of Etra's conduct in a July 13, 2022 hearing: "He's a grifter. He stole your money and he's not giving it back..." Dkt. 148, Tr. 8:22-24.

Etra has consistently maintained his innocence throughout these proceedings. He has stated that he was simply a middleman in a transaction gone wrong. In attempting to view the factual record in the most favorable light to Etra, the Honorable Deborah Batts stated, "[G]iving him the benefit of the doubt, he is a sap who was used by some fraudsters." *Benthos Master Fund LTD. v. Aaron Etra*, (Nov. 15, 2018) Tr. 19:14-15.

Etra's protestations of innocence do not make him ineligible for the protections of the Fifth Amendment. The Fifth Amendment is available not just to guilty individuals, but to innocent ones as well. *Ohio v. Reiner*, 532 U.S. 17, 21

10

(2001). Indeed, one of the Fifth Amendment's "basic functions is to protect innocent men who might be ensnared by ambiguous circumstances." *Id.* (quoting *Grunewald v. United States*, 353 U.S. 391, 421 (1957)). Regardless of whether Etra is "a sap who was used by some fraudsters" or "a grifter," the privileges afforded by the Fifth Amendment should be available to him. Depending on which party is to be credited, he is either at the center of a criminal conspiracy or directly adjacent to one. There is, at an absolute minimum, a very real, readily apparent risk that Respondent "might be ensnared by ambiguous circumstances," and that information would be a link in the chain of a criminal prosecution.

### C. Disclosure of the Ordered Documents would Constitute Testimonial Acts that Should be Afforded Fifth Amendment Protection.

Categories 1, 3, 4, 8, 9 and 10 each require Respondent "to make extensive use of the contents of his own mind in identifying the hundreds of documents responsive to the requests…" *Hubbell*, at 42. To comply with Category 1 (Accounting of funds received), Category 3 (European Bank Account), Category 4 (M&T Account Receiving Social Security), and Category 10 (All financial accounts), Etra would be performing the testimonial act of identifying all known accounts and transactions, acknowledging control over the accounts and documents, as well as verifying authenticity of the documents.

To comply with Category 8 (financial and judgment-related communications from August 2020 through December 2022) and Category 9 (documents concerning

11

legal, paymaster, escrow related and other services), Etra would necessarily be testifying against himself by identifying individual communications about financial matters with others. Although Category 8 does not span the period of the underlying transaction, it could undoubtedly provide information relating back to the underlying financial transaction and serve as a link in the chain of evidence. The category requires him to curate a selection of documents that would serve as a catalog of possible co-conspirators to a potential prosecutor. This category is the functional equivalent of ordering Etra to name all individuals with whom he communicated about finances that are believed to be stolen. It is difficult to imagine such a mandate being unworthy of Fifth Amendment protections in a matter where the specter of criminal prosecution looms so large.

Category 9 would include all communications related to the underlying transaction with the intended sellers of Bitcoin in the lead up to the transaction. These are the individuals that Petitioner has characterized as Respondent's "henchmen" and would be scrutinized as potential co-conspirators in any prosecution. The testimonial act of identifying these communications should be afforded the protection of the Fifth Amendment.

To comply with each of the categories, including Category 2 (Citibank -0873 statements), Category 5 (Piermont -2060, -2992 and M&T -3441 statements), Category 6 (accounts statements for five credit cards), Category 7 (escrow agreements for 41 clients), Etra would have to contradict his prior position of not

having control of the documents, and/or the documents not existing. He would also have to admit to the authenticity of these documents. In numerous filings and court appearances, Etra has represented a lack of control over the documents and, in many cases, that responsive documents do not exist.

Etra now faces the Hobson's choice of adhering to his position as to the non-existence and inability to control the documents and remaining incarcerated for civil contempt, or taking a contrary position and producing materials that expose him to criminal liability for perjury (18 U.S.C. § 1621), false statements (18 U.S.C. § 1001), or destruction of evidence (18 U.S.C. § 1519). There is a real possibility of prosecution arising from the production of any responsive records for which he has previously claimed to not have control. The Fifth Amendment privilege against self-incrimination is the only protection available for Etra to avoid being compelled to act as a witness against himself.

Similarly, a Court-ordered search of his electronic devices for the subpoenaed information should be subject to Fifth Amendment protections. The act of producing information via his laptop would also be testimonial as it would demonstrate control of that information. Additionally, to the extent the Court has ordered Respondent to disclose devices containing or linked to certain information, Respondent's very act of identifying which devices are in his possession and control and contain such information is testimonial.

## IV. Conclusion

For the reasons stated above, Respondent should be afforded the privileges of the Fifth Amendment as to the subject documents and devices.

Dated: New York, NY
       May 5, 2023

                          Respectfully submitted,

                          Daniel A. McGuinness
                          353 Lexington Ave, Rm 900
                          New York, NY 10016
                           (646) 496-3057
                          dan@legalmcg.com