Scott Barbour
Reg. No. 70937-079
MDC Brooklyn
80 29th Street
Brooklyn, New York 11232



April 29, 2023

The Honorable Valerie Caproni
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

  Re: Benthos v. Etra, No. 20-cv-03384

Dear Judge Caproni:

  Greetings. I am a jailhouse writ writer who is currently incarcerated at MDC Brooklyn, in Brooklyn, New York. I am writing to you concerning the current confinement of Aaron Etra. However, I am not writing in my capacity as a jailhouse lawyer, but rather as a concerned human being.

  As you know, after a contempt of court hearing was held on December 14, 2022 in the above-referenced case, you granted the Plaintiff's motion to hold Mr. Etra in civil contempt and ordered his arrest and incarceration. See Order & Opinion, Dkt. 260. The Court did so "fully aware of the less-than-ideal conditions at MDC Brooklyn, Etra's claim of numerous health maladies, the difficulties he will encounter in communicating with his banks and email providers from jail, and his age." Ibid. (citing Contempt Hearing, pp.

23, 31-32). I am writing because I believe that the Court grossly underestimated both the conditions of confinement at MDC Brooklyn and the extraordinarily deleterious effect that those conditions would have on an 82-year-old infirm individual.

However, as a threshold matter, I acknowledge that the Court has "the inherent power to order coercive civil confinement," Armstrong v. Guccione, 470 F.3d 89, 102 (2d Cir. 2006), and the statutory power "to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority." 18 U.S.C. § 401(3). I also understand that in determining the proper measure of coercive sanctions, the Court must consider "(1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989) (citations omitted). But while the Court has the statutory authority to place a person in prison for civil contempt, it is respectfully submitted that, in the

2

case *sub judice*, the Court overstated the character and magnitude of the harm threatened by the continued contumacy, and grossly understated the seriousness of the sanction's burdens.

As to the former, stripped of its gloss and polish, this case is about a rich corporation that is using this Honorable Court to act as its collection agency. Ironically, these types of corporations often engage in all manner of legal legerdemain in order to avoid paying taxes, but yet they are the first ones to invoke the power of the State in order to collect money owed to them. But that is what this case is about, it is about money. Thus, rather than protecting and preserving the sacred rule of law, the civil contempt order in this case essentially resurrects the odious notion of a debtor's prison.

As to the latter, *i.e.*, the seriousness of the sanction's burdens, the Court woefully underestimated the relevant burdens in this case. The fountainhead of that underestimation, I respectfully submit, was the Court's erroneous appraisal of the conditions at MDC Brooklyn being "less-than-ideal." The conditions at

at MDC Brooklyn are not "less than ideal"; they are kafkaesque, brutal, and inhumane. They fall markedly below any reasonable standard of decency. The cells are small, with inadequate ventilation and lighting, and often faulty plumbing. Worse, inmates are forced to live two to a cell, with toilets that if flushed twice within five minutes lock out for one hour, thus forcing inmates to often spend hours in cells with feces-filled toilets. The communal showers are dirty, disgusting, semen-filled cesspools that are almost never hot or even passably warm. Drug use and violence are endemic. Moreover, staff — from the unit officers to the Warden — are utterly indifferent to the abhorrent conditions of confinement at MDC Brooklyn. And those are the staff members who even bother to show up to work. Indeed, chronic understaffing precludes inmate participation in educational programming and in attending religious services, and often causes the entire institution to be placed on complete lockdown status. (For more information on the conditions of confinement at MDC Brooklyn, please see the Department of Justice's Office of Inspector General

4

report titled *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates, Evaluation and Inspections Report* (Sept. 2019).]

At all events, the conditions at MDC Brooklyn are difficult even for young, healthy, seasoned convicts. But for elderly inmates, particularly those with serious health issues, the conditions amount to nothing less than torture. It breaks my heart to see inmates like Mr. Etra struggling through this hellish existence. Therefore, I beseech this Honorable Court to please have mercy on Mr. Etra and release him from this nightmare. The Court would not even have to lift the civil contempt order; it could simply convert the incarceration to home confinement. Moreover, Mr. Etra, while not moving as quickly as the Court would like, has already demonstrated his intention to comply with the Court's orders. Thus, no further coercion is necessary. At this point, his continued incarceration simply looks punitive and mean.

Judge, if you could witness Mr. Etra in these terrible conditions you would order his immediate release. And that is what I am asking you to do.

5

In closing, I want to sincerely thank you for your time and consideration. And please know that Mr. Etra did not ask me to write this letter. I did this completely on my own. My own father passed away several years ago at age 79, and when I see Mr. Etra, I think about what it would have been like to see my own father in this dreadful place. (Indeed, as I was writing this letter MDC Brooklyn was placed on complete lockdown status after three officers were seriously assaulted with weapons in one of the housing units.) You made a comment in your written opinion that Mr. Etra has the key to his own jail cell. However, you have that key as well, and there are more humane ways to coerce his compliance.

As an aside, speaking of the comment you made, Mr. Etra actually defended you after another inmate with training in the law suggested that your comment about Mr. Etra having the key to his own confinement was a not-so-subtle anti-Semitic comment. "What are you talking about?" Mr. Etra asked this inmate, to which the inmate responded: "The judge is obviously saying that the only reason you're in jail is because you're too cheap to pay the $94,070.78. And since you're Jewish, the comment trades on the

6

age-old anti-semitic trope that Jews are parsimonious skinflints who would sooner stay in prison than part with their precious shekels." To his immense credit, Aaron Etra immediately said, "There is absolutely no evidence that Judge Caproni is an anti-Semite." And Mr. Etra held this position even after the other inmate pointed out that the tone and tenor of your written opinion was vitriolic and acrimonious at a level not normally seen in modern day federal court opinions. So think what you want about Mr. Etra's character, but at least he does not subscribe to lies and slander.

Thank you again.

Very truly yours,

Scott Barbour

P.S. Since he arrived at MDC Brooklyn, Mr. Etra has developed Glaucoma and has been stricken with several serious infections. His health has deteriorated markedly just in the one month that I have been here. He will not survive a prolonged stay here.

7



Scott Barbour
Reg. No. 70937-079
Metropolitan Detention Center
MDC Brooklyn
80 29th Street
Brooklyn, NY 11232

* The Hon. Valerie Caproni *

The Chambers of the Honorable Judge Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

LEGAL MAIL - CONFIDENTIAL