UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BENTHOS MASTER FUND, LTD.,

                Petitioner,

        - against -

AARON ETRA,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 20-cv-03384 (VEC)

---

## PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO AARON ETRA's FIFTH AMENDMENT APPLICATION

---

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
500 Fifth Avenue
New York, New York  10110
Telephone:   (212) 880-9882
Facsimile:    (212) 986-8866

Attorneys for Petitioner
   BENTHOS MASTER FUND, LTD.

Petitioner Benthos Master Fund, Ltd. respectfully submits this memorandum of law in opposition to the application of respondent Aaron Etra, filed on May 5, 2023, seeking to avoid further judgment enforcement on the basis of the Fifth Amendment.

## Preliminary Statement

After more than two years of willfully defying multiple court orders and subpoenas, in a last-ditch attempt to avoid the forensic examination that will reveal his post-judgment financial communications, Etra seeks to invoke the Fifth Amendment, apparently believing that that will enable him to end judgment enforcement, get out of jail and resume his lifestyle of concealing his sources of funds while spending those funds lavishly in flagrant violation of the restraining notice. His application is unpersuasive.

## A Brief Note on the Application's "Factual Background"

Due to the Court's extensive familiarity with the history here, Benthos will not endeavor to present a counter-statement of "factual background," nor to address the errors and omissions in the submission of Etra's new court-appointed counsel, except in two limited respects.

First, while the application accurately describes Etra's stated position in 2020 that "the still-rampant COVID-19 pandemic hindered his ability to produce documents" (Motion at 4), new counsel should be aware that during that same time period, Etra was flying regularly back-and-forth between the United States and Europe, before he or anyone else had any vaccine protection, and was doing so with funds that rightfully belonged to Benthos, in willful defiance of a post-judgment restraining notice that Etra, as a lawyer, well understood prohibited such expenditures (among many others).

Second, the statement that "the initial payment did not arrive" (id.) is (intentionally or not) a whitewashed version of what transpired in connection with the parties' court-supervised

"settlement agreement on April 1, 2021" (a fitting date). On the record before Magistrate Judge Parker, Etra had promised to pay $1,000,000 in twelve equal monthly installments of $83,333. He defaulted on the very first payment, claiming that he "thought" he owed only $8,333. Of course this Columbia Law School graduate knew that one-twelfth of $1 million is not eight thousand dollars and change, but in any event, making clear that the entire "settlement" was only another bad-faith stalling tactic, he failed even to pay the $8,333 he claimed to believe he owed.

## Argument

I. **AS A THRESHOLD MATTER, ETRA LONG AGO WAIVED ANY RIGHT TO ASSERT THE FIFTH AMENDMENT IN THIS PROCEEDING**

"[T]he Fifth Amendment . . . can be affirmatively waived or lost by not asserting it in a timely fashion." *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) (affirming rejection of belated Fifth Amendment assertion "by a party who had already testified, at some length"). In this matter, during a year and a half of judgment enforcement-related motion practice, Etra appeared twice under oath before Magistrate Judge Parker discussing (albeit lying about) his finances; submitted numerous affidavits and other statements to Judge Nathan and Judge Caproni explaining and defending his production and non-production of documents and information concerning those finances; and appeared and spoke about his supposed efforts to comply with judgment enforcement subpoenas and court orders in open court before Judge Caproni on several occasions.

Only when the contents of his electronic devices were about to be forensically examined by a third-party expert did he belatedly seek to make a blanket assertion of the Fifth Amendment to shield that and any other documents and information not yet disclosed during judgment enforcement. This is yet another in a long line of Aaron Etra stalling maneuvers and should be

2

denied for the independent reason of untimeliness, wholly apart from its substantive insufficiency addressed immediately below.

## II. THE APPLICATION IS UNWARRANTED ON THE MERITS

It has been a "settled proposition" for decades that

> [A] person may be required to produce specific documents even though they contain incriminating assertions . . . because the creation of those documents was not 'compelled' within the meaning of the [Fifth Amendment] privilege. . . . [Documents previously and] voluntarily prepared . . . [cannot] be 'said to contain compelled testimonial evidence' . . . [and an individual cannot] 'avoid compliance with [a] subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing.' . . . It is clear, therefore, that [a subpoenaed person cannot] avoid compliance with [a] subpoena served on him merely because the demanded documents contained incriminating evidence. . . .

*United States v. Hubbell*, 530 U.S. 27, 35-36 (2000). There are exceptions, of course, but Etra's attempt to fit within those is unavailing.

For example, Etra argues that production of his "Financial and Judgment-Related Communications From August 13, 2020 Through December 14, 2022" (Dkt. 260 at 25) – i.e., from judgment through incarceration – "requires him to curate a selection of documents" (Motion at 12), but as we sit here today in the spring of 2023, that is totally backwards: Precisely because Etra refused, repeatedly, to comply with court orders requiring production of categories of documents, the Court has ordered a forensic examination of his electronic devices. Now no "curation" at all is being required – the documents are simply going to be produced, less any sustained claims of attorney-client privilege. The forensic examination does not require him to identify anything or anyone at this juncture. Contrary to his brief, no "use of the contents of his own mind" (id. at 11) will be required whatsoever.

Similarly respondent's argument about admitting possession or control makes no sense under the circumstances. He contends that the "very act of identifying which devices are in his

3

possession and control and contain [the required] information is testimonial" (id. at 13), but the devices already have been identified, reported to the Court and turned over to his counsel.

Moreover there is no issue surrounding his control of his financial communications, because the argument that he previously claimed no responsive documents exist is a red herring: Those financial communications obviously exist, and there is no claim – nor could there be – that Etra is being or might be criminally investigated for not producing documents in judgment enforcement.[1]  The transaction for which he claims to fear criminal prosecution occurred almost five years ago, and the devices are to be inspected only for documents beginning with the judgment in August 2020.  Etra's argument that he might be prosecuted for perjury, false statements or destruction of evidence (id. at 13) sweep so broadly that they would enable all subpoena recipients who initially took the position that responsive documents did not exist to refuse ever after to produce anything at all, on the grounds that production would contradict the prior assertion and subject them to criminal prosecution.

The temporal issue also dooms Etra's attempt to avoid providing "a complete accounting of all funds received from any legal, paymaster, escrow-related or other services from August 1, 2017 through the present" (Dkt. 260 at 19).  Etra has admitted engaging in dozens of such transactions (and has produced partial documentation, although the gaps and unexplained bank-statement entries raise more questions than they answer), yet his counsel's only stated concern vis-à-vis criminal prosecution is "the underlying transaction" that gave rise to this judgment. Motion at 9, 12; see also 10 ("he was simply a middleman in a transaction gone wrong"), 12 ("finances that are believed to be stolen").

---

[1] Petitioner's request that the Court initiate criminal contempt proceedings for Etra's prior defiance of court orders does not demonstrate otherwise (although petitioner would withdraw that request if the Court concluded to the contrary).

4

The "'blanket assertion' of a Fifth Amendment privilege is insufficient." *United States v. Arias*, 404 Fed. Appx. 554, 556 (2d Cir. 2011); see also *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir. 1981) ("A proper assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the [court] with sufficient information from which [the court] can make an intelligent evaluation of the claim").  A witness is not excused on the basis of the Fifth Amendment "merely because [he or she] declares that in [responding] he or she would incriminate himself or herself." *Carver Fed. Sav. Bank v. Shaker Gardens*, 167 A.D.3d 1337, 1340-42 (3d Dept. 2018) (rejecting "a broad, undifferentiated assertion of the Fifth Amendment privilege . . . on the basis of sweeping and unsubstantiated assertions of counsel").

Here, as in the *Carver* case, "there is nothing in this record indicating, nor does [Etra] assert, that he is the subject of any criminal investigation or proceeding" other than the underlying 2018 transaction that gave rise to the judgment.  All the documents concerning <u>that</u> transaction were produced years ago – albeit only after the late Judge Batts threatened Etra with incarceration – and indeed, he repeatedly has touted Judge Batts's eventual denial of contempt in that regard (see, e.g., Motion at 2).  There is no reason that Etra should not be required to account for all of the other, subsequent transactions that will assist petitioner in tracing his assets.[2]

Finally we have bank statements.  Etra conspicuously has stopped producing even his current/recent statements, after petitioner pointed out that even from jail, he is continuing to violate the restraining notice (such violation is not a criminal act) by repeatedly sending money to American Express (Dkt. 329 at 2; Dkt. 299); and he has not produced a statement reflecting the October 2022 $1 million escrow deposit revealed in the *Berkley v. Etra and Motherland* case

---

[2] Should the Court deem it appropriate, petitioner would accept a starting date of August 2020, rather than August 2017, for the accounting of transactions, although petitioner does not believe that would be justified for the reasons set forth above.

5

(see Dkt. 329 at 1-2).  Nor do we know anything about the Etra account from which the $10,000 transfer relating to that transaction came (see Dkt. 299 at 1).

Respondent presents no authority that ever has held that a judgment debtor may deny a creditor his bank statements and thereby totally conceal his current finances, while indisputably continuing to violate a restraining order, merely by asserting the Fifth Amendment without any stated basis other than a transaction which concluded five years ago.

## Conclusion

Etra's application should be denied and judgment enforcement should be permitted to continue.

Dated: May 18, 2023

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: _____
         Steven R. Popofsky

500 Fifth Avenue
New York, New York  10110
Telephone:   (212) 880-9882
Facsimile:    (212) 986-8866
Email:          SPopofsky@kkwc.com

Attorneys for Petitioner
   **BENTHOS MASTER FUND, LTD.**

12380038

6