UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-----------------------------------------------------X

BENTHOS MASTER FUND, LTD.,                Index No. 20-cv-3384(VEC)

    Petitioner,

  -v.-

AARON ETRA,

    Respondent.
X-----------------------------------------------------X


AARON ETRA'S MEMORANDUM
IN REPLY IN FURTHER SUPPORT OF HIS
ASSERTION OF FIFTH
AMENDMENT PRIVILEGE

LAW OFFICES OF
DANIEL A. MCGUINNESS, PC
353 Lexington Avenue, Suite 900
New York, NY 10016
(646) 496-3057
Attorney for Respondent

Table of Contents

I. Introduction ........................................................................................................... 1

II. Discussion .............................................................................................................. 1

    A. Etra's Fifth Amendment Rights Should Not Be Deemed Waived ............. 1

    B. Etra's Disclosure of Electronic Devices to his Counsel do not Serve to Waive his Fifth Amendment Rights. ....................................................... 4

    C. The Existence, Control and Authenticity of the Subject Documents and Information are not Foregone Conclusions. .................... 5

    D. The Threat of Prosecution is Readily Apparent. A Pending or Likely Investigation or Prosecution is not Required for an Assertion of the Fifth Amendment. ........................................................... 6

    E. The Requested Records Could Serve as a Link in the Chain of Evidence for a the Type of Prosecution Petitioner has Suggested. ........... 8

III. Conclusion ........................................................................................................... 11

## I. Introduction

Respondent, an 82-year-old debtor in ill health, seeks to assert his Fifth Amendment Rights in a collection action arising from a financial transaction that Petitioner has repeatedly characterized as a criminal fraud. Respondent has been housed at the infamous Metropolitan Detention Center in Brooklyn for nearly six months based upon a contempt finding by this Court. Petitioner, an investment fund, argues in its Opposition that Respondent should not be afforded his Fifth Amendment rights essentially because (1) Etra has waived the right by not asserting it earlier and by giving previous testimony (Dkt. 333 at 2); (2) Etra's previous disclosures to his counsel vitiate the right (*id.* at 3-4); (3) Existence, control and authenticity of certain documents are foregone conclusions (*id.* at 4); (4) The information and documents sought could not serve as a link in the chain of evidence for a prosecution (*id.*); and (5) Etra cannot claim the protections of the Fifth Amendment because he has not identified a pending investigation or prosecution (*id.* at 5). The arguments are addressed in turn below.

## II. Discussion

### A. Etra's Fifth Amendment Rights Should Not Be Deemed Waived.

The Fifth Amendment is a fundamental right and the "waiver of such a fundamental right 'is not lightly to be inferred.'" *DG Creditor Corp.*, 151 F.3d 75, 80 (2d Cir 1998) (quoting *Emspak v. United States*, 349 U.S. 190, 196 (1955)). A court "must indulge every reasonable presumption against waiver." *Id.* (quoting *United*

*States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 318-19 (2d Cir. 1979)). The Supreme Court discussed the historical context of the Right and need for its liberal application in *Quinn v. United States*, 349 U.S. 155, 162 (1955):

> The privilege against self-incrimination is a right that was hard-earned by our forefathers. The reasons for its inclusion in the Constitution -- and the necessities for its preservation -- are to be found in the lessons of history. As early as 1650, remembrance of the horror of Star Chamber proceedings a decade before had firmly established the privilege in the common law of England. Transplanted to this country as part of our legal heritage, it soon made its way into various state constitutions and, ultimately in 1791 into the federal Bill of Rights. The privilege, this Court has stated, "was generally regarded then, as now, as a privilege of great value, a protection to the innocent though a shelter to the guilty, and a safeguard against heedless, unfounded or tyrannical prosecutions." Coequally with our other constitutional guarantees, the Self-Incrimination Clause "must be accorded liberal construction in favor of the right it was intended to secure.". . . To apply the privilege narrowly or begrudgingly -- to treat it as an historical relic, at most merely to be tolerated -- is to ignore its development and purpose.

(internal citations and footnotes omitted.)

The failure to assert the privilege in a timely manner does not require a court to deny it. *See DG Creditor Corp.*, 151 F.3d at 81. Most courts exert considerable discretion to allow the assertion of this fundamental privilege even if it is not timely asserted. *See e.g. Hernandez v. Sub Enter. Inc.*, No. 21-cv-1874(RER), 2023 U.S. Dist. LEXIS 38124, at *n9 (E.D.N.Y. Mar. 7, 2023) (Reyes, M.J.); *Consumer Fin. Prot. Bureau v. Mackinnon*, No. 16-cv-880, 2021 U.S. Dist. LEXIS 187229, at *14 (W.D.N.Y. Sept. 29, 2021); *SEC v. Collector's Coffee Inc.*, 464 F. Supp. 3d 665, 669 (S.D.N.Y. 2020) (Gorenstein, M.J.). *See generally In re Interbanque, Inc.*, 1996

Bankr. LEXIS 1714, at *18-19 (Bankr. D.D.C. Mar. 28, 1996) ("Waiver of the Fifth Amendment has not been lightly inferred, however, with several courts… granting witnesses great latitude in untimely assertions of the privilege.") (collecting cases).

In the instant case, Respondent was acting *pro se* until he was incarcerated in December 2022. During his period of acting *pro se*, Respondent submitted documents and statements that Petitioner now vehemently argues were false and constitute perjury. As the Supreme Court has observed, "The assertion of a testimonial privilege, as of many other rights, often depends upon legal advice from someone who is trained and skilled in the subject matter, and who may offer a more objective opinion." *Maness v. Meyers*, 419 U.S. 449, 466 (1975). Although an attorney, there has been no indication that Etra has any experience, training, or knowledge of criminal defense law or litigation beyond what he learned in law school and the bar exam nearly six decades ago. Etra first requested assigned counsel to assist him with such issues when the matter was referred for prosecution by Magistrate Judge Parker, and only received such counsel when he was incarcerated in December 2022 – other than a brief appointment of less than a day when he was briefly incarcerated in July 2022. His fundamental right should not be dismissed because of his actions prior to his assignment of counsel who is trained and skilled in the subject matter and who was able to offer a more objective opinion.

### B. Etra's Disclosure of Electronic Devices to his Counsel do not Serve to Waive his Fifth Amendment Rights.

Production of Etra's electronic devices contain the same communicative, testimonial information as production of documents and are subject to the same protections. The Opposition argues that since the electronic devices have already "been identified, reported to the Court and turned over to his counsel" (Opp. at 3) there is no information that could be gained from the transfer from Respondent's counsel to Petitioner via a forensic examiner.

The specific electronic devices have been identified and turned over to counsel, however, they have not been specifically identified or reported to either the Court or Petitioner. The Court and Petitioner are not aware of which specific devices were used by Respondent and are in counsel's possession. The communicative aspects of production – that Respondent had control over and used these specific devices – have been made only to counsel.

In any subsequent prosecution, the prosecution would bear the burden of connecting a specific device to Respondent. Using the information known to date, a prosecutor could argue that Respondent admitted to using a phone and laptop but would still bear the burden of proving his use and control of a particular phone and laptop. By forcing Respondent's counsel to reveal the communications made by Respondent to counsel, he is being forced to communicate his connection to a

particular device. That communication could be used against him in any future prosecution.

Fifth Amendment privileges are not lost by communicating the underlying information or materials to counsel. *See In re Katz*, 623 F.2d 122 (2d Cir. 1980). The appropriate inquiry is (1) Would the materials in issue be privileged under the Fifth Amendment had they remained in the possession of the claimant; and (2) Are the materials protected by attorney-client privilege while in the possession of the attorney. *Katz*, 623 F.2d at 126. In this case, the Fifth Amendment protections would apply to the identification and production of the devices if in Respondent's custody, and the items are protected by attorney-client privilege as they are communications made solely to counsel at the direction of the court. The Court has recognized that such protections still exist and have not been waived by noting that protocols must be put into place to protect any attorney-client privilege between Respondent and his clients. Just as the attorney-client privilege between Respondent and his clients remains after handing over the devices to his counsel, so too does the attorney-client privilege for the testimonial communication of production by Etra to his counsel.

### C. The Existence, Control and Authenticity of the Subject Documents and Information are not Foregone Conclusions.

The foregone conclusion doctrine holds that where a claimant asserts the Fifth Amendment protection based on the act of production, but the existence,

5

authenticity, and claimant's control of the sought documents are already known to the requesting entity and independently established, then the privilege cannot be maintained. *United States v. Greenfield*, 831 F.3d 106, 115 (2d Cir. 2016). Petitioner seemingly invites application of this doctrine by claiming that sought documents "obviously exist" and that the devices have already been identified. The standard for application of the doctrine, however, is far higher. To avail itself of the foregone conclusion doctrine over a Fifth Amendment objection, Petitioner must demonstrate, with reasonable particularity, the existence, control, and authenticity of the sought documents. *Id.* at 116-19. Petitioner has not done so. Far from being a foregone conclusion, many of the categories of documents do not even identify a particular account but compel Respondent to communicate that information.

> D. **The Threat of Prosecution is Readily Apparent. A Pending or Likely Investigation or Prosecution is not Required for an Assertion of the Fifth Amendment.**

The invocation of the Fifth Amendment does not require an investigation or prosecution to be pending. Petitioner's reliance on *People v. Carver,* 167 A.D.3d 1337, 1340-42 (3d Dept. 2018) is misplaced. This New York State Appellate Division case does not hold that a criminal investigation is required for an assertion of the privilege, and to the extent that it could somehow be read to suggest it does, that requirement has long been dismissed by the Second Circuit. The court in *United States v. Egerton*, 734 F.2d 913, 921 (2d Cir. 1984) flatly rejected an approach focused on the government's intention to prosecute in favor of one that looks only to

whether the information sought would tend to incriminate the witness: "[O]nce the court determines that the answers requested would tend to incriminate the witness, it should not attempt to speculate whether the witness will in fact be prosecuted." *See also United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) (holding that the assertion of the privilege does not depend on the likelihood of prosecution).

In *Estate of Fisher v. Comm'r*, 905 F.2d 645, 649 (2d Cir. 1990) the Second Circuit reversed a lower court's decision denying a party's Fifth Amendment privilege where the relevant prosecuting authority directly assured the court that it was not investigating the party. The *Fisher* Court ruled that reliance on such assurance was reversible error. *Id.* It is not for a court to judge whether a prosecution is occurring or even likely to occur, but rather whether there exists a reasonable possibility that the sought testimony or testimonial acts would incriminate the party invoking the privilege. *Id.* at 650.

The Opposition downplays the possibility of a criminal prosecution in stark contrast to its persistent calls for such prosecution for fraud, perjury and criminal contempt. *See e.g.* Nov. 9, 2022 Hrg Tr. 21:15-16, Dkt. 214 (Counsel for Petitioner: "We can deal with the issue of perjury separately."); Sept. 21, 2020 Email from S. Popofsky to A. Etra, Dkt. 24-9 at 3 ("You were an integral part of the criminal conspiracy, and you may be disbarred, indicted and eventually jailed."). Petitioner directly made the case for criminal prosecution in successive motions for criminal contempt, with a renewed request as recently as last month. *See* Dkts. 209 at 2; 329

7

at 3. In its supporting memorandum for criminal contempt of Respondent, Petitioner vigorously argues that criminal contempt is necessary. *See* Pet'r Mem. In Support of Mot. to Compel ("Pet'r Memo") (Nov. 15, 2022) at 8, Dkt. 210. Now, Petitioner claims such a prosecution is not even possible. *See* Opp. at 4. It concludes without support or explanation that Respondent's previous disobedience of court orders cannot be the subject of a criminal prosecution. Opp. at 6, Dkt. 333 ("[Respondent] is continuing to violate the restraining notice (such violation is not a criminal act)…"). Instead of trying to resolve this view with previous advocacy for the necessity of criminal sanctions, Petitioner simply states that it is willing to withdraw its motion for criminal contempt.

Unfortunately for Respondent, the threat of prosecution for perjury, criminal contempt, wire fraud or other violations does not turn on the changing whims of Petitioner. The decision of whether to prosecute Respondent lies not with Petitioner, but with the United States Attorney's Office and with this Court. *See e.g. United States v. Donziger*, 38 F.4th 290 (2d Cir. 2022), *cert den'd* __ U.S. __ , 143 S. Ct. 868 (2023). A real possibility of criminal prosecution undoubtedly exists.

### E. The Requested Records Could Serve as a Link in the Chain of Evidence for a the Type of Prosecution Petitioner has Suggested.

The fact that the instant proceeding is a collection action does not extinguish Etra's Fifth Amendment Rights. A debtor maintains his rights, including his Fifth Amendment Right, in a collection action and may assert them with respect to the

location of assets if such information may possibly serve as a link in the chain of evidence against the debtor. *See e.g. Levitt v. Brooks*, 2013 U.S. Dist. LEXIS 48377, at *13 (E.D.N.Y. Mar. 29, 2013);*SEC v. Mutual Benefits Corp.*, No. 04-cv-60573, 2008 U.S. Dist. LEXIS 6178, at *4 (S.D. Fla. Jan. 28, 2008); *In re Adelphia Commcn's Corp.*, No. 02-cv-41729, 2004 U.S. Dist. LEXIS 19478, at *9 (S.D.N.Y. Sept. 27, 2004); *AAOT Foreign Economic Ass'n v. Int'l Development Trade Services, Inc.*, No. 09-cv-9056, 1999 U.S. Dist. LEXIS 16617, at *6 (S.D.N.Y. Oct. 2, 1999).

A court "must determine, 'from the implications of the question, in the setting in which it is asked,' whether 'a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" *OSRecovery, Inc.*, 262 F. Supp. 2d 302, 305 (2d Cir. 2003) (quoting *United States v. Hoffman*, 341 U.S. 479, 486-87 (1951)). The context of the request for financial records in the instant case is a multi-year litigation with consistent allegations of financial fraud by Respondent; a recommendation by a Magistrate Judge for referral for prosecution of fraud; and pending motions for criminal contempt.

The Opposition posits that there is no way that documents from 2020 to 2023 could be used against Respondent in a criminal prosecution of the 2018 transaction. The underlying transaction in this matter, however, has been described by Petitioner as a "criminal conspiracy" that allegedly stole nearly $5 million. While current records would not directly show the transactions at issue, any records

produced would undoubtedly be scrutinized for what Petitioner would classify as traces of ill-gotten gains. These records could then be used as a link in the chain of evidence against Respondent. Indeed, Petitioner seeks these records precisely because it believes this is where Respondent hid proceeds from the supposed "fraud." *See* Ltr. from Pet'r, Dkt. 309 ("He is likely a career criminal, which is why he has gone to extreme lengths to conceal the sources of his income and the uses thereof.") Petitioner's new position that these records could not serve as a link in the chain of a prosecution is incongruous and disingenuous.

Moreover, this Court has expressed "grave doubts about the accuracy of Etra's representations in his financial affidavit…" Dkt. 260 at 13. False statement in the submitted financial affidavit can alone support a perjury prosecution. *See United States v. Birell*, 470 F.2d 113 (2d Cir. 1973); *United States v. Jenkins*, No. 11-cr-0602, 2012 U.S. Dist. LEXIS 207661, at *9-10 (N.D.N.Y. Oct. 9, 2012).

The categories that direct Respondent to compile and turn over accountings of records and communications of finances are likely to be wielded against Respondent in a fraud, criminal contempt, or perjury proceeding as Petitioner has sought. Emails concerning financial dealings which could be viewed as communications with "co-conspirators," and potentially used by prosecutors as a list of individuals to investigate. Even innocuous emails to individuals can be used against Respondent to show that he was in contact with them. Prosecutors frequently submit phone records and emails showing messages made between

10

alleged co-conspirators to establish a relationship. By compelling Respondent to cull emails showing who he communicated with about finances and transactions, he is forced to offer testify against himself.

### III. Conclusion

For the reasons stated above, Respondent should be afforded the privileges of the Fifth Amendment as to the subject documents and devices.

Dated: New York, NY
       June 2, 2023

Respectfully submitted,

Daniel A. McGuinness
353 Lexington Ave, Rm 900
New York, NY 10016
 (646) 496-3057
dan@legalmcg.com