UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------X

BENTHOS MASTER FUND, LTD.,                   Index No. 20-cv-3384(VEC)

           Petitioner,
   -v.-

AARON ETRA,

           Respondent.
X------------------------------------------------------X

MEMORANDUM IN SUPPORT OF
AARON ETRA'S FOURTH MOTION FOR
RELEASE FROM CUSTODY

LAW OFFICES OF
DANIEL A. MCGUINNESS, PC
353 Lexington Avenue, Suite 900
New York, NY 10016
(646) 496-3057
Attorney for Respondent

Table of Contents

I. Introduction ........................................................................................................... 1

II. Factual Background. ............................................................................................. 1

III. Discussion .............................................................................................................. 4

       A.   Etra has Demonstrated Substantial Compliance................................... 4

       B.   Etra has Demonstrated an Inability to Pay. ........................................... 5

       C.   Continued Detention is an Overly Harsh Means of
           Coercion for Etra. .................................................................................... 6

          1.   The Seriousness of the Sanction's Burden ........................................... 7

          2.   The Harm of Contumacy ....................................................................... 8

          3.   Alternative Coercive Conditions Could be Ordered ............................ 9

IV. Conclusion ........................................................................................................... 10

I. **Introduction**

Respondent is a frail 82-year-old with deteriorating eyesight who has been incarcerated at the MDC for over seven months to coerce compliance in a judgment collection matter. To purge the contempt finding, Respondent has sent desperate letters to all named financial institutions begging for any and all documents they have. Petitioner acting through his agent has worked to produce these documents in full. These documents have shown a complete inability to pay the amount required, or even pay rent to forestall his pending eviction. Respondent respectfully requests that, in light of his good faith attempts to compliance and demonstrated inability to pay the amount owed, the Court end his confinement.

II. **Factual Background.**

At a December 14, 2022 hearing, the Court held Respondent in contempt for failure to comply with the Petitioner's subpoenas and Court's orders. Dkt. 261. On December 20, 2022, the Court Ordered that Etra may purge his contempt by paying a sum of money to Petitioner and producing the following 10 categories of documents and information, Dkt. 260 at 18-26:

1. Complete Accounting of Funds Received from Legal, Paymaster, Escrow-Related or Other Services from August 1, 2017 Through the Present

2. Monthly Citibank -0873 Statements

3. European Bank Account Monthly Statements from August 1, 2017 Through the Present

1

4. Monthly Account Statements for an M&T Bank Account Into Which His Social Security Payments Are Purportedly Now Being Made

5. Piermont -2060, Piermont -2992, and M&T -3441 Monthly Account Statements from July 2022 Through the Present

6. American Express -4005, HSBC -0136, Apple -6423, Barclays, and Barclays/Old Navy Credit Card Statements from August 1, 2017 Through the Present

7. Complete and Final Escrow Agreements for the 41 Clients of Etra's Escrow/Paymaster Business that Have Been Identified

8. Financial and Judgment-Related Communications from August 13, 2020 Through December 14, 2022

9. Documents Concerning the Legal, Paymaster, Escrow-Related or Other Services Provided from August 1, 2017 Through the Present

10. List of All Financial Accounts From August 1, 2017 Through August 2, 2022

The Court further ordered that Etra surrender his passport, laptop and cellphone to his court-assigned counsel. *Id.* at 37. The Court acknowledged that Etra's electronic devices may contain privileged information, and ordered a schedule for the parties to submit proposed forensic review protocols by January 31, 2023. Dkt. 263.

On January 24, 2023, Etra filed his First Motion for Release from Custody. Dkt. 273. Etra also moved to extend the deadline to respond to Petitioner's proposed protocol. *Id.* On February 2, 2023, the Court denied the motion for release. Dkt. 280.

2

The briefing schedule on the issue of forensic review protocol was extended to February 27, 2023. Dkt. 277.

On February 14, 2023, Etra's assigned counsel learned of a non-waivable conflict of interest and sought to withdraw from representation. Dkt. 281. Due to the pending change of counsel, Etra sought additional time to respond to the forensic review protocol. *Id.* Following a change of counsel hearing, the briefing schedule on the forensic review protocol was extended to March 10, 2023. Dkt. 286.

On March 20, 2023, Etra filed a Second Motion for Release from Custody in the form of a brief "compassionate release" letter motion via counsel. Dkt. 305. The motion discussed Etra's degenerative eye condition that required regular visits to a facility outside the MDC. *Id.*

At a status conference held on March 28, 2023, the Court denied Etra's Second Motion for Release. Dkt. 307 at 4. Also at the conference, Etra invoked his Fifth Amendment Right against self-incrimination as to the production of the documents set forth in the Court's order. *Id.* The Court set a schedule for Etra to brief the issue. *Id.*

On April 3, 2023, Etra filed his Third Motion for Release from Custody (styled as a motion for reconsideration). Dkt. 308. In the motion, Etra described the hardships of his incarceration including the lack of adequate medical care for his Glaucoma and other conditions. *Id.* The Court denied the motion on April 4, 2023. Dkt. 310.

3

The issue of whether Etra could assert his Fifth Amendment Right against self-incrimination to withhold responsive materials was fully briefed and submitted to the Court on June 2, 2023. *See* Dkt. 330; 333; 334. On July 5, 2023, the Court rendered an Opinion and Order granting in part and denying in Respondent's Motion. Dkt. 337.

On July 22, 2023, Marc Sklar, acting at the direction of Etra, produced a complete set of documents received from M&T Bank, HSBC Bank, Wells Fargo Bank, Citibank and Barclays American Airlines credit card. *See* Sklar Decl. ¶ 18. The documents were obtained in response to urgent letters requesting "any and all" documents related open or closed accounts of Aaron Etra going back to 2017. *Id.* at ¶¶ 5, 6, 8, 9, 12.

### III. Discussion

#### A. Etra has Demonstrated Substantial Compliance.

The attached Declaration of Marc Sklar shows that Etra has made substantial good faith efforts towards compliance with the Court's mandates. Acting as Mr. Etra's power of attorney, Mr. Sklar drafted requests for records to each of the subject financial institutions. The letters conveyed the urgency of the request and sought "any and all accounts presently open or closed that I have or had" with each of the banks for the relevant period. *See* Sklar Decl., Ex. A-E. This request went beyond the stated accounts to get all possible information from the named banks

4

These letters are desperate pleas for all the information the bank could possibly offer. Etra via his agent mailed each of these letters to a corporate or customer service location as well as the legal department.

The letters were sent certified mail with return receipt requested. *See* Sklar Decl ¶ 9. The banks responded with documents for various accounts. Complete copies of the materials received from the banks were disclosed to Petitioner in the same form they were received. *See Id.* at ¶18.[1] Etra via his agent also wrote to the credit card companies. *Id.* at ¶¶ 11-16. For the two credit card companies to turn over materials, Etra has fully turned over materials from Barclays and is working to review and turn over the materials from American Express. *Id.*

### B. Etra has Demonstrated an Inability to Pay.

As part of the compliance, Etra has produced current copies of his bank statements, even including closed accounts from the financial institutions. These statements show that he does not have the ability to pay the sum required of him. The sum of all open bank accounts is $87.57.[2] *See* Sklar Decl. ¶¶ 20-28.

---

[1] Etra's agent is still reviewing materials produced by Piermont and American Express and expects to produce it in its entirety shortly. *See* Sklar Decl. ¶¶ 30-31.

[2] This total excludes his attorney IOLA funds. Of the two IOLA accounts with funds, one at M&T Bank has a balance of $2,201.93 (Sklar Decl., Ex. S), the other Wells Fargo account has $992,007.00 (Sklar Decl., Ex U). The $992,007.00 represents client funds that is subject to a New York State judgment. *See* McGuinness Decl., Ex. B. Wells Fargo has agreed to release the funds to Berkley Equity following the execution of a so-ordered stipulation. A hearing to resolve the matter is scheduled for August 15, 2023. *See* McGuinness Decl., Ex. C.

5

His debts far outstrip his assets. He owes $4,821.99 on his American Airlines card. Sklar Decl. ¶ 29. Etra is also on the cusp of eviction from his home after years of failing to pay rent. Earlier this year, his landlord instituted an eviction action in New York Civil Court, *Seaver Wang v. Aaron Etra*, Index No. LT-301403-23/NJ. In support of the suit, the landlord filed a petition stating that Etra had not paid rent since August 2020, and that Etra currently owed $127,000 in back rent and $1,978.03 in unpaid electricity bills. *See* McGuinness Decl., Ex. A. Additionally, Etra's Wells Fargo account that had been funding his health insurance premiums was closed due to overdraft fees last month. *See* Sklar Decl., Ex. T. His health insurance premium payment was returned unpaid. *Id.*

To show his inability to pay, Etra faces the difficult task of proving a negative. His bank statements, credit card debts, pending eviction and failure to maintain health insurance show that he does not have the necessary resources. Petitioner can offer only conjecture and speculation based on past spending to refute this evidence. Etra has carried his burden to demonstrate his inability to pay.

### C. Continued Detention is an Overly Harsh Means of Coercion for Etra.

Should the Court believe additional coercion is necessary, continued detention would be overly harsh. When imposing coercive sanctions, a court should consider: (1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of the sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent

6

seriousness of the sanction's burden. *See N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). In this matter, the burden of the sanction falls extraordinarily harsh upon Etra due to his advance age and declining health.

### 1. The seriousness of the sanction's burden

Age and health are proper considerations in considering whether imprisonment is proper for a finding of civil contempt. *See e.g. In re Kenny G. Enters., LLC*, 2019 Bankr. LEXIS 398, *6 (Ca. Central Bankr. Ct. Feb. 7, 2019)(quoting *Lambert v. State of Mont.*, 545 F2d 87, 90 (9th Cir. 1976)); *BKS Props. v. Shumate*, 271 B.R. 794, 2002 U.S. Dist. LEXIS 484 (N.D. Tx 2002); *Catena v. Seidl*, 65 N.J. 257, 321 A.2d. 225, 228-29 (N.J. 1974). These conditions inform a court as to the seriousness of the sanction's burden.

A period of incarceration is far harsher on an 82-year-old than it is for a young or middle-aged individual. "Prisons are primarily designed for the young and able bodied." *Old Behind Bars*, HUMAN RIGHTS WATCH 43 (2012), https://www.hrw.org/sites/default/files/reports/usprisons0112webwcover_0_0.pdf (hereinafter "HRW Study"). Incarceration has also been found to accelerate signs of aging and deterioration of health. *See* B. Jaye Anno, et al., *Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*, U.S. DEPT. OF JUST., NAT'L INST. OF CORR. 10 (2004), https://info.nicic.gov/nicrp/system/files/018735.pdf. "Ordinary cognitive impairments of age aside, decreased sensory acuity, muscle mass loss, intolerance of

7

adverse environmental conditions, dietary intolerance, and general vulnerability precipitate collateral emotional and mental health problems." *Id. See also* HRW Study at 46 ("In elders, hearing, vision, and balance progressively decrease; foot speed slows; and muscle loss occurs. All of which makes climbing up stairs or into upper bunks difficult if not dangerous.") Etra's seven months in the MDC have fallen on him far more heavily than most of the young, able-bodied jail population.

The conditions of Etra's confinement have been abysmal. The MDC has been frequently been on "modified operations" due to staff shortage. This benign term belies the grueling realities of 24-hour lockdowns for days on end. Inmates are kept for multiple days without opportunity to bathe, obtain commissary or communicate with loved ones. It is now standard practice that all inmates are locked in every weekend.

Etra also continues to struggle to obtain medical care for his chronic conditions. *See* McGuinness Decl., Ex. D. His eye condition has worsened and trips to New York Eye and Ear to monitor are not occurring with the necessary frequency.

### 2. The Harm of Contumacy

The magnitude of the harm threatened by the continued contumacy should be viewed in the context of the information and documents at issue. Petitioner has represented the information and documents to be of great importance and likely to result in recoupment of funds. This argument is belied by the fact that they have

8

not subpoenaed them. Petitioner sent restraining orders to freeze Etra's bank accounts but did not include subpoenas. Instead, voluminous subpoenas for documents and information were solely aimed at Etra. When Etra failed to respond completely – whether due to contumacy or inability – creditor did not pivot to subpoena the supposedly essential records. Instead, it sought to exert maximum pressure on Etra to extract funds.

These documents and information are not important enough to Petitioner to bother issuing subpoenas. It cannot be argued that the harm caused by the absence of the documents is so great as to continue the detention of the 82-year-old Respondent at the MDC.

### 3. Alternative Coercive Conditions Could be Ordered.

Should the Court believe that coercion remains necessary to any extent, other conditions can be applied. The Court has broad discretion to fashion a remedy that will bring about compliance. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657 (2d Cir. 2004). While it is true that a financial sanction would not be effective since he does not have the means to pay, he should not be incarcerated due to his indigent status. Etra could be required to surrender his passport and be subject to location monitoring with home detention or other restrictions the Court deems appropriate. Such a change would still impose a tremendous burden on Etra, who would be unable to travel to see his wife who

9

resides abroad. It would, however, allow him to obtain regular medical care for his conditions.

## IV. Conclusion

For the reasons stated above, Respondent respectfully requests that he be released from custody.

Dated:  New York, NY
        July 29, 2023

                                        Respectfully submitted,

                                        _____
                                        Daniel A. McGuinness
                                        353 Lexington Ave, Rm 900
                                        New York, NY 10016
                                         (646) 496-3057
                                        dan@legalmcg.com