N3S3BENH

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  BENTHOS MASTER FUND, LTD.,

4                  Plaintiff,              New York, N.Y.

5          v.                              20 Civ. 3384 (VEC)

6  AARON ETRA,

7                  Defendant.

8  ------------------------------x         Hearing

9                                          March 28, 2023
                                           2:30 p.m.
10
   Before:
11
                     HON. VALERIE E. CAPRONI,
12
                                           District Judge
13

14                        APPEARANCES

15

16
   KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
17       Attorneys for Plaintiff
   BY:   ALISA BENINTENDI
18         STEVEN POPOFSKY

19  AARON ETRA
        Pro Se Defendant
20

21

22  ALSO PRESENT:
   HARVEY FISHBEIN, ESQ.
23  BENJAMIN SILVERMAN, ESQ.

24

25

N3S3BENH

1          (Case called)

2          THE DEPUTY CLERK:  Please state your appearance for

3     the record.

4          MS. BENINTENDI:  Alisa Benintendi on behalf of

5     petitioner Benthos, and with me is my colleague Steven

6     Popofsky.

7          THE COURT:  Good afternoon.  Front table can sit down.

8          Mr. Etra, you're here.

9          MR. ETRA:  I'm here, your Honor.  Yes, I'm here.

10          THE COURT:  Please be seated.  Okay.

11          On the video, I have nothing on my screen.  Please

12     unmute your phone.  You are the expert and you are?  The

13     gentleman in the dark jacket.

14          MR. ARENSON:  Scott Arenson.

15          THE COURT:  Good afternoon.

16          MR. CASTILLO:  Ed Castillo.

17          THE COURT:  Good afternoon, Mr. Arenson and

18     Mr. Castillo.  Let me start with explaining why I brought you

19     all here together.  As you know, Mr. Etra is in custody.  So

20     what I want is for there to be the ability for what has to

21     happen, so that he can assert any claim of privilege that's

22     appropriate works seamlessly.  That's going to be difficult,

23     because he's in custody.  So that's why I wanted to have a

24     conversation so we could get a better feel -- Mr. Etra, this is

25     going to start with you -- a better feel for what's on the

1    computer and how things are organized, and then a better sense

2    from the experts about what the report is going to look like

3    and how easy it's going to be for Mr. Etra, who my sense is, is

4    not the most tech savvy guy in the world.  He may not be as

5    non-tech savvy as he wants us to think, but I don't think he is

6    a Silicon Valley genius.  So he can maneuver between the report

7    that you are going to give him and the actual documents.

8           So that's just a level set why you're all here.  I

9    thought it would be easier to do this talking to each other

10   rather than communicating via things in writing.

11          So Mr. Etra, let me start with you.  As you know, all

12   of your devices are going to be imaged.  They are also going to

13   get access to any electronic accounts, so things like your

14   Gmail account, your Apple account, any iCloud account,

15   WhatsApp, Facebook, etc.  All of that you are going to have to

16   give over your passwords and your user names.

17          But let's start with your laptop, because that's

18   probably the easiest one start with.  How are files on your

19   laptop organized?

20          MR. ETRA:  Your Honor, before -- as a starter, I'd

21   like to respectfully assert my Fifth Amendment privileges and

22   rights in respect of all items in your order of December 20,

23   and the testimony protection privilege with respect to any

24   additional financial information.

25          So I'd like to assert my rights and my protection

N3S3BENH

1    under the Fifth Amendment for items in respect of the order,

2    which includes the computer and computer material, and in

3    respect of you've asked for additional material from the banks.

4    I would like to assert my testimonial protection privilege for

5    that as well.

6         THE COURT:  Well, I don't know that that's an

7    appropriate assertion of privilege.  Would you like to brief

8    that issue?

9         Let's start with the bank records.  These are records

10    being held by a third party.

11         MR. ETRA:  Your Honor, I'm not the expert on this --

12         THE COURT:  You asserted it.  You're representing

13    yourself because you chose not to hire an attorney.

14         MR. ETRA:  I assert it and I reassert it.  And you've

15    agreed to give me counsel in respect of that.  The gentleman

16    Mr. Fishbein and Ms. Di Chiara came out to visit me once and

17    indicated they were not my lawyers.  So I've not had counsel

18    and I need counsel.

19         THE COURT:  Here is the thing, Mr. Etra.  Listen to me

20    for a second.  I've explained this multiple times and you've

21    seen orders on it.  Mr. Fishbein is appointed for the very

22    limited purpose of dealing with your incarceration.  Under

23    Second Circuit law, you have a right to appointed counsel

24    because you assert that you were impoverished for that very

25    limited purpose.  He is not your lawyer for all purposes.

N3S3BENH

1  Mr. Silverman --

2          MR. ETRA:  He states that -- the two have said they

3  are not my lawyers, and I've needed one and you've agreed to

4  give me one, and they have made it very clear that they are not

5  my lawyers for any purpose.

6          THE COURT:  Okay.  Mr. Etra, the one thing that I have

7  not done is to agree to give you counsel.  What I did was I

8  gave you what the law requires, which is counsel to represent

9  you on the very limited issue of your incarceration.  Not to

10 the give you general legal advice.  As to that, if you want

11 general legal advice, you need to hire a lawyer.  But --

12         MR. ETRA:  Your Honor --

13         THE COURT:  Stop, stop.  Do I hear you saying that you

14 are going to assert the Fifth over how your computer is

15 organized?

16         MR. ETRA:  Yes.  All aspects in your order, including

17 that.  Yes.

18         THE COURT:  Okay.  But you don't want to submit a

19 brief on this?

20         MR. ETRA:  If that's the process and procedure, that's

21 the process and procedure that needs to be done.  I don't know.

22 I take your advice obviously, but I do assert the privilege.

23         THE COURT:  Mr. Etra, I'm asking you if you want to

24 submit any kind of legal justification for your argument that

25 everything that is outstanding, which would include the --

N3S3BENH

1              MR. ETRA:  Yes.

2              THE COURT:  Let me finish, please, so the record is

3    clear.

4              You are asserting the Fifth Amendment, you're

5    asserting your right under the Fifth Amendment as to the

6    examination of your laptop, as to production of any further

7    documents from your e-mail accounts, your bank accounts,

8    anything else that's outstanding as part of the order that is

9    extant in this case.

10             Is that correct?

11             MR. ETRA:  All aspects of the order, your Honor, yes.

12             THE COURT:  This is a yes or no.  Would you like to

13   submit a brief explaining to me why your Fifth Amendment rights

14   covers all of that?

15             MR. ETRA:  Do I have that option?  Is that something

16   you would give me the option, your Honor?

17             THE COURT:  I will, but I'm giving you the option.

18             MR. ETRA:  Okay.  I understand.

19             THE COURT:  Because you are representing yourself.

20             MR. ETRA:  I clearly am, because Mr. Fishbein and

21   Ms. Di Chiara have made it clear they don't represent me in any

22   respect as a lawyer.

23             THE COURT:  I am going to put on the record what their

24   understanding is since Mr. Fishbein is here, because I'm not

25   going to leave that unchallenged.  Because he is a member of

1    the bar of this court, and he has been appointed, and I

2    seriously doubt he told you that.

3         MR. ETRA:  He said the words "I am not your lawyer."

4    They are document filers.  They were nice enough to meet with

5    me at the Brooklyn MDC, but they were very clear we are not

6    your lawyers, we are document filers.

7         THE COURT:  I'm going to give you two weeks to submit

8    any legal justification that you have for your position that

9    everything that you've been ordered to produce you are

10   withholding on grounds of your Fifth Amendment privilege,

11   together with what, if any, impact that has on the fact that

12   you are sitting in jail as a coercive sanction.  Although I

13   suppose the requirement to pay money would continue.

14        You are not asserting you have a Fifth Amendment not

15   to pay the judgment, are you?

16        MR. ETRA:  I am as far as testimonial protection for

17   financial records.  I am asserting it.

18        THE COURT:  No.  Part of what you are required to do,

19   Mr. Etra, is pay the money that was subject to the restraining

20   order that you failed to pay.

21        So are you asserting that you have a Fifth Amendment

22   privilege not to pay the money that was subject to the

23   restraining order and you spent for other reasons?

24        MR. ETRA:  I'm asserting for all purposes, your Honor,

25   yes.

N3S3BENH

1          THE COURT:  Well, that I am going to overrule without

2     any further briefing.  The monetary sanction remains in full

3     force and effect.  There is a dollar amount, I don't have it

4     off the top of my head.  That dollar amount has to be paid if

5     you want to purge the contempt.  You're sitting in jail.  You

6     have the keys in your pocket.

7          MR. ETRA:  But no money.

8          THE COURT:  I'm sorry?

9          MR. ETRA:  But no money.  And --

10          THE COURT:  That's your choice, Mr. Etra.  You had

11     money which you should have given to Benthos and you didn't.

12     So, look, we are not arguing that right now.

13          MR. ETRA:  Yes, your Honor.

14          THE COURT:  So today is the 28th.  Two weeks from

15     today is April 11.  So your brief, Mr. Etra, is due April 11,

16     limited to the issue that you have a Fifth Amendment privilege

17     not to produce documents from third-party bank accounts,

18     third-party credit card accounts, all of the third-party

19     accounts that are covered by the order.  I'm not intending to

20     leave anything out.

21          The only thing that I've ruled on is your assertion

22     that you have a testimonial privilege not to repay the money

23     that was subject to the restraining order that you failed to

24     pay to Benthos as you were required.

25          So that makes today's conference somewhat -- there is

1    nothing we can do.  But I do, since I've got the experts on the

2    phone, let me get a better understanding, and maybe even though

3    Mr. Etra is not going to be helpful, perhaps you and I can help

4    each other.  I don't know how his, obviously, as you just

5    heard, I don't know how the laptop is organized.  You are going

6    to produce a mirror image of his laptop which would be on a

7    hard drive.  Is that correct?

8              MR. ARENSON:  Correct.

9              THE COURT:  We've made arrangements with the prison so

10   that the hard drive can be delivered to him at the facility.

11   Is the report that you prepare, after you extract -- after you

12   mirror the hard -- you mirror the computer, you create a report

13   of what's on it.  Is he going to easily be able to go back and

14   forth between the mirror image of the hard drive and your

15   report, so that he will easily be able to say, however it's

16   organized, item number 4 on the expert's report is a file of my

17   communications with client X, those are privileged.

18             Do you understand what I'm asking you?

19             MR. ARENSON:  Yeah, yes.  So, when we first look at

20   the device, we'll analyze what's on the device.

21             THE COURT:  Hang on just a second.  That is

22   Mr. Arenson that's talking?

23             MR. ARENSON:  Yes.

24             So we'll look at the device as it stands.  We'll make

25   a copy of the hard drive.  The way that we'll organize the data

N3S3BENH

1    is, let's say there is a specific file that we're referring to.

2    We'll have a path to that file.  So let's say the hard drive is

3    named C:, and you would have a path to that file, and you would

4    be able to identify it that way.

5           In addition, we could open up the folder and identify

6    the folder, name the folder within the hard drive, and identify

7    it that way as well.

8           So there is a technical path, and then we could kind

9    of at a higher level just say it's in this drive or in this

10   folder, and here's the file, and show the data around that

11   specific file and document that.

12          THE COURT:  Because he's not going to be able to use a

13   hot link to get from a drive to the image, it might be easier

14   if you can set it up so he will see the name of the file that

15   corresponds to what he's going to be seeing on his screen when

16   he plugs in the hard drive.

17          Does that make sense?

18          MR. ARENSON:  Yes.  We can document that, yes.

19          THE COURT:  Okay.  All right.

20          Mr. Etra, will you tell me whether there are any

21   images on your laptop?  Pictures, videos, anything like that?

22   Or do you want to take the Fifth on that as well?

23          MR. ETRA:  I do, yes.

24          THE COURT:  On the assumption there are images, and

25   frankly I don't really care if they're pictures of his and his

1    grandson.  But given the possibility that he, like many people,

2    has porn on their computer, is there a way for -- you are going

3    to make a complete image.  The complete image cannot go to the

4    jail if there is inappropriate material on it.  Is there a way

5    for you to then create a duplicate that duplicates everything

6    other than any images and videos?

7            MR. ARENSON:  We can exclude photos and videos.

8    Technically we can -- I have to -- I would have to check into

9    that and get back to you on if -- usually when you make a copy

10   of the drive, make an image, it is an exact copy.

11           THE COURT:  Right.

12           MR. ARENSON:  To exclude the data would -- I would

13   have to get back to you on the procedure to actually do that.

14           THE COURT:  So let me make clear what I am asking.

15   I'm not asking you quite to do that.  I agree that an absolute

16   copy has to be made for everything that's on it.  Images,

17   videos, e-mail, documents, everything.

18           MR. ARENSON:  Hmm-hmm.

19           THE COURT:  That remains as the mirror image of the

20   machine.  What I'm asking for is a second image, which would be

21   everything except any videos or photographs.

22           MR. ARENSON:  Yes.  Once we have the original, then we

23   would make a copy of the original.  So you would have two

24   drives, correct.

25           THE COURT:  Okay.

N3S3BENH

1          Mr. Etra, do you understand?  I'm suggesting that what

2     you would be given access to is a duplicate of everything

3     that's on your computer, other than any photographs or videos.

4          MR. ETRA:  I understand, your Honor.

5          THE COURT:  Okay.  That is what we would do, because,

6     one, the photographs and videos are not going to be privileged,

7     so it doesn't really matter, and second, I don't run the risk,

8     if he has inappropriate material on his computer and it being

9     sent to the prison as part of the image.

10         Mr. Etra, I recognize that you've got a pending claim

11    of Fifth Amendment, but let me just put you on notice that if I

12    reject your claim, you are going to be very quickly ordered to

13    produce -- Mr. Fishbein has your computer, so the machines are

14    easy to produce, because he's got them.  What you are going to

15    be required to produce is a list of all of your accounts, with

16    their user names and passwords.

17         Now my understanding is that your friend Mr. Sklar has

18    your list of those things.  Because you, like everybody else in

19    the world, can't keep track of all the passwords.  I'm just

20    telling you that you need to get your ducks in a row.  Assume

21    the worst, that your claim of privilege is not going to be

22    granted, so that you are going to need to be ready to produce a

23    list of your accounts and the passwords and user names.

24         Do you understand that?

25         MR. ETRA:  I understand, your Honor.  Thank you.

N3S3BENH

1          THE COURT:  Do you have any question about that

2   direction.

3          MR. ETRA:  I just stand by my assertion of privilege.

4          THE COURT:  I understand you are standing by your

5   assertion of privilege.  What I'm telling you is that's your

6   claim.  I want you to plan for the bad news to you that your

7   claim is not upheld.

8          Is there any question about what I'm telling you to

9   do?

10          MR. ETRA:  I understand, your Honor.  Thank you.

11          THE COURT:  Okay.  To be clear, when I say get

12   together all of the names of your accounts and passwords and

13   user names, that includes everything.  That includes your

14   e-mail accounts, any iCloud storage accounts you have, Dropbox,

15   WhatsApp, Facebook, Signal, anything you have got an electronic

16   account for that they are going to need to get into needs to be

17   produced.

18          If your phone or computer is password protected, that

19   password also is going to need to be turned over.  Okay.

20          I think that's all I had that I needed the expert on,

21   and since you are paying for their time, I'm willing to let

22   them drop off.  Is there anything else that you think we need

23   to discuss, Ms. Benintendi, with the experts on the line?

24          MS. BENINTENDI:  No, your Honor.

25          THE COURT:  How you about, Mr. Etra?  Do you have any

N3S3BENH

1    questions for the expert?

2            MR. ETRA:  No, your Honor.  Thank you.

3            THE COURT:  Thank you.  So, Mr. Arenson and

4    Mr. Castillo, thank you for your time.  We will get back to you

5    in due course.

6            MR. ARENSON:  Thank you.

7            MR. CASTILLO:  Thank you.

8            THE COURT:  Okay.  Let's see.

9            To Benthos, have there been any new productions since

10    we were all last together?

11            MR. POPOFSKY:  I'll address that, your Honor.  Yes.  I

12    sent you a letter on March 15 that summarized the new

13    productions.

14            THE COURT:  Which was?

15            MR. POPOFSKY:  Nothing since then.

16            THE COURT:  Do you yet have his bank account that he

17    actually is banking out of on a day-in-day-out basis?

18            MR. POPOFSKY:  We have one -- we have one account, but

19    probably not, your Honor, because, for example, there was one

20    cash withdrawal, pre-incarceration there was one cash

21    withdrawal in Croatia, but we have nothing else related to

22    expenditure as to that trip.  So obviously there is another

23    account.

24            We also do not have the Piermont 2060 account

25    statements.  That was the account, as your Honor is well aware,

N3S3BENH

1     that he tried to hide for so long and it revealed all the

2     activity.  We don't have that because Mr. Sklar says the bank

3     will not -- it's been closed, and the bank will not honor a

4     power of attorney for closed accounts.  Apparently then, after

5     the account came to light, Mr. Etra closed it.  So it is very

6     convenient now he says we can't get access to it.

7                THE COURT:  Have you seen any paperwork from the bank

8     that verifies --

9                MR. POPOFSKY:  No.

10                THE COURT:  -- a very unusual position that they will

11     not produce records from a closed account based on a power of

12     attorney from their previous customer?

13                MR. POPOFSKY:  No.  We just have correspondence from

14     Mr. Sklar.

15                THE COURT:  Okay.  Mr. Etra, as I think I indicated in

16     at least one order, you are going to have to do better than

17     that to prove these positions that it just can't be produced.

18     I'm sure Mr. Sklar is a lovely man, but his say-so,

19     particularly something that seems not to be accurate and

20     doesn't make a lot of sense, is going to need to have some

21     documentation behind it.

22                One question for you, Mr. Etra, is would you like

23     Mr. Sklar to be included on court correspondence?

24                MR. ETRA:  Yes, please, your Honor.

25                THE COURT:  Do you have an e-mail address for him or a

N3S3BENH

1    physical address for him?

2            MR. ETRA:  I do, your Honor.  It's his first name,

3    M-A-R-C @surfacecareUSA.com.

4            THE COURT:  All one word, surfacecareUSA?

5            MR. ETRA:  Dotcom.

6            THE COURT:  Marc M-A-R-C.

7            MR. ETRA:  Correct.

8            THE COURT:  At surface, S-U-R-F as in Frank

9    A-C-E-C-A-R-E USA.com.

10            MR. ETRA:  I believe so, your Honor.  Yes.

11            THE COURT:  Okay.  We'll communicate with him via

12    e-mail.  We don't need a snail mail address then.

13            I got a request for compassionate release on your

14    behalf that Mr. Fishbein sent to me.  That request is denied.

15    Compassionate release, that statute relates to people who are

16    being punished.  You are not being punished.  You are being

17    coerced.  That's an entirely different kettle of fish.

18            Even if you were being punished, your glaucoma is

19    being treated.  It is not an extraordinary circumstance that

20    would justify compassionate release, even if you were a

21    defendant in custody on a criminal sentence.  So that request

22    is denied.

23            Do you want to be heard on that at all?

24            MR. ETRA:  Yes, your Honor.  The people at the

25    facility feel otherwise.  They feel that this condition

1    developed because of the facility, and will be exacerbated

2    every day that I stay in the facility.  Being very difficult to

3    both treat, because in order to be treated, it needs to be

4    treated at an institution, not the MDC itself.  To take me to

5    the institution that I went to once is a full day's activity.

6    And this is not something that they normally do, because they

7    normally do not keep people with that condition.  It also is

8    something that the people at that institution confirm that this

9    is not something to be treated lightly and needs to be treated

10   immediately.

11          As we speak, your Honor, I can't focus and read.  I've

12   spent six days in lockdown unable to read, which is what I

13   would do otherwise.  And you may or may not notice, but my eyes

14   have very much unfocused.  They hope to be able to get to the

15   point within a week or two that I can refocus them on reading

16   material.  But this is not a condition that they feel should be

17   on the part of a person that's incarcerated.

18          THE COURT:  Who is "they"?  Who is the "they"?

19          MR. ETRA:  The doctors and the people in the MDC.

20          THE COURT:  So the MDC has not communicated to me that

21   they think they cannot handle your medical condition.

22          MR. ETRA:  I would ask them to communicate with you if

23   you so wish, your Honor.

24          THE COURT:  I communicated to find out that you

25   confirmed that you had been to the doctor and that you were

N3S3BENH

1    given drops.  None of that communication suggested that they

2    thought they were unable to care for you.

3              MR. ETRA:  They have been unable to get me a second

4    appointment or coordinate doing that.  And I said we have been

5    kept in lockdown for six days, unable to have a treatment which

6    I might have.  They were going to try for one this week, they

7    are going to try for one next week.  This is not indicative of

8    being able to cope with this condition or the fact that they're

9    holding a person with that condition in my situation.  As I

10   say, I can't -- I can't at present focus and read.  I can

11   barely just see out.

12             THE COURT:  I would suggest you put your glasses on.

13   That might help you focus.

14             MR. ETRA:  The glasses is more protection against the

15   light, your Honor.

16             THE COURT:  Be that as it may.  The protocol that you

17   had very few objections to is going to give you, assuming your

18   Fifth Amendment assertions is overruled, it's going to give you

19   15 days from the time the hard drive is delivered to you in the

20   facility.  It was written for 15 business days.  I was going to

21   change it to 15 calendar days.  But the question is, is 15 days

22   going to be enough.  And I'm not asking you to tell me because

23   you are asserting your Fifth Amendment privilege.  But you

24   yourself have a sense of what the volume of materials on your

25   computer and in your electronic accounts and on your phone is.

N3S3BENH

1    And remember, I'm only interested in claim of privilege,

2    assuming that your Fifth Amendment rights are denied.

3            The question is, is that enough time?

4            MR. ETRA:  Your Honor, I would like to be able to

5    answer that question.  I don't know what ability I will have at

6    the institution to do what you propose for me to do.

7            THE COURT:  It will --

8            MR. ETRA:  We cannot --

9            THE COURT:  Are you going to talk or do you want me to

10   talk?

11           MR. ETRA:  No, your Honor.  I am going to try to

12   answer your question if you I may.

13           THE COURT:  Let me explain to you what I know you are

14   going to have.

15           MR. ETRA:  Okay.

16           THE COURT:  The hard drive can be delivered to you in

17   the unit.  So it can be maintained in the unit.

18           MR. ETRA:  I don't know what facilities for

19   maintaining it are in the unit.  I know in the unit I cannot do

20   it.  Whether you can do it in another part of the facility is a

21   question to myself as well as to your Honor.  I know in the

22   unit, I can do nothing.  We can have no electronic equipment in

23   our unit.

24           THE COURT:  There is a computer available on your unit

25   to review discovery.

N3S3BENH

1          MR. ETRA:  But not for this purpose.

2          THE COURT:  Yes, it is.  It will be available for you

3     for this purpose.

4          MR. ETRA:  Again, I will be happy to look into it.

5     Because so far as I can see, in the almost four months I've

6     been there, what you're proposing doesn't seem to be done by

7     anybody.

8          THE COURT:  You'll be unique, Mr. Etra.  I suspect you

9     are a unique person on that unit in any event.  But there are

10    computers on the unit that the hard drive can be plugged into.

11         MR. ETRA:  As you correctly ascertained at the

12    beginning of our discussion, I'm not a space cadet adroit with

13    computers.  That has never been my expertise.  And the other

14    factor is the timing.  There are only a certain number of

15    computers for 160-odd people.

16         THE COURT:  Nobody uses the computer.  You've never

17    seen anybody use the computers.  So two computers is

18    sufficient.

19         MR. ETRA:  I said I've seen nobody use the computer

20    for the purpose that we are discussing.  And I'll give you an

21    example of the last six days of our lock in.  They turned off

22    the computers and they turned off the telephones.  So if you

23    are giving me 15 days, they may be 15 days that we're locked in

24    and computers are not available.  So we're dealing with reality

25    other than expectations.  I understand what your Honor is

N3S3BENH

```
 1   looking for, and again, being who I am, which is not
 2   particularly skillful with the computer, and seeing the
 3   facility there, which it is very, very hard pressed to have
 4   access to the computer, and the facility seems to be on a tear
 5   for locking us in.  This week we've been locked in more than
 6   locked out.  From Wednesday until Monday night, we've been able
 7   to take one shower, not use the computer.  This morning I only
 8   found out about this hearing because they finally let us out
 9   our unit at a time.  So the use of the computer is very, very
10   limited, your Honor.
11           THE COURT:  Okay.  Well, when you get the hard drive,
12   if you need more time, you can request it.  But just be aware
13   that my patience is limited on this.
14           MR. ETRA:  Yes, your Honor.
15           THE COURT:  Also, could you give me a sense of what
16   kind of claims of privilege there may be?
17           MR. ETRA:  I can't at the moment, your Honor.  Thank
18   you.
19           THE COURT:  Okay.
20           Mr. Fishbein.
21           MR. FISHBEIN:  Yes, your Honor.
22           THE COURT:  Mr. Etra indicated that you told him you
23   don't represent him for any purpose.  Could you inform me what
24   in fact you have advised your client.
25           MR. FISHBEIN:  I assume I'm free to speak on
```

N3S3BENH

1    attorney-client conversations.

2              THE COURT:  On this subject in particular, because he

3    has represented to the Court that you told him that you do not

4    represent him for any purposes, other than being a mail

5    delivery service.

6              MR. FISHBEIN:  I did tell him I am a mail delivery

7    service in that I am authorized to file matters on his behalf,

8    that I am not allowed to create the papers themselves, or at

9    least that's a restriction.  And that when he asks me general

10   advice, I can't give him any.

11             I have given him the advice that it's my opinion that

12   the quickest way for him to get released is to comply to the

13   utmost with the Court's orders.  He did discuss the

14   compassionate release issue with me.  I explained to him what I

15   believed compassionate release was for, but he did ask me to

16   submit the letter.  I did.  Ms. Di Chiara, who was in my stead

17   while I was away, also had limited authorization.  But we did

18   go see him that morning, just so we'd have a face to face and

19   have the ability to think of him as in a human image, rather

20   than some abstract.

21             Beyond that, I don't think I discussed my

22   representation with him.  I think he has asked for a bail

23   application.  I said I don't believe it would lie at this

24   point.

25             THE COURT:  It won't.

N3S3BENH

1          MR. FISHBEIN:  I know.  Because I read the Court's

2     order, and the Court's order was relatively new, and I've

3     looked at civil contempt and the amount of time that it turns

4     from being coercive into punishment.  And it was my opinion, I

5     told him, that we're not there yet.

6          THE COURT:  Let me say one other piece that, to be

7     clear, you do have the authority to represent him.  If there

8     comes a point where, in your best legal judgment, he has

9     substantially complied, then that is what I read the Second

10    Circuit as saying an unrepresented person is entitled to a

11    lawyer for that, to make those sorts of arguments relative to

12    getting him out.  So you're authorized to do that.

13         I will assure you if you made that motion right now,

14    it would be denied, because he clearly has not made a

15    good-faith effort to comply with the order.

16         MR. FISHBEIN:  I did explain to him as an attorney I

17    should only be filing things that I believe are not frivolous.

18         THE COURT:  Okay.

19         Anything further from Benthos?

20         MS. BENINTENDI:  Your Honor, we did just want to note

21    that we received a payment of $2,000 on behalf of Mr. Etra

22    yesterday.

23         THE COURT:  Great.

24         MS. BENINTENDI:  This does evidence that when he has

25    an incentive do so, he does make payments.  Today has

N3S3BENH

1    demonstrated that Mr. Etra is desperate to avoid having us see

2    his communications and is evidence of further stalling on his

3    behalf.  The further stalling is going to lead to additional

4    expenses on our behalf.  So we would respectfully request that

5    your Honor would order an additional payment to help defray

6    some costs of the forensic examination.

7             THE COURT:  I reserve the right to do that, but let's

8    see what the bill is before we get to that point.  Okay.

9             MS. BENINTENDI:  Thank you, your Honor.

10            THE COURT:  Today was relatively wasted since Mr. Etra

11   has now decided he's got a Fifth Amendment privilege and he

12   can't produce bank documents or anything else apparently.

13            Mr. Etra, anything further from you?

14            MR. ETRA:  No.  Thank you, your Honor.

15            THE COURT:  All right.  Thanks, everybody.  Two weeks.

16            (Adjourned)

17

18

19

20

21

22

23

24

25