N4E8BENC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    BENTHOS MASTER FUND, LTD.,

4                    Petitioner,

5           v.                              20 Cv. 3384 (VEC)

6    AARON ETRA,

7                    Respondent.

8    ------------------------------x

9                                          New York, N.Y.
                                           April 14, 2023
10                                         11:05 a.m.

11   Before:

12                      HON. VALERIE E. CAPRONI,

13                                         District Judge

14                           APPEARANCES

15

16   AARON ETRA, Pro Se

17   HARVEY FISHBEIN
     LAUREN DiCHIARA
18       Attorneys for Respondent

19

20   Also present:

21       MARC SKLAR, Power of Attorney
         PARVIN MOYNE, CJA Attorney
22

23

24

25

N4E8BENC

```
 1              (In open court; case called)

 2              THE DEPUTY CLERK:  Please state your appearance.

 3              MR. FISHBEIN:  Harvey Fishbein for Mr. Etra.

 4              THE COURT:  Good morning, Mr. Fishbein.

 5              MS. DiCHIARA:  Good morning, your Honor.  Lauren

 6    DiChiara for Mr. Etra.

 7              Good morning Ms. DiChiara.

 8              Good morning, Mr. Etra.

 9              We were all brought together here today by Mr.

10    Fishbein's letter dated April 11, 2023.

11              For the record, I made it optional for Benthos whether

12    they wanted to come or not, which really doesn't affect them.

13    They have apparently opted not to come, which is fine.

14              So I got a letter dated April 11 from Mr. Fishbein.

15    The letter was filed under seal.  Let's address that first.

16              Mr. Fishbein, I don't see any reason why that letter

17    should be under seal.  I get letters like that all the time on

18    the open docket.

19              MR. FISHBEIN:  I don't have a problem with it, Judge.

20    I wanted to leave it to the Court's option.

21              THE COURT:  Mr. Etra, do you want to be heard on

22    whether that letter should remain under seal?

23              MR. ETRA:  I haven't seen the letter, Judge, but I

24    have no reason to object.

25              THE COURT:  Please refile it on ECF.
```

1          MR. FISHBEIN:  Very well, Judge.

2          THE COURT:  Mr. Etra, you say you haven't seen the

3     April 11 letter.  The April 11 letter says in full, or in

4     relevant part, this is from Mr. Fishbein:  "Unfortunately, I

5     write to your Honor to request that I be relieved.  Mr. Etra

6     has repeatedly expressed a lack of trust in confidence in me as

7     a lawyer and it has reached the point that I am in a conflicted

8     position and cannot continue to represent him."  Accordingly,

9     he requests that he and Ms. DiChiara be relieved as counsel.

10          Do you want to be heard on this?

11          MR. ETRA:  Can I be heard on that, your Honor?

12          THE COURT:  Yes.

13          MR. ETRA:  When Mr. Fishbein and Ms. DiChiara came out

14     to visit with me at Brooklyn MDC, they made it very clear that

15     they were not my lawyers, which I think I mentioned at our last

16     hearing.  At that hearing, you indicated that they were also

17     empowered to do a motion if they felt good that faith had been

18     done, and, also, if incarceration ceased to be coercive.  I

19     feel very strongly that the incarceration has ceased to be

20     coercive.  I can't read, essentially.  Since our last hearing,

21     I have not had the second visit to the doctor in four months

22     that was mandated way back when.  I sit in my cell, which is

23     now greatly locked down because of the warden's policy, and I

24     have yet to be able to go to the doctor.  I can't go to the

25     doctor.  I have felt, again, very strongly that the conditions

1    in Brooklyn MDC, for reasons totally unrelated to me, are such

2    that I cannot function.  Certainly now, with my glaucoma, I

3    can't function.  And a motion that the incarceration has ceased

4    to be coercive is timely.  That's all I pointed out to Mr.

5    Fishbein, that as my lawyer, and as the judge has mandated,

6    that is something that I would appreciate his doing.  I have

7    never said things beyond what I thought was their role to do,

8    since our last hearing, and I never requested his resignation

9    or supported his resignation.

10          So that's the reality of the situation.  That my

11   incarceration -- actually, since December 14, I haven't been

12   able to do anything really.  And now with my glaucoma, I can't

13   see to do anything that I would want to do.  And I can't seem

14   to get my therapy, and my eyesight is slipping away.  So that

15   was not only not a frivolous motion, but I thought a timely

16   motion to be made.  And I requested that it be made by him.  I

17   am happy to have whomever your Honor chooses to do the mandate

18   that you have given them to do.  That's all I ask.  I ask to

19   have the things that you have approved to be done to be done.

20   I personally feel that there is no question about my ability to

21   do what your Honor wants, that the good faith effort is

22   infinitely better with my nonincarceration, and empowering

23   rather than hobbling, so that I can function on what really

24   needs to be done to settle this matter, and to work diligently

25   on doing that.  If I could be doing that, if I could go to the

N4E8BENC

1    emergency room of the hospital and start my therapy, I could

2    then hope to maintain my eyesight and improve my eyesight and

3    start to do the work that really I want to do on this matter

4    and every other matter.

5              So that's the reality of the case.

6              With respect to Mr. Fishbein and Ms. DiChiara, it's

7    really a question of your Honor.  All I ask, whomever you

8    choose, is to do what you have mandated their roles.  You have

9    limited their roles.  I do need help on other aspects of the

10   case.  But, more importantly, for the case and for your Honor,

11   my incarceration is counterproductive, it's not productive,

12   it's not coercive.  There is nothing staying in that jail for

13   criminals does to advance this case.  And my medical service

14   there, who has contacted their legal service, who contacted Ms.

15   Gallicchio, has indicated they just can't deal with situations

16   like mine.  They have never come across a civil contempt that's

17   been in for four months and developed glaucoma while there, and

18   would love me to be treated and to get out, but they can't do

19   it.  The warden mandates lock-ins.  They can't take me out of

20   the lock-ins to get me to the hospital.  So I have had one

21   visit with one doctor one time in four months, and they have

22   not fulfilled what the doctor ordered to have me treated.  If I

23   am out, I can go myself to the emergency room.  I can also go

24   to the hospital plan that I am part of to be treated, and I can

25   regain my eyesight, or maintain my eyesight, and then I can

1    really work on this case and work on things that I really

2    should do.

3             So that's the background to this.  I have nothing

4    against Mr. Fishbein or Ms. DiChiara.  Again, I have not asked

5    them to resign.  I have supported them being maintained in

6    their position.  But I have said to them, and I say to you,

7    your Honor, it's totally up to you who fulfills your mandate.

8             THE COURT:  Mr. Etra, let me interrupt you long enough

9    to say, I have not mandated that a motion be made on your

10   behalf at this time.  You have lawyers, and the reason that you

11   have lawyers on that issue is, you are entitled to appointed

12   counsel for that purpose.  But attorneys, as you know, cannot

13   make motions if they don't believe it's a good faith motion.

14   They can't make a frivolous motion.

15            So, I don't want to get into what has been the

16   conversation between you and Mr. Fishbein and Ms. DiChiara

17   about any motions that are or are not to be made.  Let me

18   remind you that you have the keys to your jail cell in your

19   pocket.  If you will comply with the order, you will be

20   released from prison.  If you even demonstrate a good faith

21   effort, then you're in a better position to argue that the

22   coercive aspects of incarceration have done their trick and you

23   are on your way to full compliance.  Right now you are nowhere

24   close to that.  You have not demonstrated a good faith effort

25   to comply at all, unless there is evidence that I haven't seen.

N4E8BENC

```
 1    But based on what Benthos has shown me, in terms of what has
 2    been produced, there has been no good faith effort to comply.
 3    But let's set that on the shelf.
 4              Mr. Fishbein.
 5              MR. FISHBEIN:  Judge, I appreciate that issue of not
 6    getting into the specific conversations, because I don't
 7    believe it would help Mr. Etra.
 8              THE COURT:  It's not going to be productive.
 9              MR. FISHBEIN:  That's correct.
10              THE COURT:  Had there been any motion that you believe
11    there was a good faith basis to make that you and Ms. DiChiara
12    decided not to make?
13              MR. FISHBEIN:  If I thought there was a good faith
14    basis, I would make the motion.  In fact, many of these issues
15    have been raised before you, even at our last court appearance.
16              THE COURT:  Correct.
17              MR. FISHBEIN:  And the issues were raised and you made
18    it very clear that you rejected any of those arguments.  To
19    then put it into a motion, after you have made it very clear
20    that you have rejected it on the record, which is the record, I
21    explained that to Mr. Etra.  And I have also explained to him
22    that if he spent as much time on writing me about what I should
23    be doing, doing what the Court has asked, we might be in a
24    different situation.
25              THE COURT:  I am confident of that.
```

N4E8BENC

1         MR. FISHBEIN:  Bottom line is that he has questioned

2    his trust in me, my competence, and also my loyalty to him as

3    an attorney rather than my loyalty to the Court as an officer

4    of the court.  That has placed me in a very difficult position.

5    Because if I do, it sounds like I am doing it only because I

6    was personally insulted.  If I don't, I am setting myself up

7    for a problem.  So I am in an untenable position.

8         THE COURT:  I understand.

9         Mr. Etra, here's the thing.  Under the law, you had a

10   right for me to appoint an attorney for these very limited

11   purposes associated with your incarceration and civil contempt.

12   Everything about Mr. Fishbein's communication with me lead me

13   to believe that he fully understands what the limits of his

14   representation are.  Which is very unusual; this is an unusual

15   circumstance that I have put the lawyers in, where they are

16   representing you for a very limited purpose.  And the bigger

17   thing, which is your civil contempt, you are responsible for.

18   You are responsible for finding someone on the outside -- I see

19   Ms. Sklar is here -- finding someone who will take the steps

20   that have to be taken to get the records that you need to get

21   and to produce, take the steps to get the money that you are

22   obligated to pay because you paid it in violation of the

23   restraining order.  All of those things are your

24   responsibility.  They are not Mr. Fishbein's, Ms. DiChiara's,

25   or whomever else I appoint to replace them.  So do not

N4E8BENC

1    misunderstand that.  That is your responsibility.

2              MR. ETRA:  Your Honor, I understand fully.  But you

3    must understand that my good faith effort has been to do what I

4    can in my position incarcerated.

5              THE COURT:  I understand that, but you have made no

6    showing to me that you have made a good faith effort.

7              MR. ETRA:  I beg to differ.  My power of attorney

8    appointee, who I was only able to appoint four weeks plus into

9    my incarceration because my then attorney went off on vacation

10   without giving me the form to do so.

11             THE COURT:  Just to be clear, Mr. Etra, because you

12   have made that statement before about Ms. Gallicchio.  Ms.

13   Gallicchio is a very, very fine lawyer.  It was not her

14   responsibility to deliver to you a blank power of attorney.

15   That was above and beyond.  It was very kind of her to do it,

16   and for you to suggest that she somehow was negligent or

17   irresponsible is really, really unacceptable.

18             MR. ETRA:  Your Honor, the understanding that I had

19   was that she would fulfill the role of power of attorney

20   initially, which she did not.

21             THE COURT:  Well, I don't know why you had that

22   understanding because --

23             MR. ETRA:  I understood --

24             THE COURT:  Mr. Etra, I am going to tell you this one

25   final time.  Do not talk over me.

N4E8BENC

1              MR. ETRA:  I'm sorry, your Honor.

2              THE COURT:  I don't know why you would have thought

3     that.  That was not what Ms. Gallicchio was appointed to do.

4     Be that as it may, simply giving someone a power of attorney,

5     Mr. Etra, does not constitute a good faith effort to comply

6     with the order that has been entered in this case.  You are

7     going to have to show far more than that you gave Mr. Sklar a

8     power of attorney and that Mr. Sklar reports that he has had

9     oral conversations with banks.  You need documentation, to the

10    extent it is true, which I seriously doubt, that you cannot get

11    the records you have been ordered to produce.  There needs to

12    be evidence.  If you don't know what that means, I suggest you

13    talk to people, do a little legal research, in terms of what is

14    going to constitute adequate evidence that you have made a good

15    faith effort to comply with the order and you are unable to

16    comply.

17             MR. ETRA:  Your Honor, I think my power of attorney

18    has reported on his not only oral, but his efforts, his best

19    efforts, which I certainly can echo, because before him I was

20    doing hundreds and hundreds of pages of that work to the court,

21    if your Honor will recollect, and I spent days to try to get

22    banks to give me these records of old and closed accounts, and

23    even current accounts, and this does not happen without much,

24    much effort, which he has made.

25             So I think it's totally unfair to him, and totally

1    unfair to me, to say that a good faith effort has not been

2    made.  I make the point that, as far as my effort, keeping me

3    incarcerated and locked in in Brooklyn MDC, and asking me to do

4    more than what I can do, and especially now that I can't even

5    see clearly, and I can't even read clearly, is not realistic.

6    And I suggest to your Honor that if you really want to do and

7    judge me on a good faith effort, you empower me rather than

8    hobble me.  Because if you select a period of time and you say,

9    Mr. Etra, you have three weeks, four weeks from when you get

10   your sight back to do this, and to do compliance, and to do all

11   the things -- actually, the settlement, which is really the

12   answer to this case, I have no money.  So as far as purging

13   contempt, I can't purge contempt with nonexisting funds.  And

14   the funds that I have been accused of violating the restraining

15   order over six years is nowhere near the amount that Benthos is

16   looking for for a settlement.

17          So the effort on my part is to realize that

18   settlement.  And if your Honor would empower me instead of

19   keeping me incarcerated, instead of taking away my computer and

20   my cell phone, if you have a period of time when I am out and I

21   can get therapy, I can go to the hospital instead of not going

22   to the hospital, where I can see instead of not seeing, asking

23   me to do legal research when I can't see, asking me to do legal

24   research while incarcerated, while locked in, is unrealistic.

25   I beg of your Honor to do what really you want, give me an

N4E8BENC

1    opportunity to do what you want.

2              THE COURT:  Mr. Etra, we have tried that.  I did that.

3              MR. ETRA:  You didn't.  You put me in incarceration on

4    December 14.

5              THE COURT:  Mr. Etra, you had two and a half years to

6    produce the materials.  You had two and a half years to comply

7    with the restraining order.  You failed to do it.  So don't

8    give me that.  You made no good faith effort to comply with the

9    orders.  You still have not demonstrated.  I don't know what

10   Mr. Sklar has done.  What I am telling you is I don't have

11   evidence in front of me that a good faith effort has been made

12   to comply.  But let's quit talking about this because at the

13   moment the issue is counsel.

14             If I relieve Mr. Fishbein, and Mr. Fishbein has made a

15   colorable showing that because you have accused him of failing

16   to do his duty, and have accused him of having divided

17   loyalties between the Court and you, that he is going to need

18   to be relieved.  If I relieve him and appoint a new attorney,

19   you need to understand the following facts.  These facts are

20   not negotiable.  Listen to me.

21             If I relieve him and appoint new counsel, this is a

22   one-time change of counsel.  You have a constitutional right to

23   counsel.  You do not have a constitutional right to your choice

24   of counsel.  And you do not have a constitutional right to

25   abuse the counsel who are appointed to represent you.  So it is

N4E8BENC

1    a one-time change.

2            The same limits on representation will exist for new

3    counsel as exists for Mr. Fishbein and existed for Ms.

4    Gallicchio.  They represent you solely for purposes of your

5    incarceration.  So they can make a motion because they believe

6    in good faith that they have a legal basis to move that the

7    coercive aspects of detention no longer exist, or that you have

8    made a good faith effort to comply and therefore have purged

9    contempt.  That is the limit of the appointment for

10   representation.

11           If you do not like the new attorney and find that they

12   also will not simply do whatever you want, whether they believe

13   there is a legal basis to do it or not, then your choices are

14   three:  you stay with that attorney and suck up your

15   disagreement with them; you hire counsel to represent yourself;

16   or you represent yourself, including on the issue of getting

17   out of jail and making the appropriate motions to have you

18   released from jail.

19           Do you understand that those are the rules?

20           MR. ETRA:  Yes, your Honor.

21           THE COURT:  Do you want to think about whether you

22   change counsel before I relieve Mr. Fishbein and appoint new

23   counsel?

24           MR. ETRA:  As I have, I think, indicated to Mr.

25   Fishbein, or also sharing with you, your Honor, I am totally

N4E8BENC

1    open to your decision.  I think Mr. Fishbein --

2             THE COURT:  I don't know what that means.

3             MR. ETRA:  In other words, yes.  If Mr. Fishbein is

4    unhappy about my discussions with him, which, again, I think

5    have been not adversarial but trying to be collegial, trying to

6    get my lawyer to act as a lawyer, exactly as you have described

7    it, your Honor --

8             THE COURT:  I'm sorry.  Mr. Etra, did you say that you

9    were trying to get your lawyer to act as your lawyer?

10            Let me be clear to you, Mr. Etra.  Mr. Fishbein is a

11   very good lawyer.

12            MR. ETRA:  Yes.

13            THE COURT:  He understands his obligation and is loyal

14   to you, but he has a professional responsibility that you need

15   to think about.  I am aware that you and the rules of ethics

16   parted company at periodic times when you were functioning as a

17   lawyer.  Mr. Fishbein has a sole duty to represent you, but he

18   has to do so consistent with the law.  He cannot make a motion

19   that there is not a good faith basis in fact and law to make.

20            Go ahead.

21            MR. ETRA:  I do understand that, and that's the basis

22   on which I asked him to make the motion on the issue of the

23   cessation of incarceration to being coercive and being

24   excessively punitive.

25            THE COURT:  It is not excessively punitive and it has

1    not lost its coercive aspect.  You are long away from where it
2    loses its coercive aspect.
3              MR. ETRA:  All I can say, your Honor, is the person
4    who is suffering from it, which is me, and the criminal
5    facility, which is where I am, and both the inmates and the
6    guards and the staff feel as I do, that I am totally -- it's
7    inappropriate for me to, in my physical condition with
8    glaucoma, and also the blood cancer and other situations, to
9    rely on that facility to adequately provide custodial help,
10   custody which gives me access to medical services which I need.
11             THE COURT:  Then I suggest you comply.
12             MR. ETRA:  With my failing eyesight, I can't do the
13   legal research that your Honor is asking me for.
14             THE COURT:  Mr. Etra, I am not asking you for any
15   legal research.  I am asking you to comply with an order that
16   has been outstanding now for months.
17             So I hear you saying, yes, you want a new lawyer.
18             MR. ETRA:  Yes.
19             THE COURT:  With the thanks of the Court, Mr. Fishbein
20   and Ms. DiChiara, you are relieved.
21             You don't have to leave right this minute.
22             Mr. Fishbein's letter dated April 11, Mr. Etra, said,
23   in the final paragraph, "On a separate but related issue, it is
24   my belief that Mr. Etra might need more time in order to
25   prepare his submission, which is due today."  That was due

N4E8BENC

```
 1    April 11, so it's past due.  That was your submission on your
 2    newly found claim that complying with the extant order would
 3    somehow violate your Fifth Amendment right against compelled
 4    self-incrimination.
 5             So, just to be clear, and this is more for the new
 6    attorney that is coming in, it was not Mr. Fishbein's job to
 7    pass along your requests for an adjournment or an extension of
 8    time.  It's very kind of him to do that for you, but that's not
 9    his job.  I have not received a request from you for an
10    adjournment of time.  Do you want more time or are you now
11    abandoning that request?
12             MR. ETRA:  Do I gather that Mr. Fishbein did not
13    submit what I submitted to him for submission to you, your
14    Honor?
15             THE COURT:  I didn't get anything.
16             MR. ETRA:  I submitted to him in a timely fashion, by
17    my power of attorney, by Mr. Sklar, on the 10th, for submission
18    to you on the 11th.  So I complied as far as timing goes.
19             THE COURT:  So you have a submission that is ready?
20             MR. ETRA:  I submitted it at that time.
21             THE COURT:  Mr. Sklar, do you have the submission?
22             MR. SKLAR:  It was a draft document that he gave to me
23    and I passed that on to Mr. Fishbein.
24             THE COURT:  How did you send it to him?
25             MR. SKLAR:  By e-mail.
```

N4E8BENC

```
 1                THE COURT:  Mr. Fishbein.

 2                MR. FISHBEIN:  I have a writing, but it's not

 3     something that would be submitted to your Honor.  It's notes.

 4                MR. ETRA:  It's not notes, Mr. Fishbein.

 5                THE COURT:  If that's what they want to submit, Mr.

 6     Fishbein, please, if you have got it in hard copy I will take

 7     it, and we will take care of getting it filed on ECF.

 8                MR. FISHBEIN:  I don't seem to have a hard copy with

 9     me.  It came to me by e-mail.

10                THE COURT:  If you could simply -- are you positive

11     that you sent it?  And it sounds like you agree you received

12     it.

13                Can you show it to Mr. Sklar and Mr. Etra and make

14     sure we are talking about the same document?

15                MR. FISHBEIN:  We do, Judge.  It's an accumulation of

16     a lot of different things that --

17                THE COURT:  That is what I expect I was going to get.

18                Does it address the issues of why there is an act of

19     production?

20                MR. ETRA:  Mr. Sklar can send it directly to your

21     Honor.

22                THE COURT:  I don't want Mr. Sklar communicating

23     directly with the Court.

24                MR. ETRA:  Maybe via a new attorney.

25                THE COURT:  We are going to get your submission from
```

N4E8BENC

1    Mr. Fishbein.

2            MR. ETRA:  I hope so.  It does indicate a little bit

3    of inaction on his part.

4            THE COURT:  Mr. Etra, does it address the issues that

5    you were supposed to address, which is why --

6            MR. ETRA:  My best efforts to do that.

7            THE COURT:  I really would ask you not to interrupt

8    me.

9            MR. ETRA:  I'm sorry, your Honor.  I thought you had

10   asked a question.

11           THE COURT:  Does it address the issues of why

12   producing third-party documents violates your Fifth Amendment

13   right against self-incrimination?

14           MR. ETRA:  It's my best efforts to answer that, your

15   Honor.

16           MR. FISHBEIN:  I have it, Judge.  I have an e-mail

17   from April 10.  It is an e-mail from -- it seems to be a copy

18   of an e-mail that Mr. Etra sent to Marc Sklar.

19           The first paragraph, very briefly, "Hi, Marc, here is

20   the draft for your review and transmittal to Harvey for filing

21   Tuesday.  He should wait for any latest revisions."

22           Then it goes on and it really talks about his illness,

23   the impossibility of doing any kind of research, pretty much

24   what you just said.

25           MR. ETRA:  Your Honor, could I request --

N4E8BENC

1        MR. FISHBEIN:  He asks for an attorney to be appointed

2  to help him on the Fifth Amendment arguments.

3        THE COURT:  That's denied.

4        MR. FISHBEIN:  That he be immediately released from

5  MDC so he can get needed therapy.

6        THE COURT:  Denied.

7        MR. FISHBEIN:  That with his release and to the extent

8  that the eyesight and health condition permit, he would be able

9  to facilitate getting materials to you.

10        THE COURT:  It sounds like the same thing that we

11  heard today.  But be that as it may, please file it.

12        That's your attempt, Mr. Etra, is that correct, to

13  comply with the order?

14        MR. ETRA:  I would rely on Mr. Sklar to provide to Mr.

15  Fishbein, if he is the one that is going to give it to your

16  Honor, without the introduction, the full text with the

17  revisions, which were sent to him, in addition, sent to him.

18        THE COURT:  No revisions were received?

19        MS. DiCHIARA:  No.

20        MR. ETRA:  Again, if I could have Mr. Sklar send to

21  Mr. Fishbein the submission with all revisions and so on, then

22  I would be happy for that.

23        THE COURT:  Can I just ask a question?

24        Mr. Sklar, are you an attorney?

25        MR. SKLAR:  No.

N4E8BENC

1          MR. FISHBEIN:  Judge, I know I have been relieved, and

2     I know I was appointed for a limited purpose, but the Fifth

3     Amendment claim that he has raised is of interest because it's

4     my understanding that he has been threatened with referral to

5     the U.S. Attorney's Office.

6          THE COURT:  A long time ago, yeah.

7          MR. FISHBEIN:  And that there are times he has said "I

8     don't have documents" on the record.  And, of course, if he

9     were to produce those documents, that would be a 1001

10    violation.

11         So there are some aspects to this Fifth Amendment

12    claim that do make sense.  I am not a Fifth Amendment expert,

13    and I certainly haven't researched all this, but in view of the

14    fact that he could be inconsistent with what he said in the

15    past, I do see the basis for it.  That's all I am saying.

16         THE COURT:  That may be.  But there is law that

17    applies to such claims, and there has to be very specific

18    explanations for why complying with whatever specific order it

19    is constitutes an act of production where there is an act of

20    production problem.  No one is asking to create new documents,

21    other than a listing of his bank accounts.

22         Beyond that, I hear you.  This is, with all due

23    respect to Mr. Etra, this is the problem of his refusal to hire

24    an attorney to represent him.  And that is what it is.  But

25    this is a civil dispute.  He is incarcerated under civil

N4E8BENC

1    contempt.  If he wants to get out of civil contempt, he needs

2    to comply with the order, or show at least a good faith effort,

3    which he hasn't shown, or make a showing that there is some

4    Fifth Amendment claim.

5         He had years, years we have been trying to get these

6    documents.  There were years during which he could have

7    explained that he can't comply because he has previously said

8    things that are untrue, and if he complied with the order, that

9    would give up the fact that he lied to, I guess to the court,

10   under circumstances where a 1001 charge might lie.  But he

11   needs to do that because he is a *pro se* civil litigant.  And we

12   have got civil litigants in this courthouse all the time who

13   have all kinds of difficulties articulating what their position

14   is.  We don't name CJA lawyers for them.  There is no right to

15   a CJA lawyer in a civil dispute, which is what this is.  So I

16   appreciate what you're saying.  That is helpful in terms of

17   sort of generally understanding what he might be talking about.

18        The question, Mr. Etra, is, do you want Mr. Fishbein

19   to file the document that came in on the 10th, or do you have

20   amendments to that document that you want to make before it is

21   filed?

22        MR. ETRA:  If he would provide the documents that Mr.

23   Sklar provides the final form of, I would appreciate that being

24   submitted, yes, your Honor.

25        THE COURT:  Has Mr. Sklar provided the final version?

N4E8BENC

1          Mr. Sklar, have you provided a redraft?

2          MR. SKLAR:  Mr. Etra provided me a supplement, which

3     was just a couple of paragraphs, that I did forward to Mr.

4     Fishbein.  It was in an e-mail.  It was a lot of

5     correspondence.

6          THE COURT:  Do you know what date you sent that?

7          MR. SKLAR:  Probably the following day.

8          THE COURT:  The 11th?

9          MR. SKLAR:  Correct.

10         THE COURT:  Could you check your e-mail and see if you

11    have got another e-mail from Mr. Sklar that has two paragraphs

12    that should be appended?

13         MR. FISHBEIN:  There has been quite a number of

14    communications between Mr. Etra and myself and Mr. Sklar and

15    myself, and also Ms. DiChiara.  There are pieces of various

16    things in various e-mails.  So it's very hard for me to --

17         THE COURT:  Understood.  Let's do this.

18         Mr. Sklar, you had a two-paragraph addendum?

19         MR. SKLAR:  Yes.

20         THE COURT:  You are directed to e-mail that to Mr.

21    Fishbein this afternoon.

22         Mr. Fishbein, append that to what he sent you before

23    and file it on ECF.  That's your last official act.  If it

24    doesn't come in this afternoon as a stand-alone e-mail that

25    says, this is what the judge told me to send you, if it doesn't

N4E8BENC

1    come by the end of today, it's done, I am not going to consider

2    it.  Okay?

3             MR. FISHBEIN:  Yes, Judge.

4             THE COURT:  Is that acceptable to you, Mr. Sklar?

5             MR. SKLAR:  Yes.

6             THE COURT:  Again, I have relieved Mr. Fishbein with

7    the exception of his hanging chad assignments.

8             I am going to appoint the CJA attorney who is on duty

9    today and who has been sitting here and listening to what is

10   going on in this case.

11            Ms. Katherine Goldstein, correct?

12            MS. MOYNE:  I am Parvin Moyne.

13            THE COURT:  Ms. Moyne is appointed to represent Mr.

14   Etra.  I direct you to review the docket.  There is an order

15   that lays out exactly what the limits of the representation

16   are.  It invites you, if you have a question about whether

17   something is covered or not, that you are free to ask the Court

18   for clarification.

19            Mr. Etra, let me give you some unsolicited advice.  In

20   order for you to prove to me that you have made a good faith

21   effort to comply, you are going to need documentation.  So

22   instead of just calling the bank, or calling American Express,

23   or calling a credit card company, you need or your power of

24   attorney needs to write a letter, which you keep a copy of.

25   Ideally, you figure out who specifically within the company it

N4E8BENC

1    needs to be sent to.  That letter should call for a written

2    response.  Then when the bank responds and says, this is a

3    closed account, we are not giving you the records, or more

4    likely says, this is an open account and here are the records,

5    then you have got documentation of when the request was made

6    and when the bank responded.  You telling me that Mr. Sklar

7    tried hard, and Mr. Sklar telling me that he has wandered into

8    banks with your power of attorney and asked for records and he

9    hasn't gotten any, doesn't do it.  We have done that.  We have

10    done the mushy evidence.

11         So, to the extent you want to show that there has been

12    a good faith effort to comply, that's what you need to do.  To

13    the extent you believe that you cannot comply with the

14    requirement to pay money because you do not have money, you

15    have got to come up with evidence that you don't have money.

16    Right now you just saying I don't have money doesn't do it,

17    because I have seen enough of your bank records to know that

18    significant funds are moving in and out of accounts.  So maybe

19    you need a forensic accountant.  I don't know what you need.  I

20    can't tell you what to do on that.  What I can tell you is, you

21    saying I don't have money won't do it.  That is not adequate

22    proof in this case, because you have been untruthful with the

23    Court on repeated occasions, and therefore you have no

24    credibility.  So someone without credibility saying I don't

25    have money doesn't do it.

N4E8BENC

1              So, do you have any questions for me?

2              MR. ETRA:  Again, I commend to your Honor, I think

3      what you're saying is my new attorney, it's up to her to make,

4      if she feels she can do so, any motions on those issues that

5      you have indicated.  Do I understand that correctly?

6              THE COURT:  That's limited to whether you have

7      complied with the order or the order is no longer coercive.

8      Or, if there is evidence that you have made a good faith effort

9      to comply, but thus far I have seen no evidence of that.

10             MR. ETRA:  Your Honor, can the Court assist me in any

11     way with respect to what I am facing in the way of the physical

12     limitation at Brooklyn MDC?  Is that absolutely necessary to

13     have this incarceration, as opposed to my ability to make a

14     good faith effort without it and make a good faith effort with

15     my equipment set up without it?

16             THE COURT:  No.  The keys to your cell are in your

17     pocket.  Comply with the order and I will let you out of jail.

18     If you don't comply with the order, then you can continue to

19     sit in jail.

20             MR. ETRA:  What I am saying to your Honor is my effort

21     and intention has been to comply.  But from where I am

22     incarcerated, I can do what I have been doing, and I cannot do

23     more.  I can obviously encourage, as I have, my POA to do what

24     he has done, and I think he hears your documentary evidence

25     requirement, and I am sure we will fulfill it.  But keeping me

N4E8BENC

1    incarcerated and not letting me get the therapy that is going

2    to preserve my eyesight I don't think is necessary for what we

3    are talking about.  You want a good faith effort.  Benthos

4    itself recognizes the only way is not to continue to hammer me

5    and turn the screw on me.  Because they know what little funds

6    I have.  The numbers that they have come up with, six years of

7    numbers, is obviously nowhere near a starting point for the

8    settlement that they are looking for, for this purpose, and

9    that they know I have been trying to get.

10          So I say to your Honor, really, the best way to do

11   what you want to achieve and what they want to achieve is the

12   settlement, which is something that I can do a lot for as well

13   as a good faith effort on compliance, but I can't do it losing

14   my eyesight, and I can't do it incarcerated in Brooklyn MDC.

15          THE COURT:  You know, Mr. Etra, there are people who

16   are incarcerated at MDC because they are awaiting trial and

17   they have at least as many health problems as you do, and they,

18   unlike you, do not have keys to their jail cell in their own

19   pocket.  So I suggest you double down on your efforts to comply

20   with my order, an order that started with Judge Nathan and that

21   you have had two and a half years to comply with, in order to

22   comply.  And if you comply or you can settle with Benthos, or

23   Benthos says we are not interested in Mr. Etra's documents

24   anymore, no one will be happier than me.

25          With that, thank you all.  (Adjourned)