

**Steven R. Popofsky**
*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

November 14, 2023

Hon. Valerie Caproni
United States District Court
40 Foley Square, Room 240
New York, NY 10007

Re:    **Benthos v. Etra, 20-CV-3384**

Dear Judge Caproni:

This letter, in compliance with the Court's order at Dkt. 403, will propose limiting the scope of Mr. Etra's review for privileged material. Preliminarily, however, Benthos urges the Court to be skeptical of the purported facts asserted in Mr. Etra's recent communications (including those channeled through his criminal counsel), and to bear in mind that his primary motive throughout this forensic process has been to delay the day when the information he has long concealed is revealed to Benthos and the Court.  With regard to the unsupported medical claims, Your Honor has ruled many times that Mr. Etra's mere "say-so" is not to be credited. We find it hard to believe that he truly "is unable to look at a computer screen for more than a few minutes," or that he cannot read printed material less than "a minimum of 20pt font" (Dkt. 398). For example, when we filed the letter at Dkt. 395, he responded 48 hours later; he seems always capable of doing what he perceives is in his interest and always professes inability to do what he prefers not to do.

In any event, as background for Your Honor, the Content Report generated for Mr. Etra's laptop showed approximately 59,000 documents (apart from e-mails), but around 52,000 of those (88%) appear to be photographs, in which Benthos has no present interest; the remaining 7000 documents are contained in 90 folders and sub-folders.  The Content Report also showed approximately 11,000 e-mails, but only 1745 unique senders/recipients.  Benthos proposes as follows:

- With regard to e-mails, an alphabetical list of the 1745 unique senders/recipients is attached as Exhibit A.  Mr. Etra should simply identify for Benthos and the Court those e-mail addresses with respect to which he contends his communications should be withheld as privileged, together with the "factual and legal basis for any [such] claim of privilege" as required by para. 6(b) of Dkt. 383. Benthos will then respond; the Court will adjudicate any disputes; and e-mails with the senders/recipients not deemed protected will be provided to Benthos.

  - While it is possible that additional information could be provided if necessary in a particular instance (for example, giving Mr. Etra names in



Hon. Valerie Caproni
November 14, 2023
Page 2

addition to e-mail addresses where the forensic expert could do that, or providing specific e-mails for the Court's *in camera* review), the intention is to severely limit any supplemental work, such that privilege claims over e-mail will be decided on a categorical, rather than e-mail-by-e-mail, basis. To the extent that any of Mr. Etra's privilege claims may have validity (which Benthos does not concede), Benthos realizes it may lose access to some non-privileged communications as a result of this process, but it is prepared to accept that possibility in service of the larger goal of expediting access overall.[1]  Given the circumstances, Mr. Etra should not be heard to complain, particularly as this process is more likely to advantage than to disadvantage him.

- With regard to documents, the short list of 90 (non-photo) folders and sub-folders is attached as Exhibit B.  Mr. Etra should simply identify for Benthos and the Court which folders/sub-folders may contain documents he may contend should be withheld as privileged.  The forensic expert will then provide Mr. Etra (through his criminal counsel and Mr. Sklar, copying the undersigned) with a Streamlined Content Report (in .pdf and Excel formats) for what should be only that limited set of folders and sub-folders.

  o At that juncture, Mr. Etra would identify which documents he contends should be withheld as privileged, again together with the "factual and legal basis for any [such] claim of privilege" as required by para. 6(b) of Dkt. 383.  And again, if resolving any dispute requires Mr. Etra and/or the Court to look at any specific document, we can cross that bridge if we come to it but all or most issues relating to the documents should be resolvable based upon the Streamlined Content Report.

  Benthos requests that Mr. Etra be required to identify in court on Thursday the document folders as to which he needs to see the Streamlined Content Report.  That documentation would be supplied by the forensic expert within a short period of time to be decided at the conference.[2] Benthos also requests that at the conference, in consultation with the parties the Court should set

---

[1] Benthos may, however, at the upcoming conference request that a very limited number of specific senders/recipients as to whom no good-faith claim of privilege could attach be deemed excluded at the outset.  And after the Court renders its adjudication, the forensic expert should be directed to identify, without yet providing, any e-mails to or from a protected sender/recipient that included other senders/recipients as well, because those will likely not be privileged in any event.

[2] Ian Finch of Vestige, who has performed the actual work under Mr. Kelley's supervision, will be available to appear remotely at the conference.  His e-mail address is ifinch@vestigeltd.com and his phone number is 330-721-1205 (ext. 5426).



Hon. Valerie Caproni
November 14, 2023
Page 3

a schedule for Mr. Etra's privilege assertions (in compliance with Dkt. 383 para. 6(b)) and Benthos's response.

*         *         *

We also have been directed to address Mr. McGuinness's mention, in his November 1st letter (Dkt. 398), of the possibility of "utiliz[ing] search terms." The Benthos proposals outlined above would obviate any need to address search terms. Nonetheless, as Mr. McGuinness has failed to elaborate on his comment despite my four separate requests, I assume that while the words were transmitted by him, the suggestion was Mr. Etra's. It is unfair of Mr. Etra to seek to withhold until our conference whatever he may have in mind, and it is difficult to address this in a vacuum. However, if Mr. Etra intended to propose that Benthos utilize search terms to narrow the field of documents as to which he must assert privilege claims, as though this were a standard document request or subpoena in the ordinary course of discovery, we would object most vigorously.[3]

*         *         *

Our goal remains to expedite the process of getting a Court ruling on any privilege claims – without unduly burdening Benthos logistically or financially at this point[4] – so that we can commence the long-awaited forensic review. In that regard, we remind the Court (albeit unnecessarily) that the initial orders granting the examination were issued almost 11 months ago (Dkt. 260, 263), and that as long ago as March 28, 2023 (over 7 months ago), Your Honor told

---

[3] We are past discovery, having tried that and been stymied by Mr. Etra's 2½ years of lies and adjudicated contempt of court (including violating three orders by Judge Nathan before the matter reached Your Honor). Although we will of course focus our attention solely on material relevant to this action, the Court already has ordered that Benthos is entitled to access all non-privileged material on Mr. Etra's devices (we have started with only the laptop, for cost reasons, while reserving the right to continue with one or more of his phone, his iPad, and the hard drive recently delivered), and the only issues now are how and when Mr. Etra is to identify his privilege claims. Given those issues, and the history (not necessary to repeat here), it would be entirely unreasonable to place an additional burden on Benthos that would be costly and would limit the universe of reviewable documents, particularly since that would risk missing documents that may be important for judgment enforcement (see Dkt. 395). Mr. Etra had his opportunities – many of them! – to identify <u>responsive</u> documents that related to his finances (a task uniquely within his knowledge), and to produce them. He refused, and refused, and refused, and refused. As a result, the Court ordered the forensic examination, and he thereby forfeited the right to limit the documents to be made available, except for any that may be legitimately privileged.

[4] On December 20. 2022, the Court ruled that "If the forensic examination discloses responsive documents that have not been produced, Etra will be ordered to show cause why the full cost of the examination should not be taxed to him." While it is now a certainty that the examination will disclose such documents, the efficacy of orders directing Mr. Etra to pay money is of course problematic, leaving the burden all on Benthos until further funds are located and seized.



Hon. Valerie Caproni
November 14, 2023
Page 4

Mr. Etra, "my patience is limited on this" (Dkt. 349 at 21). Nonetheless, Mr. Etra has succeeded in stalling things out until now, and he is evidently hoping to continue to do so – substantively, by almost assuredly asserting grossly overbroad and legally untenable privilege assertions, unconstrained by Rule 11 as noted previously; and procedurally, by seeking to impose logistical restrictions and claiming to require inordinately long periods to assert those objections.

        We trust the Court will not let him get away with that.


                            Respectfully submitted,

                            Steven R. Popofsky


cc:  Daniel McGuinness (via ECF and e-mail)
     Aaron Etra (per Dkt. 263 n.2)
     Marc Sklar (via e-mail)

12499155.3 - 11/14/23