S.D.N.Y.-N.Y.C.<br>
20-cv-3384<br>
Caproni, J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of November, two thousand twenty-three.

Present:
> Debra Ann Livingston,
>> *Chief Judge*,
>
> Denny Chin,
> Michael H. Park,
>> *Circuit Judges*.

Benthos Master Fund, Ltd.,

        *Petitioner-Appellee*,          22-3078(L),
        22-3081(Con),
  v.        22-3115(Con)
        22-3119(Con)
Aaron Etra,        23-19(Con)
        23-1286(Con)
        *Respondent-Appellant*.

Respondent-Appellant Aaron Etra appeals from orders of the United States District Court for the Southern District of New York (Caproni, *J.*) holding him in civil contempt. He has been incarcerated since December 2022 as a civil contempt sanction. These appeals have been expedited.

Generally, "civil contempt orders against parties are interlocutory and therefore not immediately appealable. Rather, they must await the termination of the underlying litigation." *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 462 F.3d 87, 92 (2d Cir. 2006). And contempt orders entered to coerce compliance are generally not appealable "unless we find that [the] confinement has become punitive rather than coercive, thus effectively converting the district court's order into a final, appealable order for criminal contempt." *Commodity Futures Trading Comm'n v. Armstrong*, 284 F.3d 404, 405 (2d Cir. 2002).

CERTIFIED COPY ISSUED ON 11/20/2023

It is well established that a civil contempt sanction is a coercive device, imposed to secure compliance with a court order, and that "'[w]hen it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment.'" *Simkin v. United States*, 715 F.2d 34, 36-37 (2d Cir. 1983) (quoting *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir. 1981)). In distinguishing criminal and civil contempt sanctions, "we inquire whether the sanction's purpose was to coerce compliance and whether the contemnor was given the opportunity to cure his contempt and thereby end the sanction." *Armstrong*, 284 F.3d at 406 (internal quotation marks and citation omitted). Once a court determines that the civil contempt remedy has become "unavailing, the criminal contempt sanction is available." *Simkin,* 715 F.2d at 36-37 (citing *Shillitani v. United States*, 384 U.S. 364, 371 n.9 (1966)).

We have noted before that because a district court's determination whether a civil contempt sanction has lost any realistic possibility of having a coercive effect involves an uncertain prediction as to "the likely effect of continued confinement upon a particular individual," the district judge "has virtually unreviewable discretion both as to the procedure [she] will use to reach [her] conclusion, and as to the merits of [her] conclusion." *Id*. at 38. Here, the district court's August 29 order denied Appellant's motion for release from custody but did not make a finding as to whether Appellant's continued confinement remains coercive or has become punitive. As the district court is more familiar with the record and retains "broad discretion . . . to determine that a civil contempt sanction has lost its coercive effect upon a particular contemnor at some point," *id.* at 37, the matter is REMANDED for the district court's consideration, in the first instance, whether the contempt sanction continues to be coercive or, having lost its coercive effect, has become punitive (in which case different procedures apply).

The mandate shall issue forthwith. On remand, the district court shall proceed as expeditiously as possible and shall, within seven business days hereof, hold a hearing to consider the issues raised herein. The district court shall consider whether incarceration continues to serve a coercive purpose or whether the civil contempt remedy has become "unavailing," that is, "whether under all the circumstances the contemnor has shown that there is no realistic possibility that *his* continued confinement will have a coercive effect upon *him*." *Id.* at 39. If the district court determines that there is no such realistic possibility, it shall release Appellant subject to any reasonable conditions it deems appropriate, and without prejudice to the commencement of any criminal contempt proceeding. On remand, the district court may wish to consider expanding Appellant's CJA representation so that he will have counsel with respect to the issues of compliance with the court's orders, in light of his extended incarceration. To the extent Appellant moves now for release, the request is denied, without prejudice to his moving for release in the district court as part of the proceedings on remand.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit