UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BENTHOS MASTER FUND LTD.,                    :

 -against-                                                          :         20 Civ. 3384 (VEC)

AARON ETRA,                                              :


                    Respondent,                              :
-------------------------------------------------------------x


**Reply in Support of Motion for Release From Custody**


Daniel McGuiness
Law Office of Daniel A. McGuiness, P.C.
353 Lexington Ave, Suite 900
New York, NY 10016

Benjamin Silverman
Law Office of Benjamin Silverman
224 West 30th Street, Suite 302
New York, NY 10001
(212) 203-8074

*Attorneys for Aaron Etra*

Aaron Etra, by and through counsel, respectfully submits this reply brief in further support of his December 4, 2023 motion to be released from prison (Dkt. 425, Main Br.) and in response to Benthos' opposition (Dkt. 429, Opp.), which "defers to the Court's continued discretion" (*id.* at 1).

## PRELIMINARY STATEMENT

Benthos' brief does not dispute Etra's core points, including that he (1) validly asserts the Fifth Amendment as to the five outstanding discovery demands; (2) complied with the Court's August 29, 2023 instructions about how he may show that he is unable to pay $145,718.49; and, therefore, (3) **has not taken any steps to meet the remaining requirements to purge his contempt for six months, which is half the time that he has been in jail**. Benthos does not even argue that Etra should be detained; it instead "defers to the Court's continued discretion," Opp. at 1, presumably because it will not defend continued, futile incarceration before the Court of Appeals. Benthos' position is particularly notable because Etra is detained as a civil sanction to aid Benthos; and, after forcefully advocating for the Court to jail Etra, Benthos no longer sees value in that sanction sufficient to ask the Court to continue it, or to defend it before the Second Circuit. Benthos' actions betray its realization that the custodial sanction no longer coerces Etra to do anything for its benefit. It merely punishes him.

Benthos' only substantive argument is that Etra overproduced – requiring Benthos to "bleed[] fees" and "review[] an undifferentiated mass of materials . . . ." Opp. at 3, 8. **Benthos notably cites no authority, and we have not identified any, permitting**

**indefinite incarceration to sanction someone for producing *too much* information.** In any event, Benthos' argument is overstated and fails: all together, the laptop, iPad, cellphone, and hard drive that Etra provided to Benthos' e-discovery vendor constitutes less data than counsel receives in discovery in a routine federal narcotics prosecution. While Benthos may be right that, at some point, discovery produced at many multiples the volume of what Etra has provided to it may be considered abusive, that is not what is happening in this case.

Benthos otherwise engages in a series of distractions and ad hominem attacks on counsel, rather than counsel's arguments, because it cannot explain why keeping its elderly adversary in jail continues to coerce. Aaron Etra should be released.

## DISCUSSION

### I.     Etra validly asserts Fifth Amendment.

The Main Brief discussed why Etra has the right to decline to provide testimonial and potentially incriminating responses to the five outstanding discovery demands. Main Br. at 11-20. We have little to add here because Benthos all but concedes the point. It does not dispute Etra's readily apparent reasons for remaining silent, but instead contributes to them by referring to his money as "ill-gotten gains." Opp. at 5. In a letter filed yesterday, Benthos again alleged that Etra "participated in the underlying scam against Benthos" (Dkt. 432 at 1) – underscoring that it accuses Etra of conspiring to steal its money and then move (or launder) it in ways that the discovery demands would trace.

2

Benthos suggests in passing that this Court "has no jurisdiction to rule on" Etra's right to remain silent. Opp. at 5. That is ridiculous. Benthos cites *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56 (1982), which holds that a notice of appeal divests a district court of jurisdiction. But in this case, on November 20, 2023, the Court of Appeals issued a "certified copy of order, dated 11/20/2023, **determining the appeal**" at docket number 23-1826 (the Contempt Appeal) and transmitted its "certified copy of order" to the Southern District of New York. *Benthos v. Etra*, No. 23-1826 (2d Cir. Nov. 20, 2023), Dkt. 78 (emphasis added). The Court of Appeals' remand order instructs this Court to consider "as expeditiously as possible" whether imprisoning Etra "continues to serve a coercive purpose or whether the civil contempt remedy has become 'unavailing,' that is, 'whether under all the circumstances the contemnor has shown that there is no realistic probability that *his* continued confinement will have a coercive effect upon *him*.'" *Id.*, Dkt. 76 (emphasis in original). This analysis necessarily requires the Court to consider whether Etra cannot be further coerced because he validly asserts the Fifth Amendment. The Court of Appeals did not remand this matter pursuant to *United States v. Jacobson*, 15 F.3d 19 (2d Cir. 1994), or in any other way permitting it to retain jurisdiction or strip this Court of jurisdiction, much less to preclude the Court from considering what it must in the hearing that the Second Circuit contemplated.

Benthos separately complains that Etra characterizes the five outstanding discovery demands as "interrogatories." Opp. at 6-7. When the Court questioned counsel about characterizing the outstanding demands as "interrogatories" at the November 30 conference, we explained that the discovery demands all require testimonial responses,

3

and they are not, therefore, mere document demands. *See* 11/30/23 Tr. at 50-51. Benthos may not realize why this nuance is legally significant because it avoids the Fifth Amendment analysis. As the Main Brief noted, Etra has produced those documents whose existence is a foregone conclusion, and he now asserts the Fifth Amendment only as to those discovery demands requiring responses that are both testimonial and potentially incriminating. *See* Main Br. at 1, 3, 4.

## II. Benthos has all relevant material as far as counsel is aware.

Benthos' electronic discovery vendor has all of the information that Etra possesses, and **Benthos only sees cause to detain Etra to compel him to curate this less-than-overwhelming volume of data**. Etra has provided Benthos with his laptop, hard drive, iPad, and cellphone. He has less than three weeks from today to make privilege assertions; after that, privilege will be waived, and Benthos will then have full access to the data. Two days ago, Etra, through counsel, withdrew his privilege assertions concerning numerous categories of information that Benthos seeks to review. *See* Dkt. 430 at 1-2. Benthos' e-discovery vendor now possesses images of Etra's devices and the Court has established a default mechanism through which Benthos will likely have free reign to explore those devices' contents at the beginning of next month. Though Etra produced more than a negligible amount of data, it is far from overwhelming by the standards of contemporary litigation. Solo practitioners without support staff review more discovery in connection with routine federal criminal prosecutions than what Etra provided to Benthos, whose law firm has the resources to review this material without

compelling Etra to guide them with testimonial and potentially incriminating responses to the five remaining discovery demands.

Benthos argues that it needs Etra's testimonial responses because it cannot afford to extract data from three of Etra's devices, including his cellphone. Opp. at 3-4. Etra's counsel recently received an estimate from the third-party vendor for a forensic image of both Etra's laptop and cellphone. *See* Dkt. 421. The quote was $800 including shipping. At the rates that Benthos' midtown law firm charges, the eight-page brief opposing this motion cost Benthos far more money than extracting the contents of Etra's cellphone would. It is therefore hard to swallow Benthos' argument that costs prohibit it from accessing the contents of the cellphone, iPad, and hard drive that Etra sent to its vendor. *See* Opp. at 4 n.2 (arguing that "the contents of his phone and other devise are not close to being provided to Benthos" apparently because Benthos declines to expend modest resources to extract the data).

Benthos argues that Etra has hidden his iCloud password. Opp. at 4 n.2. That password was produced two days ago on December 11, which was less than two business days after Benthos alerted counsel that the password was needed and we responded immediately that would address this issue after visiting our client in the jail. There is no question that detaining Etra at the MDC interferes with counsel's ability to communicate with him, and that therefore slowed Benthos' access to the password by two business days.

In short, we understand Benthos to argue that Etra has not "produced too much," but rather that he has produced *everything* – in a manner that would require the

5

California-based financial fund to expend less than one thousand dollars to extract and then some time to review. This is not a sound basis to keep an elderly man in jail past the one-year mark.

## III. Burden Shifting

Etra's Fifth Amendment rights are dispositive to Benthos' "burden shifting" argument. Benthos does not cite to any particular provision in the Federal Rules of Civil Procedure that it believes entitle it to compel Etra to curate the data he produced. But even if there is any such principle or rule of civil discovery, it must yield to Etra's rights under the United States Constitution. Benthos cites no law compelling a contrary conclusion.

## IV. Etra's Right To Counsel

Benthos writes resentfully about Etra's "two lawyers" – lawyers who, we note, are paid a lower hourly rate than Benthos' counsel charges for its paralegals. Benthos' complaints are a way of shirking responsibility for the dramatic and punishing sanction that it persuaded the Court to Order exactly one year ago. When a United States citizen is held indefinitely in a notoriously harsh prison, they are entitled to counsel. If Benthos does not want to interface with two CJA lawyers, or if it wishes to protect "the public fisc" (11/30/23 Tr. at 10), then it should stop seeking indefinite incarceration, a civil remedy imposed at its request and for its benefit.

For its part, Benthos' retained law firm has three lawyers with appearances in this case and at least two lawyers and one paralegal who are actively engaged based on recent emails. Given this law firm's resources, it is a choice not to issue third party subpoenas, investigate leads or extract cellphone data, just as it was a choice not to defend the Court's rulings in the Second Circuit. There is nothing unfair about affording representation to an elderly man who is held in jail indefinitely at risk to his life and well-being. On the contrary, the Sixth Amendment and Due Process Clause require it.

### V.     Benthos' remaining arguments are unavailing.

Benthos makes a number of other arguments that are without merit. It claims that it is not trying to trace assets that it believes Etra stole. Dkt. 7. But in a letter filed just yesterday, it accused Etra of participating in the "underlying scam." Dkt. 432 at 1. As we noted in the Main Brief, Benthos alleges that Etra transferred its money to Hong Kong and China. Main Br. at 23. In its brief opposing this motion, Benthos writes that Etra "is concealing, and/or lying about, . . . any ill-gotten gains" (Opp. at 5), clearly referencing the money it believes that Etra conspired to steal from it, launder, and receive at least in part to store somewhere for himself. These allegations – combined with the Court's referral of Etra to the U.S. Attorney's Office and the Court's own stated belief that Etra is a thief (*see* Main Br. at 4 n.2) – provide readily apparent reasons for Etra to believe that there is a slight possibility that his testimonial answers to questions about his finances, assets, and accounts could provide a link in the chain of evidence used to prosecute him.

7

Benthos suggests that we should provide "testimony from Etra himself" about "his assets and any ill-gotten gains" to show that he cannot pay $145,718.49. Opp. at 5. The Fifth Amendment relieves Etra of that obligation. *See generally* Main Br. at 11-20.

Benthos argues that "non-payment cannot logically establish inability to pay." Opp. at 6. But the Court must also consider whether keeping Etra in jail continues to coerce. Benthos appears to suggest that "it may prove accurate . . . that the Court will finally conclude that [Etra] will not break no matter what." Opp. at 6. This is a concession that incarceration is not working to coerce anymore.

Benthos rejects as "simply not true" that Etra is unable to take additional steps to comply with the contempt orders. Opp. at 8. While it is true that Etra "has chosen" to rely on his Fifth Amendment right to remain silent, he has every right to do so. Given that right, he absolutely has not been able to comply with the outstanding discovery demands. *See* Main Br. at 11-20. And he has met the requirement the Court set on August 29 to establish that he is unable to pay $145,718.49. *See* Dkt. 372; Main Br. at 5, 22.

Finally, Benthos' brief is replete with ad hominem attacks on counsel, some of which are silly, others offensive, and a few close to sanctionable. We respond only that we have not been derelict in our ethical obligations, and we are available to address Benthos' scattershot and spurious aspersions in detail should the Court desire.

## CONCLUSION

Benthos' opposition contains a telling concession when it writes that "nothing has changed" for months. Opp. at 9. That is another way of saying that Etra is no longer being coerced: the passage of time is itself an important change. Six months have passed while Etra remains in a notorious prison, but nothing changes because he is not coerced.

The question before the Court is not whether it believes Etra spent money before he was incarcerated or should be punished for flouting court orders when he was *pro se*, or even whether he has money hidden somewhere. It is instead whether keeping him in jail indefinitely continues to coerce – even though it has not made him take any steps to purge his contempt for six months, which is half the time that he has been in jail; he has the right to remain silent and not respond to the five outstanding discovery demands; he has met the requirements the Court set on August 29 to establish that he cannot pay a fine; Benthos will have unfettered access to all of Etra's data in weeks as long as it invests the time and resources commensurate with reviewing discovery in a federal case; and nothing indicates that Etra is or will be coerced by remaining in jail. At this point, keeping him in the MDC Brooklyn is purely punitive. He must be released.

Dated: New York, New York
      December 13, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　/s/ Benjamin Silverman
　　　　　　　　　　　　　　　　　　　　　　　Daniel McGuinness
　　　　　　　　　　　　　　　　　　　　　　　Benjamin Silverman
　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Aaron Etra*