

**Steven R. Popofsky**
*E-Mail: spopofsky@kkwc.com*
*Direct Dial: 212.880.9882*

February 27, 2024

Hon. Valerie Caproni
United States District Court
40 Foley Square, Room 240
New York, NY 10007

      Re:    <u>Benthos v. Etra, 20-CV-3384</u>

Dear Judge Caproni:

    We are writing to report partial agreement and otherwise present the parties' respective positions on certain outstanding issues in advance of the conference scheduled for Wednesday, February 28 at 2:30 PM.

<u>Benthos (submitted by Mr. Popofsky)</u>

    With regard to cryptocurrency – a potentially critical issue – my prior correspondence tied only to the apparent Coinbase wallet addresses has proven to be premature, because those addresses were only the tip of the iceberg.  Counsel for both sides have had tremendous problems accessing the contents of Mr. Etra's phone as transmitted to us by the forensic expert Vestige (through no fault of Vestige, which has worked diligently and effectively and is still doing so), due primarily to the massive amount of material involved and also to certain inherent limitations in the available mechanisms to access the material.  It was only a few days ago that Benthos was finally able to gain substantial access to the phone's contents.[1]

    We have learned that Mr. Etra had on his phone a plethora of financial-related apps, including at least several crypto sites in addition to Coinbase (such as Binance, Kraken, Metamask and Tether) as well as money-transfer apps such as Venmo, Zelle and Western Union, and we also have seen at least one screenshot showing an account containing the cryptocurrency equivalent of $200,000.  It is inconceivable that Mr. Etra did not have accounts – previously-undisclosed – associated with most or all of those apps.  However, our review has only just begun and has not yet remotely been able to be comprehensive; accordingly, at this time we are

---

[1] That process is still ongoing.  The access we obtained last week was only through using a new more powerful computer, and even then it took hours to load and that process is not very practical going forward.  Vestige is supplying a different solution which everyone is cautiously optimistic will be more useful.  It is my understanding that Mr. McGuinness continued to be unable to access the material transmitted by Vestige; however, the actual phone was shipped back to Mr. McGuinness's office last week – for Friday delivery, which I had assumed happened, but he just informed me this afternoon that there was an attempted after-hours delivery and he has not yet received it; we are all following up – so he and his client will now have access to the original, so to speak..



Hon. Valerie Caproni
February 27, 2024
Page 2

making only two limited interim requests addressed below – one of which is with the consent of Mr. McGuinness.

Once we have had the opportunity to review the material more thoroughly, formulate our requests, discuss them with Mr. McGuinness and attempt to reach agreement, we will advise the Court of any existing disputes and proceed as the Court directs. Therefore, for the time being, Benthos seeks only the following limited interim relief:

- First, an order on consent that Mr. Etra not delete any apps on his phone until further order of the Court. Because our review is still in its nascent stage, it is impossible to state with certainty at this point what might be needed (or deemed appropriate by the Court), but preserving the *status quo* is reasonable for the moment.

- Second, an order that for at least the first two monthly reports by Mr. Etra (on March 5 and April 5 respectively) – i.e., until we are all able to at least partially sort out the situation with regard to Mr. Etra's cryptocurrency activity – Mr. Etra's monthly statements previously ordered (Dkt. 452 on February 9, 2024) must include a representation as to whether he has engaged in any cryptocurrency-related activity, of any kind whatsoever (directly or indirectly, including through intermediaries and including accessing wallets, accounts and/or apps), during the reporting period, and if so he must include a description of such activity. Benthos is aware that Mr. McGuinness regards this request as superfluous, but that would only even arguably be true if we could have confidence that Mr. Etra would comply in good faith with the Court's previous reporting order. Given Mr. Etra's adjudicated history of lying and concealment – and the fact that his vocation, pre-incarceration, seemed to pivot around cryptocurrency scams such as the one that gave rise to Benthos's judgment in the first place – we (and the Court) can have no such confidence, and we not unreasonably fear that he will seek to interpret the reporting order narrowly so as to relieve him of the obligation to disclose certain crypto-related activity. In any event, the requested additional representation, for only a limited period of time, would not at all be unduly burdensome (unless he is seeking to conceal activity that should be disclosed).[2]

---

[2] Mr. McGuinness claims that "The alleged crypto apps on the phone were brought to my attention for the first time late Sunday night." But we discovered the apps only last Wednesday and Thursday, and I advised Mr. McGuinness on Thursday that "Mr. Etra had a plethora of crypto (and other financial) apps on his phone (without ever having disclosed any corresponding accounts). We only learned this yesterday and today." On Sunday night I sent him a draft of this letter identifying some of the apps (having held the letter over the weekend so as not to further disrupt the end of his vacation), but, again, Mr. Etra at all times has known what apps he had and they will now have the phone itself and Mr. Etra's counsel too



Separately, with regard to discovery, the Court is aware that Benthos in the past has subpoenaed various categories of documents from Mr. Etra, who defied many of those requests and provided willfully false responses (denying the existence of responsive documents) to others. He remains a judgment debtor subject to traditional – and broad – New York discovery obligations, and accordingly Benthos has renewed and updated a limited subset of prior requests (attached, most of which seek only documents created since the date of his release from incarceration[3]).

The requests are not only largely limited in time but are almost all merely updated reiterations of requests made by subpoenas years ago (as to which there was a continuing obligation in any event). Benthos is amenable to giving Mr. Etra a reasonable period to <u>produce</u> responsive documents, but is concerned – given Mr. Etra's history of stalling – that giving him an additional thirty days just to <u>respond</u> will only lead to blanket objections at that time, causing another delay before anything is actually produced. Mr. Etra and his lawyer have had the requests for two weeks now, and if they have any objections they should raise them at the conference so the Court can rule as it sees fit.

Accordingly, Benthos respectfully requests an order requiring Mr. Etra to produce documents responsive to the attached request within twenty days (or such other period as the Court deems reasonable), and to supplement his responses periodically as warranted.

<u>Mr. Etra (submitted by Mr. McGuinness)</u>

Mr. Etra has made all possible efforts to comply with Respondent's continuing requests. Although I was away last week, Mr. Etra met with a paralegal in my office to try to reset his passwords for the Coinbase and PayPal. Because his linked email account is frozen for being over the storage limit, he was unable to do so. To unfreeze the accounts he will either have to spend money or delete large amounts of data. I am in contact with Petitioner about how to best handle this.

---

will be aware of all the apps. His complaint that he "repeatedly asked Petitioner for its source of its information to discuss with my client" is misleading but moot – he had asked to be shown the source material for the Coinbase addresses previously referenced, but until late last week we were unable to get back into the material in order to comply (although we tried mightily), and by the time we could access the material, we understood that they had the phone and (while we will be happy to supply what we can) we are no longer making any current request vis-à-vis the Coinbase accounts (because, as stated above, Coinbase is only the tip of the iceberg and we will make comprehensive requests after our review). We will of course confer with adversary counsel before making any crypto-related (or other) requests to the Court.

[3] I have informed Mr. McGuinness that the Definitions and Instructions contained in the prior subpoenas should be deemed applicable to these requests as well.



Hon. Valerie Caproni
February 27, 2024
Page 4

     Mr. Etra executed letters to PayPal and the account identified by Petitioner that ask for full account documentation to be sent to my office. Copies of the letters and proof of certified mailing was promptly sent to Petitioner. Mr. Etra has provided all information and actions asked of him.

     As to the purported crypto accounts, I have repeatedly asked Petitioner for its source of its information to discuss with my client. The only response as to the the lengthy string of alphanumeric "account numbers" is that they came from "bitcoin wallet" in an unspecified location. I continue to ask to be directed or shown this information so that I can discuss it with my client but have received nothing to date. Mr. Etra has not refused to cooperate or produce information in any respect. To the contrary, he has signed anything asked of him, and provided all requested information. The alleged crypto apps on the phone were brought to my attention for the first time late Sunday night. Mr. Etra immediately agreed to meet with me and make all possible attempts to access any information on those apps as soon as his phone is delivered.

     Mr. Etra has not yet responded to the most recent requests for documents and information from Petitioner. As the Court is aware my octogenarian client was incarcerated for over a year because he was overwhelmed with discovery requirements – which were all suspected by Petitioner to reveal great wealth but revealed only a mountain of debt – I do not want him subjected to overly burdensome, admittedly superfluous requirements without proper time to assert his rights. To that end, I respectfully request 30 days to respond to the subpoena submitted by Petitioner and to refrain from ordering the additional reporting requirements requested above.

                   *                         *                        *

     Respective counsel thank the Court for its continued consideration of these issues.

                                                   Respectfully submitted,

                                                   s/

                                                 Steven R. Popofsky

cc: Daniel McGuinness (by e-mail and ECF)

1. All documents concerning communications since the date of Mr. Etra's release from incarceration (December 21, 2023) sent or received by him concerning (i) his financial status, (ii) any attempts (by anyone) to obtain or provide funds from which to satisfy the Judgment (in whole or in part), (iii) any and all Court orders issued in this matter since August 13, 2020, and (iv) petitioner's or petitioner's counsel's judgment enforcement efforts, to or from any person or entity whatsoever (excluding communications with financial institutions seeking copies of statements).

2. All documents concerning any escrow agent agreements entered into by Mr. Etra since his release from incarceration.

3. All documents, including but not limited to agreements and written communications, concerning any legal, paymaster or escrow-related services Mr. Etra has performed, or sought to perform or was solicited to perform, since his release from incarceration.

4. Copies of all State and Federal income tax returns, or other filings with the Internal Revenue Service, filed by or on behalf of Mr. Etra since January 1, 2022.

5. All documents created since the date of Mr. Etra's release from incarceration concerning the nature, extent, and location of all assets owned or controlled by Mr. Etra, including those which detail the valuation of any such assets.

6. All documents created since the date of Mr. Etra's release from incarceration concerning Mr. Etra's direct or indirect ownership interests in any business or entity of any kind.

7. All documents concerning any cryptocurrency, stocks or securities owned or controlled by Mr. Etra since August 13, 2020, whether in his name individually, jointly, in trust, as custodian, as nominee, as a beneficiary or in conjunction with any other person or persons, including but not limited to any cryptocurrency accounts or wallet addresses to which Mr. Etra has access.

8. All documents concerning any and all actual, proposed and/or contemplated investments by Mr. Etra since August 13, 2020 and all direct and indirect ownership interests he has or had in any entity since that date.

9. All documents concerning all proposed and actual purchases by any person or entity since August 13, 2020 of any asset or property owned or controlled by Mr. Etra, and all proposed and actual purchases by Mr. Etra of any asset or property owned by any person or entity since that date.

10. All documents concerning all persons and entities that are indebted to Mr. Etra, including without limitation those documents which evidence (i) the amount and date of the original indebtedness, (ii) the name and address of the debtor, (iii) the basis for the indebtedness, and (iv) the amount and date of any sum repaid by the debtor since the original indebtedness.

       11.     All communications with any person since the date of Mr. Etra's release from incarceration regarding his ability to pay expenses.

       12.     All documents concerning any income or anything of value received by or owed to Mr. Etra since the date of his release from incarceration.